**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MTE HOLDINGS LLC, *et al.*,[1] | Case No. 19-12269 (KBO) |
| Debtors. | Joint Administration Requested |

**DEBTORS' MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO
(A) CONTINUE USING EXISTING CENTRALIZED CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO
THE USE OF THE CASH MANAGEMENT SYSTEM, AND (C) MAINTAIN EXISTING
BANK ACCOUNTS AND CHECK STOCK AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned Chapter 11 cases (the "<u>Chapter 11 Cases</u>") respectfully state as follows in support of this motion (the "<u>Motion</u>"):

**<u>RELIEF REQUESTED</u>**

1.      The Debtors submit this Motion pursuant to sections 105(a), 345, 363, 364, 503, and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "<u>Bankruptcy Code</u>"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") requesting entry of interim and final orders, substantially in the forms attached hereto as **<u>Exhibit C</u>** and **<u>Exhibit D</u>** (the "<u>Interim Order</u>" and the "<u>Final Order</u>," respectively): (a) authorizing the Debtors to (i) continue using the Cash Management System (as defined below), (ii) honor, in the

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC. (7894); MTE Partners LLC. (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644).  The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

reasonable exercise of their business judgment, certain prepetition obligations related to the use of the Cash Management System, and (iii) maintain their existing Bank Accounts (as defined below) and check stock; (b) scheduling a final hearing (the "Final Hearing"); and (c) granting related relief.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 345, 363, 364, 503, and 507, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

## BACKGROUND

### A.      General Background.

5.      On October 22, 2019, October 23, 2019, (the "Parent Petition Dates") and on the date hereof (the "Affiliate Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  No party has requested the appointment of a trustee or examiner in the Chapter 11 Cases and no statutory committees have been appointed or designated.

6.     A detailed description of the Debtors, and their businesses, including that of debtor and operating company MDC Texas Operator LLC ("MDC Operator"), and the facts and circumstances supporting this Motion and the Debtors' bankruptcy petitions are set forth in greater detail in the *Declaration of Mark Siffin, Chief Executive Officer of MDC Energy LLC in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  This Motion incorporates by reference the facts set forth in the First Day Declaration as if fully set forth herein.  Additional facts specific to this Motion are set forth below.

**B.     The Debtors' Cash Management System and Bank Accounts.**

7.     In the ordinary course of business and prior to the Affiliate Petition Date, the Debtors maintained a centralized cash management system (the "Cash Management System"). Like other large and complex businesses, the Debtors designed the Cash Management System to efficiently collect, transfer, and disburse funds generated through the Debtors' day-to-day operations and to accurately record such collections, transfers, and disbursements as they are made.   A detailed description of the Cash Management System is set forth below, a demonstrative chart of the Cash Management System is set forth in **Exhibit A**.

8.     Accordingly, the Debtors' business requires the collection, transfer, and disbursement of funds through a number of bank accounts at various banks (collectively, the "Bank Accounts").  A list of the Debtors' bank accounts (collectively, the "Bank Accounts") is set forth in **Exhibit B**.

**C.     Cash Collection.**

9.     The Debtors generate and receive funds from a variety of sources.  A substantial

portion of the Debtors' present revenues, and their expected future revenues, consist of oil and gas sales. In addition, the Debtors may generate receipts from other miscellaneous sources. The Debtors' receipts are deposited directly into the MDC Energy LLC operating account with Bank of New York Mellon (the "Collection Account"). Certain large vendors are paid directly via wires from the Collection Account. As of the Affiliate Petition Date, the balance of cash in the Collection Account is approximately $2,374.15.

10.     The Debtors also maintain two depository accounts with Prosperity Bank in the name of MDC Energy LLC and MDC Reeves Energy LLC (the "Operating Accounts"). Money is transferred from the Collection Account to the Operating Accounts as needed to cover certain smaller vendor payments as well as oil and gas royalty payments. As of the Affiliate Petition Date, the balance of cash in the Operating Accounts is approximately $4,227.90.[2]

**D.      Cash Disbursements.**

11.     Receipts concentrated in the Collection and Operating Accounts are used by the Debtors to satisfy their financial obligations. Disbursements by check, wire, or automated clearing house transfers ("ACH Transfer") are generally made through this account.

12.     The Debtors' accounts payable payments on account of revenue, interest, taxes and regulatory fees, utilities, and all certain vendors are paid or automatically debited by wire, check, and ACH Transfer out of the Operating Account.

13.     The Debtors pay fees to their banks of approximately $10,000 per year for the Collections Account and $30 per month in connection with the Operating Accounts (the "Bank Fees"). The Debtors estimate that approximately $10,000 in Bank Fees is outstanding as of the Affiliate Petition Date.

---

[2] The two accounts in the name of Debtor MTE Holdings. LLC are subject to creditor liens and the Debtor does not seek to use funds in those accounts absent an order of the Court authorizing such use.

