## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (KBO) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL (II) PROVIDING ADEQUATE PROTECTION TO THE SECURED LENDER; (III) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 507; AND (IV) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C) AND LOCAL RULE 4001-2

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") respectfully represent as follows in support of this motion (the "Motion"):[2]

### RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of an interim order (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, and a final order (the "Final Order,"[3] and together with the Interim Order, the "Cash Collateral Orders"), pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1(b), 4001-1, 4001-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (a) authorizing the Debtors to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644).  The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

[2] In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Declaration of Mark Siffin, Chief Executive Officer of MDC Energy LLC , in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration" or "First Day Decl."), filed with the Court concurrently herewith.

use cash collateral (as defined in section 363 of the Bankruptcy Code, "Cash Collateral"), (b)

providing adequate protection to the MDC Secured Lenders (as defined below), (c) modifying

the automatic stay, and (d) scheduling a final hearing.   In particular, the Debtors seek the

following relief:

i.     authorize the Debtors to use the Cash Collateral in which the MDC
       Secured Lenders have, or assert, a security interest;

ii.    authorize the Debtors to provide adequate protection to the MDC
       Secured Lenders for any decrease in the value (such decrease being a
       "Diminution in Value") of their interests in the Debtors' property
       resulting from (i) the use, sale, or lease of the Debtors' property
       (including the use of Cash Collateral) or (ii) the imposition of the
       automatic stay pursuant to section 362 of the Bankruptcy Code;

iii.   modify the automatic stay imposed pursuant to section 362 of the
       Bankruptcy Code to the extent necessary to implement and effectuate
       the terms and provisions of the Interim Order and the Final Order;

iv.    waive any applicable stays under the Bankruptcy Rules and provide for
       the immediate effectiveness of the Interim Order and the Final Order;
       and

v.     schedule a Final Hearing to allow for entry of the Final Order within
       forty-five (45) days following entry of the Interim Order.

## SUMMARY OF PROPOSED ORDERS

2.     In accordance with Bankruptcy Rules 4001(b) and (d) and Local Rule 4001-(2),

below is a summary[4] of the terms of the proposed use of Cash Collateral:

i.     Amount of Cash Collateral to Be Used. The Debtor seeks to use cash,
       including Cash Collateral, in an amount consistent with the expenditures
       described in the budget, the initial form of which is attached to the
       proposed Interim Order as Exhibit 1 (the "Budget").

ii.    Parties with an Interest in Cash Collateral. The Debtors anticipate that
       the MDC Secured Lenders may assert an interest in the Cash Collateral

---

[3] The Debtors will file the form of proposed Final Order prior to the Final Hearing (as defined herein).

[4] The summary of the Interim Order, the Final Order, and the terms and conditions for the use of Cash Collateral set forth in this Motion is intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof.  The summary is qualified in its entirety by the Interim Order and the Final Order. In the event that there is any conflict between this Motion and the Interim Order or the Final Order, the Interim Order or the Final Order, as applicable, will control in all respects.

under the Pledge and Security Agreement (as defined below) and other loan documents.

iii.    <u>Use of Cash Collateral</u>. The Debtors seek authority to use cash, including Cash Collateral, in accordance with the terms of the Interim Order to, among other things, (a) satisfy postpetition operating expenses of the Debtor as more fully described in the Budget, (b) pay certain prepetition obligations of the Debtor as further described in the Debtors' "first day" motions filed contemporaneously herewith and authorized pursuant to the "first day" orders approving the same, and (c) pay reorganization expenses, including but not limited to allowed fees and expenses incurred by the professionals retained under sections 327, 328, 363, and, 1102 of the Bankruptcy Code by the Debtor and any statutory committees appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (each, a "Committee"), which reorganization expenses would be funded to a trust account of the Debtors' general bankruptcy counsel or other segregated account in accordance with the Budget.    The Replacement Lien, Adequate Protection Lien, and Adequate Protection Claim (each as defined below) shall be subject and subordinate to all amounts deposited in such segregated account for the payment of professional fees. Disbursements by the Debtor on an aggregate basis during the Interim Budget Period may deviate up to 20% from the amounts specified in the Budget, tested over each successive four-week period of the Budget.

