## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| MTE HOLDINGS LLC, *et al.*,[1] | Case No. 19-12269 (KBO) |
| Debtors. | (Joint Administration Requested) |

## NATIXIS' OMNIBUS OBJECTION TO DEBTORS' FIRST DAY MOTIONS

Natixis, New York Branch, in its capacity as the administrative agent (the "Agent") on behalf of lenders under that certain credit agreement dated as of September 17, 2018 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), hereby files this omnibus objection (the "Objection") to motions filed by Debtors, and in support of the Objection respectfully states as follows:

## I.  PRELIMINARY STATEMENT[2]

1.      The OpCo Debtors have ignored the Agent for a month, electing instead to file these free-fall chapter 11 cases in lieu of a coordinated filing and a softer landing in chapter 11.  The Agent objects to all of the first day relief requested by the Debtors with the hope of narrowing some of the issues before a contested first day hearing before this Court.

---

[1] On October 22, 2019, MTE Holdings LLC ("MTE") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The next day, on October 23, 2019, Olam Energy Resources I LLC ("Olam") and MTE Partners LLC ("MTE Partners, and together with MTE and Olam, the "HoldCo Debtors") voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. On November 8, 2019, MDC Energy LLC ("MDC"), Ward I, LLC ("Ward"); and MDC Reeves Energy LLC ("Reeves," and together with MDC and Ward, the "OpCo Debtors"; collectively with the HoldCo Debtors, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

[2] Capitalized terms not defined in this preliminary statement shall have the same meaning as that ascribed to them elsewhere in this Objection.

2.      The Agent and co-lender BMO Harris Bank N.A. ("BMO") committed $75 million to the OpCo Debtors pursuant to the Credit Agreement and related loan documents, of which MDC has drawn down the maximum amount allowed – $60 million (exclusive of required interest, other mandated fees and costs and applicable setoffs). MTE's bankruptcy petition constituted an automatic and incurable event of default under the Credit Agreement, which accelerated and required immediate repayment of the entire principal amount of $60 million (plus accrued interest, fees, and other costs along with any applicable set offs) by the OpCo Debtors. Moreover, the OpCo Debtors have been in default of numerous provisions of the Credit Agreement, some dating back to last year shortly after the Credit Agreement was finalized.

3.      The Agent made repeated attempts to initiate discussions with the OpCo Debtors on a potential out-of-court solution.[3] Most recently, in early October 2019 representatives of the Agent met with incumbent management of the OpCo Debtors to discuss a potential restructuring of the OpCo Debtors and to commence contingency bankruptcy planning. The OpCo Debtors ignored the Agent's requests. In the weeks that followed, the Agent made substantially similar overtures to the OpCo Debtors and was repeatedly ignored. The OpCo Debtors eventually filed these chapter 11 cases, providing very few details to the Agent, and now seeks the Agent's consent to a series of first day motions and the use of the Agent's and BMO's cash collateral to fund these abrupt proceedings without proper planning or their consent. This Court should deny the requested first day relief, or otherwise limit the relief to only that which is necessary to avoid immediate and irreparable harm to the OpCo Debtors pending a final hearing on the relief requested.

---

[3] As a result of a pre-workout agreement between Agent and MDC, Agent may not introduce as evidence any of the parties' discussions retroactive to May 13, 2019, except for May 14 and July 18, 2019 letters and the agreement itself.

4.      The Agent has lost complete faith in management of the OpCo Debtors. Concurrently herewith, the Agent is filing a motion to appoint a chapter 11 trustee for the OpCo Debtors, which the Agent will ask to be heard prior to entry of any final orders on the requested first day relief.

## II.  OBJECTIONS

### A.    Joint Administration Should Be Conditioned on Protection of Agent

5.      The Debtors request joint administration of their cases for procedural purposes only. The Agent does not object to the extent the relief is purely procedural and not intended to affect substantive rights. The Agent requests inclusion of language in the proposed order regarding the substantive separateness of the OpCo Debtors from the HoldCo Debtors.

6.      In its current state, the Debtors' proposed order for joint administration reserves only the Debtors' right to seek substantive consolidation of the cases. Any order entered by this Court should reserve the rights of all parties in interest to either seek or oppose the substantive consolidation of the Chapter 11 cases.

### B.    The Automatic Schedules and SOFAs Extension to December 6, 2019 is Sufficient and the Debtors Should Be Required to Disclose the Largest Creditors in Each Case

7.      The Debtors requested an extension of the deadline to file Schedules and SOFAs until January 6, 2020. Local Rule 1007-1(b) automatically extends the filing deadline 28 days after the respective petition dates. The OpCo Debtors filed two weeks after the HoldCo Debtors. The Local Rule extends the deadline for the OpCo Debtors until December 6, 2019. Any second-day hearing will be scheduled before December 6, 2019, so the Agent submits the Court need not hear this motion at the first day hearing.

8.      To the extent the Court is inclined to hear the motion, an extension to January 6, 2020 – an additional month beyond that which the Local Rule automatically provides – is extreme

and unnecessary for Debtors of this size and lack of complexity. This Court has regularly limited requests for long extensions of time. *See e.g., In re Z Gallerie, LLC, et al.*, Case No. 19-10488 (KBO), Docket No. 189 (Bankr. D. Del. Apr. 9, 2019) (granting an extension of four days when thirty days was requested); *In re Brookstone Holdings Corp., et al.*, Case No. 18-11,780 (BLS), Docket No. 222 (Bankr. D. Del. Aug. 24, 2018) (granting an extension of fourteen days when thirty-two days was requested).

9.      In addition, the Debtors request authority to file a single consolidated list of the Debtors' thirty largest creditors, asserting that numerous creditors are shared amongst certain of the Debtors. Even if this is true, the Debtors have provided no visibility on where the creditors in each case are situated and what types of claims exist in each case. Furthermore, there is not an overwhelming number of cases such that creating a list for each case would be excessively burdensome, and thus, this relief should be denied.

**C.      Debtors Should Close Existing Bank Accounts, Open New Accounts Subject to Prepetition Security Interests, and Authority to Make Payments on the Prepetition Corporate Cards and for Management Services Should Be Denied**

10.      The Debtors seek to maintain their prepetition cash management and bank accounts, and ignore the U.S. Trustee Guidelines. The Court should deny this requested relief.

11.      Contrary to the Debtors' contentions, the cash management system is not overly complex. Establishing new bank accounts that meet U.S. Trustee Guidelines is not administratively burdensome. Once open, this Court should force the Debtors to close their existing bank accounts immediately and all cash deposits should be re-deposited into new, U.S. Trustee approved, debtor-in-possession accounts. The Debtors' proposed cash management order gives the Debtors the unilateral right to open and close accounts without receiving any kind of consent. This is an unreasonable grant of power, and the Court should reject it. With respect to the OpCo Debtors, any order approving cash management should require the new accounts be subject to the Agent's

first lien security interest and superpriority claims consistent with any use of cash collateral this Court may award that directly impacts the Agent. Once new accounts are open, and subject to the Agent's security interest and superpriority claims, any payments should be subject to and consistent with the terms and conditions contained in the Competing Cash Collateral Order (as defined below) and any accompanying approved budgets authorizing the use of cash collateral.

12.    The Debtors also seek to make payments on outstanding balances on the Debtors' corporate credit card without first obtaining the Agent's consent. The Debtors cannot satisfy the "necessity of payment" doctrine. *In re Sharon Steel Corp.*, 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993). In order to invoke this doctrine, the Debtors are "required to show that the payment is necessary to avert a serious threat to the Chapter 11 process." *Id.* The Debtors have made no showing of extraordinary circumstances in their request to pay off the outstanding credit card balance. Furthermore, the corporate credit card in question is in the name of a non-debtor party. Essentially, the Debtors seek to pay unknown expenses to an unnamed employee of a non-debtor affiliate, with the intention of allowing that unnamed person to continue charging the credit card postpetition at the Debtors' expense.

