## **EXHIBIT Z**

**Riverstone Credit Management LLC**
**712 Fifth Avenue, 36th Floor**
**New York, NY  10015**

October 7, 2019

**VIA EMAIL AND OVERNIGHT COURIER**
MTE Holdings LLC
Attention:  Mark Siffin
            Bob Quinn
280 E. 96th Street, Suite 210
Indianapolis, IN  46240
Emails:    siffin@maefield.com
           bquinn@maefield.com

RE:   Notice of Defaults and Reservation of Rights re: Term Loan Credit Agreement dated September 17, 2018 (as amended by that certain Limited Waiver and First Amendment dated as of February 22, 2019 (the "First Amendment") and as further amended or otherwise modified prior to the date hereof, the "Credit Agreement"), among MTE Holdings LLC, a Delaware liability company (the "Company" or "you"), the lenders party thereto as lenders (the "Lenders"), and Riverstone Credit Management, LLC, as administrative agent for the Lenders (the "Administrative Agent"); unless otherwise defined herein, all terms used herein which are defined in the Credit Agreement shall have the meaning assigned to such terms in the Credit Agreement, and unless otherwise stated, all references to sections shall be references to sections of the Credit Agreement.

Ladies and Gentlemen:

Reference is made to (i) that certain letter dated September 13, 2019 delivered by the Administrative Agent to the Company (the "September 13 Reservation of Rights Letter"), (ii) that certain Limited Forbearance Agreement, a draft of which was delivered by the Administrative Agent to the Company on September 20, 2019 (the "Sept. 20 Draft Limited Forbearance Agreement"), and (iii) that certain Limited Forbearance Agreement, a draft of which was delivered by the Administrative Agent to the Company on September 28, 2019 (the "Sept. 28 Draft Limited Forbearance Agreement", together with the September 13 Reservation of Rights Letter and the Sept. 20 Draft Limited Forbearance Agreement, the "Prior Default Notices"), whereby the Administrative Agent notified the Company that significant and material Events of Default exist under the Credit Agreement.

As initially described in the Prior Default Notices, certain Events of Default under the Loan Documents have occurred and are continuing, each as more specifically described in Exhibit A attached hereto (collectively, the "Specified Events of Default"). Furthermore, certain other Defaults or Events of Default may have occurred which are continuing under the Credit Agreement and the other Loan Documents (the "Other Defaults").  You are hereby notified of the occurrence

US 6623261v.6

MTE Holdings LLC
October 7, 2019
Page 2

and continuance of the Specified Events of Default. This letter is not intended to constitute an exhaustive list of Defaults, Events of Default or prospective defaults by the Company. Neither the Specified Events of Default nor any Other Defaults have been waived by the Administrative Agent or Lenders.

The Administrative Agent and Lenders hereby reserve each and every right and remedy available to them under the Credit Agreement, the other Loan Documents and applicable law resulting from or arising out of the Specified Events of Default and each Other Default. You are hereby again notified that effective as of earliest date of occurrence of any Specified Event of Default, and continuing thereafter for so long as any Event of Default exists, the Obligations shall accrue interest at the rate set forth in Section 2.6(c) of the Credit Agreement. Please be advised that in accordance with, and pursuant to, the terms of the Credit Agreement, the Administrative Agent and the Lenders are entitled to exercise any and all rights and remedies available under the Loan Documents or applicable law including, without limitation, accelerating the Obligations. This letter is not intended to constitute an exhaustive list of Defaults, Events of Default or prospective defaults by the Company.

