## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| MTE Holding LLC, *et al.*,[1] | ) | Case No. 19-12269 (KBO) |
| | ) | |
| Debtors | ) | Jointly Administered |
| | ) | **Re: D.I. 49** |
| | ) | |

**BAKER HUGHES, GE OIL & GAS PRESSURE CONTROL, SCHLUMBERGER, SMITH INTERNATIONAL AND NABORS' LIMITED OBJECTION TO INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A), 361, 362, 363, 503, AND 507, BANKRUPTCY RULES 4001 AND 9014 (I) AUTHORIZING DEBTORS USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF**

Baker Hughes Oilfield Operations LLC ("Baker Hughes"); GE Oil & Gas Pressure Control, LP ("GEO&G"); Schlumberger Technology Corporation ("Schlumberger"); Smith International, Inc. ("Smith") and Nabors Drilling Technologies USA, Inc. ("Nabors") (collectively, the "M&M Lien Creditors"), file this *Limited Objection to the Interim Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 And 9014 (I) Authorizing Debtors Use Of Cash Collateral; (II) Granting Adequate Protection To Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* ("Interim Cash Collateral Order") (D.I. 112).

### OVERVIEW

1. The M&M Lien Creditors do not oppose the Debtors' use of cash collateral provided the M&M Lien Creditors receive adequate protection for any diminution in value of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

collateral securing their M&M liens resulting from the Debtors' use of cash collateral and the imposition of the automatic stay.  However, the adequate protection replacement liens provided for "Statutory Lienholders" under the Interim Cash Collateral Order are not sufficient to provide adequate protection.  This follows because the proposed adequate protection replacement liens for Statutory Lienholders are limited to the exact same collateral that is subject to the Statutory Lienholders' prepetition liens and unidentified unencumbered property of the estate, if any.  *See* Interim Cash Collateral Order, paragraph 4(a).  A replacement lien, which is predicated on the diminution in value of the collateral securing the Statutory Lienholders' liens, on the exact same collateral that the Statutory Lienholders already have a lien on is by definition not adequate protection.  Further, there is no identification of any unencumbered property of the estate for purposes of replacement liens (and, in fact, the Debtors' cash collateral motion (D.I. 49) and supporting first-day declaration (D.I. 50) state that the Debtors granted liens and security interests in "substantially all of the assets of MDC [Energy LLC] and its subsidiaries" to secure the Debtors' indebtedness under the $60 million RBL credit agreement dated September 17, 2018 between MDC and Natixis, New York Branch, as administrative agent and issuing bank. The adequate protection provided to the M&M Lien Creditors should be substantially similar to the adequate protection provided to the "Prepetition Secured Parties" (RBL Lenders) in the form of adequate protection liens on all property of applicable debtors that own the property subject to Statutory Lienholders' M&M Liens, in the same priority as the Statutory Lienholders' respective M&M Liens, as well as superpriority adequate protection claims.

2.      Further, the M&M Lien Creditors should receive the same type of information reporting that is provided for the Prepetition Secured Parties under the Interim Cash Collateral Order.  In addition, the M&M Lien Creditors object to certain provisions included in the Interim

Cash Collateral Order with respect to the Debtors' stipulation on the <u>priority</u> of the Prepetition

Secured Parties' liens and security interests being binding on the M&M Lien Creditors, as well

as the provisions in the Interim Order addressing post-petition lien perfection, marshaling and

adequate protection payments.

**<u>BACKGROUND INFORMATION</u>**

3.      The M&M Lien Creditors provided material, equipment, labor and services under

contracts with the Debtors in connection with "mineral activities" (as defined in § 56.001 of the

Texas Property Code) conducted by the Debtors on oil and gas leases and specific improvements

on the leases, including the oil and gas wells described below located in Reeves County, Texas.

The M&M Lien Creditors perfected statutory mineral contractor and mineral subcontractor liens

under Chapter 56 of the Texas Property Code.  The M&M Lien Creditors' liens ("<u>M&M Liens</u>")

are summarized below and in **<u>Exhibit A</u>**[2].

| Lien Claimant | Well Name | Lien Amount |
|---|---|---|
| Baker Hughes | Affirmed 6 5H & 6-3HM | $92,110.05 |
| Baker Hughes | Copperhead 23 4H | $44,789.18 |
| Baker Hughes | Count Fleet 11 3H & 4H | $41,060.87 |
| Baker Hughes | Omaha 11-5 5H | $19,962.82 |
| Baker Hughes | Pickpocket 21 4H | $115,938.57 |
| Baker Hughes | Salt Grass SWD 1 and/or David Trimble 13 No. 1H | $354,929.81 |
| Baker Hughes | War Admiral 24 2H | $9,270.69 |
| Baker Hughes | Whirlaway 24 1H & 4H | $63,898.69 |
| Baker Hughes | Yucca 3 | $147,356.19 |
| Baker Hughes | Imperial Eagle 24 3H, 4H & 5H | <u>$142,471.07</u> |
| **Total** | | **$1,031,787.94** |
| | | |
| GE O&G Pressure Control | California Chrome 27 Nos. 2H, 10H and 12H | $449,259.81 |
| GE O&G Pressure Control | Imperial Eagle 24 2HM, 5H and 6H | $219,226.76 |
| GE O&G Pressure Control | Repent 23 1HM | $127,900.21 |
| GE O&G Pressure Control | Runaway Ghost 22-2 2H | $122,763.03 |

