## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| MTE Holdings LLC, *et al.*, [1] | § § | Case No. 19-12269 (CSS) |
| Debtors. | § § § | Jointly Administered |
| | § | **Re: D.I. 49, 112** |

### SECOND INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 361, 362, 363, 503, AND 507, BANKRUPTCY RULES 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-referenced debtors, as debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Cases"), pursuant to sections 105, 361, 362, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things:

(a) authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral")[2], and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of this interim order (the "Interim Order"), and (ii) provide adequate protection to Natixis, New York Branch, as administrative agent (in such capacity, together with its successors in such capacity, the "Administrative Agent") and as Issuing Bank under the Credit Agreement (as defined herein), and the other Prepetition Secured Parties (as defined herein);

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); MDC Reeves Energy LLC (3644); and Ward I, LLC (6817). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, IN 46240.

[2] Notwithstanding anything set forth in this Interim Order, Cash Collateral shall not include the funds on deposit in the two bank accounts held at BNY Mellon and numbered 2775838400 and 2775888400, respectively, in the name of MTE Holdings LLC.

(b)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(c)     except to the extent of the Carve Out (as defined herein), and subject to entry of the Final Order, the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(d)     that this Court hold an interim hearing (the "Interim Hearing") to consider the relief sought in the Motion and entry of the proposed Interim Order;

(e)     that this Court schedule a final hearing (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order"); and

(f)     waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and the Interim Hearing having been held by the Court on December 16, 2019; and the Final Hearing having been scheduled by the Court for January 15, 2020 at 10:00 a.m. (Prevailing Eastern Time) pursuant to Bankruptcy Rule 4001, notice of the Motion and the relief sought therein having been given by the Debtors as set forth in this Interim Order; and the Court having considered the Budget (as defined herein) filed and served by the Debtors, offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that entry of this Interim Order is in the best interest of the Debtors and their respective estates and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Petition Date.** On October 22, 2019, MTE Holdings LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Court"). On October 23, 2019, MTE Partners LLC and Olam Energy Resources I LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court. On November 8, 2019, MDC Energy LLC ("MDC Energy") and the remaining above-captioned Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court. Each Debtor has continued with the management and operation of its respective businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the chapter 11 cases (the "Cases").

B.    **Credit Agreement.** Prior to the Petition Date, the Lenders (as defined herein) made certain loans and extensions of credit pursuant to and in accordance with the terms and conditions of that certain Credit Agreement dated as of September 17, 2018 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement," and together with all other documentation executed in connection therewith, including without limitation, the Guaranty Agreement (as defined in the Credit Agreement), the Letter of Credit Agreements (as defined in the Credit Agreement) the Security Agreement (as defined in the Credit Agreement) and all other Loan Documents (as defined in the Credit Agreement) (collectively, the "Credit Documents"), among MDC Energy, as Borrower, the Administrative Agent, the lenders from time to time party thereto (such lenders, the "Lenders"), the Issuing Bank of letters of credit thereunder (the "Issuing Bank") and each of the other "Secured Parties" (as defined in the Credit Agreement) (the Administrative Agent, the Lenders, the Issuing Bank and the other Secured Parties, collectively, the "Prepetition Secured Parties").

C.    **Debtors' Admissions With Respect to the Prepetition Secured Indebtedness.** Subject to entry of the Final Order, and subject only to the rights of parties in interest specifically

set forth in paragraph 23 of this Interim Order (and subject to the limitations thereon contained in

such paragraph), the Debtors admit, stipulate and agree that:

As of the Petition Date, the Debtors that are the Borrower and the Guarantors (as such terms are defined in the Credit Agreement) (collectively, the "Prepetition Loan Parties") under the Credit Documents were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the Lenders in the aggregate principal amount of approximately $56,867,644.20, plus any accrued interest, fees, letters of credit, and other amounts that may be due and payable thereunder (collectively, the "Prepetition Secured Indebtedness"). The Prepetition Secured Indebtedness includes any and all principal amounts owing or outstanding under the Credit Agreement, interest on, fees and other costs, expenses, and charges owing in respect of, such amounts, and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit, swap obligations, banking services, or other obligations outstanding thereunder. The Prepetition Secured Indebtedness, including the amounts specified in this paragraph, constitutes the legal, valid, and binding obligations of the Prepetition Loan Parties, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Secured Indebtedness. None of the Prepetition Loan Parties, either collectively or individually, have or shall assert any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Secured Indebtedness. The Prepetition Secured Indebtedness and any amounts previously paid to any Prepetition Secured Party pursuant to the terms of the Credit Agreement, on account thereof, or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in the Credit Documents or this Interim Order.

D.      **Debtors' Admissions With Respect to Collateral and Liens.** Subject to entry of

the Final Order, and subject only to the rights of parties in interest specifically set forth in

paragraph 23 of this Interim Order (and subject to the limitations thereon contained in such

paragraph), the Debtors admit, stipulate and agree that:

> i.      Pursuant to the Security Agreement, the Mortgages (as defined in the Credit Agreement), the Guaranty Agreement and all other Security Instruments, the Prepetition Loan Parties granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on, certain assets of the Prepetition Loan Parties  (as more specifically defined below, the "Prepetition Collateral") to and/or for the benefit of the Prepetition Secured Parties (the "Prepetition Liens"). The Prepetition Collateral includes any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, including Cash, securities, accounts and contract rights, of the Prepetition Loan Parties, in or upon which a Lien, Mortgage, deed of trust, or other security

interest has been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the applicable Credit Documents that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits.

ii.     The Credit Documents are valid and binding agreements and obligations of the Prepetition Loan Parties, and the Prepetition Liens constitute valid, binding, enforceable, and perfected first priority security interests and Liens, as that term is defined in the Credit Documents ("Liens"), which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in the Credit Documents or this Interim Order.

iii.    The Administrative Agent has properly perfected its security interests and Prepetition Liens in and on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets, and/or by filing UCC-1 financing statements, Mortgages, or other required documents against the Prepetition Loan Parties, and such Prepetition Collateral in the proper state or county offices for the perfection of such security interests and Liens.

