**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MTE HOLDINGS LLC, *et al.,*[1] | Case No. 19-12269 (CSS) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: February 18, 2020, at 4:00 p.m. (ET)** |
| | **Hearing Date: February 24, 2020, at 10:00 a.m. (ET)** |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING SETTLEMENT AND ALLOWING FOR PERFORMANCE UNDER SETTLEMENT TO (I) AMEND OPERATING AGREEMENTS OF CERTAIN DEBTORS TO PROVIDE FOR THE CONSTITUTION OF A BOARD OF MANAGERS AND APPOINTMENT OF MANAGERS INCLUDING INDEPENDENT MANAGERS AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") respectfully state as follows in support of this motion (the "Motion"):

**PRELIMINARY STATEMENT**

The Debtors' chapter 11 cases have been mired in litigation since they were filed.

First, there was a dispute whether Riverstone Credit Management, LLC validly installed directors immediately before the Petition Date. After Debtor MTE Holdings, LLC defeated that motion before Judge Owens, three creditor groups filed the Trustee Motions based on purported prepetition mismanagement of the Debtors and other alleged misconduct. Although the Debtors

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

vigorously contested the allegations in these motions and believed they would ultimately defeat them, the Debtors were concerned that litigation with these creditor groups would continue in other contexts thereafter, threatening even more substantial cost and delay, which could jeopardize the Debtors' efforts to reorganize.  Accordingly, the Debtors determined to pursue a settlement that not only would resolve the Trustee Motions, but would also provide a governance framework for a consensual resolution of these cases.

Thus, following weeks of intensive negotiations involving many stakeholders, the Debtors have reached a settlement of these disputes that provides for a new regime of independent corporate governance including:

- The creation of a board of managers on which Mark Siffin and two independent managers, Matthew Doheny and Neal Goldman will serve.

- The appointment of a board observer, Richard Betz, who will lend to the board his significant industry expertise.

- The continuation of Mark Siffin as CEO with a robust role in, among other things, the Debtors' operations, strategic options, and financing and capital-raising activities.

- The appointment of and a new Chief Restructuring Officer, Scott Pinsonnault, and Ankura Consulting Group, LLC as the Debtors' financial advisors.

This Motion seeks approval of the settlement along with the terms of the agreements governing the compensation of the independent managers.  The Debtors respectfully submit that approval of this settlement is critical to resolving costly and wasteful litigation and necessary to maximize the value of these estates.

**RELIEF REQUESTED**

1.      The Debtors submit this Motion pursuant to sections 105(a) and 363 of title 11 of the United States Code, (the "Bankruptcy Code") and pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, for authority, (A) approving a global settlement (the "Settlement"), as memorialized by that certain stipulation dated February 3, 2020 (the "Stipulation"), attached hereto as **Exhibit B**, by and among MDC and MTE and the movants for appointment of a Chapter 11 Trustee other than the United States Trustee (the "Moving Parties," and together with the Debtors, the "Parties"); and (B) in accordance with the Settlement: (1) to amend the *Third Amended and Restated Limited Liability Company Agreement of MDC Energy LLC*, dated June 26, 2017, (the "MDC Operating Agreement") and the *Third Amended and Restated Limited Liability Company Agreement of MTE Holdings LLC*, dated September 17, 2018 (the "MTE Operating Agreement," with the MDC Operating Agreement, the "Operating Agreements"),[2] to provide for (a) the formation of a board of managers (each a "Board") of MTE Holdings LLC ("MTE") and MDC Energy LLC ("MDC," and together with MTE, the "Companies") consisting of (i) Mark Siffin, the Chief Executive Officer of the Debtors (the "CEO") and (ii) Matthew Doheny and Neal Goldman as independent managers (the "Independent Managers"); (b) the formation of a special committee (the "Special Committee") of the Board of Managers of the Companies comprised of the Independent Managers; and (c) the appointment of a Board Observer for each Company's Board of Managers; and (2) to approve the Independent Manager Services Agreement (the "IMSA"), substantially in the form attached hereto as **Exhibit C,** and (d) authorize the Debtors to acquire D&O insurance as required by the Stipulation.

---

[2]      Copies of the Operating Agreements of MTE and MDC are attached hereto as **Exhibits D** and **E**, respectively.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and other legal predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 363, Bankruptcy Rule 9019 and Local Rule 9013-1(m).

## BACKGROUND

**A.      General Background.**

5.      On October 22, 2019, Debtor MTE Holdings LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  Subsequently, on October 23, 2019, Debtors Olam Energy Resources I LLC and MTE Partners LLC filed voluntary petitions for relief under chapter 11.  The remaining debtors, including MDC Energy LLC, filed chapter 11 petitions on November 8, 2019 (the "Petition Date").

6.      A detailed description of the Debtors, and their businesses, and the facts and circumstances supporting this Motion and the Debtors' bankruptcy petitions are set forth in greater detail in the *Declaration of Mark Siffin, Chief Executive Officer of MDC Energy LLC in Support of Chapter 11 Petitions and First Day Motions* (the "First-Day Declaration") [D.I. 50].

This Motion incorporates by reference the facts set forth in the First-Day Declaration as if fully set forth herein.  Additional facts specific to this Motion are set forth below.

