**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MTE HOLDINGS LLC, *et al.*,[1] | Case No. 19-12269 (CSS) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: February 18, 2020, at 4:00 p.m. (ET)** |
| | **Hearing Date: February 24, 2020, at 10:00 a.m. (ET)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors in possession (collectively, the "Debtors," and each, a "Debtor") in the above-captioned chapter 11 cases (the "Chapter 11 Cases," and each, a "Chapter 11 Case") in support of their motion (the "Motion") pursuant to Section 1121(d) of Title 11 of the United States Code (the "Bankruptcy Code") extending the periods during which the Debtors have the exclusive right to file a plan or plans and solicit acceptances thereof, respectfully represent as follows:

### RELIEF REQUESTED

1. The Debtors respectfully request entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order") extending the periods during which the Debtors have the exclusive right to (a) file a Chapter 11 plan (the "Exclusive Filing Period") in

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

connection with the Chapter 11 Cases by 120 days, from February 19, 2020[2] through and including June 18, 2020, and (b) solicit votes thereon (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, collectively the "Exclusive Periods") by 120 days, from April 20, 2020[3] through and including August 18, 2020. This is the Debtors' first request to extend their Exclusive Periods.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. The legal predicates for the relief requested herein are Section 1121(d) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 9006, and Local Rule 9006-2.

## BACKGROUND

**B.** **General Background.**

5. On October 22, 2019, MTE filed a voluntary petition for relief under Chapter 11

---

[2] February 19, 2020 is 120 days from October 22, 2019 (the "MTE Petition Date"), the date on which MTE Holdings LLC ("MTE") filed its petition. As discussed below, the other Debtors filed their petitions shortly thereafter.

[3] The actual date which is 180 days after the MTE Petition Date is Sunday, April 19, 2020.

of the Bankruptcy Code in this Court. On October 23, 2019 (the "Parent Petition Date"), Olam Energy Resources I LLC and MTE Partners LLC, which hold the membership interests in MTE, filed voluntary petitions for relief under the Bankruptcy Code. On November 8, 2019 (the "Affiliate Petition Date"), the remaining Debtors, including MDC Energy LLC ("MDC"), filed Chapter 11 petitions.

6. The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being administered jointly.

7. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No statutory committees have been appointed or designated.

8. A detailed description of the Debtors and their businesses, and facts and circumstances relating to the Debtors' filing of the Chapter 11 Cases, are set forth in the *Declaration of Mark Siffin, Chief Executive Officer of MDC Energy LLC, in Support of Chapter 11 Petitions and First Day Motions*, filed on the Affiliate Petition Date [Docket No. 50] (the "First Day Declaration" or "First Day Decl."). This Motion incorporates by reference the facts set forth in the First Day Declaration as if fully set forth herein. Additional facts specific to this Motion are set forth below.

### C. The Loan Agreements.

9. On September 17, 2018, MDC and Natixis, New York Branch (as administrative agent and issuing bank) ("Natixis") entered into a reserve-based lending credit agreement (the "RBL Agreement"). (First Day Decl., ¶ 13.) Loans under the RBL Agreement were secured by a Pledge and Security Agreement, dated September 17, 2018, between the lenders (the "MDC Lenders") and MDC and other security instruments including mortgages and account control agreements that granted the MDC Lenders a security interest in substantially all of the assets of

MDC and its subsidiaries. (*Id.*, ¶ 14.) The RBL Agreement contained a borrowing base predicated on the amount of MDC's "Proved Reserves" attributable to its oil and gas properties and contemplated that the borrowing base would increase as the reserves increased. (*Id.*, ¶ 13.) As of the Affiliate Petition Date, the principal amount outstanding under the RBL Agreement was $56,867,644.20. (*Fourth Interim Cash Collateral Order*, filed February 4, 2020 [Docket No. 554], at 4).

