**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MTE HOLDINGS LLC, *et al.*,[1] | ) ) | Case No. 19-12269 (CSS) |
| Debtors. | ) ) | Jointly Administered |
|  | ) ) ) ) ) ) ) ) | **Objection Deadline:** March 17, 2020, at 4:00 p.m. (ET) **Hearing Date:** March 31, 2020, at 11:00 a.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION FEES OF A CRITICAL VENDOR AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases") respectfully state as follows in support of this motion (the "Motion"):

**RELIEF REQUESTED**

1. The Debtors submit this Motion[2] pursuant to sections 105(a) and 363 of Title 11 of the United States Code, (as amended, the "Bankruptcy Code"), rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") requesting an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) authorizing, but not directing, the Debtors, in a reasonable

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC. (7894); MTE Partners LLC. (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

[2] Capitalized terms not otherwise defined in this Section shall have the meanings ascribed to such terms below.

exercise of their business judgment, to pay the outstanding prepetition fees of Cawley, Gillespie and Associates, Inc. ("CG&A" or the "Critical Vendor"), in the amount of $190,613.75 (the "CG&A Fee"), so that CG&A will complete and deliver the critically-necessary 2019 year-end oil and gas reserve report (the "2019 Reserve Report"), without which the Debtors cannot reorganize, obtain debtor-in-possession financing, or access capital markets, and (ii) granting related relief.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2). Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rule 9013-1.

**BACKGROUND**

**A.    General Background.**

5. On October 22, 2019, Debtor MTE Holdings LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. Subsequently, on October 23, 2019, Debtors Olam Energy Resources I LLC and MTE Partners LLC filed voluntary petitions for relief under chapter 11. The remaining debtors, including MDC Energy LLC ("MDC"), filed chapter 11 petitions on November 8, 2019 (the "Petition Date").

6. A detailed description of the Debtors, and their businesses, and the facts and circumstances supporting this Motion and the Debtors' bankruptcy petitions are set forth in greater detail in the *Declaration of Mark Siffin, Chief Executive Officer of MDC Energy LLC in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [D.I. 50]. This Motion incorporates by reference the facts set forth in the First Day Declaration as if fully set forth herein. Additional facts specific to this Motion are set forth below.

B. **The Debtors' Reliance on CG&A to Produce Reserve Reports.**

7. Since 2014, the Debtors have relied on CG&A to produce valuation reports (the "Reserve Reports") on the Debtors' oil and gas reserves (the "Reserves"). MDC does not have a written contract or engagement agreement with CG&A, but instead it maintains an ongoing professional relationship with CG&A and hires CG&A on a project-by-project basis. CG&A engineering employees typically bill at $430 per hour, and technical analysts bill at $310 per hour. Any expenses incurred by CG&A are billed at cost. CG&A typically produces two Reserve Reports a year. The most recent Reserve Report produced by CG&A and delivered to the Debtors is a mid-year report dated as of July 1, 2019. A copy of that report is attached hereto as **Exhibit B**.

8. Preparation of each Reserve Report requires CG&A to collect and organize the Reserve data and then calculate the net present value based on the information collected. Historically, the Debtors have used the Reserve Reports for various business purposes, including to obtain financing from lenders, based on the embedded information concerning the value of the Debtors' oil and gas holdings. In particular, because the Reserves are often used as collateral, lenders base their decision to advance funds on the reported value of the Reserves listed in the Reserve Report. Reserve Reports are also relied upon by other stakeholders and potential

counterparties to determine whether to do business with the Debtors and the terms on which they are willing to do so.

9. As such, the existence of a current and accurate Reserve Report is critical to the success of an oil and gas debtor's chapter 11 restructuring case. Without the information that the 2019 Reserve Report will include, the Debtors will not have the capability to assess the value of its assets and business prospects. Nor will it be able to assess realistically the amount of debt it can service as part of an exit strategy. The lack of this capability will impede the Debtors' ability to formulate and execute a successful chapter 11 plan.