E.     **Intercompany Transactions.**

14.     Prior to the Parent Petition Dates and Affiliate Petition Date, in the ordinary course of business, the Debtors engaged in certain intercompany transactions and transfers amongst themselves (the "Intercompany Transactions").  The Intercompany Transactions may result in intercompany receivables and payables (the "Intercompany Claims").     The Intercompany Transactions are not accounted through the Cash Management System, but rather through maintained book entries on the Debtors' books and records.  Postpetition, the Debtors intend to continue to engage in Intercompany Transactions.  Discontinuing the Intercompany Transactions would disrupt the Debtors' business operations, harming their creditors and other parties in interest. The Debtors will continue to retain records of these Intercompany Transactions, which will be reconciled at intervals and properly maintained.  As a result, the Debtors will be able to account for all Intercompany Transactions.

15.     As detailed in the First Day Declaration, MDC Operator is an LLC whose shares are held by non-debtor MTE Holdings II LLC, which is a wholly owned indirect subsidiary of non-Debtor Olam Energy Resources I LLC ("Olam").   Olam is in turn owned by entities controlled by Mark A. Siffin and IUC Olam Holdings LLC (the "Primary Owners").

16.     Pursuant to management services agreements with MDC and MDC Operator, Maefield Development Corporation ("Manager"), a non-debtor affiliate of the Company, provides management and related services to the Company utilizing its own employees.  This includes the services of 23 dedicated fulltime employees located at the offices of the Manager in Midland, Texas.  The Company reimburses the Manager for the direct costs of providing these services without a mark-up.  These employees are also eligible to participate in the healthcare plan provided by the Manager.  Typical monthly payroll plus healthcare is approximately $305,000.

### F.      Corporate Credit Card.

17.      The Debtors provide one individual employee with a corporate credit card (the "Corporate Credit Card") issued by Capital One, N.A. ("Capital One"), for which the Debtors pay associated fees and repay outstanding amounts (collectively, the "Credit Card Payments"). The Corporate Credit Card is primarily utilized to pay for certain work-related expenses, such as work-related travel and permitting costs.  The Corporate Credit Card is issued in the name of Maefield Development.  The Debtors seek the authority to pay all outstanding prepetition amounts owed on account of the Credit Card Payments and to continue to honor such obligations postpetition in the ordinary course. The Debtors also request the authority to continue to use the Corporate Credit Card postpetition.

18.      On average, the Debtors have historically owed approximately $11,000 a month on account of the Corporate Credit Card.  As of the Affiliate Petition Date, the Debtors estimate that they owe a *de minimis* amount on account of the Corporate Credit Card.  The Debtors seek authority to continue the Corporate Credit Card subject to the terms and conditions thereof on a post-petition basis consistent with past practice.

### BASIS FOR RELIEF REQUESTED

### A.      The Court Should Authorize the Debtors to Continue Using the Existing Cash Management System.

19.      The Debtors maintain an integrated Cash Management System in the ordinary course of their business operations that allows them to effectively oversee their cash and financial affairs.  In addition, the Cash Management System is consistent with those utilized by corporate enterprises comparable to the Debtors in size and complexity.  As described herein, any disruption to the Cash Management System would have an immediate adverse impact on the Debtors' business and would impair the Debtors' ability to successfully administer the Chapter

11 Cases.  It would be time-consuming, difficult, and costly (and in some cases impossible given the location of the Debtors' stores) for the Debtors to establish an entirely new system of accounts and a new cash management system.  The attendant delays from revising cash management procedures and redirecting receipts would create unnecessary pressure on the Debtors and their employees while they work to meet the other administrative obligations required by chapter 11 of the Bankruptcy Code.  Preserving normalcy and avoiding the unnecessary and costly distractions associated with any substantial disruption in the Cash Management System will facilitate the Debtors' efforts to maximize their assets for the benefit of all creditors.

20.    The Debtors will maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of the Chapter 11 Cases.  As a result, the Debtors will be able to document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest.

21.    Allowing the Debtors to utilize the prepetition Cash Management System is consistent with the applicable provisions of the Bankruptcy Code.  Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The purpose of Section 363(c)(1) is to provide a debtor in possession flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court.  *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("The framework of [s]ection 363 is designed to allow a . . . debtor-in-possession . . . the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight").  Included within the purview of section 363(c) is the ability to continue "routine transactions" stemming from a debtor's cash

management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp., (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (holding that the debtor's use of a centralized cash management system did not "transcend the day to day affairs" of the debtors, and that use of the cash management system would be consistent with the debtor's powers under Section 363); *Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (order authorizing debtor to employ a cash management system that was "usual and customary" was "entirely consistent" with Section 363(c)(1)). Accordingly, to minimize the disruption caused by these bankruptcy filings and maximize the value of the Debtors' estates, the Debtors request authority to continue to utilize the Cash Management System during the pendency of the Chapter 11 Cases.