iv.    <u>Termination Date</u>. The Debtors' ability to use Cash Collateral pursuant to the Interim Order shall end on the earliest of: (i) the date on which the Final Order is entered, which shall occur within forty-five (45) days after entry of the Interim Order, (ii) the effective date of a confirmed plan of reorganization in the Chapter 11 Cases, (iii) the closing of a sale of substantially all assets of the Debtor, and (iv) the date of a material breach by the Debtor under the Interim Order, or such other date as the Debtor and the MDC Secured Lenders may agree to in writing (the "<u>Termination Date</u>").

v.    <u>Adequate Protection</u>. The Debtors propose to provide adequate protection to the MDC Secured Lenders as follows: (i) a continuing security interest in and lien on all collateral of the Debtors of the same type and nature that exists as of the Affiliate Petition Date[5] with the same validity (or invalidity) and priority as exists as of the Affiliate Petition Date, including the income and proceeds thereof (the "<u>Replacement Lien</u>"), (ii) payment of accrued interest to the MDC Secured Lenders on the principal amount of their Claims at the non-default rate, (iii)  solely to the extent of any Diminution in Value, an additional and replacement security interest in and lien on all property and assets of the Debtors' estates (the "<u>Adequate Protection Lien</u>"),

---

[5] As defined herein.

*provided, however*, that (a) such security interest and lien shall be junior to any existing, valid, senior, enforceable and unavoidable prior perfected security interests and liens, (b) in the event that the Debtors obtain postpetition financing in the Chapter 11 Case, such security interest and lien may be junior to any valid, senior, enforceable security interests and liens granted to the postpetition lenders and authorized by the Court in connection with such postpetition financing, and (c) such security interest and lien shall not attach to any claims, defenses, causes of action, or rights of the Debtor arising under chapter 5 of the Bankruptcy Code or applicable state fraudulent transfer law (including all proceeds thereof, the "Avoidance Actions"), and (iv) solely to the extent of any Diminution in Value, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed administrative claim in the Chapter 11 Case (the "Adequate Protection Claim"), *provided however*, that (a) such claim shall not extend to any Avoidance Actions, and (b) in the event that the Debtor obtains post-petition financing in the Chapter 11 Case, such administrative claim, if any, may be junior to the administrative claim granted to such post-petition lenders and authorized by the Court in connection with such post-petition financing

vi.     Carve Out of Professional Fees. The professional fees and disbursements incurred by professional persons employed by the Debtor or any official committee (including any expenses of the members of such committee) (collectively, "Carve Out"), and (y) the fees and charges assessed against the estate under 28 U.S.C. § 1930 and any fees payable to the Clerk of the Court (collectively, "United States Trustee Costs") may be paid to the extent authorized in the Budget and permitted by the Court.

vii.    Funding of Segregated Account. The amounts set forth in the Budget for the payment of the Carve Out and United States Trustee Costs shall be deposited by the Debtor, at the times identified in the Budget, into a trust account to be maintained by the Debtors  or other segregated account ("Segregated Account") for the exclusive purpose of subsequently paying such amounts on the later of (x) the due date, or (y) the date of their allowance by the Court (or when otherwise authorized to be paid pursuant to a customary order of the Court pursuant to section 331 of the Bankruptcy Code).  The Replacement Lien, Adequate Protection Lien, and Adequate Protection Claim shall be subject and subordinate to all amounts deposited in the Segregated Account for the payment of the Carve Out.

viii.   Automatic Perfection. The Replacement Lien and the Adequate Protection Lien shall be valid, binding, enforceable, non-avoidable, and automatically perfected, notwithstanding the automatic stay, without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which otherwise may be

required under the laws of any jurisdiction to validate or perfect such security interests and liens.

## **DISCLOSURES**

3.     Pursuant to Bankruptcy Rule 4001(d) and Local Rule 4001-2, a debtor in possession seeking authority to use cash collateral or to obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing.  The debtor in possession must also justify the inclusion of such provisions.  Set forth below are the disclosures required in accordance with such rules:

| Rule | Disclosure |
|---|---|
| Local Rule 4001-2(a)(i)(A) | The proposed Interim Order and the Final Order do not provide for the granting of cross-collateralization protection to the MDC Secured Lenders, except in the form of the Replacement Lien and the Adequate Protection Lien. |
| Local Rule 4001-2(a)(i)(B) Bankruptcy Rule 4001(c)(1)(B)(iii) | The proposed Interim Order and the Final Order do not contain any stipulations by the Debtor relating to the validity, perfection, enforceability, and amount of any prepetition liens and claims. |
| Local Rule 4001-2(a)(i)(C) Bankruptcy Rule 4001(c)(1)(B)(x) | The proposed Interim Order and the Final Order do not provide for a waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code. |
| Local Rule 4001-2(a)(i)(D) | The proposed Interim Order and the Final Order do not contain any provisions that immediately grant to any prepetition secured creditor liens on the Debtors' claims and causes of action arising under sections 544, 545, 547, 548, and 549 of the Bankruptcy Code.  The Adequate Protection Lien and the Adequate Protection Claim specifically exclude Avoidance Actions |
| Local Rule 4001-2(a)(i)(E) | The proposed Interim Order and the Final Order do not contain provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all |

| | of that secured creditor's prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). |
|---|---|
| Local Rule 4001-2(a)(i)(F) | The proposed Interim Order and the Final Order do not provide for disparate treatment for the professionals retained by a Committee from those professionals retained by the Debtor, except that the Budget projects the Debtors' professional fees to exceed Committee professional fees. |
| Local Rule 4001-2(a)(i)(G) | The proposed Interim Order and the Final Order do not provide for the priming of any secured lien without the consent of that lienholder. |
| Local Rule 4001-2(a)(i)(H) | The proposed Interim Order and the Final Order provide for a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code, upon entry of the Final Order. |
| Bankruptcy Rule 4001(c)(1)(B)(ii) | The proposed Interim Order and the Final Order describe the forms of adequate protection provided to MDC Secured Lenders. |
| Bankruptcy Rule 4001(c)(1)(B)(iv) | The proposed Interim Order and the Final Order describe the modification of the automatic stay to the extent necessary to implement the Interim Order. |
| Bankruptcy Rule 4001(c)(1)(B)(vii) | The proposed Interim Order and the Final Order include provisions that provide for the automatic perfection and validity of the Replacement Lien and the Adequate Protection Lien without the necessity of any further filing or recording under the laws of any jurisdiction. |

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2).  The Debtors consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory and procedural bases for the relief requested herein are sections 105(a), 361, 362, 363, and 507 of the Bankruptcy Code, Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1(b), 4001-1, 4001-2, and 9013-1.

## BACKGROUND

**A.      General Background.**

7.      On the date hereof (the "Affiliate Petition Date"), as well as on October 22, 2019 and October 23, 2019, (the "Parent Petition Dates"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in the Chapter 11 Cases and no statutory committees have been appointed or designated.

8.      A detailed description of the Debtors and their businesses, and facts and circumstances relating to the Debtors' filing of the Chapter 11 Cases are set forth in greater detail in the First Day Declaration.

B.     **The Prepetition Secured Debt.**

1.     **The Reserve Based Lending Credit Agreement**

9.     MDC funded its operations with a loan based on the amount of oil and gas reserves it had on hand at specified dates.  On September 17, 2018, MDC, Natixis, New York Branch ("Natixis"), as Administrative Agent and Issuing Bank, and the lenders (the "MDC Secured Lenders") entered into that certain credit agreement, dated as of September 17, 2018 (the "RBL Agreement").  Pursuant to the RBL Agreement, MDC could borrow funds from the MDC Secured Lenders to the RBL Agreement against its oil and gas reserves in an amount based, in part, on MDC's "Proved Reserves" attributable to its oil and gas properties, together with, among other things, a projection of MDC's "rate of production and future net income, taxes, operating expenses and capital expenditures."  MDC's initial borrowing under the RBL Agreement was $60 million, and it was permitted to borrow and the RBL Lenders committed to provide additional amounts periodically, up to a maximum of $300 million, as MDC's "Borrowing Base" was recalculated to account for its growth in its oil and gas assets.  MDC significantly increased its Proved Reserves since September 2018; however, the RBL balance remained at $60 million.

10.     Loans under the RBL Agreement were secured by a Pledge and Security Agreement, dated September 17, 2018, between the MDC Secured Lenders and MDC and other security instruments including mortgages and account control agreements that granted the MDC Secured Lenders a security interest in substantially all of the assets of MDC and its subsidiaries.

C.     **The Debtors' Need For Continued Use of Cash Collateral.**

11.     The Debtors require immediate access to cash to ensure that they are able to continue operating during these Chapter 11 Cases and to preserve the value of their estates for the benefit of all parties in interest, including the MDC Secured Lenders.