13.    The Debtors' seek authority to continue to engage in certain intercompany transfers. The Debtors provide no insight on the amounts or the parties involved in these transfers and yet seek to give administrative expense status to the intercompany claims. Ascribing administrative expense status to these claims amounts to a grant of substantive relief and is inappropriate in the context of a cash management motion. Absent a showing of immediate and irreparable harm, the Court should deny the Debtors' requested relief.

14.    The Debtors also intend to continue making postpetition payments to non-debtor affiliate Maefield Development Corporation (the "Manager") for management and related services

provided to the Debtors. Pursuant to certain management services agreements, the Debtors reimburse the Manager for the direct costs of providing these services, which includes a $305,000 monthly payroll.

15.    The Debtors have not identified any limitation on the amount of fees that could potentially be paid to the Manager for the services it provides. There is also no evidence indicating that the contract and associated fees were negotiated at arm's length or that the services provided are necessary or beneficial to the Debtors' estate. Moreover, the Debtors have failed to disclose the specific recipients of the management services compensation. The Court should deny the Debtors authority to continue making payments for the management services for failure to meet the necessity of payment doctrine, and for not being required of the Debtors to avoid immediate and irreparable harm for non-payment.

16.    Finally, as a practical matter, the Debtors' request to pay and allow banks to process all pending prepetition checks is problematic. Presently, the Debtors maintain only $7,000 in their accounts. Processing all pending prepetition checks could result in bounced checks postpetition and thus damage the value of the Debtors' estate.

**D.    No Utility Payments Are Required in the Next 20 Days So the Motion is Premature**

17.    The Debtors seek authority to establish adequate assurance protocols to maintain their utility service. The Court should not enter an order on the first day approving payment of any adequate assurance deposits.

18.    First, the OpCo Debtors did not provide the Agent sufficient time ahead of the hearing to review and approve proposed adequate assurance offers to the Debtors' prepetition utility providers. Second, the proposed cash collateral budget filed by the Debtors includes proposed adequate assurance payments of $37,500 during the first two weeks of the budgetary period, without any detail regarding the utility providers implicated. Pursuant to section 366 of the

Bankruptcy Code, utilities cannot alter, refuse or discontinue utility services within the first 20 days of a bankruptcy filing. With respect to the OpCo Debtors, this deadline is November 28, 2019.

19.     Instead of hearing the Debtors' motion on the first day, the Agent requests this Court deny the relief requested with respect to the OpCo Debtors, and schedule a hearing prior to November 28, 2019, in order to afford the Agent sufficient time to review the requested adequate assurance payments being proposed and attempt to reach an agreement with the OpCo Debtors on any payments before the hearing. To the extent the Court is inclined to grant the relief requested, in the alternative, the Agent requests the Court limit the payments to only those required to avoid immediate and irreparable harm to the Debtors following sufficient evidence offered at the first day hearing, and consistent with the terms and conditions contained in the Competing Cash Collateral Order. In addition, the Agent requests that the Debtors add the Agent as a notice party whose consent is required for the Debtors to agree to additional adequate assurance for their utility providers.

**E.     Use of Cash Collateral Should Be Limited to Payments Required to Avoid Immediate and Irreparable Harm and Subject to a Form of Order Supported by the Agent**

20.     The Agent objects to entry of the Debtors' proposed interim cash collateral order (the "Proposed Cash Collateral Order") in its current form. The Agent does not support the proposed initial budget filed by the Debtors. As of this filing, the Agent has not agreed on a budget with the Debtors. In addition, even if there was an agreed budget the Agent is unwilling to consent to the Proposed Cash Collateral Order because it lacks protective provisions for prepetition secured lenders that are customary in similar chapter 11 cases.

21.     As a threshold matter, the Agent will not consent to use of cash collateral for the next two weeks other than for expenses of the OpCo Debtors that, if made, will avoid immediate

and irreparable harm to the OpCo Debtors. While the Debtors have recently provided the Agent with a budget for the next two weeks, it remains unclear to the Agent whether the budgeted items are required to avoid immediate and irreparable harm. Moreover, the burden of proof is on the Debtors to demonstrate the risk of immediate and irreparable harm at the first day hearing as a condition for the Agent to consent to use of its cash collateral for the next two weeks pending further hearings.

22.     Additionally, the Proposed Cash Collateral Order lacks customary, protective provisions typically found in interim cash collateral orders in similar chapter 11 cases, including without limitation factual findings with respect to the Agent's collateral and liens, adequate protection provisions requiring the OpCo Debtors to provide regular reporting to the Agent, payment of the Agent's professional fees and expenses during the course of the chapter 11 cases, and adequate protection liens with administrative priority, termination events including case milestones, and similar protective provisions. Without an agreement on adequate protection and a budget, among other things, the Agent does not consent to (i) the Debtors' use of cash collateral, (ii) the Carveout or any other claims or liens priming the Agent, or (iii) the other provisions of the Proposed Cash Collateral Order. The Debtors have provided no basis for the Court to approve nonconsensual priming or contested use of cash collateral.

23.     In an effort to reach an agreement on the use of cash collateral for payments to avoid immediate and irreparable harm, the Agent has prepared a proposed cash collateral order, which is attached as **Exhibit A** (the "Competing Cash Collateral Order"). The Agent hopes to reach an agreement with the OpCo Debtors on the use of cash collateral for the next two weeks consistent with the Competing Cash Collateral Order.

### III.  RESERVATION OF RIGHTS

24.    The Agent hereby reserves the right to amend, modify or supplement this Objection, including without limitation, to object to the form of any proposed order submitted to this Court in connection with the first day motions.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Agent respectfully requests that the Court modify any relief granted in accordance with this Objection and grant such other and further relief as is necessary and proper.

Dated:    November 12, 2019
   Wilmington, Delaware

BAYARD, P.A.

*/s/ Erin R. Fay*
Erin R. Fay (No. 5268)
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: efay@bayardlaw.com
dbrogan@bayardlaw.com

- and -

BRACEWELL LLP
William A. (Trey) Wood III
711 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone: (713) 221-1166
Facsimile: (713) 221-1212
Email: trey.wood@bracewell.com

Mark E. Dendinger
CityPlace I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 947-9000
Facsimile: (860) 404-3970
Email: mark.dendinger@bracewell.com

David J. Ball
David R. Kolker
Finney Abraham
1251 Avenue of the Americas, 49th Floor
New York, NY 10020
Telephone: (212) 508-6100
Facsimile: (212) 508-6101
Email: david.ball@bracewell.com
david.kolker@bracewell.com
finney.abraham@bracewell.com

*Counsel to the Agent*

**<u>Exhibit A</u>**

**Competing Cash Collateral Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| MDC ENERGY LLC, *et al.*, | § | Case No. 19- (KBO) |
| | § | |
| Debtor[s].[1] | § | [Joint Administration Requested] |
| | § | |

**INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),
361, 362, 363, 503, AND 507, BANKRUPTCY RULES 4001 AND 9014
(I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES;
(III) MODIFYING AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-referenced debtors, as debtors in possession

(collectively, the "Debtors") in the above-captioned cases (the "Cases"), pursuant to sections 105,

361, 362, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the

"Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), seeking, among other things:

(a)     authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507
of the Bankruptcy Code to (i) use cash collateral, as such term is defined in section
363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition
Collateral (as defined herein), solely in accordance with the terms of this interim
order (the "Interim Order"), and (ii) provide adequate protection to Natixis, New
York Branch, as administrative agent (in such capacity, together with its successors
in such capacity, the "Administrative Agent") and as Issuing Bank under the Credit
Agreement (as defined herein), and the other Prepetition Secured Parties (as defined
herein);

(b)     authorization, subject to entry of a final order, to grant adequate protection liens on
proceeds and property recovered in respect of the Prepetition Loan Parties' claims
and causes of action arising under chapter 5 of the Bankruptcy Code (collectively,
the "Avoidance Actions") or any other state or federal law;

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as
follows: MDC Energy LLC ([●]); [MDC Reeves Energy LLC ([●]); and Ward I, LLC ([●])]. The location of the
Debtors' corporate headquarters and service address is 280 E. 96th Street, Suite 210, Indianapolis, IN 46240.