You are further notified that no failure or delay on the part of the Administrative Agent or any Lender to exercise any right or remedy under the Credit Agreement, any other Loan Document or applicable law shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy preclude any other or further exercise of any right or remedy, all of which are cumulative and may be exercised without notice except to the extent notice is expressly required (and has not been waived) under the Credit Agreement, the other Loan Documents and applicable law. Unless and until otherwise agreed in a writing signed by the Administrative Agent and the Requisite Lenders, in no event and under no circumstance shall any past, present or future negotiations, discussions or written communications with the Administrative Agent or any Lender or the Administrative Agent's or any Lender's delay in or forbearance from exercising any of its rights, powers, privileges or remedies under the Loan Documents or applicable law or any other indulgence granted by the Administrative Agent or any Lender: (i) cause an amendment, waiver or modification of the Loan Documents; (ii) establish a custom or course of dealing under the Loan Documents; (iii) operate as a waiver of any existing or future default under the Loan Documents (including, without limitation, the Specified Events of Default and the Other Defaults); (iv) entitle any Group Member to any other or further notice or demand; (v) modify, change, impair, affect, diminish or release any of the Company's or any other Group Member's obligations or liabilities under the Loan Documents; (vi) impair any other notice of default the Administrative Agent or any Lender has delivered (or will deliver), (vii) constitute an agreement of the Administrative Agent or any Lender to agree to any amendment or modification of the Loan Documents, or (viii) waive, limit, suspend or condition the Administrative Agent's or any Lender's rights, powers, privileges and remedies under the Loan Documents and applicable law, all of which rights, powers, privileges and remedies are expressly reserved.

This letter does not constitute (a) a waiver of the Specified Events of Default or any other Default or Event of Default, whether or not identified herein or (b) an agreement to forbear from exercising any rights and remedies available to the Administrative Agent and the Lenders pursuant to the terms of the Loan Documents or otherwise by law. Any future negotiations or discussions

MTE Holdings LLC
October 7, 2019
Page 3

with any agent or representative of the Administrative Agent or any Lender regarding the Loan Documents shall not be binding upon the Administrative Agent and the Lenders unless and until any terms resulting from such negotiations or discussions are reduced to written agreement signed by the Administrative Agent and the Requisite Lenders.  Any and all rights and remedies available to the Administrative Agent and the Lenders shall be cumulative and may be exercised separately, successively or concurrently at the sole discretion of the Administrative Agent and the Lenders. Nothing contained in this letter shall waive, modify, or limit any and all rights and remedies of the Administrative Agent under its contracts and documents, at law, in equity, or otherwise, all of which are expressly reserved.

Please contact the Administrative Agent with any questions you may have regarding the foregoing.

[Signature Page Follows]

Sincerely,

**RIVERSTONE CREDIT MANAGEMENT, LLC,**
as Administrative Agent

By: _____
Name: Christopher A. Abbate
Title: Managing Director

# EXHIBIT A
# SPECIFIED EVENTS OF DEFAULT

Each of the existing and prospective breaches of the Loan Documents set forth below are Specified Events of Default:

1. The Event of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to deliver audited financial statements with respect to the Fiscal Year 2018 without a "going concern" or like qualification or exception and without any qualification or exception as to the scope of such audit as required by Section 5.1(c) of the Credit Agreement.

2. The Event of Default under Section 8.1(b) of the Credit Agreement based on the Company's default under Section 9.01(b) of the RBL Facility Credit Agreement for the Fiscal Quarter ending December 31, 2018.

3. The Event of Default under Section 8.1(c) of the Credit Agreement as a result of the incurrence of additional Indebtedness in the form of accounts payable that is or at one time was overdue for a period in excess of 90 days in violation of Section 6.1 of the Credit Agreement.

4. The Event of Default under Section 8.1(c) of the Credit Agreement as a result of the creation of, and associated filings related to, mechanics liens with respect to certain accounts payable, which mechanics liens were not created in the ordinary course of business and, with respect to a portion of such mechanics liens, are related to accounts payable that are or at one time were overdue for a period in excess of 90 days, which, in each case, is a violation of Section 6.2 of the Credit Agreement.

5. The separate Events of Default under Section 8.1(d) of the Credit Agreement as a result of the execution and delivery of (i) the First Amendment, (ii) the Borrowing Notice dated as of February 22, 2019, (iii) the Borrowing Notice dated as of March 18, 2019 and (iv) the Borrowing Notice dated as of April 1, 2019, in each case while the mechanics liens referenced in clause (3) above were outstanding.

6. The separate Events of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to deliver (i) quarterly financial statements along with Financial Officer Certifications and an executed and completed Compliance Certificate for the Fiscal Quarter ending December 31, 2018, (ii) quarterly financial statements along with Financial Officer Certifications and an executed and completed Compliance Certificate for the Fiscal Quarter ending March 31, 2019 and (iii) quarterly financial statements along with Financial Officer Certifications and an executed and completed Compliance Certificate for the Fiscal Quarter ending June 30, 2019, in each case as required by Section 5.1(b) and Section 5.1(e) of the Credit Agreement.