[2]      Additional and/or amended liens may be filed by the M&M Lien Creditors, which relate back to the first date of service on the applicable leases under Texas state law and therefore may be filed post-petition under 11 U.S.C. § 546(b).

| Lien Claimant | Well Name | Lien Amount |
|---|---|---|
| | | |
| GE O&G Pressure Control | War Admiral 24 3HM, 4H, 5H and 6H | $826,704.15 |
| GE O&G Pressure Control | Whirlaway | $121,408.04 |
| **Total** | | **$1,867,262.00** |
| Nabors | A Classic Dash 18 3H | $575,406.86 |
| Nabors | Imperial Eagle 24 3HM, 4H | $2,303,464.54 |
| Nabors | Omaha 11-5 5H and 11-6 6H | $938,403.85 |
| Nabors | Whirlaway 24 1H, 2H, 3H | $1,756,787.19 |
| **Total** | | **$5,574,062.44** |
| | | |
| Schlumberger | Alysheba 18 Nos. 1H and 2H | $226,796.98 |
| Schlumberger | California Chrome 27 No. 2H, 9H, 10H and 12 H | $257,460.63 |
| Schlumberger | Coopers Dream 23-1 1H | $100,527.52 |
| Schlumberger | Copperhead 23 5H & 6H | $162,790.71 |
| Schlumberger | Count Fleet 11 Nos. 5H and 6H | $149,979.54 |
| Schlumberger | Delightful Dasher 11-4 4H | $70,128.13 |
| Schlumberger | Gavyns Run 23 1H | $73,613.63 |
| Schlumberger | Imperial Eagle 24 Nos. 5H and 6H | $36,831.11 |
| Schlumberger | Omaha 11-5 5H and 11-6 6H | $25,141.93 |
| Schlumberger | Rocket Wrangler 11 Nos. 2H, 3H, and 4H | $544,466.39 |
| Schlumberger | Salt Grass SWD 1 | $35,139.85 |
| Schlumberger | War Admiral 24 1H | $80,450.00 |
| **Total** | | **$1,763,326.42** |
| | | |
| Smith | Alysheba 18 Nos. 1H and 2H | $85,517.50 |
| Smith | California Chrome 27 Nos. 2H, 10H and 12H | $260,035.75 |
| Smith | Coopers Dream 23-1 1H | $67,836.25 |
| Smith | Copperhead 23 6H | $45,892.50 |
| Smith | Count Fleet 11 Nos. 1H, 3H, 4H, 5H and 6H | $474,947.94 |
| Smith | Delightful Dasher 11-4 4H | $31,392.50 |
| Smith | Gavyns Run 23 1H | $45,892.50 |
| Smith | Imperial Eagle 24 Nos. 2HM, 3H, 4H, 5H and 6H | $561,181.10 |
| Smith | Omaha 11-5 5H and 11-6 6H | $235,537.92 |
| Smith | Rocket Wrangler 11 Nos. 2H, 3H, and 4H | $286,278.75 |
| Smith | Salt Grass SWD 1 | $5,776.23 |
| Smith | War Admiral 24 2HM, 3HM, and 5H | $153,606.25 |
| Smith | Whirlway 24 Nos. 1H, 2H and 3H | $321,226.76 |
| **Total** | | **$2,575,121.95** |

4.      The M&M Lien Creditors' statutory M&M Liens secure payment of the principal

indebtedness due, plus interest and attorneys' fees.

5.      The materials and services described in the M&M Liens were furnished by the M&M Lien Creditors in connection with "mineral activities" as defined in § 56.001 of the Texas Property Code, on the property described in the M&M Liens.

6.      The M&M Liens satisfy all requirements of Chapter 56 of the Texas Property Code, including Tex. Prop. Code §56.022.

7.      The M&M Lien Creditors' mineral subcontractor lien notices satisfy all requirements of Chapter 56 of the Texas Property Code, including Tex. Prop. Code §§56.021(b) and 56.023.

8.      The M&M Liens encumber the Debtors' working interests in the subject wells and leases as well as the following property interests as provided in Tex. Prop. Code §56.003:  (i) the material, machinery and supplies furnished by the lien claimant; (ii) the wells and the leases for oil and gas purposes for which the material, machinery, supplies and labor was furnished; (iii) other material, machinery, or supplies used for mineral activities and owned by the mineral property owners; (iv) other wells and pipelines used in operations related to oil, gas and minerals and located on the mineral property; and (v) any other property provided for in Texas Property Code §56.003 (the "MDC Subject Property").  Further, the M&M Liens attach to and encumber the proceeds generated from production from the MDC Subject Property.  *See Abella v. Knight Oil Tools,* 945. S.W.2d 847 (Tex. App.-Houston [1st Dist.] 1997, no writ).  Further, the M&M Lien Creditors' mineral subcontractor liens encumber all amounts owed by non-operating working interest owners for operations conducted on the MDC Subject Properties as of the date of the M&M Lien Creditors' mineral subcontractor lien notices.  Tex. Prop. Code. §§56.041 and 56.043; *FDIC v. Mid-America Petroleum, Inc.*, 83 B.R. 933, 935 (Bankr. N.D. Tex. 1988).