E.     **Debtors' Admissions With Respect to Cash Collateral.** Subject to entry of the Final Order, and subject only to the rights of parties in interest specifically set forth in paragraph 23 of this Interim Order (and subject to the limitations thereon contained in such paragraph), the Debtors admit, stipulate and agree that all of the Prepetition Loan Parties' Cash, including all Cash proceeds of the Prepetition Collateral, the Prepetition Loan Parties' banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date) as of the Petition Date or deposited into the Prepetition Loan Parties' banking, checking or other deposit accounts with financial institutions after the Petition Date that is property of the Prepetition Loan Parties constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in value of their

respective interests in the Prepetition Collateral as of the Petition Date resulting from the use of Cash Collateral, the use, sale or lease of the Prepetition Collateral and/or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code. The foregoing shall not, nor shall any other provision of this Interim Order be construed as, a determination or finding that there has been or will be any diminution in value of Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.

F.     **Releases; Investigation.** Subject to entry of the Final Order, and subject only to the rights of parties in interest specifically set forth in paragraph 23 of this Interim Order (and subject to the limitations thereon contained in such paragraph), each of the Debtors hereby forever waives and releases any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Prepetition Secured Parties (solely in their capacities as such) arising prior to the date of the entry of this Interim Order, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

G.     **Need to Use Cash Collateral.** The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and have an immediate need to obtain use of the Prepetition Collateral, including the Cash Collateral (in the amount and in the manner set forth in the Budget) in order to, among other things, preserve and maintain the value of their assets and businesses and maximize the return to all creditors. An immediate and critical need exists for the Debtors to use the Cash Collateral, consistent with the Budget, for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering the Cases. The ability of the Debtors to obtain liquidity through the use of the

Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets. Absent entry of this Interim Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed.

H.      **Notice.** Notice of the requested relief sought at the Interim Hearing was provided by the Debtors to: (a) the Office of the U.S. Trustee for the District of Delaware (the "U.S. Trustee"), (b) counsel to the Administrative Agent, (c) the parties included on the Debtors' consolidated list of the thirty (30) largest unsecured creditors, (d) counsel to the Term Loan Administrative Agent,[3] (e) the United States Attorney's Office for the District of Delaware, (e) the Internal Revenue Service, (f) the United States Securities and Exchange Commission, (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (h) the state attorneys general for the states in which the Debtors conduct business; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; and (j) any other party required to be provided notice under Local Rule 9013-1(m). Given the nature of the relief sought, the foregoing notice of the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b) and (d) and 9014, and section 102(1) of the Bankruptcy Code as required by sections 361 and 363 of the Bankruptcy Code.

I.      **Consent by Prepetition Secured Parties.** The Administrative Agent, as collateral agent for the Lenders, consents to the Debtors' use of Cash Collateral, in accordance with and subject to the terms and conditions provided for in this Interim Order.

---

[3]      The "Term Loan Administrative Agent" means Riverstone Credit Management, LLC, as administrative agent pursuant to that certain Credit Agreement dated as of September 17, 2018 (as amended, restated, supplemented or otherwise modified from time to time, the "Term Loan Credit Agreement," and together with all other documentation executed in connection therewith, the "Term Loan Credit Documents") among MTE Holdings LLC, as Borrower, the Term Loan Administrative Agent, and the lenders from time to time party thereto (such lenders collectively, the "Term Loan Lenders").

J.      **Jurisdiction and Venue.** Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

K.      **Relief Essential; Best Interest.** The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Bankruptcy Local Rule 4001-2. The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and the property of their estates. It is in the best interest of the Debtors' estates that the Debtors be allowed to use the Cash Collateral under the terms hereof. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

L.      **Arm's-Length, Good Faith Negotiations.** The terms of this Interim Order were negotiated in good faith and at arm's-length between the Debtors and the Prepetition Secured Parties.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1.      **Motion Granted.** The Motion is granted on an interim basis to the extent set forth herein. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled with prejudice.

2.      **Final Hearing.** A final hearing on the relief requested in the Motion shall be held January 15, 2020, at 10:00 a.m. (Prevailing Eastern Time). Any party in interest

objecting to the relief sought at the Final Hearing shall file written objections no later January 8, 2020, at 4:00 p.m. (Prevailing Eastern Time).

3.     **Authorization to Use Cash Collateral; Budget Testing.**

(a)     Subject to the terms and conditions of this Interim Order, the Court hereby authorizes the Prepetition Loan Parties' use of Cash Collateral during the period beginning with the Petition Date and ending on 5:00 p.m. (prevailing Eastern Time) on January 17, 2020, solely and exclusively in a manner consistent with this Interim Order and the Budget, and for no other purposes.

(b)     As used in this Interim Order: (i) "Budget" means the budget attached as Exhibit 1 hereto, as such budget may be modified from time to time (A) by the Prepetition Loan Parties with the prior written consent of the Administrative Agent acting at the direction of the Required Lenders (as defined in the Credit Agreement) as set forth in this paragraph and in paragraph 4(f)(ix) of this Interim Order or (B) during the Interim Period, as may be agreed in writing by the Prepetition Loan Parties and the Administrative Agent acting at the direction of the Required Lenders (*provided* that any such modified budget shall not take effect as the Budget on less than two (2) business days' notice to the U.S. Trustee, counsel to the Term Loan Administrative Agent, counsel to any Ad Hoc Group of Statutory Lienholders and counsel to B&L Pipeco Services); and (ii) "Budget Period" means the initial four-week period set forth in the Budget in effect at such time.

(c)     The Prepetition Loan Parties shall spend Cash Collateral in accordance with the Budget on a line-by-line basis, subject to Permitted Deviations and Non-Conforming Uses (each as defined below). Permitted Deviations shall be tested on the third business day following the last day of each Budget Period (each such date, a "Testing Date"). On or before 5:00 p.m. (prevailing Eastern Time) on each Testing Date, the Prepetition Loan Parties shall prepare and deliver to the Administrative Agent, the Term Loan Administrative Agent, counsel to any Ad Hoc Group of Statutory Lienholders and counsel to B&L Pipeco Services, in form and substance reasonably satisfactory to the Administrative Agent, a variance report for the immediately preceding Budget Period (the "Variance Report") setting forth: (i) the disbursements on a line-by-line basis of the Prepetition Loan Parties for line items other than capital expenditures and Non-Tested Disbursements (as defined below) during the applicable Budget Period, (ii) any variance (whether positive or negative, expressed as a percentage) on a line-by-line basis, for disbursements made during such Budget Period by the Prepetition Loan Parties against the projected disbursements set forth in the applicable Budget and (iii) any variance (whether positive or negative, expressed as a percentage) between the aggregate disbursements for capital expenditures for the Budget Period set forth in the applicable Budget. In addition, no later than 5:00 p.m. (prevailing Eastern time) on the last calendar day of each week, the Prepetition Loan Parties shall prepare and deliver to the Administrative Agent, the Term Loan Administrative Agent, counsel to any Ad Hoc Group of Statutory

Lienholders and counsel to B&L Pipeco Services, in form and substance reasonably satisfactory to the Administrative Agent, a variance report comparing the Prepetition Loan Parties' actual receipts and disbursements for the prior calendar week and the prior four calendar weeks (on a cumulative basis) as reflected in the applicable Budget for such weeks (the "Cumulative Variance Report"), which Cumulative Variance Report shall include a report from the Debtors identifying and addressing any variance of actual performance to projected performance for the prior week.