**B.    The Chapter 11 Trustee Dispute.**

7.    The primary purpose of the Motion is to resolve the following motions seeking the appointment of a Chapter 11 Trustee: (a) *Motion of Natixis, New York Branch for an Order (I) Appointing a Trustee Pursuant to Section 1104(a) of the Bankruptcy Code, or (II) in the Alternative, Appointing an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code,* dated November 12, 2019 [D.I. 71] (the "Natixis Motion"),[3] (b) *Motion of Riverstone Credit Management, LLC and Joinder to Motion for an Order Appointing a Chapter 11 Trustee, dated December 16, 2019* [D.I. 289] (the "Riverstone Motion"),[4] (c) *Motion of Ad Hoc Committee of Service Providers for Appointment of a Chapter 11 Trustee and Joinder to (A) Natixis' Motion to Appoint a Chapter 11 Trustee and (B) Riverstone's Motion to Appoint a Chapter 11 Trustee*, dated January 2, 2020 [D.I. 386] (the "Ad Hoc Joinder"),[5] and (d) *Motion of the United States Trustee for Appointment of a Chapter 11 Trustee or, in the Alternative, an Examiner*, dated January 3, 2020 [D.I. 391] (the "UST Motion," and collectively with the Natixis Motion, Riverstone Motion, and Ad Hoc Joinder, the "Trustee Motions").

8.    The Trustee Motions generally alleged various deficiencies in the Debtors' prepetition management and that, as a result, the Debtors have been mismanaged.  The Debtors

---

[3]    Natixis serves as Administrative Agent on behalf itself and BMO Harris Bank, N.A. ("BMO") under that certain credit agreement dated September 17, 2018, by and among Natixis, BMO and MDC (the "Credit Agreement").  BMO and Natixis are both lenders to MDC Energy LLC under the Credit Agreement.  BMO, which filed a joinder to the Natixis Motion, is also a signatory of the Stipulation.

[4]    Riverstone serves as Administrative Agent on behalf of certain of its affiliates and other lenders (the "MTE Term Lenders") pursuant to that Certain Collateral Agreement, dated September 17, 2018, by and among Riverstone, the MTE Term Lenders, and MTE.

[5]    The Ad Hoc Committee is comprised of the creditors identified in the Ad Hoc Committee's Amended Rule 2019 Statement filed on January 24, 2020 [D.I. 524].

vigorously dispute the allegations of the Trustee Motions. The Debtors' response to the Trustee Motions can be found in the *Debtors' Omnibus Objection to (I) Motions of (a) Natixis, New York Branch, (b) Riverstone Credit Management, LLC, (c) the Ad Hoc Committee of Service Providers, and (d) the United States Trustee for Appointment of a Chapter 11 Trustee, and (II) Alternative Motions of (a) Natixis, New York Branch, and (b) The United States Trustee Seeking an Examiner.*

C.    **The Settlement Negotiations.**

9.    The Parties have sought to resolve the Trustee Motions since mid-December. Representatives of the Parties have engaged in intensive, and ultimately, successful negotiations over the scope and form of a settlement that would provide enhanced corporate governance with respect to the Debtors' management, operations, and restructuring.  The Parties believe that the Settlement and the resulting modifications of the Debtors' management structure will alleviate the corporate governance concerns that resulted in the filing of the Trustee Motions and provide the necessary framework for the Debtors to maximize the value of the estates.

10.    The Settlement provides for the appointment of the two Independent Managers, Neil Goldman and Mathew Doheny, who together with the Debtors' CEO, Mark Siffin, will constitute the Board of MDC, the Debtors' principal operating company and MTE, the holding company that owns the equity of MDC.  The Settlement provides that the Independent Managers will constitute a Special Committee of the Board that will have the exclusive authority to approve all major restructuring related matters including debtor in possession financing, any chapter 11 plan and any significant asset sale as well as investigate certain prepetition transactions between the debtors and non-debtors controlled by Mr. Siffin.  In addition, Richard Betz, an experienced executive in the oil industry, will serve as a board observer (the "Board Observer") to support and assist the Board in carrying out its responsibilities.

11.     The Settlement also provides that Ankura Consulting Group, LLC ("Ankura") will become the Debtors' financial advisor and Scott Pinsonnault of Ankura will become the Debtors' Chief Restructuring Officer ("CRO").  Ankura and Mr. Pinsonnault will work closely with the Board and the CEO to ensure that management of the Debtors and their Chapter 11 Cases will be efficient.[6]

12.     These steps are intended to insure that the Moving Parties have confidence in the management of the Debtors while maintaining the experience and continuity of the Debtors' existing management team.  The Settlement, as memorialized in the Stipulation, was executed by the Moving Parties and the Debtors on February 3, 2020 and, by this Motion, the Debtors now seek the Court's review and approval of the Settlement.

**D.     Settlement Terms**

13.     The following is a summary of the key terms of the Stipulation:[7]

| Board of Managers | Each of MTE and MDC shall have formed a Board consisting of three Managers (the "Managers") in which is vested the full, exclusive, and complete power, authority, and discretion to manage and control the administration, affairs, and operations of MTE and MDC, respectively, and subject to the delegation to the Special Committee (as defined below).  The Board shall be comprised of three individuals: (a) Mark Siffin, as CEO and (b) Neal Goldman and Matthew Doheny, as the Independent Managers. |
| --- | --- |
| Special Committee | The Board will have a Special Committee comprised of the Independent Managers in which is vested the exclusive authority to authorize and approve, subject to any further applicable approvals of the Court, the following: (a) the filing of or support for any restructuring transaction including any chapter 11 plan, section 363 sale, or postpetition financing for any of the Debtors; (b) any other transactions outside of the Debtors' ordinary course of business having a value of more than $500,000; (c) any changes to MTE's or MDC's governance documents (including any |

---

[6]     The retention of Ankura and Mr. Pinsonnault will be the subject of a separate application (the "CRO Application") filed contemporaneously herewith.