10. Also on September 17, 2018, MTE entered into a Term Loan Credit Agreement (as subsequently amended and supplemented, the "MTE Credit Agreement," and together with the RBL Agreement, the "Loan Agreements") with a group of lenders (the "MTE Lenders," and together with the MDC Lenders, the "Lenders") for which Riverstone Credit Management LLC ("Riverstone") acts as administrative agent. (First Day Decl., ¶ 15.) The MTE Credit Agreement provided for loan commitments totaling $475 million. (*Id.*). The loans under the MTE Credit Agreement were secured by a pledge and security interest in MTE's membership interests in MDC under an associated collateral agreement (the "Riverstone Collateral Agreement"), as well as MTE's own membership interests. (*Id.*, ¶ 16.) As of the MTE Petition Date, there was $410 million outstanding under the MTE Credit Agreement.

D.     **Trade Claims and Statutory Liens**

11. The Debtors have scheduled approximately $240 million of trade debt. The Debtors' trade creditors have filed over 800 mechanics' liens against estate property, which present many complex issues. For example, many of the mechanics' liens filed are duplicative, inasmuch as (a) creditors file multiple liens for the same claim as their information changes, and (b) subcontractors and primary contractors file liens for the same claim, but the Debtors would not be responsible to both. Assessing the extent of duplication requires extensive work and examining all the claims in detail. The Debtors also anticipate that some holders of mechanics

liens will assert that their liens prime the liens under the RBL Agreement.

**E.     The Pre- and Post-Petition Corporate Governance Litigation And The Settlement.**

12.     On October 21, 2019, Riverstone purported to vote MTE's membership interests in MDC (the "Pledged Equity Vote") pursuant to the Riverstone Collateral Agreement. (First Day Decl., ¶ 27.) In connection therewith, Riverstone claimed to oust MTE from its management of MDC and instead install Riverstone's own five-member board. (*Id*. ¶ 28; *see also id.*, ¶¶ 29-30.)

13.     The next day, as a direct result of the Pledged Equity Vote – which, as discussed below, this Court later found improper – MTE was forced to file its Chapter 11 Case to maintain control over the Debtors' estates and seek protection from further injurious misconduct by the MTE Lenders.

14.     On October 25, 2019 – just three days after the MTE Petition Date, and two days after the Parent Petition Date – Riverstone sought relief from the automatic stay to bring a proposed action in Delaware Chancery Court in which it would argue for judicial validation and enforcement of the Pledged Equity Vote [Docket No. 6] (the "Lift-Stay Motion"). The Debtors objected to the Lift-Stay Motion on November 6, 2019 [Docket No. 30].

15.     On November 12, 2019 – only four days after the Affiliate Petition Date – Riverstone commenced an adversary proceeding in this Court (Adv. Proc. No. 19-50792) (the "Adversary Proceeding"), by filing a complaint [Adv. Proc. Docket No. 1] seeking a declaratory order and judgment declaring and confirming that, the day prior to the MTE Petition Date, Riverstone validly and effectively exercised the Pledged Equity Vote.

16.     Also on November 12, 2019, Natixis filed the *Motion of Natixis, New York Branch for an Order (I) Appointing a Trustee Pursuant to Section 1104(a) of the Bankruptcy Code, or (II) in the Alternative, Appointing an Examiner Pursuant to Section 1104(c) of the*

5

*Bankruptcy Code* [Docket No. 71] (the "Natixis Trustee Motion"). The parties and Court agreed to adjourn the Natixis Trustee Motion until after resolution of the Adversary Proceeding.

17. On November 20, 2019, MTE and MDC filed counterclaims against Riverstone in the Adversary Proceeding, seeking a declaratory judgment finding (i) that (a) MTE's membership interest in MDC remained property of MTE's estate and subject to the automatic stay, (b) Riverstone was barred from continuing to assert control over MTE's voting rights in MDC, (c) MTE was the rightful and proper owner of the voting rights in MDC and the sole person or entity with the right to vote the membership interests in MDC, and (d) the commencement of MDC's Chapter 11 Case was properly authorized by MTE; or, alternatively (ii) that turnover was required under Section 543 of the Bankruptcy Code.