10. The importance of the 2019 Reserve Report is supported by the requests from the Debtors' largest creditors. Over the past several weeks, Natixis, New York Branch ("Natixis"), BMO Harris Bank, N.A. ("BMO"), Riverstone Credit Management, LLC ("Riverstone", and, together with Natixis and BMO, the "Prepetition Secured Lenders"), and the Ad Hoc Committee of Service Providers (the "Ad Hoc Committee") have all requested to review the 2019 Reserve Report.

11. Because of this, the Debtors believe that the delivery of the 2019 Reserve Report may be the most important service it currently demands from its contractors and vendors.

12. Although CG&A has begun preparing the 2019 Reserve Report, CG&A has informed the Debtors that it will not complete its work or release the 2019 Reserve Report until the Debtors pay all of CG&A's fees, including those fees that were invoiced prepetition. CG&A's invoices for its outstanding fees are attached hereto as **Exhibit C**. As shown in **Exhibit C**, in addition to a prepetition amount of $190,401.25, CG&A estimates that it will incur an additional $77,400 in postpetition fees (inclusive of the $37,524.50 postpetition amount listed on the exhibit) in connection with its completion of the 2019 Reserve Report.

**BASIS FOR RELIEF REQUESTED**

    A.    **Payment of the CG&A Fee Is Appropriate Under Bankruptcy Code Section 363(b)(1).**

13.    Payment of the CG&A Fee should be permitted pursuant to Bankruptcy Code section 363(b)(1), which empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate" so long as a debtor's decision to use, sell, or lease assets outside the ordinary course of business is based upon the debtor's sound business judgment. 11 U.S.C. § 363(b)(1). *See, e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) (implicitly adopting the "sound business purpose" test of *Lionel Corp.* and requiring good faith); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business purpose" test in the *Abbotts Dairies* decision); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason"). Here, obtaining the 2019 Reserve Report is undoubtedly a proper exercise of the Debtors' business judgment – it is the key with which to unlock future financing and stabilize the Debtors' operations.

14.    In addition, should the Debtors refuse to pay the CG&A Fee, they will need to hire a new consulting firm to prepare a year-end Reserve Report, and the Debtors have

concluded in their sound business judgment that doing so would not be in the best interests of MDC or the Debtors. Hiring a new petroleum consultant would be a duplicative use of the estate's limited resources and further delay production of a year-end reserve report. Also, CG&A has an outstanding industry reputation, and the Debtors' lenders have relied upon past Reserve Reports produced by CG&A without issue. Therefore, the Debtors have good reason to believe that paying the CG&A Fee is the most cost-efficient, most expeditious and least wasteful method of obtaining the much-needed 2019 Reserve Report.

15. Also, courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed action *appears* to enhance the debtor's estate." *Crystalin, L.L.C. v. Selma Props. Inc.* (*In re Crystalin, L.L.C.*), 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis in original, internal alterations and quotations omitted)). Courts require only that the debtors "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153 (citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); *In re Lionel Corp.*, 722 F.2d at 1071. Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"); *In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not

a difficult standard to satisfy"). For the reasons cited herein, the Debtors' decision to pay outstanding, prepetition fees to a critical vendor who is withholding the certified 2019 Reserve Report, without which the Debtors cannot satisfy the Prepetition Secured Lenders' and Ad Hoc Committee's repeated requests for information on the valuation of the Reserves and cannot obtain future financing, is a sound and reasonable exercise of the Debtors' business judgment, qualifies for approval under section 363(b), and will enhance the value of the Debtors' estates.