22.     One purpose of section 363 of the Bankruptcy Code is to provide a debtor with the flexibility to engage in the ordinary course transactions required to operate its business without undue supervision by its creditors or the court. *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions" necessitated by a debtor's business practices. *See, e.g., In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (citations omitted) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions); *In re Vision Metals*, 325 B.R. at 142 ("[W]hen a chapter 11 debtor in possession continues to operate

its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

23.     The Bankruptcy Code does not define "ordinary course of business."  In determining whether a transaction qualifies as "ordinary course," the Third Circuit has adopted the "horizontal" dimension test (*i.e.*, whether "from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry") and "vertical" dimension test (*i.e.*, whether the transaction is consistent with the reasonable expectations of "hypothetical creditors").  *In re Roth Am., Inc.*, 975 F.2d at 953.  "The touchstone of 'ordinariness' is . . . the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business."  *Id.* (citing *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983)); *see also In re Nellson Nutraceutical, Inc.*, 369 B.R. at 797 ("[A] debtor's pre-petition business practices and conduct is the primary focus of the vertical analysis."); *Sportsman's Warehouse, Inc. v. McGillis/Eckman Invs.-Billings, LLC (In re Sportsman's Warehouse, Inc.)*, Case No. 09-10990 (CSS), 2013 WL 492554, at *9 (Bankr. D. Del. Feb. 7, 2013) (citation omitted) ("In determining whether a transaction is in the ordinary course of business, the Third Circuit has adopted the two-part horizontal and vertical dimension test."); *In re Blitz U.S.A., Inc.*, 475 B.R. 209, 214 (Bankr. D. Del. 2012) (same).

24.     Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.  *Amdura Nat'l Distrib. Co. v. Amdura Corp.* (*In re Amdura Corp.*), 75 F.3d 1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to continue the collection and disbursement of cash pursuant to their Cash Management System described above.

25.     Courts in this district have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has similarly emphasized the "huge administrative burden" and economic inefficiency of requiring affiliated debtors to maintain all accounts separately. *In re Columbia Gas Sys.*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining an existing cash management system allows a debtor "to administer more effectively and efficiently its financial operations and assets").

26.     Courts in this district have granted relief substantially similar to that requested in this Motion. *See, e.g.*, *In re The Walking Company Holdings, Inc.*, Case No. 18-10474 (LSS) (Bankr. D. Del. Mar. 8, 2018) [D.I. 76]; *In re Aquion Energy, Inc.*, Case No. 17-10500 (KJC) (Bankr. D. Del. Mar. 10, 2017) [D.I.. 34]; *In re Basic Energy Servs., Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Oct. 26, 2016) [D.I. 58]; *In re Key Energy Servs., Inc.*, Case 16-12306 (BLS) (Bankr. D. Del. Oct. 25, 2016) [D.I.. 66].

27.     The Court may also exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Cash Management System without interruption is important to the success of the Chapter 11 Cases, and it is well within the Court's equitable power under Section 105(a) to approve its continued use.

28.     Here, requiring the Debtors to adopt a new cash management system during the Chapter 11 Cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors'

operations.  In light of the size and complexity of the Debtors' operations, any disruption of the Cash Management System could have severe adverse effects on the Debtors' restructuring efforts, the cost of which would ultimately be borne by the Debtors' creditors and other stakeholders.  Maintaining the current Cash Management System will facilitate the Debtors' smooth transition into the chapter 11 proceedings by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.

**B.     The Court Should Authorize the Debtors to Maintain
Existing Bank Accounts and Use Existing Check Stock.**

29.     Permitting the Debtors to maintain and use their existing Bank Accounts, and waiving any applicable Operating Guidelines for Chapter 11 Cases (the "U.S. Trustee Guidelines"), is in the best interests of the Debtors' estates, their creditors, and other interested parties.  Requiring the Debtors to establish new accounts at this juncture would create an unnecessary administrative burden and delay the payment of workforce-related obligations and other expenses.  The cost and delay associated with opening new accounts would disrupt the Debtors' transition into bankruptcy and the interim maintenance of their business.  In accordance with existing practices, the Debtors request authority to:  (i) continue to use and administer the Bank Accounts; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; and (iii) conduct all banking transactions by all usual means and debit the Bank Accounts on account of all usual items and pursuant to all usual payment instructions, including checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts.

30.     The Debtors further request that the Banks be authorized to continue to administer, service, and maintain the Bank Accounts in accordance with prepetition practices, without interruption and in the ordinary course of business, and to pay any and all checks, drafts,

wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts on account of any claim arising (i) on or after the Affiliate Petition Date or (ii) prior to the Affiliate Petition Date and otherwise authorized by the Court.  The Debtors also seek authority to continue to pay all ordinary course fees and other service charges in accordance with any agreements governing the Bank Accounts, whether arising prepetition or postpetition.

31.     The Debtors can achieve the goals of the U.S. Trustee Guidelines and section 345(b) of the Bankruptcy Code without closing their existing Bank Accounts and opening new ones.  First, each of the Bank Accounts are FDIC-insured, as required by section 345(b) of the Bankruptcy Code.  Second, the Debtors can and will identify all prepetition checks and other forms of payment outstanding on the Affiliate Petition Date and notify the Banks not to pay such checks or obligations, unless payment of such obligations has been otherwise authorized by the Court.  The systems currently employed by the Debtors and the Banks are sufficient to ensure that prepetition obligations are not paid improperly.  However, to avoid delays in payments to administrative creditors, to ensure a smooth and orderly transition into chapter 11, and to aid in the Debtors' efforts to preserve and maximize the value of their assets, it is important that the Debtors be permitted to continue to maintain the Bank Accounts with the same account numbers at the same Banks following the commencement of the Chapter 11 Cases.

32.     To avoid disruption of the Cash Management System and unnecessary expense, the Debtors also request authority to continue to use their existing check stock without reference to their status as debtors in possession or any other alteration until the existing check stock is depleted.