12.     Without immediate authority to use Cash Collateral according to these terms, the Debtors will be unable to satisfy trade payables incurred in the ordinary course of business, preserve and maximize the value of their estates, or administer these Chapter 11 Cases, which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.  Conversely, immediate access to Cash Collateral will allow the Debtors to operate as they did prepetition and will maintain (and where necessary restore) the confidence of their vendors, customers, employees, and other stakeholders at this critical stage of their restructuring.

13.     Therefore, the use of Cash Collateral pursuant to the terms of the Interim Order is essential and necessary to the Debtors' ability to minimize disruptions and avoid irreparable harm to their businesses.

**BASIS FOR RELIEF**

A.      **The Use of Cash Collateral is Warranted and Should be Approved.**

14.     Section 363 of the Bankruptcy Code governs the Debtors' use of Cash Collateral. Section 363(c)(2) conditions use of Cash Collateral upon (a) obtaining consent of each party that has an interest in the Cash Collateral; or (b) "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  See 11 U.S.C. § 363(c).

15.     Further, the use of cash collateral may be prohibited or conditioned, upon proper request, as is necessary to adequately protect any interest in cash collateral. See 11 U.S.C. §363(e).  As explained more fully herein, the Debtors have provided the MDC Secured Lenders with fair and reasonable adequate protection, as set forth in the Interim Order and Final Order.

16.     Thus, the Court should authorize the Debtors to use Cash Collateral in accordance with the terms and conditions set forth in the proposed Interim Order and Final Order.

**B.     <u>The Proposed Adequate Protection Should be Approved</u>.**

17.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used by a debtor in possession, the court… shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). If a secured creditor objects to the debtor's proposed use of cash collateral, the court must ensure that the creditor's interests are adequately protected. Id. Thus, courts are required to balance the protection offered to a secured creditor against the debtor's need to use cash in its reorganization effort. *Stein v. U.S. Farmers Home Admin. (In re Stein)*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982). In determining whether a creditor is adequately protected, courts "will generally permit the business operation to continue, at least to the point of plan formulation, if the debtors make a solid evidentiary showing to support their projections . . . ." *In re Dynaco Corp.*, 162 B.R. 389, 395 (Bankr. D.N.H. 1993).

18.     "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361." *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *see also In re Los Torres Dev., L.L.C.*, 413 B.R. 687, 696-97 (Bankr. S.D. Tex. 2009). Section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

19.     Adequate protection is a question of fact. *Martin v. U.S. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985). What constitutes adequate protection must be decided on a case-by-case basis. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *MBank Dallas, N.A.*

*v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); Martin, 761 F.2d at 472;

In re Shaw Indus., Inc., 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The concept of adequate

protection exists to protect a secured creditor from diminution in value of its interest in collateral

during the pendency of the bankruptcy case. See In re Carbone Cos., 395 B.R. 631, 635 (Bankr.

N.D. Ohio 2008)("The test is whether the secured party's interest is protected from diminution or

decrease as a result of the proposed use of cash collateral); *see also In re Cont'l Airlines, Inc.*,

154 B.R. 176, 180,81 (Bankr. D. Del. 1993)(holding that adequate protection for use of cash

collateral under section 363 is limited to use-based decline in value).

20.     Here, the proposed adequate protection offered by the Debtors to the MDC

Secured Lenders is both sufficient and appropriate. In this case, the Debtors are providing the

MDC Secured Lenders with the following forms of adequate protection (collectively, the

"Adequate Protection"):

> i.      Adequate Protection Payments. MDC Secured Lenders will receive Adequate Protection Payments consisting of the amount of accrued interest due and owing under the RBL Agreement as such obligations are incurred (the "Adequate Protection Payments").

> ii.     Adequate Protection Liens. MDC Secured Lenders shall be granted Adequate Protection Liens, only to the extent of Dimunition in Value as a result of such use of Cash Collateral, without any further action, continuing, valid, binding, enforceable, fully perfected, replacement liens and first priority security interests in the same property (of any kind or nature, whether real or personal, tangible or intangible) in which the MDC Secured Lenders held perfected security interests as of the Affiliate Petition Date, and the proceeds and products thereof junior to the Carve Out, but excluding any causes of action that could be brought under §§ 544-548 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute.