(c)      modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(d)      except to the extent of the Carve Out (as defined herein), and subject to entry of the Final Order, the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)      that this Court hold an interim hearing (the "Interim Hearing") to consider the relief sought in the Motion and entry of the proposed Interim Order;

(f)      that this Court schedule a final hearing (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order"); and

(g)      waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and the Interim Hearing having been held by the Court on [●], 2019; and the Final Hearing having been scheduled by the Court for [●], 2019 at [●]:[●][●][●].m. pursuant to Bankruptcy Rule 4001, notice of the Motion and the relief sought therein having been given by the Debtors as set forth in this Interim Order; and the Court having considered the Budget (as defined herein) filed and served by the Debtors, offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that entry of this Interim Order is in the best interest of the Debtors and their respective estates and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Petition Date.** On [●], 2019 (the "Petition Date"), MDC Energy LLC ("MDC Energy") and each of the other Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. Each

Debtor has continued with the management and operation of its respective businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the chapter 11 cases (the "Cases").

        B.      **Credit Agreement.** Prior to the Petition Date, the Lenders (as defined herein) made certain loans and extensions of credit pursuant to and in accordance with the terms and conditions of that certain Credit Agreement dated as of September 17, 2018 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement," and together with all other documentation executed in connection therewith, including without limitation, the Guaranty Agreement (as defined in the Credit Agreement), the Letter of Credit Agreements (as defined in the Credit Agreement) the Security Agreement (as defined in the Credit Agreement) and all other Loan Documents (as defined in the Credit Agreement) (collectively, the "Credit Documents"), among MDC Energy, as Borrower, the Administrative Agent, the lenders from time to time party thereto (such lenders, the "Lenders"), the Issuing Bank of letters of credit thereunder (the "Issuing Bank") and each of the other "Secured Parties" (as defined in the Credit Agreement) (the Administrative Agent, the Lenders, the Issuing Bank and the other Secured Parties, collectively, the "Prepetition Secured Parties").

        C.      **Debtors' Admissions With Respect to the Prepetition Secured Indebtedness.** Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Interim Order (and subject to the limitations thereon contained in such paragraph), the Debtors admit, stipulate and agree that:

        As of the Petition Date, the Debtors that are the Borrower and the Guarantors (as such terms are defined in the Credit Agreement) (collectively, the "Prepetition Loan Parties") under the Credit Documents were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the Lenders in the aggregate principal amount of approximately $[●], plus any accrued interest, fees, letters of credit, and other amounts that may be due and payable thereunder (collectively, the "Prepetition Secured Indebtedness"). The Prepetition Secured

Indebtedness includes any and all principal amounts owing or outstanding under the Credit Agreement, interest on, fees and other costs, expenses, and charges owing in respect of, such amounts, and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit, swap obligations, banking services, or other obligations outstanding thereunder. The Prepetition Secured Indebtedness, including the amounts specified in this paragraph, constitutes the legal, valid, and binding obligations of the Prepetition Loan Parties, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Secured Indebtedness. None of the Prepetition Loan Parties, either collectively or individually, have or shall assert any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Secured Indebtedness. The Prepetition Secured Indebtedness and any amounts previously paid to any Prepetition Secured Party pursuant to the terms of the Credit Agreement, on account thereof, or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in the Credit Documents or this Interim Order.

    D.  **Debtors' Admissions With Respect to Collateral and Liens.** Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Interim Order (and subject to the limitations thereon contained in such paragraph), the Debtors admit, stipulate and agree that:

    i.  Pursuant to the Security Agreement, the Mortgages (as defined in the Credit Agreement), the Guaranty Agreement and all other Security Instruments, the Prepetition Loan Parties granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on, certain assets of the Prepetition Loan Parties (as more specifically defined below, the "Prepetition Collateral") to and/or for the benefit of the Prepetition Secured Parties (the "Prepetition Liens"). The Prepetition Collateral includes any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, including Cash, securities, accounts and contract rights, of the Prepetition Loan Parties, in or upon which a Lien, Mortgage, deed of trust, or other security interest has been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the applicable Credit Documents that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits.

    ii.  The Credit Documents are valid and binding agreements and obligations of the Prepetition Loan Parties, and the Prepetition Liens constitute valid, binding, enforceable, and perfected first priority security interests and Liens, as that term is defined in the Credit Documents ("Liens"), which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy

Code or applicable non-bankruptcy law, except as provided in the Credit Documents or this Interim Order.

iii.    The Administrative Agent has properly perfected its security interests and Prepetition Liens in and on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets, and/or by filing UCC-1 financing statements, Mortgages, or other required documents against the Prepetition Loan Parties, and such Prepetition Collateral in the proper state or county offices for the perfection of such security interests and Liens.

E.      **Debtors' Admissions With Respect to Cash Collateral.** Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Interim Order (and subject to the limitations thereon contained in such paragraph), the Debtors admit, stipulate and agree that all of the Prepetition Loan Parties' Cash, including all Cash proceeds of the Prepetition Collateral, the Prepetition Loan Parties' banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date) as of the Petition Date or deposited into the Prepetition Loan Parties' banking, checking or other deposit accounts with financial institutions after the Petition Date that is property of the Prepetition Loan Parties constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in value of their respective interests in the Prepetition Collateral as of the Petition Date resulting from the use of Cash Collateral, the use, sale or lease of the Prepetition Collateral and/or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code. The foregoing shall not, nor shall any other provision of this Interim Order be construed as, a determination or finding that there has been or will be any diminution in value of Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.

F.       **Releases; Investigation.** Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Interim Order (and subject to the limitations thereon contained in such paragraph), each of the Debtors hereby forever waives and releases any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Prepetition Secured Parties (solely in their capacities as such) arising prior to the date of the entry of this Interim Order, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

G.       **Need to Use Cash Collateral.** The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and have an immediate need to obtain use of the Prepetition Collateral, including the Cash Collateral (in the amount and in the manner set forth in the Budget) in order to, among other things, preserve and maintain the value of their assets and businesses and maximize the return to all creditors. An immediate and critical need exists for the Debtors to use the Cash Collateral, consistent with the Budget, for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering the Cases. The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets. Absent entry of this Interim Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed.

H.       **Notice.** Notice of the requested relief sought at the Interim Hearing was provided by the Debtors to: (a) the Office of the U.S. Trustee for the District of Delaware (the "U.S. Trustee"), (b) counsel to the Administrative Agent, (c) the parties included on the Debtors'

consolidated list of the 20 largest unsecured creditors, (d) the United States Attorney's Office for the District of Delaware, (e) the Internal Revenue Service, (f) the United States Securities and Exchange Commission, (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (h) the state attorneys general for the states in which the Debtors conduct business. Given the nature of the relief sought, the foregoing notice of the Interim Hearing was, in the Debtors' good faith belief, the best available under the circumstances and complies with Bankruptcy Rules 2002, 4001(b) and (d) and 9014, and section 102(1) of the Bankruptcy Code as required by sections 361 and 363 of the Bankruptcy Code. No further notice of, or hearing on, the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

      I.      **Consent by Prepetition Secured Parties.** The Administrative Agent, as collateral agent for the Lenders, consents to the Debtors' use of Cash Collateral, in accordance with and subject to the terms and conditions provided for in this Interim Order.