7. The separate Events of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to deliver (i) monthly financial statements along with Financial Officer Certifications within thirty days after the end of calendar month ending January 31, 2019, (ii) monthly financial statements along with Financial Officer Certifications within thirty days after the end of calendar month ending February 28, 2019, (iii) monthly financial statements along with Financial Officer Certifications within thirty days after the end of calendar month ending March 31, 2019, (iv) monthly financial statements along with Financial Officer Certifications

MTE Holdings LLC
October 7, 2019
Page 6

within thirty days after the end of calendar month ending April 30, 2019, (v) monthly financial statements along with Financial Officer Certifications within thirty days after the end of calendar month ending May 31, 2019, (vi) monthly financial statements along with Financial Officer Certifications within thirty days after the end of calendar month ending June 30, 2019, (vii) monthly financial statements along with Financial Officer Certifications within thirty days after the end of calendar month ending July 31, 2019, and (viii) monthly financial statements along with Financial Officer Certifications within thirty days after the end of calendar month ending August 31, 2019, in each case as required by Section 5.1(a) of the Credit Agreement.

8.  The Event of Default under Section 8.1(b) of the Credit Agreement based on the Company's default under Section 9.01(b) of the RBL Facility Credit Agreement for the Fiscal Quarter ending March 31, 2019.

9.  The Event of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to deliver a Reserve Report concerning the Company's Oil and Gas Properties as of December 31, 2018, by March 31, 2019, with an officer certification as required by Section 5.1(q) of the Credit Agreement and title information covering all of the Oil and Gas Properties of the Company as required under Section 5.1(r) of the Credit Agreement.

10. The Event of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to deliver, concurrently with the annual audited financial statements for the Fiscal Year 2018 pursuant to Section 5.1(c) of the Credit Agreement, a certificate of insurance coverage from each insurer or its authorized agent or broker as required by Section 5.1(i) of the Credit Agreement.

11. The Event of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to comply with the Total Asset Coverage Ratio for the Fiscal Quarter ending June 30, 2019 as required by Section 6.7(c) of the Credit Agreement.

12. The Event of Default under Section 8.1(b) of the Credit Agreement based on the Company's default under Section 9.01(b) of the RBL Facility Credit Agreement for the Fiscal Quarter ending June 30, 2019.

13. The Event of Default under Section 8.1(e) of the Credit Agreement as a result of the failure to submit a new APOD for approval by the Super-Majority Requisite Lender as required by Section 5.13 of the Credit Agreement upon the lapse of effectiveness of the most recent APOD approved pursuant to the First Amendment.

14. The Event of Default under Section 8.1(c) of the Credit Agreement as a result of making Consolidated Capital Expenditures in a manner not provided for in the APOD or an Approval Letter as required by Section 6.20 of the Credit Agreement.

15. The Event of Default under Section 8.1(a) of the Credit Agreement as a result of the failure to pay the Administrative Agent fee of $150,000 on the anniversary of the Closing Date in accordance with Section 2.6(d) of the Credit Agreement.

MTE Holdings LLC
October 7, 2019
Page 7

      16.    The Event of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to deliver a Reserve Report concerning the Company's Oil and Gas Properties as of June 30, 2019, by September 30, 2019, with an officer certification as required by Section 5.1(q) of the Credit Agreement along with title information covering all of the Oil and Gas Properties of the Company as required under Section 5.1(r) of the Credit Agreement.

      17.    The Events of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to deliver notices of Defaults and Events of Default as required by Section 5.2(a) of the Credit Agreement.

      18.    The Events of Default under Section 8.1(c) of the Credit Agreement as a result of the failure to deliver notices of defaults and events of default under the RBL Facility Loan Documents as required by Section 5.1(o) of the Credit Agreement.

      19.    The Event of Default under Section 8.1(b) of the Credit Agreement as a result of the occurrence of certain "Events of Default" under the RBL Facility in connection with the events described in the foregoing clauses (1) through (18) above.