## REQUIREMENTS FOR USE OF CASH COLLATERAL

9.      11 U.S.C. § 363 of the Bankruptcy Code provides in relevant part:

(c)(2)  The trustee may not use, sell, or lease cash collateral unless –

        (A)  each entity that has an interest in such cash collateral consents; or

        (B)  the court after notice and hearing authorizes such use, sale, or lease in accordance with provisions of this section.

              ***

(e)  Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing ***shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest*** . . . (emphasis added).

## OBJECTIONS

**Objection No. 1 - Paragraph 4(a):  The Scope of Adequate Protection Replacement Liens for M&M Lien Creditors is Insufficient to Provide Adequate Protection.**

      10.    A replacement lien on the same collateral that the M&M Lien Creditors hold prepetition liens on does not provide adequate protection for diminution in value of the M&M Lien Creditors' respective collateral.  Replacement liens on all assets of the Debtors which own the prepetition collateral securing the M&M Liens should be provided in order to provide adequate protection, along with the superpriority claims under the Interim Cash Collateral Order.

**Objection No. 2 - Paragraphs 3 and 4(f):  Information Reporting.**

      11.    The M&M Lien Creditors should receive the same information as the "Administrative Agent" and the "Term Loan Administrative Agent" under the Interim Cash Collateral Order.

**Objection No. 3 - Paragraphs D and 23:  Stipulation on Priority.**

      12.    The M&M Lien Creditors recognize that stipulations in cash collateral orders, subject to a challenge period, are typical in oil and gas bankruptcy cases.  However, in this case,

there is insufficient information provided regarding the mortgagees and security interests granted by the Debtors to the "Prepetition Secured Parties". Further, paragraph D of the Interim Cash Collateral Order provides that the Debtors stipulate, among other things, that the liens granted by the Prepetition Loan Parties pursuant to unspecified mortgages and security interests are "senior security interests" and "first priority liens" on "certain assets of the Prepetition Loan Parties", which is then defined as the "Prepetition Collateral". For the Debtors to stipulate with respect to validity, enforceability or perfection of the "Prepetition Liens" for the benefit of the "Prepetition Secured Parties" is one thing; however, the attempt to bind third parties to a stipulation on lien priority when neither the mortgages nor the specific assets which are alleged to comprise the "Prepetition Collateral" are disclosed is improper.

**Objection No. 4 - Paragraph 9:  Postpetition Lien Perfection.**

13.     The M&M Lien Creditors do not object to the Interim Cash Collateral Order, together with any final cash collateral order, constituting sufficient evidence of the adequate protection replacement liens granted thereunder.  However, the M&M Lien Creditors object to any authorization that the Debtors provide or record any mortgage or security interest for the benefit of the Prepetition Secured Parties in property that the Prepetition Secured Parties did not hold a valid and perfected lien or security interest in prior to the petition date.

**Objection No. 5 - Paragraph 28:  Marshaling Provision.**

14.     Given the relative size of the RBL credit facility and the Debtors' statements regarding the value of their oil and gas interests, there is the potential for allocation of the "Prepetition Secured Indebtedness" to properties secured by the M&M Lien Creditors' liens in a manner designed to prejudice the rights of the M&M Lien Creditors.  Accordingly, no determination regarding the equitable doctrine of marshaling should be made at this early stage of this case before an adequate time for discovery and full fact development regarding the value

7

of the Debtors' oil and gas properties and extent, validity, priority and scope of encumbrances against the Debtors' oil and gas properties.

**Objection No. 6 - Paragraphs 4(c) and (e) and 29:   Adequate Protection Payments.**

15.     Any adequate protection payments made to or for the benefit of the Administrative Agent and/or Prepetition Secured Parties should only be made in accordance with and subject to the requirements of 11 U.S.C. § 506(b).

Dated:  December 6, 2019                          PACHULSKI STANG ZIEHL & JONES LLP

                                                  */s/ Colin R. Robinson*
                                                  Jeffrey N. Pomerantz (CA Bar No. 143717)
                                                  Robert J. Feinstein (NY Bar No. 1767805)
                                                  Colin R. Robinson (DE Bar No. 5524)
                                                  919 N. Market Street, 17th Floor
                                                  P.O. Box 8705
                                                  Wilmington, DE  19899-8705 (Courier 19801)
                                                  Telephone:  (302) 652-4100
                                                  Facsimile:  (302) 652-4400
                                                  Email: jpomerantz@pszjlaw.com
                                                         rfeinstein@pszjlaw.com
                                                         crobinson@pszjlaw.com

                                                  *Attorneys for Baker Hughes Oilfield Operations
                                                  LLC and GE Oil & Gas Pressure Control, LP;
                                                  Schlumberger Technology Corporation; Smith
                                                  International, Inc. and Nabors Drilling
                                                  Technologies USA, Inc*.