(d)     The Prepetition Loan Parties shall not allow, during any Budget Period, the Prepetition Loan Parties' actual Cash expenses and disbursements (i) during such Budget Period to be more than 115% of the projected Cash expenses and disbursements for any particular line item for such Budget Period, or (ii) for any week during such Budget Period to be more than 110% of the projected Cash expenses and disbursements in the aggregate for such week, in each as set forth in the Budget (such deviations from budgeted amounts satisfying both (i) and (ii), the "Permitted Deviations"); *provided* that the Cash expenses and disbursements considered for determining compliance with this covenant shall exclude (x) the Prepetition Loan Parties' disbursements and expenses in respect of professional fees of the Prepetition Loan Parties during such Budget Period, (y) interest and financing fees paid during such Budget Period, and (z) net hedge settlements during such Budget Period ((x), (y) and (z), collectively, "Non-Tested Disbursements"); *provided, further* that the Prepetition Loan Parties may carry forward budgeted but unused disbursements set forth in the Budget for any week during the Budget Period for use in a subsequent week in the same Budget Period or the immediately succeeding Budget Period.

(e)     The Administrative Agent acting at the direction of the Required Lenders may, in its sole discretion, agree in writing to the use of Cash Collateral in a manner or amount which does not conform to the Budget (other than Permitted Deviations and the Line Item Carry Forward) (each such use of Cash Collateral, a "Non-Conforming Use"). If such written consent is given, the Prepetition Loan Parties shall be authorized pursuant to this Interim Order to use Cash Collateral for any such Non-Conforming Use without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Interim Order for any such use of Cash Collateral. The Prepetition Loan Parties shall provide notice of any Non-Conforming Use to the U.S. Trustee, counsel for the Term Loan Administrative Agent, counsel to any Ad Hoc Group of Statutory Lienholders, counsel to B&L Pipeco Services, and counsel for any Official Committee of Unsecured Creditors (the "Committee"), at such time as permission for such Non-Conforming Use is requested from the Administrative Agent.

(f)     For the avoidance of doubt, pursuant to this Interim Order, Cash Collateral may not be used (i) by any entity which is not a Prepetition Loan Party or (ii) to pay any expense of any entity which is not a Prepetition Loan Party.

4.        **Adequate Protection for the Prepetition Secured Parties.** In addition to all the existing security interests and Liens granted to or for the benefit of the Prepetition Secured Parties in and with respect to the Prepetition Collateral, including the Cash Collateral, and in addition to all valid and nonavoidable statutory liens held by statutory lien creditors, including any liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, under applicable law or holder of liens arising under a joint operating agreement (each a "Statutory Lienholder"), as adequate protection for, and to secure payment of an amount equal to, the Collateral Diminution (as defined herein), and as an inducement, respectively, to the Prepetition Secured Parties and the Statutory Lienholders to permit the Prepetition Loan Parties' use of the Cash Collateral and oil and gas production proceeds[4] as provided for in this Interim Order, the Prepetition Loan Parties hereby grant the following adequate protection to the extent of any Collateral Diminution:

(a)        **Adequate Protection Liens.** Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), and subject in all cases to the Carve-Out (as defined herein), effective as of the Petition Date and in each case perfected without the necessity of the execution by the Prepetition Loan Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Administrative Agent is hereby granted, for the benefit of the Prepetition Secured Parties, to secure payment of an amount equal to the Collateral Diminution, a valid, binding, continuing, enforceable, fully-perfected first priority senior (except as otherwise provided in this paragraph 4(a) with respect to the Permitted Prior Liens) security interest in and lien on (all such liens and security interests, the "Administrative Adequate Protection Liens") the Prepetition Collateral and all other of the Prepetition Loan Parties' now owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, all prepetition and postpetition property of the Prepetition Loan Parties' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, all inventory, all oil, gas and other hydrocarbons and all products and substances derived therefrom (including all raw materials and work in process

---

[4]        The Prepetition Secured Parties assert that the oil and gas production proceeds are the Prepetition Secured Parties' Cash Collateral, the Statutory Lienholders dispute that contention, and all of the parties' rights are reserved.

therefore, finished goods thereof, and materials used or consumed in the manufacture or production thereof), all goods, all accounts, Cash, payment intangibles, deposit accounts, accounts receivable, other rights to payment, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, all interest rate hedging agreements, commodity hedging agreements and similar agreements, owned real estate, real property leaseholds, oil and gas leases, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action and all proceeds of the foregoing (excluding Avoidance Actions, but including proceeds of Avoidance Actions, subject to entry of a Final Order) (all property identified in this paragraph 4(a) being collectively referred to as the "Collateral"), subject only to valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and that are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date (such liens, the "Permitted Prior Liens"), in which case the Administrative Adequate Protection Liens shall be immediately junior in priority to such Permitted Prior Liens.  Notwithstanding anything to the contrary contained herein, nothing in this order shall modify the priority of any valid, perfected and non-avoidable (by final judgment) statutory lien or lien arising under a joint operating agreement in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and each such Statutory Lienholder, solely to the extent of any decrease in the value of such Statutory Lienholder's interest in their collateral, shall be granted (i) postpetition replacement liens against any property of the applicable Debtor (the "Applicable Debtor") that owns the assets upon which such Statutory Lienholder's prepetition lien attaches (subject to any validly perfected, unavoidable prepetition liens) and (ii) superpriority adequate protection claims against the Applicable Debtor (subject in each case to the Carve Out) as adequate protection. The relative priorities of all adequate protection liens and adequate protection claims shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date.