[7]     In the event there is any discrepancy between the Stipulation terms summarized herein and the Stipulation, the terms of the Stipulation shall control.  Defined terms used but not defined herein, shall have the meanings in the Stipulation.

| | |
|---|---|
| | changes to this Stipulation); (d) all matters involving actual conflicts (as determined by the Special Committee in its sole discretion) or related-party transactions between or among the Debtors and Mr. Siffin, MDC Acquisition LLC ("MDCA"), Maefield Development Corporation ("Maefield"), any of the foregoing parties' affiliates, and/or any company in which Mr. Siffin has a financial interest, other than reimbursement of ordinary course payroll amounts (including ordinary course, invoiced expenses); (e) all matters related to the Investigation defined below; and (f) any changes to the Debtors' senior management, including their CEO, COO, or CFO, including decisions to terminate or replace such persons or modify their compensation. |
| **Special Committee Investigation** | The Special Committee, with the assistance of its counsel and the CRO, if requested by the Special Committee, shall conduct an investigation of all pre- and post-petition transfers among and between MDC, MDCA, Maefield, and other affiliated entities (if any) and shall explore all estate causes of action (if any) relating thereto (the "Investigation"). Management, including the CEO, shall cooperate with the Special Committee in conducting the Investigation on a timely basis in response to reasonable requests.  Upon conclusion of the Investigation, the Special Committee shall prepare a written report (the "Report"): (a) detailing the results of the Investigation; and (b) recommending what action, if any, should be taken based upon the results.  The Report shall be delivered to the Moving Parties and the Board on or before March 15, 2020.  The Special Committee shall be empowered to take any appropriate action it deems necessary in its sole and absolute discretion based upon the results of the Investigation, including the assertion of potential claims and causes of action relating thereto, if any, belonging to the Debtors' estates, subject to any required approval of the Court.  The Special Committee, through its independent counsel, shall have full authority to present any matter concerning the Investigation to the Court for resolution as may be needed at any stage of the Investigation.  For the avoidance of doubt, the Debtors' responsibility for the payment of fees and expenses of the Special Committee's independent counsel in connection with the Investigation and the Report shall not exceed $600,000. The Special Committee will also have the right to retain independent counsel for those matters where it determines, in its sole discretion, that Debtors' bankruptcy counsel cannot otherwise represent it and that independent counsel is necessary for it to fulfill its fiduciary duties.  Any counsel to the Special Committee shall be subject to a retention application filed with this Court. |
| **CRO Responsibilities** | Specifically, the CRO Application will set forth Mr. Pinsonnault's proposed responsibilities as follows:

a. Manage the chapter 11 process, subject to the authority and direction of, and reporting only to, the Board (or the Special Committee, if |

applicable), including have the full corporate power and authority:

    i.   Open and close bank accounts;

    ii.   Serve as the sole authorized signatory on all bank accounts of the Debtors;

    iii.   Transfer any and all funds of the Debtors in both the ordinary course of business and outside the ordinary course of business consistent with approved budgets;

    iv.   Oversee and manage the Debtors' budgeting (including cash collateral use), cash management systems, and liquidity needs;

    v.   Certify any financial reporting required under any cash collateral order, U.S. Trustee guidelines, or any other order of the Court;

    vi.   Oversee and manage Debtors' rights, and ensure compliance with Debtors' obligations, under current agreements, contracts, and licenses;

b.  Assist the Company Professionals (as defined in paragraph 7 of the Stipulation) in the reorganization process consistent with the Debtors' overall restructuring goals and provide testimony in the Debtors' Chapter 11 cases;

c.  Establish communication protocol with stakeholders;

d.  Assist in the preparation of financial projections and cash flow budgets, including implementing cash conservation strategies, tactics and processes where appropriate and feasible;

e.  Identify liquidity needs and implement a cash management program with the management team;

f.  Identify and implement short-term and/or long-term process improvement or control initiatives;

g.  Assist in development of any reporting to the Court and other required entities, including:

    i.   Bankruptcy reports as required by the Office of the U.S. Trustee;

    ii.   Reports required by Prepetition Secured Lenders and Ad Hoc Committee in accordance with any effective cash collateral order; and

| | |
|---|---|
| | iii.    Reports required by statutory entities.<br><br>h.  Assist the Company Investment Banker in evaluating strategic and financial options;<br><br>i.  Assisting with and providing input into business planning, operations, projections, budgeting, and capital expenditure requirements;<br><br>j.  As requested by the Board of Managers, and in consultation with the CEO, negotiate with stakeholders regarding the Debtors' restructuring and preparing a plan of reorganization and related documents;<br><br>k.  As requested by the Board of Managers, and in consultation with the CEO, negotiate concerning vendors, customers, and other constituents of the Debtors, including the claims reconciliation process, plan classification modeling, and claims estimation, to the extent applicable; and<br><br>l.  Provide such other similar services that the Board of Managers determines to be necessary, prudent, or appropriate under the circumstances, and in keeping with its ethical responsibilities as a chapter 11 professional. |
| **CEO Responsibilities** | Mark Siffin shall serve as a Manager and the CEO of the Debtors. The CEO shall report to the Board and shall provide regular updates to the Board as requested by the Board, and shall work in consultation with the CRO. The CEO's duties and responsibilities shall include:<br><br>a.  Communicating and negotiating with sources of debt and equity capital;<br><br>b.  Communicating with and providing input to the Company Investment Banker in its efforts to raise capital;<br><br>c.  Negotiating offtake and pre-purchase agreements for the Debtors' oil and gas operations;<br><br>d.  Negotiating agreements for potential customers for the Debtors' saltwater disposal system or operations;<br><br>e.  Supervising regulatory compliance requirements for saltwater disposal system or operations;<br><br>f.  Negotiating agreements for the build-out of any saltwater disposal system or operations;<br><br>g.  Communicating and negotiating with vendors concerning operational issues, critical vendor program, and amounts due to such vendors, |