18. On December 13, 2019, the Court heard the Adversary Proceeding and ruled from the bench in favor of MTE and MDC, and against Riverstone, on the merits. The Court entered its order and final judgment on December 17, 2019 [Adv. Proc. Docket No. 31] (the "Judgment").

19. On December 16, 2019, three days after it lost the Adversary Proceeding, Riverstone filed the *Motion of Riverstone Credit Management, LLC and Joinder to Motion for an Order Appointing a Chapter 11 Trustee* [Docket No. 289] (the "Riverstone Trustee Motion").

20. On January 2, 2020, the self-styled "Ad Hoc Committee of Service Providers" (the "Ad Hoc Group") filed the *Motion of Ad Hoc Committee of Service Providers for Appointment of a Chapter 11 Trustee and Joinder to (A) Natixis' Motion to Appoint a Chapter 11 Trustee and (B) Riverstone's Motion to Appoint a Chapter 11 Trustee* [Docket No. 386] (the "Ad Hoc Trustee Joinder").

21. On January 3, 2020, the United States Trustee for Region 3 (the "U.S. Trustee")

filed the *Motion of the United States Trustee for Appointment of a Chapter 11 Trustee or, in the Alternative, an Examiner* [Docket No. 391] (the "UST Motion," and together with the Natixis Trustee Motion, Riverstone Trustee Motion, and Ad Hoc Trustee Joinder, the "Trustee Motions").

22. On January 8, 10, and 13, 2020, other creditors purported to join the Trustee Motions [Docket Nos. 436, 458, 460, 469].

23. On January 15, 2020, the Debtors filed an omnibus objection to the Trustee Motions [Docket No. 476].

24. Following the filing of the Trustee Motions, the Debtors, Natixis, Riverstone, the Ad Hoc Group, and other stakeholders in the Chapter 11 Cases engaged in extensive discovery in anticipation of a trial on the Trustee Motions that was scheduled to commence on January 17, 2020. Additionally, commencing in December 2019, the parties engaged in settlement negotiations towards resolving the Trustee Motions on a consensual basis.

25. After several weeks of arm's-length, multi-party settlement negotiations, the parties were able to resolve the Trustee Motions on a consensual basis (the "Settlement").[4] The Settlement has further helped resolve objections to certain of the Debtors' retention applications and their use of cash collateral.

26. In connection therewith, on February 5, 2020, the Debtors filed the *Debtors' Motion Pursuant to Bankruptcy Rule 9019 for an Order Approving Settlement and Allowing for Performance Under Settlement to (I) Amend Operating Agreements of Certain Debtors to Provide for the Constitution of a Board of Managers and Appointment of Managers Including Independent Managers and (II) Granting Related Relief* [Docket No. 562] (the "9019 Motion").

---

[4] The U.S. Trustee is not a party to the Settlement, and the Settlement does not resolve the UST Motion.

The 9019 Motion is scheduled for hearing on February 24, 2020.

***

27. As detailed above, since the inception of these Chapter 11 Cases in October 2019, the Debtors have found themselves mired in hotly contested litigation concerning their corporate governance, and as a consequence, have been unable to lay the groundwork for proposing a plan within the timeline of their Exclusive Periods. If the Court approves the Settlement, the Debtors will be able to essentially start these cases from scratch with their corporate governance certain, and get down to the business of reorganizing, including but not limited to filing a bar date motion, assessing the more than 800 mechanics' liens filed, and most notably, obtaining DIP financing. Indeed, the Debtors have been unable to seriously negotiate with their constituencies or obtain financing, given perceived uncertainty surrounding their corporate governance and control.

## BASIS FOR RELIEF REQUESTED

28. Cause exists to extend the Exclusive Periods. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a Chapter 11 case during which a debtor has the exclusive right to propose and file a plan. Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has an initial period of 180 days from the commencement of the Chapter 11 case to solicit and obtain acceptances of such plan, during which time competing plans may not be filed.