### B.    Payment of the CG&A Fee Is Appropriate Under Bankruptcy Code Section 363(c).

16.    In the alternative, the Debtors submit that payment of the CG&A Fee is appropriate pursuant to Bankruptcy Code section 363(c). Section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to "enter into transactions . . . in the ordinary course of business without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). In determining whether a transaction qualifies as "ordinary course," the Third Circuit has adopted the "horizontal" dimension test (*i.e.*, whether "from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry") and "vertical" dimension test (*i.e.*, whether the transaction is consistent with the reasonable expectations of "hypothetical creditors"). *In re Roth Am., Inc.*, 975 F.2d 949, 953 (3d Cir. 1992). "The touchstone of 'ordinariness' is . . . the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *Id*. (citing *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983)); *see also In re Nellson Nutraceutical, Inc*., 369 B.R. 787, 797 (Bankr. D. Del. 2007) ("[A] debtor's pre-petition business practices and conduct is the primary focus of the vertical analysis."); *In re Blitz U.S.A*., *Inc.*, 475 B.R. 209, 214 (Bankr. D. Del. 2012) (same). Once the

transaction satisfies the *Roth* factors and has been deemed an ordinary course transaction, it need only "satisfy the relatively light evidentiary burden of establishing that the Debtors made a business judgment in good faith upon a reasonable basis" to warrant Court approval. *Id.* at 800.

17.     Here, payment for and receipt of the 2019 Reserve Report is a typical, recurring business transaction that is critical to ensuring access to sources of financing. Without a certified 2019 Reserve Report, it will be nearly impossible for the Debtors to obtain financing from banks and other financial institutions and to continue to operate as viable businesses.

18.     Indeed, the contemplated payment satisfies both prongs of the *Roth* test. Payment for and receipt of certified reserve reports is an industry-wide practice, and lenders often require constant updates on the value of reserves because reserves are often a form of collateral for loans. As such, payment of the CG&A Fee satisfies the horizontal prong. Furthermore, existing lenders and creditors have already made clear that they must review the 2019 Reserve Report and have repeatedly demanded access to it. Obtaining the 2019 Reserve Report should not be controversial – these reserve reports are commonly purchased annually or semiannually. The Prepetition Secured Parties and Ad Hoc Committee also expect to see the 2019 Reserve Report as soon as possible, and, in keeping with these expectations, the Debtors seek to deliver it. Therefore, both the vertical and horizontal prongs of the *Roth* test are satisfied.

19.     With *Roth* satisfied, the Debtors need only demonstrate that paying the CG&A Fee is within the scope of its business judgment.[3] For the reasons cited herein, paying the CG&A Fee is a proper exercise of the Debtors' business judgment: the prompt payment of the

---

[3]     "[I][f the Court determines that a transaction is in the ordinary course of a debtor's business, the Court will not entertain an objection to the transaction, provided that the conduct involves a business judgment made in good faith upon a reasonable basis and within the scope of authority under the Bankruptcy Code…Put another way, the Court will not disturb a transaction within the ordinary course of business if the trustee can articulate reasons for his conduct (as distinct from a decision made arbitrarily or capriciously)." *In re Nellson Nutraceutical, Inc.*, 369 B.R. at 797 (citing *In re Curlew Valley Associates*, 14 B.R. 506, 513 n. 11a (Bankr. D. Utah 1981)(internal quotations and citations omitted).

CG&A Fee is the only way to obtain the 2019 Reserve Report and, in turn, allow the Debtors to obtain and maintain their financing.  Also, the contemplated payment for the 2019 Reserve Report is within the Debtors' ordinary course of business because it is a recurring, (being annual or semiannual), ordinary, and critically-necessary transaction for the Debtors.[4]  Unless the Debtors have the authority to pay the 2019 Reserve Report, their business will suffer irreparable harm.[5]  For the reasons stated herein, payment of the CG&A Fee is exactly the type of ordinary course transaction that falls within the purview of section 363(c).