33.     Pursuant to Local Rule 2015-2(a), in the event the Debtors need to purchase new check stock or letterhead during the pendency of the Chapter 11 Cases, such check stock and letterhead will include a legend referring to the Debtors as "Debtors in Possession" or "DIP."  In addition, as soon as reasonably practicable following the Affiliate Petition Date, any electronically produced checks will reflect the Debtors' status as debtors in possession.

**C.**     **The Debtors Should Be Authorized To Open and Close Bank Accounts.**

34.     Pursuant to this Motion, the Debtors also seek authorization to implement changes to the Cash Management System in the ordinary course of business, including opening any additional bank accounts or closing any existing Bank Account as they may deem necessary and appropriate.  The Debtors request that the Court authorize the Banks to honor the Debtors' requests to open or close, as the case may be, such bank accounts or additional bank accounts; *provided*, *however*, that, unless otherwise ordered by the Court, the Debtors shall open any such new bank account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee or at a bank willing to immediately execute such an agreement.

35.     The Debtors further request that nothing contained in the Proposed Orders granting the relief requested herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

**D.**     **The Court Should Authorize Intercompany Transactions to Preserve and Maximize Estate Value.**

36.     The Debtors operate using the consolidated Cash Management System and, thereby, engage in usual and customary Intercompany Transactions among themselves on a regular basis.  Because such transactions are common among similar enterprises, the Debtors believe that Intercompany Transactions are ordinary course transactions within the meaning of

section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis in the ordinary course of the Debtors' business. Consistent with their prepetition practices, the Debtors will maintain records of the Intercompany Transactions electronically in their accounting system and be able to ascertain, trace, and account for all cash flow and resulting Intercompany Transactions.

37.     The continuation of the Intercompany Transactions is essential to the Debtors' ability to manage their day-to-day operations and execute the Cash Management System.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the detriment of the Debtors, their estates, and their creditors.   Therefore, authorizing the Debtors, in their business judgment, to continue the Intercompany Transactions, in the ordinary course of business and consistent with historical business practices, will assist the Debtors in fulfilling their fiduciary obligations to maximize the value of their estates for all creditors.

38.     To ensure that each individual Debtor will not fund the operation of an affiliated entity at the expense of its own creditors, the Debtors respectfully request that, pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, Intercompany Claims arising after the Affiliate Petition Date in the ordinary course of business be granted administrative expense status.  If the Court authorizes the Debtors to treat Intercompany Claims as administrative expenses, then each entity utilizing funds flowing through the Cash Management System and receiving services through the intercompany arrangements should continue to bear ultimate repayment responsibility for such ordinary course transactions and its relative share of the cost of services provided.

39. For the avoidance of doubt, the Debtors are not seeking to make cash payments on account of prepetition Intercompany Claims absent further Court order.

40. Similar relief has regularly been granted by courts in this district in complex multi-debtor Chapter 11 Cases. *See, e.g.*, *In re Halcón Res. Corp.*, Case No. 16-11724 (BLS) (Bankr. D. Del. Aug. 19, 2016) [D.I. 131]; *In re Roadhouse Holding Inc.*, Case No. 16-11819 (BLS) (Bankr. D. Del. Aug. 9, 2016) [D.I. 57]; *In re Triangle USA Petroleum Corp.*, Case No. 16-11566 (MFW) (Bankr. D. Del. Aug. 5, 2016) [D.I. 215]; *In re Maxus Energy Corp.*, Case No. 16-11501 (CSS) (Bankr. D. Del. July 12, 2016) [D.I. 146].

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

41. For a debtor to obtain relief to make payments within twenty-one (21) days of the Affiliate Petition Date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and irreparable harm."

42. As described above, immediate and irreparable harm would result if the relief requested herein is not granted. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## WAIVER OF NOTICE REQUIREMENTS

43. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

## DEBTORS' RESERVATION OF RIGHTS

44. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the

Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## **NOTICE**

45.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware, (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (c) counsel to Natixis, New York Branch ("Natixis") and counsel to BMO Harris, N.A. ("BMO"), (d) counsel to Riverstone Credit Management, LLC "Riverstone"), (e) the United States Attorney's Office for the District of Delaware, (f) the Internal Revenue Service, (g) the Securities and Exchange Commission, (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (i) any other party required to be provided notice under Local Rule 9013-1(m).  Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be provided.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Interim Order substantially in the form annexed as **Exhibit C** hereto granting the relief requested in the Motion on an interim basis, (b) scheduling the Final Hearing on the Motion within 30 days of the Affiliate Petition Date or as soon as otherwise practicable thereafter to consider entry of the Final Order substantially in the form annexed as **Exhibit D** hereto and enter the Final Order, and (c) grant such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank.*]

Dated:  November 8, 2019
         Wilmington, Delaware

/s/ *Daniel B. Butz*

Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Daniel Butz (No. 4227)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@mnat.com
          eschwartz@mnat.com
          dbutz@mnat.com

- and -

Andrew K. Glenn (*pro hac vice* motion pending)
Matthew B. Stein (*pro hac vice* motion pending)
David J. Mark (*pro hac vice* motion pending)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  AGlenn@kasowitz.com
          MStein@kasowitz.com
          DMark@kasowitz.com