> iii.    Adequate Protection Super Priority Claims. Further, MDC Secured Lenders shall be granted an Adequate Protection Claim, only to the extent of Dimunition in Value as a result of such use of Cash Collateral, with recourse to all post-petition property of the Debtors and all proceeds thereof, pursuant to Bankruptcy Code sections 503 and 507(b); subject and junior to the Carve Out. Nothing in this Interim

Order or in any prior order shall be construed to grant or acknowledge liens that prime any *ad valorem* property tax liens.

iv.    <u>Reporting</u>. The Debtors shall provide Natixis with the following reporting:  (A) On or before the twentieth (20th ) day of each calendar month, an updated rolling 13-week cash flow forecast of the Debtors substantially in the form of the Budget (each, a "<u>Proposed Budget</u>"), which Proposed Budget, upon written approval by Natixis, shall become the Budget effective as of the first day of the following calendar month, and (B) on or before the twentieth (20th ) day of each calendar month, a monthly report of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior monthly, showing any variance to the Total Disbursements estimated in the Budget.

21.    The proposed Adequate Protection is sufficient to protect the MDC Secured Lenders from any Diminution in Value during the interim period.  *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtors' use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

22.    Considering the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the MDC Secured Lenders is appropriate.  The proposed Adequate Protection is not only necessary to protect the MDC Secured Lenders against diminution in value, but is also fair and appropriate on an interim basis under the circumstances of these Chapter 11 Cases to ensure the Debtors are able to continue using the Cash Collateral during the pendency of the Chapter 11 Cases for the benefit of all parties in interest.

    **C.**    **Immediate Use of Cash Collateral is
Necessary to Avoid Immediate and Irreparable Harm.**

23.    Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than

fourteen (14) days after the service of such motion. See Fed. R. Bankr. P. 4001(b). However, the Court is authorized to conduct a preliminary expedited hearing on this Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. See Fed. R. Bankr. P. 4001(b)(2).

24.     The Debtors have an immediate post-petition need to use Cash Collateral. The Debtors will not be able to operate and maintain their estates during the pendency of these chapter 11 cases without the use of the Cash Collateral. The Cash Collateral will be used *inter alia* to (a) continue to operate in the ordinary course during the pendency of the case, including paying the royalty and oil and gas obligations related to the Debtors' operations, (b) pay the management fees to their non-Debtor affiliates, which fees are then used for the sole purpose of compensating the individuals that manage and operate the Debtors, and (c) satisfy other working capital needs during these Chapter 11 Cases. Because the revenues received from the oil and gas operations provide the Debtors with substantially all of their operating capital, continued use of that Cash Collateral during the pendency of the Chapter 11 Cases is absolutely necessary for the Debtors to operate their businesses and meet their ongoing obligations. Further, the failure to obtain authority to use Cash Collateral will certainly suffer immediate and irreparable harm because the Debtors will be unable to pay the obligation related to their ongoing business operations. As such, the Debtors' ability to continue to use Cash Collateral in the ordinary course is vital to preserve and maximize the value of the Debtors' assets for all parties.

25.     The Debtors respectfully request immediate authority to use the Cash Collateral on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule

4001(b) to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

> **D.**      **The Scope of the Carve-Out is Appropriate.**

26.      The proposed Adequate Protection is subject to the Carve Out.  Without the Carve Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in these Chapter 11 Cases would be restricted.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve Out does not directly or indirectly deprive the Debtors' estates or other parties-in-interest of possible rights and powers. Additionally, the Carve Out protects against administrative insolvency during the course of these chapter 11 cases by ensuring that assets remain for the payment of the Clerk of the Court, U.S. Trustee fees, and professional fees of the Debtors.

> **E.**      **Modification of the Automatic Stay on a Limited Basis is Justified.**

27.      The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors and the MDC Secured Lenders to perform the transaction and actions contemplated or permitted by the Interim Order.  The Interim Order further provides for the creation and perfection of all liens granted or permitted pursuant to this Motion.

28.      Stay modifications of this kind are ordinary and standard features of post-petition debtor cash collateral orders and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

> **REQUEST FOR FINAL HEARING**

29.     Pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2(c), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## IMMEDIATE RELIEF

30.     Federal Rule of Bankruptcy Procedure 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such Motion.   Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the Debtors to use Cash Collateral to the extent necessary to avoid immediate and irreparable harm to a Debtor's estate pending a final hearing. See Fed. R. Bankr. P. 4001(b)(2).  Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and authorize the Debtors to immediately use Cash Collateral in order to maintain the ongoing operations of the Debtors and avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest. The Debtors also request that the Court schedule the Final Hearing on the relief requested herein.