      J.      **Jurisdiction and Venue.** Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

      K.      **Relief Essential; Best Interest.** The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Bankruptcy Local Rule 4001-2. The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and the property of their estates. It is in the best interest of the

Debtors' estates that the Debtors be allowed to use the Cash Collateral under the terms hereof. The

Debtors have demonstrated good and sufficient cause for the relief granted herein.

L.      **Arm's-Length, Good Faith Negotiations.** The terms of this Interim Order were

negotiated in good faith and at arm's-length between the Debtors and the Prepetition Secured

Parties.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1.      **Motion Granted.** The Motion is granted in accordance with the terms of

this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order

that have not been withdrawn, waived or settled and all reservations of rights included therein, are

hereby denied and overruled with prejudice.

2.      **Final Hearing.** A final hearing on the relief requested in the Motion shall

be held on _____, 2019, at ____:_____ __.m. (prevailing Eastern Time). Any party

in interest objecting to the relief sought at the Final Hearing shall file written objections no later

than _____, 2019, at 4:00 p.m. (prevailing Eastern Time).

3.      **Authorization to Use Cash Collateral; Budget Testing.**

(a)      Subject to the terms and conditions of this Interim Order, the Court hereby
authorizes the Prepetition Loan Parties' use of Cash Collateral during the period beginning with
the Petition Date and ending on 5:00 p.m. (prevailing Eastern Time) on _____, 2019,
solely and exclusively in a manner consistent with this Interim Order and the Budget, and for no
other purposes.

(b)      As used in this Interim Order: (i) "Budget" means the budget attached as
Exhibit 1 hereto, as such budget may be modified from time to time (A) by the Prepetition Loan
Parties with the prior written consent of the Administrative Agent acting at the direction of the
Required Lenders (as defined in the Credit Agreement) as set forth in this paragraph and in
paragraph 4(f)(viii) of this Interim Order or (B) during the Interim Period, as may be agreed in
writing by the Prepetition Loan Parties and the Administrative Agent acting at the direction of the
Required Lenders (*provided* that any such modified budget shall not take effect as the Budget on

less than two (2) business days' notice to the U.S. Trustee); and (ii) "Budget Period" means the initial four-week period set forth in the Budget in effect at such time.

(c)     The Prepetition Loan Parties shall spend Cash Collateral in accordance with the Budget on a line-by-line basis, subject to Permitted Deviations and Non-Conforming Uses (each as defined below). Permitted Deviations shall be tested on the third business day following the last day of each Budget Period (each such date, a "Testing Date"). On or before 5:00 p.m. (prevailing Eastern Time) on each Testing Date, the Prepetition Loan Parties shall prepare and deliver to the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent, a variance report for the immediately preceding Budget Period (the "Variance Report") setting forth: (i) the disbursements on a line-by-line basis of the Prepetition Loan Parties for line items other than capital expenditures and Non-Tested Disbursements (as defined below) during the applicable Budget Period, (ii) any variance (whether positive or negative, expressed as a percentage) on a line-by-line basis, for disbursements made during such Budget Period by the Prepetition Loan Parties against the projected disbursements set forth in the applicable Budget and (iii) any variance (whether positive or negative, expressed as a percentage) between the aggregate disbursements for capital expenditures for the Budget Period set forth in the applicable Budget. In addition, no later than 5:00 p.m. (prevailing Eastern time) on the last calendar day of each week, the Prepetition Loan Parties shall prepare and deliver to the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent, a variance report comparing the Prepetition Loan Parties' actual receipts and disbursements for the prior calendar week and the prior four calendar weeks (on a cumulative basis) as reflected in the applicable DIP Budget for such weeks (the "Cumulative Variance Report"), which Cumulative Variance Report shall include a report from the Debtors identifying and addressing any variance of actual performance to projected performance for the prior week.

(d)     The Prepetition Loan Parties shall not allow, during any Budget Period, the Prepetition Loan Parties' actual Cash expenses and disbursements (i) during such Budget Period to be more than [115]% of the projected Cash expenses and disbursements for any particular line item for such Budget Period, or (ii) for any week during such Budget Period to be more than [110]% of the projected Cash expenses and disbursements in the aggregate for such week, in each as set forth in the Budget (such deviations from budgeted amounts satisfying both (i) and (ii), the "Permitted Deviations"); *provided* that the Cash expenses and disbursements considered for determining compliance with this covenant shall exclude (x) the Prepetition Loan Parties' disbursements and expenses in respect of professional fees of the Prepetition Loan Parties during such Budget Period, (y) interest and financing fees paid during such Budget Period, and (z) net hedge settlements during such Budget Period ((x), (y) and (z), collectively, "Non-Tested Disbursements")[; *provided*, *further* that the Prepetition Loan Parties may carry forward budgeted but unused disbursements set forth in the Budget for any week during the Budget Period for use in a subsequent week in the same Budget Period or the immediately succeeding Budget Period].

(e)     The Administrative Agent acting at the direction of the Required Lenders may, in its sole discretion, agree in writing to the use of Cash Collateral in a manner or amount which does not conform to the Budget (other than Permitted Deviations and the Line Item Carry Forward) (each such use of Cash Collateral, a "Non-Conforming Use"). If such written consent is given, the Prepetition Loan Parties shall be authorized pursuant to this Interim Order to use Cash Collateral for any such Non-Conforming Use without further Court approval, and the Prepetition

Secured Parties shall be entitled to all of the protections specified in this Interim Order for any such use of Cash Collateral. The Prepetition Loan Parties shall provide notice of any Non-Conforming Use to the U.S. Trustee and counsel for any Official Committee of Unsecured Creditors (the "Committee"), prior to the occurrence of such Non-Conforming Use to the extent reasonably practicable.

(f)    For the avoidance of doubt, Cash Collateral may not be used (i) by any entity which is not a Prepetition Loan Party or (ii) to pay any expense of any entity which is not a Prepetition Loan Party.

4.    **Adequate Protection for the Prepetition Secured Parties.** In addition to all the existing security interests and Liens granted to or for the benefit of the Prepetition Secured Parties in and with respect to the Prepetition Collateral, including the Cash Collateral, as adequate protection for, and to secure payment of an amount equal to, the Collateral Diminution (as defined herein), and as an inducement to the Prepetition Secured Parties to permit the Prepetition Loan Parties' use of the Cash Collateral as provided for in this Interim Order, the Prepetition Loan Parties hereby grant the following adequate protection to the extent of any Collateral Diminution:

(a)    **Adequate Protection Liens.** Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), and subject in all cases to the Carve-Out (as defined herein), effective as of the Petition Date and in each case perfected without the necessity of the execution by the Prepetition Loan Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Administrative Agent is hereby granted, for the benefit of the Prepetition Secured Parties, to secure payment of an amount equal to the Collateral Diminution, a valid, binding, continuing, enforceable, fully-perfected first priority senior (except as otherwise provided in this paragraph (a)4(a) with respect to the Permitted Prior Liens) security interest in and lien on (all such liens and security interests, the "Administrative Adequate Protection Liens") the Prepetition Collateral and all other of the Prepetition Loan Parties' now owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, all prepetition and postpetition property of the Prepetition Loan Parties' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, all inventory, all oil, gas and other hydrocarbons and all products and substances derived therefrom (including all raw materials and work in process therefore, finished goods thereof, and materials used or consumed in the manufacture or production thereof), all goods, all accounts, Cash, payment intangibles, deposit accounts, accounts receivable, other rights to payment, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, all interest rate hedging agreements, commodity hedging agreements and similar agreements, owned real estate, real property leaseholds, oil and gas leases, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual

10

property, claims and causes of action and all proceeds of the foregoing (excluding Avoidance Actions, but including proceeds of Avoidance Actions, subject to entry of a Final Order) (all property identified in this paragraph 4(a) being collectively referred to as the "Collateral"), subject only to valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and that are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date (such liens, the "Permitted Prior Liens"), in which case the Administrative Adequate Protection Liens shall be immediately junior in priority to such Permitted Prior Liens.