(b)     **Adequate Protection Claims.** Effective as of the Petition Date, and subject only to the Carve-Out, an allowed administrative expense claim in the amount of any Collateral Diminution arising pursuant to section 507(b) of the Bankruptcy Code against each of the Prepetition Loan Parties on a joint and several basis with the priority set forth in Section 507(b) of the Bankruptcy Code (the "Administrative Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Prepetition Loan Parties, excluding the Carve-Out, and including, without limitation, subject to entry of a Final Order, the proceeds or property recovered in respect of any Avoidance Actions. For avoidance of doubt, the Administrative Adequate Protection Claims shall include amounts due to the Prepetition Secured Parties under Section 12.03 of the Credit Agreement for all out-of-pocket expenses

incurred by any Agent, the Issuing Bank or any Lender (including the fees, charges and disbursements of any and all counsels for any Agent, the Issuing Bank or any Lender) incurred in connection with these Cases.

(c)    **Adequate Protection Payments.** The Prepetition Loan Parties are authorized and directed to pay to the Administrative Agent for the ratable benefit of the Prepetition Secured Parties adequate protection payments on the last business day of each calendar month after the entry of the Interim Order, in each case, in an amount equal to all accrued and unpaid (i) prepetition and postpetition interest, and (ii) without duplication of the fees and expenses payable under paragraph 4(e) below, prepetition or postpetition fees and costs due and payable under the Credit Agreement (including, without limitation, interest on loans, breakage costs and accrued fees owing to the Administrative Agent). For the avoidance of doubt, the payment of adequate protection payments pursuant to this paragraph shall be without prejudice to the rights of the Administrative Agent and the Prepetition Secured Parties to assert claims for payment of additional interest at any other rates in accordance with the Credit Agreement, *provided, however*, that all parties' rights are reserved to contest such an assertion subject to the limitations set forth in paragraph 23 of this Interim Order.

(d)    **Other Covenants.** The Prepetition Loan Parties shall maintain their Cash management arrangements in a manner consistent with this Court's December 9, 2019 interim order granting the Debtors' Cash management motion. The Prepetition Loan Parties shall not use, sell or lease any material assets with an aggregate fair market value in excess of $250,000 in any single transaction or series of related transactions outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Administrative Agent, counsel to any Ad Hoc Group of Statutory Lienholders and counsel to B&L Pipeco Services at least five (5) business days prior to the date on which the Prepetition Loan Parties seek the authority of this Court for such use, sale or lease; provided; that the transferor and transferee in connection with such transactions are not affiliates. The Prepetition Loan Parties shall comply with the covenants contained in Sections 8.06 and 8.07 of the Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Collateral.

(e)    **Fees and Expenses.** As additional adequate protection and subject to paragraph 29 below, the Prepetition Loan Parties shall pay in Cash: (i) within ten (10) calendar days after the Prepetition Loan Parties' and U.S. Trustee's receipt of invoices therefor, the professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the Administrative Agent and Prepetition Secured Parties under the Credit Agreement arising prior to the Petition Date; (ii) on a monthly basis within ten (10) calendar days of the Prepetition Loan Parties' and U.S. Trustee's receipt of invoices therefor, the fees, expenses and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel and other third- party consultants, including financial

advisors) incurred by the Administrative Agent and Prepetition Secured Parties under the Credit Agreement arising subsequent to the Petition Date.

(f)     **Reporting Requirements.** As additional adequate protection to the Prepetition Secured Parties, the Prepetition Loan Parties shall comply with the reporting requirements set forth in Article VIII of the Credit Agreement, including without limitation, Sections 8.01, 8.02, 8.12, 8.13 and 8.15 thereof, and shall provide the following additional reporting to the Administrative Agent (subject to any applicable limitations set forth below, and it being understood that any information shared with the Administrative Agent may also be shared by the Administrative Agent with the Prepetition Secured Lenders), with copies of all such reporting shared with the Administrative Agent delivered to counsel to the Term Loan Administrative Agent simultaneously, and to any statutory committee and the U.S. Trustee upon request:

(i)     Weekly (or less frequently as may be agreed to between the Prepetition Loan Parties and the Administrative Agent) calls with the Administrative Agent and its advisors and the Term Loan Administrative Agent and its advisors;

(ii)     At the times specified in paragraph 3(c) hereof, the Variance Report and Cumulative Variance Reports required by paragraph 3(c) hereof;

(iii)     On each business day, the Prepetition Loan Parties shall provide the Administrative Agent and the Term Loan Administrative Agent with a report detailing gross and net production volumes for the previous business day;

(iv)     If any well serving as Collateral for the Prepetition Secured Parties becomes shut-in or nonproducing for more than five (5) consecutive days for any reason other than ordinary course maintenance or workovers, the Prepetition Loan Parties shall notify the Administrative Agent and the Term Loan Administrative Agent promptly upon the Prepetition Loan Parties receiving notice of or having actual knowledge of such shut-in or nonproduction;

(v)     A copy of each update to the Prepetition Loan Parties' business plan as soon as reasonably practicable after it becomes available, together with a reconciliation to the prior business plan;

(vi)     In-person or teleconference presentations by the Prepetition Loan Parties and/or their advisors to the Prepetition Secured Parties, at such times as the Administrative Agent may reasonably request in writing (including via electronic mail), and at mutually agreeable places (to the extent such presentations are in-person).

(vii)     In-person or teleconference presentations by MTE Holdings LLC and the Prepetition Loan Parties and/or their advisors to the Term Loan Lenders, at such times as the Term Loan Administrative Agent may reasonably request in writing (including via electronic mail), and at mutually agreeable places (to the extent such presentations are in-person);

(viii)    Promptly, but in any event by the twentieth (20th) business day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail reasonably acceptable to the Administrative Agent, of (a) the Prepetition Loan Parties' accounts payable and payments, (b) an accounts payable aging and an production receivable aging, and (c) all written demands or claims related to or asserting any liens in respect of property or assets of the Prepetition Loan Parties (including liens imposed by law, such as landlord's, vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens and other similar liens) if the amount demanded or claimed exceeds $100,000 individually or $500,000 in the aggregate;

(ix)    On or before 5th business day before the end of each Budget Period, a rolling 5-week Cash flow forecast of the Prepetition Loan Parties substantially in the form of the Budget (each, a "Proposed Budget"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget), upon written approval by the Administrative Agent, shall become the Budget effective as of the first day of the fifth week of the prior Budget (*provided* that a Proposed Budget shall not take effect as the Budget on less than two (2) business days' notice to any Committee, if any);

(x)    Promptly, and in any event by the thirtieth (30th) calendar day of each month or by the fortieth (40th) calendar day following a month in which a fiscal quarter ends, beginning with the year-to-date period ended November 30, 2019, a monthly and year-to-date income statement and balance sheet; and

(xi)    As soon as reasonably practicable after written request from the Administrative Agent, the Prepetition Loan Parties will provide the Administrative Agent and the Prepetition Secured Lenders with reasonable access to any consultant, turnaround management, broker or financial advisory firm retained by any Prepetition Loan Party in any of the Chapter 11 Cases and, if requested, copies of all retention agreements for each such consultant.