subject to the authority of the Board, and in consultation with the CRO;

h. Assisting with and providing input into business planning, operations, projections, budgeting, and capital expenditure requirements;

i. Communicating and negotiating with suppliers concerning capital expenditures and other business requirements, subject to the authority of the Board, and in consultation with the CRO;

j. Providing input to the Board on the structure of a chapter 11 plan or any other restructuring transaction, and (ii) negotiating with creditors and shareholders concerning any such chapter 11 plan, in consultation and coordination with the Board and the Company Professionals (as defined below);

k. Addressing all issues concerning matters that impact shareholders of the Debtors, including communications about the Debtors' operations, subject to the direction of the Board;

l. Communicating with and providing input to the CRO concerning all of his activities and assist the CRO as appropriate; and

m. Providing such other services as may be requested or required by the Board of Managers.

| | |
|---|---|
| **Board Observer** | The Board Observer will support and assist the Board in carrying out its responsibilities, including the right to attend and fully participate in meetings of the Board and of the Special Committee concerning the business operations of the Debtors, the use of cash collateral, the development of budgets, and the assumption or rejection of executory contracts; provided, however, that the Board Observer shall not participate in any sessions involving (a) the development, pursuit, or filing of any restructuring transaction, including any chapter 11 plan or sale of substantially all of the Debtors' assets in accordance with section 363 of the Bankruptcy Code; (b) capital raising activities, including debtor-in-possession and exit financing; (c) the Special Committee's Investigation (as defined in paragraph 10 below); or (d) any claims the estate may have, including, but not limited to, avoidance actions or claim objections. |
| **Lender Investment Banker** | Natixis, BMO, Riverstone, and the MTE Term Lenders shall be authorized to retain one investment banker (the "Lender Investment Banker" and together with the Company Investment Banker, the "Investment Bankers") which shall, in all respects, report to and take direction from Natixis, BMO, and the MTE Term Lenders. The Debtors agree to pay the actual, reasonable, documented fees and expenses of the Lender Investment Banker, with the fee agreement for the Lender Investment Banker to be agreed to by the Parties. The Company Investment Banker shall work |

|  | cooperatively with and provide information to the Lender Investment Banker in response to reasonable requests, subject to the Lender Investment Banker executing a commercially reasonable confidentiality agreement with the Debtors.  However, where the Company Investment Banker determines in its discretion that providing any information to the Lender Investment Banker would cause harm to the Debtors' estates, the Debtors and the Company Investment Banker shall have no obligations to provide the information requested by the Lender Investment Banker.  In addition, the Board may consult with the Lender Investment Banker, and the Board of Managers may in its sole discretion request that the Lender Investment Banker assist the Company Investment Banker in connection with the Company Investment Banker's mandate, to the extent not inconsistent with the direction of Natixis, BMO, and the MTE Term Lenders. |
|---|---|
| **Company Investment Banker** | The Company Investment Banker, Parkman Whaling (*see Parkman Whaling Retention Application* [D.I. 352]), shall file a supplemental declaration.  The Company Investment Banker shall report to the Board. |
| **Resolution of Trustee Motions** | The Stipulation resolves the Trustee Motions with prejudice; provided, however, that if any Party reasonably believes that a breach of the Stipulation has occurred, such Party may apply to the Court for emergency relief, with notice to all parties, including but not limited to seeking authority to re-notice the Trustee Motions for hearing. |

**E.     Appointment of Independent Managers Requires
Certain Amendments to the Operating Agreements.**

14.     The existing Operating Agreements do not contemplate the appointment of any manager (whether independent or otherwise) because each is member-managed.  Accordingly, the Stipulation provides that the terms of the Stipulation, to the extent that they conflict with the Operating Agreements, will be deemed to modify the Operating Agreements to provide that MTE and MDC will be operated by their respective Boards and the Special Committees.

15.     Specifically, the Stipulation states in this regard that:

To the extent that the terms of this Stipulation conflict with the [MDC Operating Agreement] or the [MTE Operating Agreement], the terms of this Stipulation supersede and control, and such agreements are hereby modified by this Stipulation.  For the avoidance of doubt, and to the extent necessary to effect the terms of this Stipulation, this Stipulation shall constitute an amendment to the [MDC Operating Agreement] or the [MTE Operating Agreement], as necessary, and shall be authorized pursuant to Section 31 of the [MDC Operating

Agreement] or Section 13.18 of the [MTE Operating Agreement], respectively, by the signatures of the authorized parties...  This Stipulation shall automatically terminate and cease to be effective as to MTE and MDC on the effective date of a chapter 11 plan of each Debtor.  *See Stipulation*, ¶ 1.

16.     Therefore, the Debtors hereby seek the Court's approval (to the extent required) to amend the Operating Agreements to allow for (i) the constitution of a Board at each of the Companies and (ii) the appointment of Messrs. Doheny and Goldman as Independent Manager at each of the Companies.

**F.    The Independent Manager Services Agreement.**

17.     In connection with the appointment of Messrs. Doheny and Goldman as Independent Managers, the Debtors propose to enter into the IMSA, which will include the following provisions:

- Duties:  As set forth in the Stipulation and summarized in paragraph 1 of the IMSA.  Each of the Independent Managers currently holds other positions, which each Independent Manager may maintain provided that such employment does not materially interfere in the performance of their duties. Each Independent Manager confirms his ability to perform his duties and his independence.