29. When the initial 120- and 180-day exclusive periods provided for in the Bankruptcy Code prove to be an unrealistic time frame, Section 1121(d) of the Bankruptcy Code allows the bankruptcy court to extend a debtor's exclusive periods:

> On request of a party in interest made within the respective periods

> specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d). The determination of whether sufficient "cause" exists to grant an extension is committed to the sound discretion of the bankruptcy court based upon an evaluation of the facts and circumstances of each case. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977); *First Am. Bank of N.Y. v. S.W. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion."); *In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (finding, in determining whether to grant an extension pursuant to Section 1121(d), that "[a] reasonable time in light of the bankruptcy case in its entirety is the root consideration").

30. Although the term "cause" is not defined by the Bankruptcy Code, case law and legislative history support a flexible reading of the term "to allow the debtor to reach an agreement" with its creditors. *In re Borders Grp., Inc.*, No. 11-10614 MG, 2011 WL 9155779, at *4 (Bankr. S.D.N.Y. June 2, 2011) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 231 (1978)); *In re Public Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility."). To facilitate a debtor's ability to reach agreement with creditors, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., In re Cent. Jersey Airport Servs.*, LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean*, 87 B.R. at 833-34; *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

31. Courts consider a variety of factors in determining whether "cause" exists to

warrant an extension of the exclusive periods, including: (1) the size and complexity of the case; (2) the necessity for sufficient time to negotiate and prepare adequate information; (3) the existence of good faith progress; (4) whether the debtor is paying its debts as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress negotiating with creditors; (7) the length of time a case has been pending; (8) whether the debtor is seeking an extension to pressure creditors; and (9) whether unresolved contingencies exist. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *Cent. Jersey Airport Servs.*, 282 B.R. at 184 (citations omitted); *see also McLean Indus.*, 87 B.R. at 834; *In re Dow Corning Corp.*, 208 B.R. 661, 665 (Bankr. E.D. Mich. 1997) (identifying and applying same test); *In re Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005) (same).

32.   Not all of these factors are relevant in every case, and it is within the discretion of the bankruptcy court to exercise discretion in determining which factors apply. *In re Clinton Nurseries, Inc.*, No. 17-31897 (JJT), 2018 WL 3245040, at *2 (Bankr. D. Conn. July 2, 2018); *Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003). However, the existence of good-faith progress and the need for additional time to continue such progress are particularly significant factors that establish cause for extending the exclusive periods under Section 1121(d) of the Bankruptcy Code. *See In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986).

33.   As outlined below, the Debtors have satisfied the relevant factors needed to support an extension of the Debtors' Exclusive Periods. Moreover, this Court routinely grants debtors' initial requests for an extension of exclusivity. *See, e.g., In re Fred's, Inc.*, No. 19-

11984 (CSS) (Bankr. D. Del. Jan. 23, 2020) [Docket No. 769] (granting 120-day extension); *In re Charming Charlie Holdings Inc.*, No. 19-11534 (CSS) (Bankr. D. Del. Dec. 2, 2019) [Docket No. 542] (granting 120-day extension); *In re Venoco, LLC*, No. 17-10828 (KG) (Bankr. D. Del. Sept. 20, 2017) [Docket No. 481] (granting 120-day extension); *In re Samson Res. Corp.*, No. 15-11934 (CSS) (Bankr. D. Del. Jan. 5, 2016) [Docket No. 554] (granting extension of approximately six months); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Sept. 16, 2014) [Docket No. 2063] (granting 180-day extension).