### C. Payment of the CG&A Fee is Appropriate Under Bankruptcy Code Section 105(a).

20. Finally, the Debtors submit that payment of the CG&A Fee is necessary and is authorized under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).  Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments to critical vendors, such as CG&A, where necessary to protect and preserve the estate.  *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017)

---

[4] *See also In re Roth Am., Inc.*, 975 F.2d at 952 ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same).  Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions" necessitated by a debtor's business practices.  *See, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. at 796 (citations omitted) (noting that courts have been reluctant to interfere in a debtor's making of routine, day-to-day business decisions).

[5] Numerous courts in this District have authorized similar relief to that requested herein.  *See, e.g.*, *In re Pernix Sleep, Inc.*, Case No. 19-10323 (CSS) (Bankr. D. Del. Feb. 21, 2019); *In re BPS US Holdings Inc.*, Case No. 16-12373 (KJC) (Bankr. D. Del. Nov. 28, 2016) (authorizing payment of prepetition amounts owed to critical vendors); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (LSS) (Bankr. D. Del. May 11, 2016) (same); *In re Verso Corp.*, Case No. 16-10163 (KG) (Bankr. D. Del. Feb. 23, 2016) (same); *In re Quiksilver, Inc.*, Case No. 15-11880 (BLS) (Bankr. D. Del. Oct. 28, 2015) (same); *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) (same); *In re OnCure Holdings, Inc.*, Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013) (same).

(noting that courts "have approved…'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"). The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (noting that courts grant debtors the authority to pay certain prepetition claims "where the payment is necessary to permit the effectuation of the rehabilitative purposes of the Bankruptcy Code"). *See also In re Just For Feet, Inc.*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); *see also Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l v. Motor Coach Indus. Int'l (In re Motor Coach Indus. Int'l)*, Case No. 09-078-SLR, 2009 WL 330993, at *2 n.5 (D. Del. Feb. 10, 2009); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994). As noted previously, without making this critical CG&A Fee payment, the Debtors cannot moved forward in the bankruptcy process, cannot obtain post-petition debtor-in-possession financing, cannot satisfy lender and creditor requests, and cannot emerge from bankruptcy.

21.    Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (citation omitted) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly

conduct of reorganization proceedings"); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) (citation omitted) ("It is well settled that the court's power under § 105(a) is broad."); *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015) (citations omitted) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to 'craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.'"); *see also In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) (citation omitted) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."). Approving payment of the CG&A Fee is well-within this Court's equitable powers, as without the 2019 Reserve Report, the Debtors are unable to satisfy the Prepetition Secured Parties' and Ad Hoc Committee's demands and are unable to obtain postpetition financing and negotiate a plan of reorganization.

22. Here, there is no dispute among the Debtors, the Prepetition Secured Parties, or the Ad Hoc Committee that it is necessary for the Debtors to have immediate access to the 2019 Reserve Report to bring about a timely, successful reorganization. Accordingly, pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity, the Court is empowered to grant the relief requested herein.

### **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

23. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

**DEBTORS' RESERVATION OF RIGHTS**

24. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**NOTICE**

25. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware, (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (c) counsel to Natixis and counsel to BMO, (d) counsel to Riverstone, (e) the United States Attorney's Office for the District of Delaware, (f) counsel to the Ad Hoc Committee; (g) the Internal Revenue Service, (h) the Securities and Exchange Commission, (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (j) any other party required to be provided notice under Local Rule 9013-1. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be provided.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order substantially in the form annexed as **Exhibit A** hereto granting the relief requested in the Motion, and (b) grant such other and further relief as may be just and proper.

Dated: March 3, 2020
Wilmington, Delaware

/s/ Daniel B. Butz
Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Daniel B. Butz (No. 4227)
Brett S. Turlington (No. 6705)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@mnat.com
       eschwartz@mnat.com
       dbutz@mnat.com
       bturlington@mnat.com

- and -

Andrew K. Glenn (admitted *pro hac vice*)
Matthew B. Stein (admitted *pro hac vice*)
David J. Mark (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Email: AGlenn@kasowitz.com
       MStein@kasowitz.com
       DMark@kasowitz.com

**CO-COUNSEL AND PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**