**PROPOSED COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION**

<u>**EXHIBIT A**</u>

**Cash Management System**

# MDC Energy Cash Flow Process



## EXHIBIT B

## Debtors' Bank Accounts

| Bank Name | Entity | Bank Routing # | Bank Account # | Address | Contact Name | Contact Phone | Contact Email |
|---|---|---|---|---|---|---|---|
| Prosperity Bank, USA | MDC Texas Energy, LLC | 113122655 | 066891 | 509 W Wall Street Midland, TX 79701 | Gilbert Abila | 432-552-1366 | gilbert.abila@prosperitybankusa.com |
| Prosperity Bank, USA | MDC Reeves Energy, LLC | 113122655 | 963221 | 509 W Wall Street Midland, TX 79701 | Gilbert Abila | 432-552-1366 | gilbert.abila@prosperitybankusa.com |
| BNY Mellon | MDC Operating Account | 021000018 | 4088118400 | Corporate Trust, 240 Greenwich Street, New York, NY 10286 | Terrence John White | 212-815-3657 | terrence.white@bnymellon.com |
| BNY Mellon | MTE Holdings, LLC Operating Account | 021000018 | 2775838400 | Corporate Trust, 240 Greenwich Street, New York, NY 10286 | Terrence John White | 212-815-3657 | terrence.white@bnymellon.com |
| BNY Mellon | MTE Holdings, LLC Capital Reserve Account | 021000018 | 2775888400 | Corporate Trust, 240 Greenwich Street, New York, NY 10286 | Terrence John White | 212-815-3657 | terrence.white@bnymellon.com |

# EXHIBIT C

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (KBO) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO
(A) CONTINUE USING EXISTING CENTRALIZED CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO
THE USE OF THE CASH MANAGEMENT SYSTEM, AND (C) MAINTAIN EXISTING
BANK ACCOUNTS AND CHECK STOCK AND (II) GRANTING RELATED RELIEF**

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively,

the "Debtors"), for entry of this Interim Order pursuant to Bankruptcy Code sections 105, 345,

363, 364, 503, and 507, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2 (i) authorizing

the Debtors to (a) continue using the Cash Management System, (b) honor certain prepetition

obligations related to the use of the Cash Management System, and (c) maintain their existing

Bank Accounts and check stock, (ii) scheduling a Final Hearing to consider entry of the Final

Order to the extent that a hearing is necessary, and (iii) granting related relief, all as further

described in the Motion; and this Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference* from the United States District Court for the District of Delaware, dated as of

February 29, 2012; and consideration of the Motion and the relief requested therein being a core

proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC. (7894); MTE Partners LLC. (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and upon the record of any hearing being held to consider the relief requested in the Motion; and upon the First Day Declaration and all proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Motion is granted on an interim basis to the extent provided herein.

2.      Except as otherwise provided herein, the Debtors are authorized to continue to manage their cash pursuant to the Cash Management System as described in the Motion.

3.      The Debtors are authorized to: (i) continue to use and administer the Bank Accounts; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (iii) to pay outstanding balances, charges, and fees due with respect to the Corporate Credit Card and to continue to use the Corporate Credit Card and to maintain cash collateral in support of the obligations thereunder; and (iv) conduct banking transactions by all usual means and debit the Bank Accounts on account of all usual items and payment instructions, including checks, drafts, wires, automated clearinghouse transfers, electronic funds transfers, or other items presented, issued, or drawn on the Bank Accounts.

4.      The requirements of the U.S. Trustee Guidelines that the Debtors close all existing bank accounts and open new debtor in possession accounts are hereby waived.  To the

extent that any of the requirements of the U.S. Trustee Guidelines or section 345(b) of the Bankruptcy Code are not satisfied, such requirements are hereby waived.

5.      Subject to the protections provided to the Banks in paragraph 6 of this Interim Order, the Debtors' banks (each, a "<u>Bank</u>") are authorized to continue to administer, service, and maintain the Bank Accounts in accordance with prepetition practices and any Prepetition Account Agreement (as defined below) governing such Bank Accounts, without interruption and in the ordinary course of business, and to receive, process, honor and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic funds transfers, or other items (the "<u>Payment Items</u>") presented, issued, or drawn on the Bank Accounts on or after the Affiliate Petition Date if the Debtors have sufficient funds in the respective Bank Account to cover such Payment Items; provided that any Payment Item presented, drawn, issued, or made on account of any claim arising prior to the Affiliate Petition Date may be honored by such Bank unless, in accordance with any applicable Prepetition Account Agreement, the Debtors issue a stop payment order with respect to such Payment Item.  Notwithstanding anything to the contrary in this Interim Order, no Bank shall be obligated to extend credit to any Debtor or honor any Payment Item drawn on a Bank Account at such Bank unless there are sufficient and fully collected funds in such Bank Account.