31.     Absent authorization from the Court for use of Cash Collateral on an interim basis pending a Final Hearing, the Debtors will be immediately and irreparably harmed. As set forth above, the Debtors' ability to use Cash Collateral on the terms described herein is critical to their ability to operate their businesses in the ordinary course. Without the liquidity of the Cash Collateral, the Debtors will simply be unable to conduct normal business operations and will be unable to pay basic expenses, such as vendors and utilities and their contractual obligations that compensate the individuals that manage and operate the Debtors. Such interruptions would cause the Debtors to suffer a precipitous loss of value to the detriment of all parties in interest.

## BANKRUPTCY RULE 6003 IS SATISFIED

32.     Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## REQUEST FOR FINAL HEARING

33.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and in no event more than 30 days after the Affiliate Petition Date, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## WAIVER OF BANKRUPTCY RULE 6004(a), 6004(h) AND 4001(a)(3)

34.     To implement the relief requested herein successfully, the Debtors respectfully request that the Interim Order and Final Order provide that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).  Furthermore, as set forth herein, the use of Cash Collateral is necessary to allow the Debtors to operate their business,

transition smoothly into these Chapter 11 Cases, and reorganize.  Allowing the Debtors' use of Cash Collateral will prevent irreparable harm to the Debtors' estates.  Accordingly, the Debtors submit that ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3).

## RESERVATION OF RIGHTS

35.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code, any foreign bankruptcy or insolvency law, or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim, (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

## NOTICE

36.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to Natixis; (c) counsel to Riverstone; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; (g) any party required to be provided notice under Local Rule 9013-1(m); and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Interim Order substantially in the form annexed as **Exhibit A** hereto and the Final Order granting the relief requested in the Motion and grant such other and further relief as may be just and proper.

Dated: November 8, 2019
       Wilmington, Delaware

*/s/ Daniel B. Butz*

Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Daniel B. Butz (No. 4227)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@mnat.com
       eschwartz@mnat.com
       dbutz@mnat.com

- and -

Andrew K. Glenn (admitted *pro hac vice*)
Matthew B. Stein (admitted *pro hac vice*)
David J. Mark (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  AGlenn@kasowitz.com
      MStein@kasowitz.com
      DMark@kasowitz.com

**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

## EXHIBIT A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MTE HOLDINGS LLC, *et al.*,[1] | Case No. 19-12269 (KBO) |
| Debtors. | Joint Administration Requested |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH**
**COLLATERAL (II) PROVIDING ADEQUATE PROTECTION TO THE SECURED**
**LENDER; (III) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C.**
**§§ 105, 361, 362, 363, AND 507; AND (IV) SCHEDULING FINAL HEARING**
**PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C) AND LOCAL RULE 4001-2**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") in these chapter 11 cases (the "<u>Chapter 11 Cases</u>"), requesting entry of an interim order (this "<u>Interim Order</u>") and a final order (a "<u>Final Order</u>") pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and rules 2002, 4001, 6003, 6004, 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the local rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"): (a) authorizing the Debtors to use Cash Collateral, (b) providing adequate protection to the MDC Secured Lenders, (c) modifying the automatic stay, and (d) scheduling a final hearing, as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

District Court for the District of Delaware, dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and the Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon the First Day Declaration and the record of the Hearing and all the proceedings before the Court; and the Court having found and determined the relief requested is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and the legal and factual bases set forth in the Motion and at the Hearing having established just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     <u>Motion Granted</u>.  The Motion is granted in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled.