(b)     **Adequate Protection Claims.** Effective as of the Petition Date, and subject only to the Carve-Out, an allowed administrative expense claim in the amount of any Collateral Diminution arising pursuant to section 507(b) of the Bankruptcy Code against each of the Prepetition Loan Parties on a joint and several basis with priority over all other administrative claims in the Cases (subject only to the Carve-Out), including all claims of the kind specified under sections 503(b) of the Bankruptcy Code (the "Administrative Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Prepetition Loan Parties, excluding the Carve-Out, and including, without limitation, subject to entry of a Final Order, the proceeds or property recovered in respect of any Avoidance Actions. For avoidance of doubt, the Administrative Adequate Protection Claims shall include amounts due to the Prepetition Secured Parties under Section 12.03 of the Credit Agreement for all out-of-pocket expenses incurred by any Agent, the Issuing Bank or any Lender (including the fees, charges and disbursements of any and all counsels for any Agent, the Issuing Bank or any Lender) incurred in connection with these Cases.

(c)     **Adequate Protection Payments.** The Prepetition Loan Parties are authorized and directed to pay to the Administrative Agent for the ratable benefit of the Prepetition Secured Parties adequate protection payments on the last business day of each calendar month after the entry of the Interim Order, in each case, in an amount equal to all accrued and unpaid (i) prepetition and postpetition interest, and (ii) without duplication of the fees and expenses payable under paragraph 4(e) below, prepetition or postpetition fees and costs due and payable under the Credit Agreement (including, without limitation, interest on loans, breakage costs and accrued fees owing to the Administrative Agent). In the case of adequate protection payments consisting of postpetition interest, such payments shall be calculated based on the Base Rate plus two percent (2%) as provided in Section 3.02(c) of the Credit Agreement; provided, further that adequate protection payments in the amount of the letter of credit fees set forth in Section 2.08(b) of the Credit Agreement shall be payable annually in advance in the per annum amount of 0.25% multiplied by the stated amount of each such Letter of Credit (as each such term is defined in the Credit Agreement). For the avoidance of doubt, the payment of adequate protection payments pursuant to this paragraph shall be without prejudice to the rights of the Administrative Agent and the Prepetition Secured Parties to assert claims for payment of additional interest at any other rates in accordance with the Credit Agreement.

(d)     **Other Covenants.** The Prepetition Loan Parties shall maintain their Cash management arrangements in a manner consistent with this Court's _____, 2019 order(s) granting the Debtors' Cash management motion. The Prepetition Loan Parties shall not use, sell

11

or lease any material assets with an aggregate fair market value in excess of $[250,000] in any single transaction or series of related transactions outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Administrative Agent at least five (5) business days prior to the date on which the Prepetition Loan Parties seek the authority of this Court for such use, sale or lease; provided; that the transferor and transferee in connection with such transactions are not affiliates. The Prepetition Loan Parties shall comply with the covenants contained in Sections 8.06 and 8.07 of the Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Collateral.

(e)     **Fees and Expenses.** As additional adequate protection and subject to paragraph 28 below, the Prepetition Loan Parties shall pay in Cash: (i) within five (5) business days after the Prepetition Loan Parties' receipt of invoices therefor, the professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the Administrative Agent and Prepetition Secured Parties under the Credit Agreement arising prior to the Petition Date; (ii) on a monthly basis within five (5) business days of the Prepetition Loan Parties' receipt of invoices therefor, the fees, expenses and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel and other third- party consultants, including financial advisors) incurred by the Administrative Agent and Prepetition Secured Parties under the Credit Agreement arising subsequent to the Petition Date.

(f)     **Reporting Requirements.** As additional adequate protection to the Prepetition Secured Parties, the Prepetition Loan Parties shall comply with the reporting requirements set forth in Article VIII of the Credit Agreement, including without limitation, Sections 8.01, 8.02, 8.12, 8.13 and 8.15 thereof, and shall provide the following additional reporting to the Administrative Agent (subject to any applicable limitations set forth below, and it being understood that any information shared with the Administrative Agent may also be shared by the Administrative Agent with the Prepetition Secured Lenders), with copies of all such reporting shared with the Administrative Agent delivered to counsel to any statutory committee and the U.S. Trustee upon request:

(i)     Weekly (or less frequently as may be agreed to between the Prepetition Loan Parties and the Administrative Agent) calls with the Administrative Agent and its advisors;

(ii)     At the times specified in paragraph 3(c) hereof, the Variance Report and Cumulative Variance Reports required by paragraph 3(c) hereof;

(iii)     On each business day, the Prepetition Loan Parties shall provide the Administrative Agent with a report detailing gross and net production volumes for the previous business day;

(iv)     If any well serving as Collateral for the Prepetition Secured Parties becomes shut-in or nonproducing for more than five (5) consecutive days for any reason other than ordinary course maintenance or workovers, the Prepetition Loan Parties shall notify the Administrative Agent promptly upon the Prepetition Loan Parties receiving notice of or having actual knowledge of such shut-in or nonproduction;

(v)    A copy of each update to the Prepetition Loan Parties' business plan as soon as reasonably practicable after it becomes available, together with a reconciliation to the prior business plan;

(vi)    In-person or teleconference presentations by the Prepetition Loan Parties and/or their advisors to the Prepetition Secured Parties, at such times as the Administrative Agent may reasonably request in writing (including via electronic mail), and at mutually agreeable places (to the extent such presentations are in-person).

(vii)    Promptly, but in any event by the twentieth (20th) business day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail reasonably acceptable to the Administrative Agent, of (a) the Prepetition Loan Parties' accounts payable and payments, (b) an accounts payable aging and an production receivable aging, and (c) all written demands or claims related to or asserting any liens in respect of property or assets of the Prepetition Loan Parties (including liens imposed by law, such as landlord's, vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens and other similar liens) if the amount demanded or claimed exceeds $[100,000] individually or $[500,000] in the aggregate;

(viii)    On or before 5th business day before the end of each Budget Period, a rolling 13-week Cash flow forecast of the Prepetition Loan Parties substantially in the form of the Budget (each, a "Proposed Budget"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget), upon written approval by the Administrative Agent, shall become the Budget effective as of the first day of the fifth week of the prior Budget (*provided* that a Proposed Budget shall not take effect as the Budget on less than two (2) business days' notice to any Committee, if any);

(ix)    Promptly, and in any event by the thirtieth (30th) calendar day of each month or by the fortieth (40th) calendar day following a month in which a fiscal quarter ends, beginning with the year-to-date period ended [●], 2019, a monthly and year-to-date income statement and balance sheet;

(x)    [On or before 12:00 PM (Eastern time) on Thursday of each calendar week (commencing with the Thursday falling during the first full calendar week after the Petition Date), a weekly report with respect to the sale process, in form and scope reasonably agreed by the Prepetition Loan Parties and the Administrative Agent. In addition, subject to any applicable restrictions imposed in any bidding procedures order that may be entered by the Court, the Prepetition Loan Parties will grant access to any data room established for potential bidders to the Administrative Agent and its financial advisor and counsel and furnish to Administrative Agent, its financial advisor and counsel (for their eyes only), as they become available (and, in any event, together with the next weekly report delivered pursuant to this paragraph 4(f)(x)), full copies of any preliminary and final bids received and any draft purchase and sale agreements]; and

(xi)    As soon as reasonably practicable after written request from the Administrative Agent, the Prepetition Loan Parties will provide the Administrative Agent

and the Prepetition Secured Lenders with reasonable access to any consultant, turnaround management, broker or financial advisory firm retained by any Prepetition Loan Party in any of the Chapter 11 Cases and, if requested, copies of all retention agreements for each such consultant.