(g)    **Reporting Requirements.** As additional adequate protection to the Statutory Lienholders and holders of Permitted Prior Liens, the Debtors shall provide, upon written request by such Statutory Lienholder or counsel to any Ad Hoc Group of Statutory Lienholders or and counsel to B&L Pipeco Services, the following:

(i)    Copies of the information referenced above in paragraphs (4)(f)(ii),(iii), (iv), (v), (viii), (ix), and (x); and

(ii)    Copies of gross and net production data reflecting hydrocarbon volumes produced postpetition from the specific wells relating to such Statutory Lienholders' (or the Statutory Lienholders on such Ad Hoc Committee of Statutory Lienholders) alleged liens.

5.     **Adequate Protection of the Term Loan Administrative Agent and the Term Loan Lenders**. In addition, to resolve objections to this Interim Order and to fully protect the rights of the Term Loan Administrative Agent and the Term Loan Lenders to secure payment of an amount equal to any Collateral Diminution pursuant to paragraph 31 of this Interim Order, (i) effective as of October 22, 2019, and in each case perfected without the necessity of the execution by the MTE Holdings LLC (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Term Loan Administrative Agent is hereby granted, for the benefit of the Term Loan Lenders, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien on the Collateral (as defined in the Term Loan Credit Documents) and (ii) an allowed administrative expense claim in the amount of any Collateral Diminution arising pursuant to section 507(b) of the Bankruptcy Code against MTE Holdings LLC with the priority set forth in Section 507(b) of the Bankruptcy Code which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of MTE Holdings LLC.

6.     **Collateral Diminution.** For purposes of this Interim Order, "Collateral Diminution" shall mean an amount equal to as applicable, (a) the diminution of the value from and after the Petition Date of the Prepetition Secured Parties' and the Statutory Lienholders' interests in the Prepetition Collateral upon which any of the Prepetition Secured Parties or Statutory Lienholders have valid, perfected, enforceable and non-avoidable liens or security interests, resulting from the use, sale, or lease of the Prepetition Collateral, including Cash Collateral (whether in accordance with the terms and conditions of this Interim Order or otherwise), or the imposition of the automatic stay or (b) the diminution in value from and after

October 22, 2019 of the Term Loan Lenders' interests in the Collateral (as defined in the Term Loan Credit Agreement Documents) resulting from the use, sale, or lease of the Collateral (as defined in the Term Loan Credit Agreement Documents) or the imposition of the automatic stay. Cash payments made to the respective Prepetition Secured Parties pursuant to the Interim Order shall reduce each such respective Prepetition Secured Parties' Collateral Diminution on a dollar for dollar basis.

7.    **Priority of Administrative Adequate Protection Liens and Administrative Adequate Protection Claims.** Except for (i) the Carve Out and (ii) as otherwise provided in paragraph 4, the adequate protection liens and adequate protection claims granted to the Prepetition Secured Parties and the Statutory Lienholders pursuant to paragraph 4 of this Interim Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise.

8.    **Carve Out.**

(a)    As used in this Interim Order, "Carve Out" shall mean the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) all allowed unpaid fees and disbursements included in the Budget (whether allowed by interim order, final order, procedural order or otherwise) (the "Allowed Professional Fees") and incurred by professionals retained by the Prepetition Loan Parties in rendering services to the Prepetition Loan Parties only, and (iii) subject to the limitations set forth in paragraphs 8 and 23 of this Interim Order, any Committee (collectively, the "Professional Persons"), and all expenses of members of any such Committee included in the Budget and allowed pursuant to section 503(b)(3)(F) of the Bankruptcy Code incurred at any time before the delivery by the Administrative Agent of written notice (via electronic mail, overnight delivery or hand delivery) to the Prepetition Loan Parties, counsel to the Prepetition Loan Parties, the U.S. Trustee, and counsel to any Committee, stating that a Termination Date or Termination Event (as such terms are defined herein) has occurred and is continuing and that the Post-Carve Out Notice Cap has been triggered (a "Carve

<u>Out Notice</u>"), in each case, whether allowed by the Court prior to or after delivery of a Carve Out Notice; *provided* that (i) Cash Collateral may only be utilized to pay up to the aggregate amounts set forth for Professional Persons in the Budget during such period prior to the delivery of the Carve Out Notice, and (ii) the Allowed Professional Fees of the Professional Persons incurred on or after the first business day following delivery of the Carve Out Notice in an aggregate amount not to exceed $100,000 (the "<u>Post-Carve Out Notice Cap</u>") and reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000. Notwithstanding anything to the contrary in this Interim Order, the Allowed Professional Fees payable from the Carve Out to each Professional Person shall be limited to the lesser of (x) the allowed amount of such Allowed Professional Fees and (y) the budgeted amounts for such professional set forth in the professional fee schedule included in the Budget.

(b)     Upon delivery of a Carve Out Notice, the Carve Out Notice shall constitute a demand to the Prepetition Loan Parties to utilize Cash on hand as of the date of such notice and any available Cash thereafter held by the Prepetition Loan Parties to fund a segregated account held with the Administrative Agent in trust for the benefit of the Professional Persons (the "<u>Carve Out Reserve</u>") in an amount equal to the sum of (A) all fees and expenses required to be paid pursuant to subparagraphs (i) and (ii) in the definition of Carve Out above (subject to the Budget), (B) all billed and unpaid monthly fees and expenses of all Professional Persons (including outstanding holdbacks) pursuant to subparagraphs (i) and (ii) in the definition of Carve Out above (subject to the Budget); (C) all unbilled fees and expenses of Professional Persons incurred prior to delivery of the Carve Out Notice pursuant to subparagraphs (i) and (ii) in the definition of Carve Out above (subject to the Budget); (D) all billed and unbilled expenses of members of any Committee allowable pursuant to section 503(b)(3)(F) (subject to the Budget); and (E) the Post-Carve Out Notice Cap. The failure of the Carve Out Reserve to satisfy in full the amount set forth in the Carve Out shall not affect the priority of the Carve Out.