- Effective Date:  Upon entry of an order of the Bankruptcy Court approving the Stipulation.

- Termination:  Terminable at will by the Independent Manager. The Debtors may only terminate by Court authorization prior to the effective date of a plan of reorganization.

- Compensation:   $35,000 per month, plus reimbursement of reasonable business -related expenses.  If the Independent Manager is compelled or

required to testify as a witness in any court proceeding, and the Independent Manager spends four (4) or more hours on any given day either preparing to testify and/or testifying, then the Independent Manager shall be paid an additional $5,000 per day stipend for any such day.  If an Independent Manager's services are terminated within six months, he will be entitled to a lump sum payment of $210,000 less fees already paid.

- <u>Indemnification</u>:  The debtors shall indemnify and hold the Managers harmless to the full extent of Delaware law and shall obtain a D&O insurance policy reasonably acceptable to the Managers and the Debtors.

**<u>BASIS FOR RELIEF REQUESTED</u>**

A.    **<u>Legal Standards for Approval of the Settlement.</u>**

18.    Bankruptcy Code section 105 authorizes this Court "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Central Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims…'" (quoting *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))).

19.    In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court apprise itself of all facts necessary to form an intelligent and objective opinion of the

probabilities of ultimate success should the claims be litigated, and estimate the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the claims. *In re Penn Central Transp. Co.*, 596 F.2d at 1114; see also *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'" (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997))).

20.     The Third Circuit has identified four factors that should be considered in determining whether a settlement should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *accord Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

21.     The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986), *cited in Meyers v. Martin (In re Martin)*, 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the debtor. *See In re Neshaminy Office Bldg. Assoc.*, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude

that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

22.     For the reasons further discussed below, the Settlement reflects a good faith compromise of significant disputes between the Moving Parties and the Debtors that is not only fair, but provides the Debtors and their estates with a clear path forward to resolve these cases. One of the key reasons why the Debtors agreed to the Settlement was the concern that, even if they are successful in litigating the Trustee Motions, the continued distrust and acrimony among the parties would interfere with the Debtors' ability to achieve a successful reorganization.  The Debtors believe, in the exercise of their business judgment, that the Settlement will minimize the possibility of any further significant conflicts that could arise among the Parties, substantially reducing litigation expenses and paving the way for a successful reorganization.  The enhanced corporate governance provisions will provide greater confidence among creditors in the Debtors' management.

**B.**     **The Settlement and the Stipulation's Terms Should Be Approved.**

     **1.**     *The Probability of Success in Litigation Favors Approval.*

23.     While the Debtors were confident that would prevail against the accusations set forth in the Trustee Motions, a win at-all-costs strategy is not the Debtors' goal in these Chapter 11 Cases, nor is such an approach economically sustainable.  Rather, the Debtors believe that their estates and their creditors are better served by a cooperative and orderly process by which maximum value for the Debtors' assets can be achieved.

24.     The Settlement will provide for such a process and resolves the value-destructive litigation with respect to the Trustee Motions, the retention of professionals and other contested matters that may arise.  Accordingly, while the Debtors believe they would be successful in defeating the Trustee Motions, these victories would come at great cost to the Debtors' estates—

in both time spent and legal fees incurred—that would be better directed toward the cooperative process provided for in the Stipulation.

> **2.    *Complexity of the Litigation Involved, and the Attendant Expense, Inconvenience and Delay Warrant Approval of the Stipulation.***

25.    Further litigation of the Trustee Motions would cause the depletion of funds that the Debtors simply cannot afford during these Chapter 11 Cases.  Accordingly, the Settlement ends the possibility of litigation in connection with the retention applications, the Trustee Motions, a potential DIP motion, and other contested matters that would be complex and costly, likely involving further discovery and depositions, all to the detriment of the Debtors and their estates.

26.    The Settlement will minimize the likelihood of having to obtain non-consensual use of cash collateral.  As the Court is aware, the Debtors have sought and this Court has approved the use of cash collateral on an interim short-term basis to fund these Chapter 11 Cases.  *See* Interim Orders for Cash Collateral [D.I. 112, 297, 506 and 554].  Although the Debtors believe that they are entitled to continued use of cash collateral due to their ability to adequately protect the interests of Natixis and BMO, addressing their expressed concerns regarding the Debtors' corporate governance will likely obviate the need to seek non-consensual use of cash collateral in the future.

> **3.    *Approval of the Settlement and the Stipulation Serves the Paramount Interests of Creditors.***

27.    The proposed resolution embodied in the Stipulation is in the best interest of all stakeholders in these Chapter 11 Cases.  The Moving Parties have engaged in hard-fought negotiations to address their concerns regarding (i) the existing corporate governance structure and management of the Debtors; (ii) the retention of professionals; and (iii) investigation of certain challenged pre-petition transfers to MDCA.  The Settlement resolves all of these

concerns, which will ensure their confidence in the management of these proceedings going forward.  Minimizing costly litigation will allow for an orderly eventual resolution and increase potential recoveries for all creditors.

**4.    *Likely Difficulties in Collection.***

28.    Finally, with approval of the Settlement, the Debtors do not believe that the fourth factor enunciated by the Third Circuit in *Martin* would be applicable going forward.