**A.      The Chapter 11 Cases Are Large And Complex.**

34.     Factor (1), the size and complexity of the case, weighs in favor of extending the Debtors' Exclusive Periods. The seven Debtors in these Chapter 11 Cases conduct oil and gas exploration, drilling, and development operations in the Permian Basin in Texas. (First Day Decl., ¶ 6.) In the year prior to the Affiliate Petition Date, the Debtors significantly expanded their operations. (*Id.*, ¶ 7.) Specifically, MDC successfully drilled and completed 44 permitted horizontal wells and developed associated surface facilities and infrastructure; approximately doubled its average net daily production; began generating approximately $120 million in annualized EBITDA – a nearly threefold increase in one year; more than doubled its proven reserves of crude oil and natural gas; and developed a new platform for water sourcing and disposal to support MDC's own operations and those of third-party producers. (*Id.*) Currently, MDC produces approximately 20,000 barrels of oil equivalent per day, 11,500 net acres of controlled contiguous blocks, 490 horizontal well drilling locations, and 164 million barrels of oil equivalent of total estimated ultimate recovery. (*Id.*, ¶ 8.)

35.     In addition to their extensive technical operations, the Debtors have scheduled approximately $470 million in secured debt and $240 million of trade debt. The Debtors' trade creditors have filed over 800 mechanics' liens against estate property, each of which must be

separately analyzed and considered. Assessing the extent and priority of the mechanics liens requires extensive work and examining all the claims in detail. Accordingly, factor (1) weighs in favor of extending the Exclusive Periods.

**B.      The Chapter 11 Cases Have Been Pending For A Short Time, During Which Time The Debtors Have Focused Their Attention On Establishing Certainty As To Corporate Governance, And Have Demonstrated Reasonable Prospects For Filing A Viable Plan**

36.     Factors (2), (3), (5), and (7) relate to the length of time the Chapter 11 Cases have been pending, the Debtors' good faith progress, the Debtors' demonstration of reasonable prospects for filing a viable plan, and the need for sufficient time to prepare adequate information. Each of these related factors supports granting an extension of the Exclusive Periods.

37.     MTE and its parent Debtors' Chapter 11 Cases have been pending for only 3 ½ months, and the operating Debtors filed their petitions just three months ago. During this short time, the Debtors dealt with the onslaught of litigation over their corporate governance detailed *supra*, which commenced pre-petition with the Pledged Equity Vote that necessitated the Chapter 11 Cases to begin with. Just three days after the MTE Petition Date, Riverstone filed the Lift-Stay Motion. The business day after the Affiliate Petition Date, Riverstone commenced the Adversary Proceeding. Nevertheless, the Debtors resolved the complex Adversary Proceeding in a remarkable one month and five days from Complaint to Judgment in the Debtors' favor. Not one full business day after the Court's bench ruling therein, though, Riverstone filed the Riverstone Trustee Motion, and the Ad Hoc Group followed suit, as did the U.S. Trustee, followed by various other stakeholders. The Debtors proceeded throughout mid-December 2019 through January 2020 on Herculean parallel tracks of preparing for expedited trial on the Trustee Motions, while engaging in intense, multi-party, good faith settlement negotiations in hopes of

resolving the Trustee Motions consensually – which has happened.

38. Moreover, while the Pledged Equity Vote forced the Debtors to enter into the Chapter 11 Cases earlier than expected and without undertaking the usual preparatory work, the Debtors have since retained professionals and spent significant time preparing and filing their schedules. The Debtors and their professionals have been interfacing with numerous individual creditors, and have interacted with the Lenders, Ad Hoc Group and others in all aspects of the administration of their Chapter 11 Cases.

39. Furthermore, the Debtors are highly likely, if not certain, to reorganize. No party has ever argued otherwise, despite the highly litigious nature of these Chapter 11 Cases to date. As set forth *supra* and in the First Day Declaration, the Debtors have a thriving, innovative and highly technical operating business which has expanded substantially over the last year alone. Accordingly, the Debtors submit that factors (2), (3), (5) and (7) weigh in favor of extension.