6.      Notwithstanding any other provision of this Interim Order, each Bank is authorized, but not directed, to rely, without any duty of further inquiry, on the representations, instructions, or presentations of the Debtors with respect to whether any Payment Item presented, drawn, issued, or made by the Debtors prior to or after the Affiliate Petition Date should be honored pursuant to this Interim Order or any other order of the Court, and no Bank shall have, and each Bank is hereby released from, any liability to any party for relying on such

representations, instructions, or presentations by the Debtors as provided for herein, or any liability to any party on account of (i) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry), (ii) honoring of any prepetition Payment Item in a good-faith belief or upon a representation by the Debtors that the Court has authorized such prepetition Payment Item, or (iii) a mistake made by such Bank despite implementation of customary handling procedures, unless such mistake constituted gross negligence or willful misconduct on the part of such Bank. Capital One may rely on the representations of the Debtors with respect to their use of the Corporate Credit Card, and Capital One, shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

7.     The Debtors shall maintain full, accurate, and complete records of all transfers within the Cash Management System at least to the same extent as they were recorded by the Debtors before the Affiliate Petition Date in order to reconcile net amounts that may become due from one Debtor to another Debtor or non-Debtor affiliate in respect to cash disbursements or transfer made between them or for their benefit from and after the Affiliate Petition Date. A Debtor that is owed money from another Debtor on account of cash disbursements or transfers made from and after the Affiliate Petition Date shall have an administrative claim against such other Debtor in respect to any such post-petition disbursement or transfer.

8.     To the extent that cash, including cash collateral (as defined in the Bankruptcy Code), of any Debtor is used by another Debtor, the Debtor funding such use shall have an allowed superpriority administrative expense claim pursuant to sections 503(b) and 507(a) of the Bankruptcy Code junior in priority only to Adequate Protection Claims, as defined in the Interim Cash Collateral Order.

9.     Only to the extent authorized by an order of this Court, the Debtors are authorized to issue postpetition checks, and to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted in this Interim Order.

10.     Each Bank is authorized to charge, and the Debtors are authorized to continue to pay and honor, both prepetition and postpetition service and other ordinary course fees, costs, charges, and expenses to which such Bank may be entitled in accordance with the applicable Prepetition Account Agreement (the "Bank Fees").   Each Bank is authorized to debit the applicable Bank Account in the ordinary course of business without the need for further order of this Court, whether arising or occurring prepetition or postpetition, for (i) all Bank Fees and charge-backs and (ii) all Payment Items deposited in one of the Bank Accounts with such Bank which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such amounts prior to the Affiliate Petition Date.

11.     The Debtors are authorized to use their checks, forms, and any letterhead, substantially in the forms existing immediately prior to the Affiliate Petition Date, without reference to their status as debtors in possession; *provided*, in the event that the Debtors need to purchase new check stock or letterhead during the pendency of the Chapter 11 Cases, such check stock and letterhead will include a legend referring to the Debtors as "Debtors in Possession" or "DIP," *provided*, *further*, within fourteen (14) days of entry of this Interim Order, the Debtors will update any electronically produced checks to reflect their status as debtors in possession.

12.     Any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Affiliate Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

13.     The Debtors are authorized, but not directed, to implement changes to the Cash Management System in the ordinary course of business, including opening any additional Bank Accounts or closing any existing Bank Account as they may deem necessary and appropriate.

14.     The Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, including, without limitation, the opening of any new bank accounts and the closing of any existing bank accounts and the entry into any ancillary agreements, including new deposit account control agreements, *provided*, that (i) notice of same shall be given to the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel to Natixis and counsel to BMO, counsel to Riverstone, and counsel to any official committee appointed in these cases within the fourteen (14) days after such change is made, (ii) any new account that the Debtors open shall be with an institution that has executed a Uniform Depository Agreement (a "UDA") with the U.S. Trustee.

15.     The relief granted herein is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Bank.

16.     The Debtors (i) are authorized to continue performing Intercompany Transactions in the ordinary course of business and to honor obligations in connection with the Intercompany Transactions and (ii) shall provide monthly reports of any Intercompany Transactions to (a) the U.S. Trustee; (b) counsel to Natixis and to BMO, (c) counsel to Riverstone, and (d) counsel to any statutory committee appointed in the Chapter 11 Cases.

17.     Pursuant to Bankruptcy Code sections 364(b) and 503(b)(1), all (i) postpetition Intercompany Claims and (ii) any postpetition Bank Fees and charge-backs payable to any of the Banks shall be accorded administrative expense status.  The Debtors shall maintain accurate and detailed records of all transfers, including Intercompany Transactions, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

18.     Notwithstanding use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

19.     For Banks at which the Debtors hold Bank Accounts that are party to a UDA with the U.S. Trustee, within fourteen (14) days of entry of this Interim Order, the Debtors shall (i) contact each Bank, (ii) provide each Bank with each of the Debtors' employer identification numbers, and (iii) identify each Bank Account held at such Bank as being held by a debtor in possession.

20.     Each Debtor and each Bank are authorized to continue to perform pursuant to the terms of, and shall continue to enjoy the rights, benefits, liens, offset rights, privileges, and remedies afforded to them under, any unexpired prepetition agreement that exists between them relating to any Bank Accounts or other cash management services (each a "Prepetition Account

Agreement") and except as amended, modified, or supplemented by agreement between the Debtors and such Bank in the ordinary course of business. Notwithstanding the foregoing or anything in this Interim Order to the contrary, the relief granted by this Interim Order shall not be deemed an assumption or rejection of any contract, including, but not limited to, the Prepetition Account Agreement, pursuant to Bankruptcy Code section 365.