2.     <u>Use of Cash Collateral</u>.  The Debtors are authorized to use the Cash Collateral (during the period beginning with the Affiliates Petition Date and ending on the Termination Date (such period, the "Budget Period") for the payment of approved expenses (the "Approved Expenses") set forth in the budget attached hereto as **Exhibit 1** (as such budget may be modified from time to time by the Debtors with the prior written consent of Natixis as set forth in this paragraph and in this Interim Order, the "Budget").  The Debtors must provide each subsequent thirteen-week budget to Natixis, any statutory committee appointed in the Chapter 11 Cases, and the office of the United States Trustee (together, the "Budget Notice Parties") on or before the

2

date that is four weeks prior to the end of any thirteen-week budget.  If any Budget Notice Party fails to specifically object to the proposed supplemental budget within seven (7) days of service, the proposed supplemental budget is deemed approved. Absent such objection, the Debtors will be authorized to use Cash Collateral to fund the expenses itemized and specified for those weeks stated in the supplemental budget, subject to the provisions of this Interim Order.  If a Budget Notice Party objects (which shall include sending written correspondence to counsel for the Debtors of its objection and non-consent) to the proposed supplemental budget, the Debtors will be prohibited from further using Cash Collateral during the period covered by the supplemental budget; *provided, however*, that the Debtors may seek an Order from the Court on an expedited basis authorizing the use of Cash Collateral not to exceed the total expenses itemized for that period, subject to the right of the Budget Notice Parties to object to such use of Cash Collateral. In such case, the Budget Notice Parties shall be deemed to agree to such request for an expedited hearing.  The Budget Notice Parties shall not unreasonably withhold approval of the Debtors' proposed supplemental budgets. Each approved supplemental budget, together with the budgets approved at the final cash collateral hearing shall be included in the definition of the "Budgets."

3.    <u>Budget Variance</u>.  So long as the Termination Date (as defined below) has not occurred, the Debtors are authorized to use Cash Collateral in accordance with this Interim Order and the Budget in an amount that would not cause the Debtors to use Cash Collateral for disbursements (excluding disbursements for capital expenditures) in the Budget (the "<u>Total Disbursement</u>s"), taken together, in an aggregate amount not to exceed twenty percent 20% of the Total Disbursements budgeted during the Budget Period then in effect ("<u>Permitted Deviation</u>"); *provided, however*, that in the event that the forecasted amount of Total Disbursements in the Budget exceeds the amount actually paid in respect of Total Disbursements

during such Budget Period (the difference between the budgeted amount and the amount actually paid, the "Carry Forward Amount"), the Debtors shall be authorized to use Cash Collateral in the Carry Forward Amount toward Total Disbursements during any Subsequent Budget Period (as defined herein).  The Permitted Deviation shall be tested no more frequently that once a month when the monthly reporting is provided, Natixis may, in its sole discretion, agree in writing to the use of Cash Collateral (i) in a manner or amount which does not conform to the Budget (other than Permitted Deviations) (each such approved non-conforming use of Cash Collateral, a "Non-Conforming Use") or (ii) for any subsequent Budget Period (such period, the "Subsequent Budget Period").  If such written consent is given, the Debtors shall be authorized pursuant to this Interim Order to use Cash Collateral for any such Non-Conforming Use or any such Subsequent Budget Period in accordance with a subsequent Budget (a "Subsequent Budget") without further Court approval.

4.    Adequate Protection of Prepetition Collateral. Natixis shall be provided the following adequate protection for the Debtors' use of the Cash Collateral:

   i.    Adequate Protection Payments. MDC Secured Lenders will receive Adequate Protection Payments consisting of the amount of accrued interest due and owing under the RBL Agreement as such obligations are incurred (the "Adequate Protection Payments").

   ii.   Adequate Protection Liens. MDC Secured Lenders shall be granted, only to the extent of diminution of the Prepetition Collateral as a result of such use of Cash Collateral, without any further action, continuing, valid, binding, enforceable, fully perfected, replacement liens and first priority security interests in the same property (of any kind or nature, whether real or personal, tangible or intangible) in which the Prepetition Secured Lender held perfected security interests as of the Affiliate Petition Date, and the proceeds and products thereof (the "Adequate Protection Liens") junior to the Carve Out, but excluding any causes of action that could be brought under §§ 544-548 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute.

   iii.  Adequate Protection Claims. Further, only to the extent of diminution of the Prepetition Collateral as a result of such use of Cash Collateral, MDC Secured Lender shall have a post-petition administrative expense

claim (the "Adequate Protection Claim") against the Debtors, with recourse to all post-petition property of the Debtors and all proceeds thereof, under Bankruptcy Code sections 503 and 507(b); subject and junior to the Carve Out. Nothing in this Interim Order or in any prior order shall be construed to grant or acknowledge liens that prime any *ad valorem* property tax liens.

iv. Reporting. The Debtors shall provide Natixis with the following reporting: (A) On or before the twentieth (20th ) day of each calendar month, an updated rolling 13-week cash flow forecast of the Debtors substantially in the form of the Budget (each, a "Proposed Budget"), which Proposed Budget, upon written approval by Natixis, shall become the Budget effective as of the first day of the following calendar month, and (B) on or before the twentieth (20th ) day of each calendar month, a monthly report of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior monthly, showing any variance to the Total Disbursements estimated in the Budget.