5.    **Collateral Diminution.** For purposes of this Interim Order, "Collateral Diminution" shall mean an amount equal to the diminution of the value from and after the Petition Date of the Prepetition Secured Parties' interests in the Prepetition Collateral upon which any of the Prepetition Secured Parties have valid, perfected, enforceable and non-avoidable liens or security interests, resulting from the use, sale, or lease of the Prepetition Collateral, including Cash Collateral (whether in accordance with the terms and conditions of this Interim Order or otherwise), or the imposition of the automatic stay. Cash payments made to the respective Prepetition Secured Parties pursuant to the Interim Order shall reduce each such respective Prepetition Secured Parties' Collateral Diminution on a dollar for dollar basis.

6.    **Priority of Administrative Adequate Protection Liens and Administrative Adequate Protection Claims.** Except for (i) the Carve Out and (ii) as otherwise provided in paragraph 4, the Administrative Adequate Protection Liens and Administrative Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to paragraph 4 of this Interim Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise.

7.    **Carve Out.**

(a)    As used in this Interim Order, "Carve Out" shall mean the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) all allowed unpaid fees and disbursements included in the Budget (whether allowed by interim order, final order, procedural order or otherwise) (the "Allowed Professional Fees") and incurred by professionals retained by the Prepetition Loan Parties in rendering services to the Prepetition Loan Parties only, and (iii) subject to the limitations set forth in paragraphs 7 and 22

of this Interim Order, any Committee (collectively, the "Professional Persons"), and all expenses of members of any such Committee included in the Budget and allowed pursuant to section 503(b)(3)(F) of the Bankruptcy Code incurred at any time before the delivery by the Administrative Agent of written notice (via electronic mail, overnight delivery or hand delivery) to the Prepetition Loan Parties, counsel to the Prepetition Loan Parties, the U.S. Trustee, and counsel to any Committee, stating that a Termination Date or Termination Event (as such terms are defined herein) has occurred and is continuing and that the Post-Carve Out Notice Cap has been triggered (a "Carve Out Notice"), in each case, whether allowed by the Court prior to or after delivery of a Carve Out Notice; *provided* that Cash Collateral may only be utilized to pay up to the aggregate amounts set forth for Professional Persons in the Budget during such period prior to the delivery of the Carve Out Notice, (iii) the Allowed Professional Fees of the Professional Persons incurred on or after the first business day following delivery of the Carve Out Notice in an aggregate amount not to exceed $[100,000] (the "Post-Carve Out Notice Cap"), and (iv) reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $[10,000]. Notwithstanding anything to the contrary in this Interim Order, the Allowed Professional Fees payable from the Carve Out to each Professional Person shall be limited to the lesser of (x) the allowed amount of such Allowed Professional Fees and (y) the budgeted amounts for such professional set forth in the professional fee schedule included in the Budget.

(b)     Upon delivery of a Carve Out Notice, the Carve Out Notice shall constitute a demand to the Prepetition Loan Parties to utilize Cash on hand as of the date of such notice and any available Cash thereafter held by the Prepetition Loan Parties to fund a segregated account held with the Administrative Agent in trust for the benefit of the Professional Persons (the "Carve Out Reserve") in an amount equal to the sum of (A) all fees and expenses required to be paid pursuant to subparagraphs (i) and (ii) in the definition of Carve Out above (subject to the Budget), (B) all billed and unpaid monthly fees and expenses of all Professional Persons (including outstanding holdbacks) pursuant to subparagraphs (i) and (ii) in the definition of Carve Out above (subject to the Budget); (C) all unbilled fees and expenses of Professional Persons incurred prior to delivery of the Carve Out Notice pursuant to subparagraphs (i) and (ii) in the definition of Carve Out above (subject to the Budget); (D) all billed and unbilled expenses of members of any Committee allowable pursuant to section 503(b)(3)(F) (subject to the Budget); and (E) the Post-Carve Out Notice Cap. The failure of the Carve Out Reserve to satisfy in full the amount set forth in the Carve Out shall not affect the priority of the Carve Out.

(c)     Notwithstanding anything to the contrary in any of the Credit Documents or this Interim Order, following delivery of a Carve Out Notice, the Administrative Agent and the Prepetition Secured Parties shall not, and shall not direct any entity to, sweep or foreclose on Cash (including Cash received as a result of the sale or other disposition of any assets) of the Prepetition Loan Parties until the Carve Out Reserve has been fully funded.

(d)     Any payment or reimbursement of Allowed Professional Fees made to any Professional Persons prior to the delivery of the Carve Out Notice shall not reduce the Carve Out. Any payment or reimbursement of Allowed Professional Fees made to any Professional Persons on or after the delivery of the Carve Out Notice shall permanently reduce the Carve Out on a dollar-for-dollar basis. For the avoidance of doubt, the funding or payment of the Carve Out from Cash on hand or other available Cash shall not reduce Prepetition Secured Indebtedness.

(e)    Notwithstanding anything in this Interim Order to the contrary, no portion of the Carve Out or any other Prepetition Collateral or Collateral, shall be used for professional fees and expenses (a) incurred by any Debtor that is not a Prepetition Loan Party or (b) incurred for any litigation or threatened litigation against any of the Prepetition Secured Parties or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the Prepetition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Prepetition Secured Indebtedness or the security interests or liens held by the Prepetition Secured Parties in the Prepetition Collateral or Collateral; *provided*, *however*, that (i) an aggregate of $[50,000] from the Carve Out may be used to pay Allowed Professional Fees and expenses of any Committee to investigate the claims and liens of the Prepetition Secured Parties and (ii) the Prepetition Loan Parties may use Cash Collateral to pay Allowed Professional Fees incurred by the Debtors in order to respond to discovery requests by any Committee in connection with such investigation, subject to the Budget.

8.    **Postpetition Lien Perfection.** Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, recordings, mortgages or other documents or taking possession or control of any Collateral, this Interim Order shall be sufficient evidence of the Prepetition Secured Parties' perfected security interests and liens granted in the Collateral pursuant to this Interim Order. Notwithstanding the foregoing, the Debtors are authorized and directed to execute such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Administrative Agent to provide further evidence of the perfection of the Prepetition Secured Parties' security interests and liens in the Collateral as provided for herein. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

9.    **Inspection Rights.** In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Credit Documents, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtors shall permit representatives, agents and employees of the Administrative Agent to (i) have reasonable access to and inspect and copy the Debtors' books and records, including all records and files of the Debtors pertaining to the Prepetition Collateral and the Collateral, (ii) have

reasonable access to and inspect the Debtors' properties and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

10.     **Termination.** Subject to the Waiting Period (as defined herein) and paragraphs 7 and 12, the Debtors' right to use the Cash Collateral pursuant to this Interim Order shall automatically terminate (the date of any such termination, the "Termination Date") without further court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (g)     below (such events, collectively, the "Termination Events"):

(a)     the passing of 5:00 p.m. (prevailing Eastern Time) on _____ _____, 2019 (unless extended with the written consent of the Administrative Agent, acting at the direction of the Required Lenders, in its sole discretion, which extension thereof shall be effective without further application to, or approval by, the Court);

(b)     the violation of any terms of this Interim Order by the Debtors that is not cured within two (2) business days of receipt by the Debtors of notice of such default, violation or breach;

(c)     entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Interim Order without the express written consent of the Administrative Agent, acting at the direction of the Required Lenders;

(d)     any Prepetition Loan Party's case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or, without the express written consent of the Administrative Agent acting at the direction of the Required Lenders, a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in any Prepetition Loan Party's case, or any Prepetition Loan Party seeks entry of an order accomplishing any of the foregoing;