(c)     Notwithstanding anything to the contrary in any of the Credit Documents or this Interim Order, following delivery of a Carve Out Notice, the Administrative Agent and the Prepetition Secured Parties shall not, and shall not direct any entity to, sweep or foreclose on Cash (including Cash received as a result of the sale or other disposition of any assets) of the Prepetition Loan Parties until the Carve Out Reserve has been fully funded.

(d)     Any payment or reimbursement of Allowed Professional Fees made to any Professional Persons prior to the delivery of the Carve Out Notice shall not reduce the Carve Out. Any payment or reimbursement of Allowed Professional Fees made to any Professional Persons on or after the delivery of the Carve Out Notice shall permanently reduce the Carve Out on a dollar-for-dollar basis. For the avoidance of doubt, the funding or payment of the Carve Out from Cash on hand or other available Cash shall not reduce Prepetition Secured Indebtedness.

(e)     Notwithstanding anything in this Interim Order to the contrary, no portion of the Carve Out or any other Prepetition Collateral or Collateral, shall be used for professional fees and expenses (a) incurred by any Debtor that is not a Prepetition Loan Party or (b) incurred for any litigation or threatened litigation against any of the Prepetition Secured Parties or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the Prepetition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Prepetition Secured Indebtedness or the security interests or liens held by the Prepetition Secured Parties in the Prepetition Collateral or Collateral; *provided*, *however*, that (i) an aggregate of $50,000 from the Carve Out may be used to pay Allowed Professional Fees and expenses of any Committee to investigate the claims and liens of the Prepetition Secured Parties and (ii) the Prepetition Loan Parties may use Cash Collateral to pay Allowed Professional Fees incurred by the Debtors in order to respond to discovery requests by any Committee in connection with such investigation, subject to the Budget.

9.      **Postpetition Lien Perfection.** Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, recordings, mortgages or other documents or taking possession or control of any Collateral, this Interim Order shall be sufficient evidence of the Prepetition Secured Parties' and Statutory Lienholders' perfected security interests and liens granted in the Collateral pursuant to this Interim Order. Notwithstanding the foregoing, the Debtors are authorized and directed to execute such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Administrative Agent and/or Statutory Lienholders to provide further evidence of the perfection of the Prepetition Secured Parties' and/or Statutory Lienholders' respective security interests and liens in the Collateral as provided for herein. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

10.     **Inspection Rights.** In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Credit Documents and the Term Loan Administrative Agent and the Term Loan Lenders have under the Term Loan Credit Documents,

upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtors shall permit representatives, agents and employees of the Administrative Agent and the Term Loan Administrative Agent to (i) have reasonable access to and inspect and copy the Debtors' books and records, including all records and files of the Debtors pertaining to the Prepetition Collateral and the Collateral, (ii) have reasonable access to and inspect the Debtors' properties and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

11. **Termination.** Subject to the Waiting Period (as defined herein) and paragraphs 8 and 13, the Debtors' right to use the Cash Collateral pursuant to this Interim Order shall automatically terminate (the date of any such termination, the "Termination Date") without further court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (g) below (such events, collectively, the "Termination Events"):

(a) the passing of 5:00 p.m. (prevailing Eastern Time) on January 17, 2020, unless extended with the written consent of the Administrative Agent, acting at the direction of the Required Lenders, in its sole discretion, which extension thereof shall be effective without further application to, or approval by, the Court; provided, however, that in no event shall the Debtors' right to use the Cash Collateral pursuant to this Interim Order extend beyond January 17, 2020 without opportunity for a hearing before the Court unless with the prior written consent of the Term Loan Administrative Agent, acting at the direction of the Requisite Lenders (as defined in the Term Loan Credit Agreement), the U.S. Trustee, and counsel to the Committee;

(b) the violation of any terms of this Interim Order by the Debtors that is not cured within two (2) business days of receipt by the Debtors of notice of such default, violation or breach;

(c) entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Interim Order without the express written consent of the Administrative Agent, acting at the direction of the Required Lenders;

(d) any Prepetition Loan Party's case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or, without the express written consent of the Administrative Agent acting at the direction of the Required Lenders, a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is

appointed in any Prepetition Loan Party's case, or any Prepetition Loan Party seeks entry of an order accomplishing any of the foregoing;

(e)     except as otherwise provided in this Interim Order, an order is entered granting another claim or lien pari passu with or senior to the Prepetition Liens, Administrative Adequate Protection Liens or Administrative Adequate Protection Claims granted to the Prepetition Secured Parties under this Interim Order or an order of the Court is entered reversing, staying for a period in excess of five (5) business days, vacating or otherwise amending, supplementing, or modifying this Interim Order in a manner materially adverse to the Prepetition Secured Parties, in each case without the written consent of the Administrative Agent acting at the direction of the Required Lenders;

(f)     any proceeding is commenced by any Debtor seeking, or otherwise consenting to, (x) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, Prepetition Liens, Prepetition Secured Claims, Administrative Adequate Protection Liens or Administrative Adequate Protection Claims or (y) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or (ii) any Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Secured Parties, except any motion or other pleading otherwise permitted by this Interim Order;

(g)     the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Administrative Agent or the Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral without the written consent of the Administrative Agent acting at the direction of the Required Lenders, which consent may be withheld in its sole discretion;

(h)     the effective date of any confirmed chapter 11 plan for the Prepetition Loan Parties;

(i)     the entry of a subsequent order of the Court (i) terminating the Prepetition Loan Parties' use of Cash Collateral or (ii) authorizing the use of Cash Collateral by any Debtor that is not a Prepetition Loan Party;

(j)     the failure by the Prepetition Loan Parties to make any payment required pursuant to this Interim Order when due;

(k)     the failure by the Debtors to deliver to the Administrative Agent any of the documents or other information required to be delivered pursuant to this Interim Order when due or any such documents or other information shall contain a material misrepresentation to the extent such failure is not cured within two (2) business days of receipt by the Debtors of notice of such default, *provided*,

*however*, that such cure period does not extend the Waiting Period (as defined below);

(l)     failure to adhere to the Budget except with respect to Permitted Deviations or Non-Conforming Uses to the extent such failure is not cured within two (2) business days of receipt by the Debtors of notice of such default, *provided*, *however*, that such cure period does not extend the Waiting Period;

(m)     the failure of the Debtors to observe or perform any of the material terms or material provisions contained herein to the extent such failure is not cured within two (2) business days of receipt by the Debtors of notice of such default, *provided*, *however*, that such cure period does not extend the Waiting Period;

(n)     the entry of an order of this Court approving the terms of any debtor in possession financing for any of the Prepetition Loan Parties; and

(o)     the Debtors' actual receipts during any period from the commencement of the Budget period through the last day of the same Budget period fall more than 10% below the Debtors' projected receipts for that same period; *provided*, *however*, that in such event, the Debtors may cure any default by decreasing expenses by an equal percentage.