**5.    *Conclusion.***

29.    In light of the above, the Debtors believe the Settlement is fair, equitable, and in the best interests of their creditors and their estates, represents an exercise of their sound business judgment, and should be approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**C.    Amendment of the Operating Agreements is an
       <u>Appropriate Exercise of Business Judgment</u>.**

30.    The Settlement's Stipulation amends the Operating Agreements to provide for (i) the constitution of the Board of Managers to allow for appointment of the Independent Managers and creation of a Special Committee and (ii) the creation of a Board Observer role.  Including these provisions an appropriate exercise of the Debtors' sound business judgment.

31.    Applying the business judgment standard, Delaware Courts have consistently approved debtors' governance actions, pursuant to a settlement, that will improve the likelihood of successful reorganization and support good corporate governance.  *See In re Natrol, Inc.*, Case No. 14-11446 (BLS) (Bankr. D. Del. July 28, 2014) (authorizing the appointment as exercise of Debtors' business judgment to provide for independent oversight of Debtors' decision-making); *In re Elk Petroleum, Inc.*, No. 19-11157 (LSS) (Bankr. D. Del. July 25, 2019) (appointing two independent directors as an exercise of Debtors' sound business judgment); *In re U.S. Concrete,*

*Inc.*, 2010 WL 3493066, at *13 (Bankr. D. Del. July 29, 2010*) (providing that the debtors and reorganized debtors were authorized pursuant to section 303 of the DGCL to, among other things, select directors and officers for the reorganized debtors); *In re Regent Communs., Inc.*, 2010 Bankr. LEXIS 5793, *44 (Bankr. D. Del. Apr. 12, 2010) (appointing a board of directors of a reorganized debtor pursuant to section 303 of the DGCL).

32.     Here, under Delaware law, the amendment of the Operating Agreements is within the powers of the manager of a limited liability company.  The Delaware Limited Liability Company (LLC) Act states: "[a] limited liability company agreement may provide for the taking of an action, **including the amendment of the limited liability company agreement**, without the vote or approval of any manager or class or group of managers, including an action to create under the provisions of the limited liability company agreement a class or group of limited liability company interests that was not previously outstanding.  *See* Del. Code Ann. tit. 6, § 18-404(b) (West) (emphasis added).  Each Operating Agreement provides that the LLC's manager or managing member, Mark Siffin has the power to affirmatively amend the respective Operating Agreement.  Mark Siffin's decision to take action to amend, pursuant to the very language of each Operating Agreement, is a valid act under Delaware LLC law.[8]  More importantly, the decision to amend each Operating Agreement to strengthen each Company's corporate governance structure by creating a Board of Managers and appointing two Independent Managers, as well as a Board Observer, is a reasonable exercise of business judgment.

33.     Consistent with the exercise of prudent business judgment, the Debtors' seek to amend the Operating Agreements to appoint reputable and highly experienced individuals to act as the ultimate decision-makers with respect to all major operational and bankruptcy-related

---

[8]     *See MDC Operating Agreement* § 31 and *MTE Operating Agreement* § 13.18.

decisions concerning the Debtors' restructuring.  Mr. Doheny and Mr. Goldman alone are vested

with power to approve or disapprove the Designated Actions.  Importantly, Mark Siffin has no

prior relationship with Mr. Doheny and Mr. Goldman.

34.     Therefore, amending each respective Operating Agreement so that each company

may appoint two independent managers is exactly the type of action that Delaware courts have

repeatedly held as being within scope of the business judgment rule and is in the best interest of

the Debtors' estates.

**D.     The Appointment of Mr. Doheny and Mr. Goldman as Independent Managers is Proper Under Section 105(a) of the Bankruptcy Code**

35.     The relief sought by this Motion has been granted by this Court as well as courts

in other districts, including:  *In re Zohar III, Corp.*, Case No. 18-10512 (CSS) (Bankr. D. Del.

June 26, 2018) (authorizing the appointment, payment, and indemnification of an independent

director and his independent counsel and advisors in connection with overseeing asset sale

process and asset monetization as well as communication with various stakeholders); *In re

Natrol, Inc.*, Case No. 14-11446 (BLS) (Bankr. D. Del. July 28, 2014) (authorizing the

appointment, payment, and indemnification of an independent director and authority for the

independent director to hire certain advisors); *In re Elk Petroleum, Inc.*, No. 19-11157 (LSS)

(Bankr. D. Del. July 25, 2019) (appointing two independent directors to sit on the board of

directors "for all purposes and all matters in the ordinary course of business"); *In re

LightSquared Inc.*, Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. Oct. 2, 2013) (authorizing the

appointment and indemnification of independent directors); *In re Synergy Pharmaceuticals*.,

Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Mar. 14, 2019) (same).

36.     While the appointment of independent managers is appropriate in numerous types

of circumstances, the fundamental reasons for appointing the Independent Managers in these

Chapter 11 Cases include: (i) to maintain good corporate governance with respect to the Debtors' estates; (ii) to provide an additional layer of independent oversight of the Debtors' estates and ensure the Debtors' business processes are managed in an open, transparent, and efficient manner; and (iii) to provide creditors and other stakeholders assurance that critical bankruptcy processes, such as asset monetization, stakeholder communications, approval of a chapter 11 plan of reorganization, and settlements, are overseen by independent fiduciaries.

        a.        **Scope of Mr. Doheny and Mr. Goldman's Roles as Independent Managers and the Services to be Provided are Reasonable.**

37.      The proposed role of the Independent Managers in these Chapter 11 Cases is substantially similar to the typical role of an independent director in other chapter 11 cases: that is, here, Mr. Doheny and Mr. Goldman will provide oversight of the Debtors' operations and restructuring transactions, and they alone, as members of the Special Committee, have the power to approve, subject to any further required approval by the Bankruptcy Court as applicable:  (i) any chapter 11 plan, Section 363 sale or postpetition financing for any of the Debtors; (ii) other transactions out of the ordinary course of business having a value of more than $500,000; (iii) any changes to Operating Agreements; (iv) all matters involving related party transactions (including, without limitation, all transactions with or transfers to/from non-debtor affiliates MDCA, Maefield, Mark Siffin, or any of their other affiliates other than reimbursement of ordinary course payroll and employee expense reimbursements, which are subject to the approval of the CRO and made in accordance with approved budgets); and (v) any change in management compensation.  Additionally, the Independent Manager is empowered to hire his own counsel, as necessary to address any or all of these matters.  *See also* ¶ 13 supra.