### C. The Debtors Made Significant Progress Negotiating With Creditors And Unresolved Contingencies Exist.

40. Factors (6) and (9), which relate to progress negotiating with creditors and unresolved contingencies, each support an extension of the Exclusive Periods. The Debtors' successful negotiations with multiple key stakeholders yielded the Settlement, which resolved various Trustee Motions as well as retention and cash collateral objections, within just three months. The 9019 Motion is scheduled for hearing on February 24, 2020, after the Exclusive Filing Period expires. If the Court approves the Settlement, the Debtors, unhindered by pending litigation and under the auspices of their new CRO and board of managers, are prepared to seek and secure DIP financing, file a bar date motion, and begin the process of analyzing claims, including the hundreds of mechanics' liens filed. These claims represent unresolved material issues that the Debtors would benefit from having additional time to work through and are

material for the confirmation of a Chapter 11 plan. Therefore, factors (6) and (9) weigh in favor of extending the Exclusive Periods.

**D.    The Debtors Are Paying Their Debts As They Come Due, And Creditors Will Not Be Prejudiced By An Extension Of The Exclusive Periods.**

41.    Additionally, factors (4) and (8) support granting an extension of the Exclusive Periods because the Debtors pay their post-petition debts as they become due and are administratively solvent as reflected in their operating reports. The Debtors are also seeking an extension of the Exclusive Periods to allow them sufficient time to address and attempt to determine whether a consensual plan of reorganization is feasible, just as they resolved the Trustee Motions and various objections in these cases. Moreover, creditors will not be prejudiced by the extension. Indeed, inasmuch as all major stakeholders in the Chapter 11 Cases are parties to the Settlement, they are unlikely to seek approval of competing plans in the current posture.

## AUTOMATIC EXTENSION UNDER LOCAL RULE 9006-2

42.    Pursuant to Local Rule 9006-2, the Exclusive Periods automatically are extended until the Court acts on this Motion without the necessity of a bridge order.

## NOTICE

43.    Notice of this Motion shall be given to (a) the U.S. Trustee, (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (c) counsel to Natixis and counsel to BMO Harris Bank, N.A., (d) counsel to Riverstone, (e) the United States Attorney's Office for the District of Delaware, (f) the Internal Revenue Service, (g) the Securities and Exchange Commission, (h) counsel to the Ad Hoc Group, (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (j) any other party required to be provided notice under Local Rule 9013-1(m). Due to the nature of the relief requested herein, the Debtors

submit that no other or further notice need be provided.

## **CONCLUSION**

For the foregoing reasons, as well as any additional bases that may be offered at a hearing on the Motion, if required, the Debtors respectfully request that the Court enter an order substantially in the form of the Proposed Order attached Exhibit A extending the (a) Exclusive Filing Period by 120 days, from February 19, 2020 through and including June 18, 2020, and (b) Exclusive Solicitation Period by 120 days, from April 20, 2020 through and including August 18, 2020, and granting such further relief in favor of the Debtors as may be just and proper.

Dated: February 10, 2020
       Wilmington, Delaware

                        */s/ Brett S. Turlington*
                        Robert J. Dehney (No. 3578)
                        Eric D. Schwartz (No. 3134)
                        Daniel B. Butz (No. 4227)
                        Brett S. Turlington (No. 6705)
                        **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
                        1201 North Market Street, 16th Floor
                        P.O. Box 1347
                        Wilmington, Delaware 19899-1347
                        Telephone:  (302) 658-9200
                        Facsimile:  (302) 658-3989
                        Email:  rdehney@mnat.com
                                eschwartz@mnat.com
                                dbutz@mnat.com
                                bturlington@mnat.com

                        - and -

                        Andrew K. Glenn (admitted *pro hac vice*)
                        Matthew B. Stein (admitted *pro hac vice*)
                        David J. Mark (admitted *pro hac vice*)
                        **KASOWITZ BENSON TORRES LLP**
                        1633 Broadway
                        New York, New York 10019
                        Telephone:  (212) 506-1700
                        Facsimile:  (212) 506-1800
                        Email:  AGlenn@kasowitz.com
                                MStein@kasowitz.com
                                DMark@kasowitz.com

                        **CO-COUNSEL AND PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**