21.     The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

22.     The deadline by which objections to the Motion and the Final Order must be filed is [_____], 2019 at 4:00 p.m. (ET).  Objections must be served on: (a) proposed counsel to the Debtors, (i) Kasowitz Benson Torres LLP, 1633 Broadway, New York, New York 10019, Attn:  Andrew  K.  Glenn,  (AGlenn@kasowitz.com)  and  Matthew  B.  Stein, (MStein@kasowitz.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19899, Attn:  Robert J. Dehney, (JDehney@mnat.com), (b) counsel to Riverstone; (c) counsel to Natixis and to BMO, and (d) counsel to any statutory committee appointed in the Chapter 11 Cases.  A final hearing on the Motion, if required, will be held on [_____], 2019 at [____] (ET).  If no objections are filed to the Motion, this Court may enter the Final Order without further notice or hearing.

23.     Nothing contained in the Motion or this Interim Order shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Affiliate Petition Date or (ii) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Affiliate Petition Date.

24.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (i) an admission as to the validity of any prepetition claim against a Debtor entity; (ii) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (iii) a promise or requirement to pay any prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

25.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Interim Order shall be immediately effective and enforceable upon its entry.

26.     To the extent that the Motion is inconsistent with this Interim Order, the terms of this Interim Order shall govern.

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

28.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Interim Order.

Dated: _____, 2019

_____
The Honorable Karen B. Owens
United States Bankruptcy Judge

# **EXHIBIT D**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (KBO) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE USING EXISTING CENTRALIZED CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE USE OF THE CASH MANAGEMENT SYSTEM, AND (C) MAINTAIN EXISTING BANK ACCOUNTS AND CHECK STOCK AND (II) GRANTING RELATED RELIEF

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively,

the "Debtors"), for entry of this Final Order pursuant to Bankruptcy Code sections 105, 345, 363,

364, 503, and 507, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2 (i) authorizing the

Debtors to (a) continue using the Cash Management System, (b) honor certain prepetition

obligations related to the use of the Cash Management System, and (c) maintain their existing

Bank Accounts and check stock, and (ii)  granting related relief, all as further described in the

Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

from the United States District Court for the District of Delaware, dated as of February 29, 2012;

and consideration of the Motion and the relief requested therein being a core proceeding in

accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28

U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC. (7894); MTE Partners LLC. (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644).  The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

[2]    All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

appropriate under the particular circumstances; and upon the record of any hearing being held to consider the relief requested in the Motion; and upon the First Day Declaration and all proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Motion is granted on a final basis to the extent provided herein.

2.      Except as otherwise provided herein, the Debtors are authorized to continue to manage their cash pursuant to the Cash Management System as described in the Motion.

3.      The Debtors are authorized to:  (i) continue to use and administer the Bank Accounts; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (iii) to pay outstanding balances, charges, and fees due with respect to the Corporate Credit Card and to continue to use the Corporate Credit Card and to maintain cash collateral in support of the obligations thereunder; and (iv) conduct banking transactions by all usual means and debit the Bank Accounts on account of all usual items and payment instructions, including checks, drafts, wires, automated clearinghouse transfers, electronic funds transfers, or other items presented, issued, or drawn on the Bank Accounts.

4.      The requirements of the U.S. Trustee Guidelines that the Debtors close all existing bank accounts and open new debtor in possession accounts are hereby waived.  To the extent that any of the requirements of the U.S. Trustee Guidelines or section 345(b) of the Bankruptcy Code are not satisfied, such requirements are hereby waived.

5.      Except as otherwise expressly provided in this Final Order and subject to the protections provided to the Debtors' banks (each, a "<u>Bank</u>") in paragraph 6 of this Final Order, each Bank is authorized to continue to administer, service, and maintain the Bank Accounts in accordance with prepetition practices and any Prepetition Account Agreement (as defined below) governing such Bank Accounts, without interruption and in the ordinary course of business, and to receive, process, honor and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic funds transfers, or other items (the "<u>Payment Items</u>") presented, issued, or drawn on the Bank Accounts on or after the Affiliate Petition Date if the Debtors have sufficient funds in the respective Bank Account to cover such Payment Items; *provided* that any Payment Item presented, drawn, issued, or made on account of any claim arising prior to the Affiliate Petition Date may be honored by such Bank unless, in accordance with any applicable Prepetition Account Agreement, the Debtors issue a stop payment order with respect to such Payment Item.  Notwithstanding anything to the contrary in this Final Order, no Bank shall be obligated to extend credit to any Debtor or honor any Payment Item drawn on a Bank Account at such Bank unless there are sufficient and fully collected funds in such Bank Account.

6.      Notwithstanding any other provision of this Final Order, each Bank is authorized, but not directed, to rely, without any duty of further inquiry, on the representations, instructions, or presentations of the Debtors with respect to whether any Payment Item presented, drawn, issued or made by the Debtors prior to or after the Affiliate Petition Date should be honored pursuant to this Final Order or any other order of the Court, and no Bank shall have, and each Bank is hereby released from, any liability to any party for relying on such representations, instructions, or presentations by the Debtors as provided for herein, or any liability to any party on account of (i) following the Debtors' representations, instructions, or presentations as to any

3

order of the Court (without any duty of further inquiry), (ii) honoring of any prepetition Payment Item in a good-faith belief or upon a representation by the Debtors that the Court has authorized such prepetition Payment Item, or (iii) a mistake made by such Bank despite implementation of customary handling procedures, unless such mistake constituted gross negligence or willful misconduct on the part of such Bank.  Capital One may rely on the representations of the Debtors with respect to their use of the Corporate Credit Card, and Capital One], shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

7.      The Debtors shall maintain full, accurate, and complete records of all transfers within the Cash Management System at least to the same extent as they were recorded by the Debtors before the Affiliate Petition Date in order to reconcile net amounts that may become due from one Debtor to another Debtor or non-Debtor affiliate in respect to cash disbursements or transfer made between them or for their benefit from and after the Affiliate Petition Date.  A Debtor that is owed money from another Debtor on account of cash disbursements or transfers made from and after the Affiliate Petition Date shall have an administrative claim against such other Debtor in respect to any such post-petition disbursement or transfer.