5.      No Lien or Adequate Protection Claims upon Avoidance Actions.      The Replacement Liens and Adequate Protection Claims do not extend to the Debtors' transfer or lien avoidance rights and claims under sections 544, 545, 547 or 548 of the Bankruptcy Code, or property avoided or funds received from the same.

6.      Perfection and Priority of the Adequate Protection Liens.  Adequate Protection Liens granted under paragraph 4 of this Interim Order shall be deemed duly and automatically perfected under all applicable laws, and no further notice, filing, recordation or order shall be required to effectuate such perfection. Debtors and Natixis shall not be required to execute mortgages, security agreements, corporate resolutions or other documents or record further financing statements or take any other steps under applicable law, or otherwise, to create or perfect the Adequate Protection Lien granted hereunder.

7.      Carve Out.  The use of Cash Collateral and replacement liens shall be subject to right of payment of the following expenses (the following subparagraphs, collectively, the "Carve Out," and all amounts payable in connection therewith, the "Carve Out Amounts"): (a)

unpaid post-petition fees and expenses of the Clerk of the Court and statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930; and (b) post-petition fees and expenses of the Debtors' professionals and any statutory committee (if appointed) employed by order of the Bankruptcy Court.

8.      <u>Termination of Cash Collateral Use</u>.  The Debtors' right to use Cash Collateral pursuant to this Interim Order shall terminate (the date of any such termination, the "<u>Termination Date</u>") without further notice or court proceeding on the date that is forty-five (45) days after the Affiliate Petition Date if the Final Order, or an additional interim order, has not been entered by this Court on or before such date.

9.      <u>Conformance with State Laws, Rules and Regulations</u>.  The Debtors shall, at all times, operate in accordance with all laws, rules, regulations which may be applicable in each jurisdiction where it conducts business and maintains their assets, to keep in effect **all permits or** licenses which may be required for the operation of the Debtors' business in connection therewith.

10.     <u>Priority of *Ad Valorem* Property Tax Liens</u>.  Nothing in this Interim Order or in any prior order shall be construed to alter the senior priority of any *ad valorem* property tax liens that secure all or any amounts owed for tax year 2018 and all subsequent tax years pursuant to Texas state law.

11.     <u>Successors and Assigns</u>.  This Interim Order shall be binding upon all parties-in-interest in these Chapter 11 Cases, including, without limitation, the Debtors, and their respective successors and assigns, any trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code. No rights are created under this Interim Order for the benefit of any creditor

of the Debtor, any other party in interest in the Debtors' bankruptcy case, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

12.    <u>Modification of Automatic Stay</u>.  The Debtors are authorized to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and Chambers to perform the transaction and actions contemplated or permitted by this Interim Order.

13.    <u>Immediate Effect of Order</u>.  The terms and conditions of this Order shall be effective and immediately enforceable upon its entry notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise. Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

14.    <u>Modifications and Waivers</u>. Any of the requirements of this Interim Order, as they apply to Natixis, may be modified or waived as agreed in writing by Natixis and the Debtors jointly in writing.

15.    <u>Final Hearing</u>.  The Final Hearing on the Motion is scheduled for _____, 2019 at __:___ __.m. (EST) before this Court. The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any statutory committee, after the same has been appointed.  Objections must be served on: (a) proposed counsel to the Debtors, (i) Kasowitz

Benson Torres LLP, 1633 Broadway, New York, New York 10019, Attn: Andrew K. Glenn (AGlenn@kasowitz.com) and Matthew B. Stein (MStein@kasowitz.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19899, Attn: Robert J. Dehney (JDehney@mnat.com), (b) counsel to Natixis and BMO Harris, N.A.; (c) counsel to Riverstone; and (d) counsel to any statutory committee appointed in the Chapter 11 Cases.

16.     This Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

Dated: _____, 2019
      Wilmington, Delaware

_____
The Honorable Karen B. Owens
United States Bankruptcy Judge

## <u>EXHIBIT 1</u>

**Budget**

**To be filed**