(e)     except as otherwise provided in this Interim Order, an order is entered granting another claim or lien pari passu with or senior to the Prepetition Liens, Administrative Adequate Protection Liens or Administrative Adequate Protection Claims granted to the Prepetition Secured Parties under this Interim Order or an order of the Court is entered reversing, staying for a period in excess of five (5) business days, vacating or otherwise amending, supplementing, or modifying this Interim Order in a manner materially adverse to the Prepetition Secured Parties, in each case without the written consent of the Administrative Agent acting at the direction of the Required Lenders;

(f)     any proceeding is commenced by any Debtor seeking, or otherwise consenting to, (x) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, Prepetition Liens, Prepetition Secured Claims, Administrative Adequate Protection Liens or Administrative Adequate Protection Claims or (y) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash

Collateral, or (ii) any Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Secured Parties, except any motion or other pleading otherwise permitted by this Interim Order;

(g)     the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Administrative Agent or the Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral without the written consent of the Administrative Agent acting at the direction of the Required Lenders, which consent may be withheld in its sole discretion;

(h)     the effective date of any confirmed chapter 11 plan for the Prepetition Loan Parties;

(i)     the entry of a subsequent order of the Court (i) terminating the Prepetition Loan Parties' use of Cash Collateral or (ii) authorizing the use of Cash Collateral by any Debtor that is not a Prepetition Loan Party;

(j)     the failure by the Prepetition Loan Parties to make any payment required pursuant to this Interim Order when due;

(k)     the failure by the Debtors to deliver to the Administrative Agent any of the documents or other information required to be delivered pursuant to this Interim Order when due or any such documents or other information shall contain a material misrepresentation;

(l)     failure to adhere to the Budget except with respect to Permitted Deviations or Non-Conforming Uses;

(m)     the failure of the Debtors to observe or perform any of the material terms or material provisions contained herein;

(n)     the entry of an order of this Court approving the terms of any debtor in possession financing for any of the Prepetition Loan Parties;

(o)     the Debtors' actual receipts during any period from the commencement of the Budget period through the last day of the same Budget period fall more than [10]% below the Debtors' projected receipts for that same period; *provided*, *however*, that in such event, the Debtors may cure any default by decreasing expenses by an equal percentage;

(p)     the Prepetition Loan Parties or the Independent Manager (as defined herein) modify or reduce (i) the scope of the authority granted by the board of managers of Debtor MDC Energy to the Independent Manager as set forth in the resolutions attached to the chapter 11 petition filed by Debtor MDC Energy, or (ii) the terms of the letter from the Independent Manager dated [●], 2019, without the prior written consent of the Administrative Agent;

(q)     the Debtors shall fail to meet any of the following deadlines (together, the "Milestones"):

(i)      the Debtors shall have commenced a sale process for the assets of the Prepetition Loan Parties by [●], 2019;

(ii)     entry of an order of the Court appointing a chief restructuring officer and/or other independent officer as applicable, in each case for the Prepetition Loan Parties, with the terms and substance of such order and appointment acceptable to the Administrative Agent, by [●], 2019;

(iii)    [the filing of a retention application seeking entry of an order, with terms and substance acceptable to the Administrative Agent, authorizing the employment of a broker or investment banker to market the sale of substantially all of the Prepetition Loan Parties' assets by [●], 2019];

(iv)    [unless the Prepetition Loan Parties have previously filed with the Bankruptcy Court a chapter 11 plan reasonably acceptable to the Administrative Agent at the direction of the Required Lenders (an "Acceptable Plan"), obtain entry of an order, with terms and substance reasonably acceptable to the Administrative Agent, at the direction of the Required Lenders, approving bid and sale procedures as to substantially all of the Prepetition Loan Parties' assets (the "Bid Procedures Order"), which may include (but shall not be required to include) approval of a stalking horse asset purchase agreement and related bid protections by [●], 2019];

(v)     [unless a disclosure statement for an Acceptable Plan has been approved by the Court, the Prepetition Loan Parties shall have received at least one "Qualified Bid" by a "Qualified Bidder" (as such terms shall be defined in the Bid Procedures Order) pursuant to the Bid Procedures Order by [●], 2020];

(vi)    [unless the Prepetition Loan Parties have previously obtained approval of a disclosure statement relating to an Acceptable Plan, conduct an auction for substantially all of the Prepetition Loan Parties' assets in accordance with the Bid Procedures Order by by [●], 2020];

(vii)   obtain entry an order of the Court, with terms and substance acceptable to the Administrative Agent acting at the direction of the Required Lenders, [approving the sale of substantially all of the Prepetition Loan Parties' assets or ]confirming an Acceptable Plan by [●], 2020; and

(viii)  consummate [the sale of substantially all of the Prepetition Loan Parties' assets or an ]Acceptable Plan by [●], 2020.

11.      **Remedies After a Termination Date.** Subject to the provisions of this paragraph 11 and paragraphs 7 and 12, the Debtors' authority to use Cash Collateral shall automatically terminate upon five (5) business days' prior written notice (the "Waiting Period") to the Debtors (copies of which shall be filed on the docket for these cases and provided to counsel

to the Debtors, counsel to any Committee, and the U.S. Trustee) given upon the occurrence or during the continuance of a Termination Eventall without further order or relief from the Court. Unless otherwise ordered by the Court, at the end of the Waiting Period, the automatic stay under Bankruptcy Code section 362 shall be deemed vacated and modified to the extent necessary to permit the Administrative Agent and the Prepetition Secured Parties to exercise all rights and remedies against the Prepetition Collateral and the Collateral, including the Cash Collateral, provided for in this Interim Order, the Credit Documents, and applicable law. During the Waiting Period, the Administrative Agent and Prepetition Secured Parties consent to a hearing on an expedited basis to consider whether a Termination Event has occurred and is continuing and the quantum of any Collateral Diminution; *provided* that (x) if a hearing to consider the foregoing is requested to be heard before the end of the Waiting Period but is scheduled for a later date by the Court, the Waiting Period shall be automatically extended to the date of such hearing, but in no event later than eight (8) business days after delivery of the notice commencing the Waiting Period; and (y) the only issues that may be raised by the Debtors in connection with or at such hearing shall be (A) whether, in fact, a Termination Event has occurred and is continuing and (B) the quantum of any Collateral Diminution. In addition, during the Waiting Period, except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to contest in good faith whether a Termination Event has occurred and/or is continuing and the quantum of any Collateral Diminution. Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief. The Debtors hereby waive any

right to seek relief, including without limitation under Bankruptcy Code section 105, to the extent such relief would in any way impair or restrict the rights and remedies of the Administrative Agent and the Prepetition Secured Parties set forth in this Order. Any delay or failure of the Administrative Agent or Lenders to exercise rights under the Credit Documents or this Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding anything in this paragraph to the contrary, after notice and hearing, the Court may order such relief as it determines is appropriate following a Termination Event, which relief may or may not include an authorization for the foreclosure or repossession of assets.

12.     **Payments Free and Clear.** Any and all payments or proceeds remitted to the Administrative Agent on behalf of the Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be irrevocable (subject to paragraph 21 of this Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b).

13.     **Application of Collateral Proceeds.** Subject to entry of an order of this Court to the contrary, following the occurrence of a Termination Event, the Debtors are hereby authorized to fund the Carve-Out Reserve from 100% of all collections on, and proceeds of, the Prepetition Collateral and the Collateral, including, without limitation, all accounts receivable collections, asset sale proceeds of sales of hydrocarbons, inventory, fixed assets, and any other assets, including sales in and outside the ordinary course of business, and all other Cash or Cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time. Unless otherwise ordered

by the Court, the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the Prepetition Secured Parties to retain and apply all collections, remittances, and proceeds of the Prepetition Collateral and the Collateral subject to and in accordance with this Interim Order and the Credit Documents to the Prepetition Secured Indebtedness in accordance with the provisions of this Interim Order and the Credit Documents (subject to the Carve Out, as described above).