12.     **Remedies After a Termination Date.** Subject to entry of the Final Order, and subject to the provisions of this paragraph 12 and paragraphs 8 and 13, the Debtors' authority to use Cash Collateral shall automatically terminate upon five (5) business days' prior written notice (the "Waiting Period") to the Debtors (copies of which shall be filed on the docket for these cases and provided to counsel to the Debtors, counsel to any Committee, counsel to any Ad Hoc Group of Statutory Lienholders, counsel to B&L Pipeco Services and the U.S. Trustee) given upon the occurrence or during the continuance of a Termination Event all without further order or relief from the Court. Unless otherwise ordered by the Court, at the end of the Waiting Period, the automatic stay under Bankruptcy Code section 362 shall be deemed vacated and modified to the extent necessary to permit the Administrative Agent and the Prepetition Secured Parties to exercise all rights and remedies against the Prepetition Collateral and the Collateral, including the Cash Collateral, provided for in this Interim Order, the Credit Documents, and applicable law. During the Waiting Period, the Administrative Agent and Prepetition Secured

Parties consent to a hearing on an expedited basis; *provided* that (x) if a hearing to consider the foregoing is requested to be heard before the end of the Waiting Period but is scheduled for a later date by the Court, the Waiting Period shall be automatically extended to the date of such hearing, but in no event later than eight (8) business days after delivery of the notice commencing the Waiting Period; and (y) the only issues that may be raised by the Debtors in connection with or at such hearing shall be (A) whether, in fact, a Termination Event has occurred and is continuing and (B) the quantum of any Collateral Diminution. In addition, during the Waiting Period, except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to contest in good faith whether a Termination Event has occurred and/or is continuing and the quantum of any Collateral Diminution. Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief. The Debtors hereby waive any right to seek relief, including without limitation under Bankruptcy Code section 105, to the extent such relief would in any way impair or restrict the rights and remedies of the Administrative Agent and the Prepetition Secured Parties set forth in this Order. Any delay or failure of the Administrative Agent or Lenders to exercise rights under the Credit Documents or this Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding anything in this paragraph to the contrary, after notice and hearing, the Court may order such relief as it determines is appropriate following a Termination Event, which relief may or may not include an authorization for the foreclosure or repossession of assets.

13.    **Payments Free and Clear.**  Subject to entry of a Final Order, any and all payments or proceeds remitted to the Administrative Agent on behalf of the Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be irrevocable (subject to paragraph 23 of this Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b).

14.    **Application of Collateral Proceeds.** Subject to entry of an order of this Court to the contrary, following the occurrence of a Termination Event, the Debtors are hereby authorized to fund the Carve-Out Reserve from 100% of all collections on, and proceeds of, the Prepetition Collateral and the Collateral, including, without limitation, all accounts receivable collections, asset sale proceeds of sales of hydrocarbons, inventory, fixed assets, and any other assets, including sales in and outside the ordinary course of business, and all other Cash or Cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time. Unless otherwise ordered by the Court, the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the Prepetition Secured Parties to retain and apply all collections, remittances, and proceeds of the Prepetition Collateral and the Collateral subject to and in accordance with this Interim Order and the Credit Documents to the Prepetition Secured Indebtedness in accordance with the provisions of this Interim Order and the Credit Documents (subject to the Carve Out, as described above).

15.    **Swap Termination Value.** Subject to the limitation set forth in paragraph 22 of this Interim Order, any Swap Termination Value (as defined in the Credit Agreement)

owed to the Prepetition Loan Parties in respect one or more Swap Agreements (as defined in the Credit Agreement) are Cash Collateral of the Prepetition Secured Parties and, at the discretion of the Prepetition Secured Parties, may be setoff and applied against the Prepetition Secured Indebtedness outstanding under the Credit Agreement. This Interim Order is without prejudice to the rights of the Prepetition Secured Parties under the Bankruptcy Code safe harbor provisions found in 11 U.S.C. §§ 362, 546, 555, 556, 559, 560, 561, or otherwise.

16.     **Limitation on Charging Expenses Against Collateral.** Subject to entry of the Final Order, all rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases.

17.     **Reservation of Rights of the Prepetition Secured Parties and Statutory Lienholders.** This Interim Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition Secured Parties and Statutory Lienholders to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take any other action in the Cases and to appear and be heard in any matter raised in the Cases, or any party in interest from contesting any of the foregoing, and (ii) any and all rights, remedies, claims and causes of action which the Administrative Agent, and the Prepetition Secured Parties may have against any non-Debtor party liable for the Prepetition Secured Indebtedness. For all adequate protection purposes throughout the Cases, the Prepetition Secured Parties and the Statutory Lienholders shall be deemed to have requested relief from the automatic stay and adequate

protection for any Collateral Diminution from and after the Petition Date. For the avoidance of doubt, such request will survive termination of this Interim Order.

18. **Modification of Automatic Stay.** The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

19. **Survival of Interim Order.** The provisions of this Interim Order shall be binding upon any trustee appointed during the Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to chapter 7 cases, dismissing the Cases under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization. The terms and provisions of this Interim Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Interim Order shall continue notwithstanding any conversion of the Cases to chapter 7 cases under the Bankruptcy Code, dismissal of the Cases or confirmation or consummation of any plan(s) of reorganization. Subject to the limitations described in paragraph 23 of this Interim Order, the adequate protection payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made); *provided* that recharacterization will be allowed to the extent otherwise provided in this Order. Provided, if a Final Order is entered, then this Interim Order will bind the chapter 7 Estate only to the extent provided in the Final Order.

20.    **No Liability to Third Parties.** With respect to any approval or disapproval of expenditures set forth in the Budget including, without limitation, any Permitted Deviation or Non-Conforming Use, the Administrative Agent and the other Prepetition Secured Parties shall not: (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

21.    **Binding Effect.** The terms of this Interim Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Interim Order by this Court.