38.      The addition of the Independent Managers in these Chapter 11 Cases will ensure that there are no conflicts of interest, and that all major decisions are vetted by an independent

party.  Especially here, where there are allegation of prepetition misconduct, vesting authority

and control over these decisions (in addition to a CRO vested with additional authority), ensures

that the debtor-in-possession remains honest, trustworthy, and a good steward of the Debtors'

estates for the benefit of all stakeholders.

### b.    Compensation and Reimbursement.

39.    Furthermore, the terms of the Independent Managers' employment, as set forth in

the IMSA, are reasonable.[9]  The IMSA provides compensation in the amount of $35,000 per

month plus the reimbursement of reasonable business related expenses for each Independent

Manager, respectively.  Each Independent Managers' proposed fee is customary for independent

managers in similar situations and is reasonable in light of the scope of work and the timeline

under which the Debtors are asking him to perform their services.

### c.    Indemnification.

40.    The IMSA requires that the Debtors indemnify the Independent Managers.  Case

law recognizes that the indemnification of corporate fiduciaries enhances value by encouraging

capable individuals to serve on a company's board without fear of "unjustified litigation" and

expense.  *See In re Zohar III, Corp.*, Case No. 18-10512 (CSS) (Bankr. D. Del. June 26, 2018)

(agreeing to indemnify and hold harmless the independent director for actions taken pursuant to

his role as independent director) [D.I. 345-1]; *In re Natrol, Inc.*, Case No. 14-11446 (BLS)

(Bankr. D. Del. July 17, 2014) [D.I. 278] (adding independent director to the Debtors' D&O

insurance plan and providing appropriate indemnification); *Wisener v. Air Express Int'l Corp.*,

583 F.2d 579, 583 (2d Cir. 1978); *see also In re Keene Corp.*, 208 B.R. 112, 115 (Bankr.

S.D.N.Y. 1997) ("Corporate fiduciaries generally rely on the expectation of indemnification, and

---

[9]      The terms governing Mr. Betz's role as a board observer have not been finalized and will be disclosed in a
separate filing as soon as practicable but no later than the objection deadline.

may recover their legal fees and expenses on an administrative basis, at least to the extent they arise from defending postpetition conduct as an officer or director."). That proposition holds true here: the Debtors' highly qualified proposed Independent Managers reasonably requires these protections as a condition of their service.

### 1. *The D&O Policy for the Managers.*

41.     In accordance with the Stipulation, the Debtors are in the process obtaining D&O insurance for the Managers and will provide further details regarding the D&O policy in a supplementing filing.

### 2. *Indemnification Overview.*

42.     The IMSA provides, among other things, that MDC and MTE shall indemnify and hold each Independent Manager harmless to the fullest extent authorized by Delaware law or other applicable law and provide Independent Manager with no less indemnification than provided to any other manager of MTE and MDC. In the event that Independent Manager was or is made a party or is threatened to be made a party to or is involved (including, without limitation, as a witness) in any proceeding by reason of the fact that Independent Manager is or was a manager of MDC and MTE and, whether the basis of such proceeding is alleged action in an official capacity as a manager of MDC or MTE, or as an officer, employee, trustee or agent of MDC or MTE while serving as an independent manager of MTE and MDC, MDC and MTE shall indemnify and hold harmless the Independent Managers to the fullest extent authorized by Delaware law or any other applicable law or rule, but no less than to the extent set forth herein, against all expenses; provided, however, that the Independent Managers did not engage in gross negligence or willful misconduct.

43.     The indemnification language included in the IMSA is standard, and inclusion of the indemnification provision was a condition to retaining the Independent Managers. Like the

Stipulation, the Parties negotiated the IMSA during weeks of arms-length and intensive discussions, and the Parties acknowledge that providing for indemnification of the Independent Managers was critical to ensuring agreement on the IMSA and the broader Settlement.

### 3.    *Indemnification Obligations entitled to Administrative Expense Status.*

44.    The indemnification obligations owed to the Independent Manager pursuant to the IMSA are entitled to administrative-expense priority.  Bankruptcy Code Section 503(b)(1)(A) accords administrative-expense priority to "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A).  To qualify as an administrative-expense priority under § 503(b)(1)(A), the services must be: "rendered after the commencement of the case" and needed for the purpose "of preserving the estate." *See In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219, 226 (3d Cir. 2002).  The indemnity contemplated under the IMSA satisfies both such requirements.  It (a) arises out of the Independent Managers' proposed postpetition appointment, and (b) provides demonstrable benefits to the Debtors' estates, for the reasons described in detail above.