8.      To the extent that cash, including cash collateral (as defined in the Bankruptcy Code), of any Debtor is used by another Debtor, the Debtor funding such use shall have an allowed superpriority administrative expense claim pursuant to sections 503(b) and 507(a) of the Bankruptcy Code.

9.      Only to the extent authorized by an order of this Court, the Debtors are authorized to issue postpetition checks, and to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11

Cases with respect to prepetition amounts owed in connection with the relief granted in this Final Order.

10. Each Bank is authorized to charge, and the Debtors are authorized to continue to pay and honor, both prepetition and postpetition service and other ordinary course fees, costs, charges, and expenses to which such Bank may be entitled in accordance with the applicable Prepetition Account Agreement (the "Bank Fees").  Each Bank is authorized to debit the applicable Bank Account in the ordinary course of business without the need for further order of this Court, whether arising or occurring prepetition or postpetition, for (i) all Bank Fees and charge-backs and (ii) all Payment Items deposited in one of the Bank Accounts with such Bank which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such amounts prior to the Affiliate Petition Date.

11.

12. The Debtors are authorized to use their checks, forms, and any letterhead, substantially in the forms existing immediately prior to the Affiliate Petition Date, without reference to their status as debtors in possession; *provided*, in the event that the Debtors need to purchase new check stock or letterhead during the pendency of the Chapter 11 Cases, such check stock and letterhead will include a legend referring to the Debtors as "Debtors in Possession" or "DIP."

13. Any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Affiliate Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to

a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

14.    The Debtors are authorized, but not directed, to implement changes to the Cash Management System in the ordinary course of business, including opening any additional Bank Accounts or closing any existing Bank Account as they may deem necessary and appropriate.

15.    The Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, including, without limitation, the opening of any new bank accounts and the closing of any existing bank accounts, and the entry into any ancillary agreements, including new deposit account control agreements, *provided*, that (i) notice of same shall be given to the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel to Natixis and  BMO, Riverstone, and counsel to any official committee appointed in these cases within the fourteen (14) days after such change is made, (ii) any new account that the Debtors open shall be with an institution that has executed a Uniform Depository Agreement (a "UDA") with the U.S. Trustee.

16.    The relief granted herein is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Bank.

17.    The Debtors (i) are authorized to continue performing Intercompany Transactions in the ordinary course of business and to honor obligations in connection with the Intercompany Transactions and (ii) shall provide monthly reports of any Intercompany Transactions to (a) the U.S. Trustee, (b) counsel to Natixis and counsel to BMO, and (c) counsel to Riverstone.

18.     Pursuant to Bankruptcy Code sections 364(b) and 503(b)(1), all (i) postpetition Intercompany Claims and (ii) any postpetition Bank Fees and charge-backs payable to any of the Banks shall be accorded administrative expense status.  The Debtors shall maintain accurate and detailed records of all transfers, including Intercompany Transactions, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

19.     Notwithstanding use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

20.     For Banks at which the Debtors hold Bank Accounts that are party to a UDA with the U.S. Trustee, within fourteen (14) days of entry of this Final Order, the Debtors shall (i) contact each Bank, (ii) provide each Bank with each of the Debtors' employer identification numbers, and (iii) identify each Bank Account held at such Bank as being held by a debtor in possession.

21.     Each Debtor and each Bank are authorized to continue to perform pursuant to the terms of, and shall continue to enjoy the rights, benefits, liens, offset rights, privileges, and remedies afforded to them under, any unexpired prepetition agreement that exists between them relating to any Bank Accounts or other cash management services (each a "Prepetition Account Agreement"), except as amended, modified, or supplemented by agreement between the Debtors and such Bank in the ordinary course of business.  Notwithstanding the foregoing or anything in this Final Order to the contrary, the relief granted by this Final Order shall not be deemed an assumption or rejection of any contract, including, but not limited to, the Prepetition Account Agreement, pursuant to Bankruptcy Code section 365.

22.     Nothing contained in the Motion or this Final Order shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Affiliate Petition Date or (ii) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Affiliate Petition Date.

23.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (i) an admission as to the validity of any prepetition claim against a Debtor entity; (ii) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (iii) a promise or requirement to pay any prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; or (vi) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

24.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Final Order shall be immediately effective and enforceable upon its entry.

25.     To the extent that the Motion is inconsistent with this Final Order, the terms of this Final Order shall govern.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

27.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Final Order.

Dated: _____, 2019

_____
The Honorable Karen B. Owens
United States Bankruptcy Judge