14.     **Swap Termination Value.** Any Swap Termination Value (as defined in the Credit Agreement) owed to the Prepetition Loan Parties in respect one or more Swap Agreements (as defined in the Credit Agreement) are Cash Collateral of the Prepetition Secured Parties and, at the discretion of the Prepetition Secured Parties, may be setoff and applied against the Prepetition Secured Indebtedness outstanding under the Credit Agreement. This Interim Order is without prejudice to the rights of the Prepetition Secured Parties under the Bankruptcy Code safe harbor provisions found in 11 U.S.C. §§ 362, 546, 555, 556, 559, 560, 561, or otherwise.

15.     **Limitation on Charging Expenses Against Collateral.** Subject to entry of the Final Order, all rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases.

16.     **Reservation of Rights of the Prepetition Secured Parties.** This Interim Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take any other action in the Cases and to appear and be heard in any matter raised in

the Cases, or any party in interest from contesting any of the foregoing, and (ii) any and all rights, remedies, claims and causes of action which the Administrative Agent, and the Prepetition Secured Parties may have against any non-Debtor party liable for the Prepetition Secured Indebtedness. For all adequate protection purposes throughout the Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Collateral Diminution from and after the Petition Date. For the avoidance of doubt, such request will survive termination of this Interim Order.

17.    **Modification of Automatic Stay.** The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

18.    **Survival of Interim Order.** The provisions of this Interim Order shall be binding upon any trustee appointed during the Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to chapter 7 cases, dismissing the Cases under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization. The terms and provisions of this Interim Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Interim Order shall continue notwithstanding any conversion of the Cases to chapter 7 cases under the Bankruptcy Code, dismissal of the Cases or confirmation or consummation of any plan(s) of reorganization. Subject to the limitations described in paragraph 22 of this Interim Order, the adequate protection payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination,

recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made); *provided* that recharacterization will be allowed to the extent otherwise provided in this Order. Provided, if a Final Order is entered, then this Interim Order will bind the chapter 7 Estate only to the extent provided in the Final Order.

19.     **No Liability to Third Parties.** With respect to any approval or disapproval of expenditures set forth in the Budget including, without limitation, any Permitted Deviation or Non-Conforming Use, the Administrative Agent and the other Prepetition Secured Parties shall not: (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

20.     **Binding Effect.** The terms of this Interim Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Interim Order by this Court.

21.     **Reversal, Stay, Modification or Vacatur.** In the event the provisions of this Interim Order are reversed, stayed, modified or vacated by court order following notice and any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this Interim Order. Notwithstanding any such reversal, stay, modification or vacatur by court order, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Interim Order arising prior to the Administrative Agent's receipt of notice of the effective date of such reversal, stay, modification

or vacatur shall be governed in all respects by the original provisions of this Interim Order, and

the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges

and benefits, including any payments authorized herein and the security interests and liens granted

herein, with respect to all such indebtedness, obligation or liability, and the validity of any

payments made or obligations owed or credit extended or lien or security interest granted pursuant

to this Interim Order is and shall remain subject to the protection afforded under the Bankruptcy

Code.

        22.      **Reservation of Certain Third Party Rights and Bar of Challenge and**

**Claims.** The Debtors' admissions and releases contained in paragraphs C, D, E and F of this

Interim Order shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all

other parties in interest, including any Committee, for all purposes unless (1) a party (subject in all

respects to any agreement or applicable law which may limit or affect such entities right or ability

to do so) has properly filed an adversary proceeding or contested matter by no later than the date

that is the latest of (A) seventy-five (75) days from entry of this Interim Order for all parties other

than any Committee for the Prepetition Loan Parties; and (B) the date that is sixty (60) days from

the date of formation of any Committee for the Prepetition Loan Parties for any such Committee,

or such later date as may be agreed with the prior written consent of the Administrative Agent (the

"Challenge Deadline"), (x) challenging the amount, validity, perfection, enforceability, priority

or extent of the Prepetition Secured Indebtedness or the Prepetition Liens, or (y) otherwise

asserting or prosecuting any action for preference, fraudulent transfers or conveyances, other

avoidance power claims or any other claims, counterclaims or causes of action, objections, contests

and defenses against the Prepetition Secured Parties on behalf of the Debtors' estates (collectively,

"Challenges"); *provided*, *however*, that the filing of a motion for derivative standing shall toll the

Challenge Deadline with respect to any proposed Challenge described in such motion, until five (5) days after such motion is determined by a final and unappealable order; and (2) the plaintiff authorized to bring a Challenge obtains relief in any such timely and properly filed adversary proceeding or contested matter. If no such Challenge is properly filed as of such dates or the plaintiff's claims are dismissed or denied by final and unappealable order in any such proceeding or matter, then: (a) the Debtors' admissions and releases contained in paragraphs C, D, E and F of this Interim Order shall be binding on all parties in interest, including any Committee for the Prepetition Loan Parties; (b) the obligations of the Debtors under the Credit Documents shall constitute allowed claims for all purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral and the Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Secured Indebtedness and the Prepetition Liens on the Prepetition Collateral and the Collateral shall not be subject to any other or further challenge by any Committee for the Prepetition Loan Parties or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtors' admissions and releases contained in paragraphs C, D, E and F of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Nothing contained in this Interim Order shall be deemed to grant standing to any Committee for the Prepetition Loan Parties or any other party to commence any such adversary proceeding or contested matter.

23.     **Enforceability; Waiver of Any Applicable Stay.** This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

24.     **No Impact on Certain Contracts or Transactions.** No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code are affected by the provisions of this Interim Order.

25.     **Proofs of Claim.** Neither the Administrative Agent nor the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraph C herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors. Notwithstanding the foregoing, the Administrative Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable Credit Documents; *provided* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

26.     **Section 552(b) of the Bankruptcy Code.** Subject to entry of the Final Order, the Administrative Agent and the Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Administrative Agent and the Lenders

with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the

Collateral.

27.     **No Marshaling.** Subject to entry of the Final Order, neither the

Administrative Agent nor the Prepetition Secured Parties shall be subject to the equitable doctrine

of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or

the Collateral except as provided herein, as applicable.

28.     **Notice Procedures for Professional Fees.** Professionals for the

Administrative Agent and other Prepetition Secured Parties (collectively, the "Lender

Professionals") shall not be required to comply with the U.S. Trustee fee guidelines or submit

invoices to this Court or any other party in interest. Copies of the Lender Professionals' invoices

shall be submitted to the independent manager for the Debtor MDC Energy (the "Independent

Manager") and his counsel, as well as the U.S. Trustee and any Committee. If (a) the Independent

Manager, after consulting with his counsel, believes in good faith that any portion of the fees,

costs, and expenses submitted by the Lender Professionals does not comply with Section 12.03 of

the Credit Agreement and/or (b) the U.S. Trustee or Committee objects to the reasonableness of

such fees, and the Independent Manager, Committee, and/or U.S. Trustee (as applicable) and

Lender Professionals cannot resolve such objection within five (5) business days of receipt of such

invoices, then the Independent Manager, Committee, and/or U.S. Trustee shall file with this Court

and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of

(x) in the case of the Independent Manager, whether the fees, costs, and expenses comply with

Section 12.03 of the Credit Agreement and (y) in the case of the U.S. Trustee or Committee, the

reasonableness of such fees, and any failure by the Independent Manager, Committee, and U.S.

Trustee to file a Fee Objection within such five (5) business day period shall constitute a waiver

of any right to object to the applicable invoice. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed (or which is subsequently allowed by agreement or an order of the Court), and (b) all fees, costs, and expenses on an invoice to which no Fee Objection has been timely filed..

29.    **Headings.** The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

30.    **Retention of Jurisdiction.** The Court has and will retain jurisdiction to enforce this Interim Order.

Signed: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**
**Budget**

Exhibit 1 - Budget