22.    **Reversal, Stay, Modification or Vacatur.** In the event the provisions of this Interim Order are reversed, stayed, modified or vacated by court order following notice and any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties and Statutory Lienholders granted pursuant to this Interim Order. Notwithstanding any such reversal, stay, modification or vacatur by court order, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Interim Order arising prior to the Administrative Agent's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Secured Parties, holders of Permitted Prior Liens and Statutory Lienholders shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted

herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Interim Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

23.    **Reservation of Certain Third Party Rights and Bar of Challenge and Claims.** The Debtors' admissions and releases contained in paragraphs C, D, E and F of this Interim Order shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest, including any Committee, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entities right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than the date that is the latest of (A) seventy-five (75) days from entry of this Interim Order for all parties other than any Committee for the Prepetition Loan Parties; and (B) the date that is sixty (60) days from the date of formation of any Committee for the Prepetition Loan Parties for any such Committee, or such later date as may be agreed with the prior written consent of the Administrative Agent (the "Challenge Deadline"), (x) challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Indebtedness or the Prepetition Liens, or (y) otherwise asserting or prosecuting any action for preference, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests and defenses against the Prepetition Secured Parties on behalf of the Debtors' estates (collectively, "Challenges"); *provided*, *however*, that the filing of a motion for derivative standing shall toll the Challenge Deadline with respect to any proposed Challenge described in such motion, until five (5) days after such motion is determined by a final and unappealable order; and (2) the plaintiff authorized to bring a Challenge obtains relief in any

such timely and properly filed adversary proceeding or contested matter.  Notwithstanding the

foregoing, if a Chapter 7 or 11 trustee is appointed  prior to the expiration of the Challenge

Deadline, he or she shall have until the later of the expiration of the Challenge Deadline or ten

(10) days after the date of his or her appointment to assert a Challenge, subject to extension by

the Court for cause, and if the Committee has asserted a Challenge prior to the Challenge

Deadline, the Chapter 7 trustee will stand in the shoes of the Creditors' Committee in such

Challenge.  If no such Challenge is properly filed as of such dates or the plaintiff's claims are

dismissed or denied by final and unappealable order in any such proceeding or matter, then: (a)

the Debtors' admissions and releases contained in paragraphs C, D, E and F of this Interim Order

shall be binding on all parties in interest, including any Committee for the Prepetition Loan

Parties; (b) the obligations of the Debtors under the Credit Documents shall constitute allowed

claims for all purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition

Secured Parties' security interests in and liens upon the Prepetition Collateral and the Collateral

shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first

priority security interests and liens, not subject to recharacterization, subordination or otherwise

avoidable; and (d) the Prepetition Secured Indebtedness and the Prepetition Liens on the

Prepetition Collateral and the Collateral shall not be subject to any other or further challenge by

any Committee for the Prepetition Loan Parties or any other party in interest seeking to exercise

the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such

adversary proceeding or contested matter is properly filed as of such dates, the Debtors'

admissions and releases contained in paragraphs C, D, E and F of this Interim Order shall

nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph)

except to the extent that such admissions and releases were expressly challenged in such

adversary proceeding or contested matter. Nothing contained in this Interim Order shall be deemed to grant standing to any Committee for the Prepetition Loan Parties or any other party to commence any such adversary proceeding or contested matter. Notwithstanding anything contained in this Order to the contrary, and for the avoidance of doubt, Statutory Lienholders and holders of Permitted Prior Liens shall not be required to file an adversary proceeding or contested matter challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Indebtedness or the Prepetition Liens prior to the expiration of the Challenge Deadline in order to preserve or protect the priority of their respective statutory liens or security interests under applicable law.  Nothing in this order shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

24.    **Enforceability; Waiver of Any Applicable Stay.** This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

25.    **No Impact on Certain Contracts or Transactions.** No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code are affected by the provisions of this Interim Order.

26.    **Proofs of Claim.** Neither the Administrative Agent nor the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or successor cases,

and the Debtors' stipulations in paragraph C herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors. Notwithstanding the foregoing, the Administrative Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable Credit Documents; *provided* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

27.     **Section 552(b) of the Bankruptcy Code.** Subject to entry of the Final Order, the Administrative Agent and the Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Administrative Agent and the Lenders with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the Collateral.

28.     **No Marshaling.** Subject to entry of the Final Order, neither the Administrative Agent nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral except as provided herein, as applicable.

29.     **Notice Procedures for Professional Fees.** Professionals for the Administrative Agent and other Prepetition Secured Parties (collectively, the "Lender Professionals") shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to this Court or any other party in interest. Copies of the Lender Professionals' invoices shall be submitted to the Prepetition Loan Parties and their counsel as well as the U.S. Trustee and any Committee. If (a) the Prepetition Loan Parties, after consulting with their counsel,

believe in good faith that any portion of the fees, costs, and expenses submitted by the Lender Professionals does not comply with the Credit Agreement and/or (b) the U.S. Trustee or Committee objects to the reasonableness of such fees, and the Prepetition Loan Parties, Committee, and/or U.S. Trustee (as applicable) and Lender Professionals cannot resolve such objection within five (5) business days of receipt of such invoices, then the Prepetition Loan Parties, Committee, and/or U.S. Trustee shall file with this Court and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of (x) in the case of the Prepetition Loan Parties, whether the fees, costs, and expenses comply with the Credit Agreement and (y) in the case of the U.S. Trustee or Committee, the reasonableness of such fees, and any failure by the Prepetition Loan Parties, Committee, and U.S. Trustee to file a Fee Objection within such five (5) business day period shall constitute a waiver of any right to object to the applicable invoice. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed (or which is subsequently allowed by agreement or an order of the Court), and (b) all fees, costs, and expenses on an invoice to which no Fee Objection has been timely filed..

30.    **Headings.** The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

31.    **Retention of Jurisdiction.** The Court has and will retain jurisdiction to enforce this Interim Order.

32.    **Admissions**.  Debtors' admissions and releases found in paragraphs C, D, E, and F of this order shall not be admissible in any hearing on the motion of the Administrative Agent to appoint a trustee (D.I. 71).

33.    **Reservation of Rights.** The entry of this Interim Order, and anything contained herein, is not intended to and shall not be construed as a waiver of any of the rights of the Term Loan Administrative Agent or the Term Loan Lenders, including but not limited to any claim with respect to (i) seeking additional or different adequate protection, moving to vacate the automatic stay, any Collateral Diminution, (ii) objecting to any subsequent relief sought in the Cases, or (iii) the validity of the Pledged Equity Vote (as defined in the *Objection and Reservation of Rights of Riverstone* [D.I. 63]).

34.    **Reeves Tax District Liens.** Notwithstanding any other provision herein, any statutory liens (collectively, the "Tax Liens"), of The Reeves Tax Districts shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by Reeves Tax Districts are fully preserved.

**Dated: December 17th, 2019**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**