### B.    <u>The Appointment of a Board Observer.</u>

45.    The appointment of a Board Observer to provide an additional layer of management oversight and lender protection, particularly with respect to a circumscribed set of tasks, including business operations, use of cash collateral, budgeting, or the assumption and rejection of executory contracts, is not atypical when corporate governance concerns arise in contested reorganizations. *See In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC), 2016 WL 11565432, at *67 (Bankr. S.D.N.Y. July 27, 2016)(lenders Barclays and Wells Fargo each receive board observer rights in connection with the new board of directors of reorganized debtor); *In re of SWS Grp., Inc.*, No. CV 10554-VCG, 2017 WL 2334852, at *5 (Del. Ch. May

30, 2017) (board observer appointed pursuant to credit agreement has limited role in helping to evaluate proposed corporate acquisition).  Here, the Board Observer is only involved with certain operational decisions and not in decisions involving major restructuring transactions such as a reorganization or sale.  *See Stipulation*, ¶ 1.  The appointment of a Board Observer to support the Board of Managers in carrying out its fiduciary duties should be a welcome, rather than controversial, aspect of the Settlement.

C.    **The Qualifications of the Proposed Independent Managers.**

46.    Both Mr. Doheny and Mr. Goldman are recognized as experts in turnaround management and restructuring and have extensive experience in the energy and oil and gas industries.  The Parties agreed to appoint them as the Independent Managers due to their reputation for integrity, expertise in good governance best practices, and their familiarity with the oil and gas industry.

1.    *Mr. Doheny is Eminently Qualified to Serve as Independent Manager.*

47.    Mr. Doheny is eminently qualified to serve as an independent manager of MTE Holdings LLC and MDC Energy LLC.  Mr. Doheny is currently serving as independent director of Elk Petroleum, Inc. in another case before this Court.[10]  Mr. Doheny has also served as director of the following boards:

- YRC Trucking (Chairman).

- Rescap Liquidating Trust.

- Arcapita (RA Holdings) Inc.

- Eastman Kodak,

- Affinity Gaming

---

[10]    *In re Elk Petroleum, Inc.*, No. 19-11157 (LSS) (Bankr. D. Del. July 25, 2019) [D.I. 312].

- Aspect Software and

- BridgeStreet Global.

48.    Previously, Mr. Doheny was a Managing Director at Deutsche Bank Securities in the Distressed Products Group.  He led the team for the Global Distressed Products Group managing $5 billion in assets.  Mr. Doheny then served as the Portfolio Manager at Fintech Advisory, a New York hedge fund, focused on distressed and special situations.  Most recently, Mr. Doheny was a Managing Director leader of the Special Situations Investing group at HSBC Securities.

49.    Mr. Doheny has never worked in any capacity with the Debtors, Mark Siffin or any of his affiliated companies and has no conflicts of interest with any major stakeholder in these cases.

### 2.    *Mr. Goldman is Eminently Qualified to Serve as Independent Manager.*

50.    Mr. Goldman has over 25 years of experience as an investor and corporate advisor.  He currently serves as the Managing Member of SAGE Capital Investments, LLC, a consulting firm specializing in independent board of director services, restructuring, strategic planning and transformations for companies in multiple industries including energy, technology, media, retail, gaming and industrials.  Mr. Goldman also currently serves as Chairman of the Board of PetroQuest Energy, Inc. and Talos Energy LLC and is a member of the boards of Ultra Petroleum, Midstates Petroleum, and Ditech Holdings, where he is a member of the Ditch Holdings Compliance Committee, focusing on management of risks relating to ethical, reputational and regulatory matters.

51.    Mr. Goldman specializes in working with companies experiencing complex corporate governance and/or financial situations.  In the past, he has served on the boards of Eddie Bauer, Toys R Us, Stone Energy (as Chairman), Southeastern Grocers, J. Crew,

Answers.com, UCI Holdings, LightSquared, Pimco Income Strategy Fund I & II, Jacuzzi Brands, and NII Holdings.

52.     Mr. Goldman has never worked in any capacity with the Debtors, Mark Siffin or any of his affiliated companies and has no conflicts of interest with any major stakeholder in these cases.  His appointment as an independent manager will only serve to strengthen the robust good governance framework contemplated by the Settlement.

53.     In summary, the appointment of a Board of Managers at MTE and MDC, with these two expert turnaround managers serving as independent managers, is a critical and momentous step towards ensuring transparent, best-in-class management of these Chapter 11 Cases.  After intensive, hard-fought negotiations, the Parties are satisfied that their appointment, a key piece of the Settlement described herein, and the approval of the Settlement, will allow all stakeholders to move forward together, without acrimony, in bringing about a resolution to these proceedings.

## WAIVER OF NOTICE REQUIREMENTS

54.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

## DEBTORS' RESERVATION OF RIGHTS

55.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### NOTICE

56.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware, (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (c) counsel to Natixis and counsel to BMO, (d) counsel to Riverstone, (e) the United States Attorney's Office for the District of Delaware, (f) the Internal Revenue Service, (g) the Securities and Exchange Commission, (h) counsel to the Ad Hoc Committee (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (j) any other party required to be provided notice under Local Rule 9013-1(m).  Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be provided.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order substantially in the form attached hereto as **Exhibit A** granting the relief requested in this Motion and (b) grant such other and further relief as may be just and proper.

Dated: February 5, 2020
      Wilmington, Delaware

*/s/ Daniel B. Butz*
Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Daniel B. Butz (No. 4227)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@mnat.com
       eschwartz@mnat.com
       dbutz@mnat.com

- and -

Andrew K. Glenn (*pro hac vice* motion pending)
Matthew B. Stein (*pro hac vice* motion pending)
David J. Mark (*pro hac vice* motion pending)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  AGlenn@kasowitz.com
       MStein@kasowitz.com
       DMark@kasowitz.com

**PROPOSED COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION**