## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MTE HOLDINGS LLC, *et al.*, | § | Case No. 19-12269 (CSS) |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |
| NEXTIER COMPLETION SOLUTIONS INC. F/K/A C&J SPEC-RENT SERVICES, INC. | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | Adv. Proc. No. _____ (CSS) |
| v. | § | |
| | § | |
| MDC ENERGY, LLC, MDC TEXAS OPERATOR LLC, MDC REEVES ENERGY LLC, and NATIXIS, NEW YORK BRANCH IN ITS CAPACITY AS ADMINISTRATIVE AGENT AND LENDER. | § § § § § § | |
| | § | |
| Defendants. | § | |

## NEXTIER COMPLETION SOLUTIONS INC. F/K/A C&J SPEC-RENT SERVICES, INC.'S COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE VALIDITY, PRIORITY, PERFECTION, VALUE, AND EXTENT OF CERTAIN MINERAL LIENS ON THE DEBTORS' PROPERTY

NexTier Completion Solutions, Inc., f/k/a C&J Spec-Rent Services, Inc. ("CJSR"), by

and through the undersigned counsel, hereby files this Complaint and Request for Declaratory

Judgment to Determine Validity, Priority, Perfection, Value, and Extent of Certain Mineral Liens

on the Debtors' Property pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644) (collectively, the "Debtors"). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

111973733.v1

(the "<u>Rules</u>") to determine the validity, priority, and extent of its statutory mineral liens under applicable state law on certain of the Debtors' properties, and respectfully shows as follows:

<strong><u>PARTIES</u></strong>

1.      Plaintiff CJSR is a corporation organized under the laws of the state of Texas.

2.      Defendant MDC Energy LLC ("<u>MDC</u>") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.  MDC may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, or its counsel of record in these bankruptcy cases.

3.      Defendant MDC Texas Operator LLC ("<u>MDC Texas Operator</u>") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.  MDC Texas Operator may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, or its counsel of record in these bankruptcy cases.

4.      Defendant MDC Reeves Energy LLC ("<u>MDC Reeves</u>") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.  MDC Reeves may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, or its counsel of record in these bankruptcy cases.

5.      Natixis, New York Branch ("<u>Natixis</u>") is the administrative agent on behalf of certain lenders and other parties and as a lender (collectively, the "<u>Lenders</u>" and, together with Natixis, the "<u>Prepetition Secured Parties</u>") in connection with a $60 million credit facility under

that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant MDC.

## JURISDICTION AND VENUE

6.     Defendants MDC, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are debtors in the above-captioned jointly administered chapter 11 cases styled *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.) (the "Cases"), pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.     This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

8.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9.     Venue of the Cases and this adversary proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409.

10.    Pursuant to Rule 7008(a) and rule 7008-1 of the Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), CJSR consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## NATURE OF ACTION

11.     This is an action pursuant to Rules 7001(2) and 7001(9) and the Declaratory Judgment Act (28 U.S.C. § 2201).

12.     By this Complaint, CJSR seeks a judgment of this Court declaring the validity, perfection, value, and extent of certain statutory mineral liens held by CJSR against certain of the Debtor Defendants' property and determining the priority of such liens against the prepetition and postpetition liens, security interests and claims of the Prepetition Secured Parties. Specifically, CJSR seeks a determination that (i) CJSR holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtor Defendants' property described below, (ii) such valid, fully-perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and postpetition liens and claims of the Prepetition Secured Parties, and (iii) determine the value of CJSR's allowed secured claim.

## BACKGROUND

### A.      Procedural History

13.     On November 8, 2019 (the "Petition Date"), the Debtor Defendants initiated their Cases by filing their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See Schedules of Assets and Liabilities for MDC Reeves Energy LLC* [Case No. 19-12388, D.I. 6].

15.     On the Petition Date, the Debtors filed the Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363,

4

and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2 [D.I. 49] (the "Cash Collateral Motion") seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties. On November 19, 2019, the Court entered the first interim order [D.I. 112] (the "First Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for December 13, 2019. On December 17, 2019, the Court entered the second interim order [D.I. 297] (the "Second Interim Order") approving the Motion on an interim basis and setting a further hearing on the Motion for January 15, 2020, which hearing was subsequently adjourned to January 17, 2020. On January 17, 2020, the Court entered the third interim order [D.I. 506] (the "Third Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for February 4, 2020. On February 4, 2020, the Court entered the fourth interim order [D.I. 554] (the "Fourth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for February 24, 2020.  On February 27, 2020, the Court entered the Fifth Interim Cash Collateral Order.  On April 2, 2020 a Sixth Interim Cash Collateral Order was entered by the court on the Cash Collateral Motion. A stipulation authorizing an extension of the Sixth Interim Cash Collateral Order was filed with the Court on May 5, 2020 [D.I. 1047]. The court entered a Final Cash Collateral Order on May 15, 2020 [D.I. 1092].  The referenced interim and final cash collateral orders are collectively referred to as the "Cash Collateral Order").

16.    On September 17, 2018, prior to the Cases and as set forth in the Cash Collateral Motion, the Prepetition Secured Parties made certain loans and extensions of credit under the Credit Agreement to MDC.  In connection with the Cash Collateral Motion, the Prepetition

Secured Parties have asserted that, under the Credit Agreement and certain other documentation executed therewith (collectively, the "Credit Documents"), MDC and certain affiliated guarantors granted "senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on . . . any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, including Cash, securities, accounts and contract rights . . . ." Cash Collateral Order ¶ (D)(i). This assertion of a first priority security interest includes oil and gas leasehold interests, working interests, and associated property rights.

17.    According to the relevant land records of Reeves County, the security instruments for the Credit Documents were not filed against the Debtor Defendant's real property interests in that county—and thus the security interests of the Prepetition Secured Parties were not perfected as to such collateral—until September 25, 2018 as to certain properties or until April 16, 2019 as to other properties.

18.    Pursuant to the Cash Collateral Order, the Debtors have admitted and stipulated to the Prepetition Secured Parties' claim and security interests. *See* Cash Collateral Order ¶ (C), (D), (E), (F).[2]

19.    Furthermore, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Cash Collateral Order ¶¶ 4(a) and

---

[2] Under paragraph 23 of the Cash Collateral Order, these admissions stipulations are generally binding on all other parties in interest subject to a challenge period as set forth therein. Paragraph 23 of the Cash Collateral Order expressly provides, however, that certain "Statutory Lienholders" such as CJSR are not subject to this challenge period in order to preserve or protect the priority of their respective statutory liens or security interests, and further that "[n]othing in [the Cash Collateral Order] shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." Nevertheless, CJSR asserts that there is a justiciable controversy as set forth in this Complaint as to the competing priority of its statutory mineral liens with the prepetition and postpetition liens of the Prepetition Secured Parties.

4(b). The postpetition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with postpetition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date.

20.    In light of the Cash Collateral Order and the broad assertions of first-position priority by the Prepetition Secured Parties as to their prepetition and postpetition liens, CJSR disputes the Prepetition Secured Parties' prepetition and postpetition security interests insofar as such security interests are asserted to be superior to certain of the valid, fully-perfected, and enforceable statutory mineral liens of CJSR as further described herein.[3]

21.    On June 2, 2020, the Bankruptcy Court entered the *Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants* [D.I. 1160] (the "Lien Procedures Order") providing a mechanism for statutory lien claimants to, *inter alia*, assert priority liens over some or all of liens of the Prepetition Secured Parties. CJSR files this Complaint pursuant to the terms of the Lien Procedures Order.

**B.    CJSR's Liens**

22.    CJSR performed certain services prior to the Petition Date to or for the benefit of MDC, MDC Texas Operator and/or MDC Reeves that constituted mineral activities pursuant to applicable Texas state law. Debtors failed to pay CJSR. The sum of the principal amount due and owing to CJSR through October 22, 2019 (the "Petition Date"), is at least $1,666,256.49[4],

---

[3] Importantly, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." Cash Collateral Order ¶¶ 4(a) and 4(b).

[4] This total is the sum of CJSR's lien claims, described in two lien affidavits, less various account credits.

exclusive of accruing interest, attorneys' fees and other charges, with additional amounts owed and accrued after the Petition Date.

23.    After Debtors failed to pay CJSR, CJSR timely filed several mineral liens contained in one lien affidavit on Debtors' property in Reeves County, Texas. TEX. PROP CODE § 56.001, et seq. CJSR also filed its Notice of Perfection and Continuation of Liens Pursuant to 11 U.S.C. § 546(b) on June 22, 2020, [D.I. 1200] (the "Lien Perfection Notice") asserting liens and claims against MDC, MDC Reeves and MDC Texas Operator.

24.    Attached hereto as **Exhibit 1** is a true and correct copy of CJSR's lien affidavit[5] (the "CJSR Superior Mineral Liens")[6]. Attached hereto as **Exhibit 2** is a summary of the CJSR Superior Mineral Liens in the same format as the Lien Questionnaire required by the Lien Procedures Order:   Attached hereto as **Exhibit 3** are true and correct copies of lien notices provided to the Debtor Defendants, and others, regarding the CJSR Superior Mineral Liens:

| Well | County in Texas | Lien Amount | Date Notice Served | Date Filed | File No. |
|---|---|---|---|---|---|
| Affirmed 6S Nos. 3H and 7H | Reeves | $186,874.29 | 4/2/2019 | 4/24/2019 | 19-06510 |
| Coopers Dream 23 Nos. 1H, 2H, 3H, and 4H | Reeves | $468,385.36 | 4/2/2019 | 4/24/2019 | 19-06510 |
| Copperhead 23 Nos. 2H and 4H | Reeves | $348,347.30 | 4/2/2019 | 4/24/2019 | 19-06510 |
| Repent 23 No. 1H | Reeves | $94,473.09 | 4/2/2019 | 4/24/2019 | 19-06510 |

---

[5] The lien affidavits and the exhibits attached thereto include invoices, the agreements, property descriptions, notices and other documents and information relevant to the liens.

[6] To the extent allowed by law, CJSR also asserts statutory on the Seattle Slew 17 No. 1H for which CJSR will submit a Lien Validation and Support Form pursuant to the terms of the Lien Procedures Order.  CJSR does not assert at this time that these liens have priority over the liens of the Prepetition Secured Parties.  Therefore, those liens are not included in this complaint at this time.

| Runaway Ghost 23 No. 2H | Reeves | $178,094.10 | 4/2/2019 | 4/24/2019 | 19-06510 |
|---|---|---|---|---|---|
| Toyah B No. 2H | Reeves | $98,868.58 | 4/2/2019 | 4/24/2019 | 19-06510 |
| War Admiral 24 Nos. 4H, and 6H | Reeves | $167,103.95 | 4/2/2019 | 4/24/2019 | 19-06510 |

25.    Pursuant to Chapter 56.003, the CJSR Superior Mineral Liens encumber:

(1)  the material, machinery, and supplies furnished or hauled by the lien claimant;

(2)  the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the labor was performed or material, machinery, or supplies were furnished or hauled, and the buildings and appurtenances on this property;

(3)  other material, machinery, and supplies used for mineral activities and owned by the owner of the property listed in Subdivision (2); and

(4)  other wells and pipelines used in operations related to oil, gas, and minerals and located on property listed in Subdivision (2).

26.    The CJSR Superior Mineral Liens encumber the following property in the Properties as defined in the CJSR Superior Mineral Liens including, without limitation: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782, 784 (Tex. App.—Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463, 465–66 (Tex. App.—El Paso 1990, writ denied); *McCarty v. Halliburton Company*, 725 S.W.2d 817, 821 (Tex. App.—Eastland 1987, writ ref'd. n.r.e.).  Under applicable Texas law, where multiple leases are operated as a pooled unit or a

proration unit[7], mineral liens extend to and encumber the totality of the acreage of each lease included (in whole or in part) in the applicable pooled unit. *See* Tex. Prop. Code § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.—Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.). Upon information and belief, certain of the leases referenced herein were operated as a pooled/proration unit and therefore the CJSR Superior Mineral Liens extend to and encumber the entire pooled/proration unit and relate back to the commencement of the furnishing of labor and/or materials for the pooled/proration unit. Once secured by filing a lien affidavit and perfected, the inception date of CJSR's Superior Mineral Liens on the properties described therein relates back to the commencement of the furnishing of labor and/or material on the properties. *See* TEX. PROP. CODE §§ 56.004-56.005; *see also Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135, 143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract."); *Bandera Drilling*, 824 at 784; *Trevor Rees-Jones, Trustee*, 799 S.W.2d at 467; *In re Cornerstone E & P Co., L.P.*, 436 B.R. 830, 839 (Bankr. N.D. Tex. 2010), supplemented, 436 B.R. 865 (Bankr. N.D. Tex. 2010). Exhibit 15 sets forth the dates of CJSR's work and the lien inception dates for each of the CJSR Superior Mineral Liens.

---

[7] Non-pooled lands on which wells are drilled are often referred to as "proration units" rather than "pooled units" per Texas Railroad Commission terminology. 16 TEX. ADMIN. CODE § 3.38(a)(3) (Defining proration units as "acreage assigned to a well for the purpose of assigning [production] allowables and allocating allowable production to the well"). Here, there is no voluntary pooling of tracts to form a single unit, but rather the unit includes every tract traversed by a wellbore. *See Browning Oil Co., Inc. v. Luecke*, 38 S.W.3d 625, 634 (Tex. App.—Austin 2000, pet. denied). Although the two terms have different meanings and are often confused, both "pooled" units and "proration" units are part of the same "land" or "leasehold" for a particular well.

111973733.v1

27.     CJSR properly perfected the CJSR Superior Mineral Liens by timely filing lien affidavits and, to the extent required, serving notice thereof on the proper parties.  CJSR asserts the liens as a mineral contractor as to MDC's interests, if any.  CJSR also asserts the liens as mineral contractor as to MDC Texas Operator and MDC Reeves pursuant to the sham contractor theory in light of their common ownership or control with MDC. Additionally and/or alternatively, CJSR asserts the liens as a mineral subcontractor for which it sent notice to MDC Texas Operator and MDC Reeves.

**C.     The Prepetition Secured Parties' Mortgages**

28.     The Prepetition Secured Parties assert priority over CJSR by virtue of recording the following security instruments for the Credit Documents (the "Mortgages"):

| Instrument | County | Date Filed | Vol/Pg |
|---|---|---|---|
| Deed of Trust, Assignment, Security Agreement, Fixture Filing, Financing Statement, and Assignment of Production | Reeves | 9/25/2018 | 1660/401 |
| Deed of Trust, Assignment, Security Agreement, Fixture Filing, Financing Statement, and Assignment of Production | Reeves | 9/25/2018 | 1661/001 |

Being, the "Original Mortgages".

| Instrument | County | Date Filed | Vol/Pg |
|---|---|---|---|
| Supplement and First Amendment to Deed of Trust, Assignment, Security Agreement, Fixture Filing, Financing Statement, and Assignment of Production | Reeves | 4/16/2019 | 1764/341 |
| Supplement and First Amendment to Deed of Trust, Assignment, Security Agreement, Fixture Filing, Financing Statement, and Assignment of Production | Reeves | 4/16/2019 | 1764/496 |

Being, the "Supplemental Mortgages".

29.     As stated by the United States Bankruptcy Court for the Northern District of

Texas, Texas law provides that:

> "the inception date of a mineral contractor lien relates back to the date work was
> first performed or materials first supplied, but the lien does not affect an
> encumbrance that attached to land or a leasehold before the lien's inception. Thus,
> under the 'first in time' rules under Texas . . . law, [a lender] will only take first
> priority over a valid [mineral lienholder] on a particular oil and gas lease where
> [such lender] perfected its lien prior to the date that the [mineral lienholder] first
> provided labor or materials attributable to that lease."

*Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co.,*

*LP*), 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010).

30.     The Original Mortgages convey and grant a lien as to Hydrocarbon Interests,[8]

which are defined as including:

> (a) all rights, options, titles, interests and estates now owned . . . by the Mortgagor
> in and to oil and gas leases, oil, gas and mineral leases, or other liquid or gaseous
> hydrocarbon leases . . . which are described on Exhibit A . . .

§ 1.7 of the Original Mortgages.

31.     The Supplemental Mortgages convey and grant a lien as to Additional

Hydrocarbon Interests,[9] which are defined as including:

> (i) all rights, options, titles, interests and estates now owned . . . by the Mortgagor
> in and to oil and gas leases, oil, gas and mineral leases, or other liquid or gaseous
> hydrocarbon leases . . . which are described on Exhibit A . . .

§ 1 (d) of the Supplemental Mortgages.

32.     Exhibit A to the Mortgages contains a list of oil and gas leases taken by MDC

Reeves or assigned to MDC Reeves being conveyed as collateral and lists several wells that

---

[8] Specifically, Section 2.1 of the Original Mortgages conveys and grants a lien as to "Collateral." Collateral as
defined includes "Realty Collateral." § 1.1. Realty Collateral as defined includes "Oil and Gas Properties." § 1.11.
And Oil and Gas Properties is defined to include "Hydrocarbon Interests." § 1.9.
[9] Specifically, Section 3 of the Supplemental Mortgages conveys and grants a lien as to "Additional Collateral."
Additional Collateral as defined includes "Additional Realty Collateral." § 1(a). Additional Realty Collateral as
defined includes "Additional Oil and Gas Properties." § 1(h). And Additional Oil and Gas Properties is defined to
include "Additional Hydrocarbon Interests." § 1(e).

Mortgagor may have intended to encumber. However, the schedule of leases attached to the Mortgages omits several of the oil and gas leases covering mineral interests in the lands on which the Affirmed 6S Nos. 3H & 7H; the Coopers Dream 23 Nos. 1H, 2H, 3H & 4H; the Copperhead 23 Nos. 2H & 4H; the Repent 23 No. 1H; Runaway Ghost 23 No. 2H;  the Toyah B No. 2H; and the War Admiral 24 Nos. 4H & 6H are located.

**D.    The CJSR Superior Mineral Liens Have Priority over the Mortgages**

**1.    The Mortgages Violate the Statute of Frauds as to Certain Leases and Therefore Provide No Notice of a Perfected Claim**

33.    Contracts for the transfer or assignment of real property interests such as oil and gas interests are subject to the Statute of Frauds. *See Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006). To satisfy the Statute of Frauds, a legal description must provide within the document, or by reference to some other writing in existence at the time of the document, the means or information by which the land being conveyed can be identified, and located on the ground, with reasonable certainty. *Williams v. Ellison*, 493 S.W.2d 734, 736 (Tex. 1973). Essentially, "[i]f enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the Statute of Frauds." *Gates v. Asher*, 280 S.W.2d 247, 248-49 (Tex. 1955).

34.    First of all, the list of wells at the end of Exhibit A in the Original Mortgages does not satisfy the Statute of Frauds insofar as it is an attempt to describe leases and lands.  Set forth below is the description provided in Exhibit A to the Original Mortgage for the Affirmed 6 properties, Copperhead 23 properties, Toyah B properties and War Admiral 24 properties:

| Lease | Operator | Well # | API # | NRI | Status | Type |
|-------|----------|--------|-------|-----|--------|------|
| Affirmed 6 | MDC TEXAS OPERATOR, LLC | 2H, 8H | 42-389-35559 | 0.51128827 | Active | Producer |

| Lease | Operator | Well # | API # | NRI | Status | Type |
|-------|----------|--------|-------|-----|--------|------|
| Copperhead 23 | MDC TEXAS OPERATOR, LLC | 1H | 42-389-34383 | 0.57487486 | Active | Producer |
| Toyah B | MDC TEXAS OPERATOR, LLC | 1 | 42-389-31338 | 0.75000000 | Active | Producer |
| Toyah B | MDC TEXAS OPERATOR, LLC | 2 | 42-389-31433 | 0.75000000 | SI | Producer |
| War Admiral 24 | MDC TEXAS OPERATOR, LLC | 1H | 42-389-35757 | 0.47736591 | Active | Producer |

35.     This does not satisfy Texas law, specifically the Statue of Frauds.  This schedule included in Exhibit A to the Original Mortgage does not reference the specific wells CJSR performed on in connection with the liens—Affirmed 6S Nos. 3H & 7H; Copperhead 23 Nos. 2H & 4H; Toyah B No. 2H; and War Admiral 24 Nos. 4H & 6H .  Even if it did, it would be insufficient because a legal description that references the name of a well and the well's API or Texas RRC number does not provide enough information to identify the lands covered with reasonable certainty. *See Carpenter v. Phelps*, 391 S.W.3d 143, 145-46 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  In *Carpenter v. Phelps*, a contract providing for the sharing of costs and revenues of production from a lease described the property as Texas Railroad Commission "Oil Lse/Gas ID no. 08294" and "the M.T. Cole 'A' Lease in Gregg County, Texas." *Id*. at 145. Although a landman testified at trial that "he could obtain a list of the wells [at issue] and physically locate them based on an Internet search using the 'lease number'," the court held that the Railroad Commission information did not provide a "nucleus of the property's description" that would permit the admission of parol evidence to supplement the description. *Id*. at 148-49 (citing *Asher v. Gates*, 280 S.W.2d 247, 248 (Tex. 1955). Here, the inclusion of lease names and

14

API numbers also does not provide a nucleus of description that would permit parol evidence as to what lands might be described.

36.     To satisfy the Statute of Frauds, the legal description must include the means or data to identify the lease being described with reasonable certainty. *See Long Trusts*, 222 S.W.3d at 416. Typically, leases are identified by including the names of Lessors, Lessees, dates of the leases and/or dates of recording, file numbers and/or volume and page numbers, acreage amounts and/or section or survey information. *See id.* at 416-17. Here, Exhibit A to the Original Mortgage fails to include any of this information as to a number of leases.  The failure to include <u>any</u> information as to an oil and gas lease purported to be covered by a conveyance would thus violate the Statute of Frauds as to that lease—*i.e.*, omission of a reference to a lease is functionally equivalent to omitting a tract from a conveyance intended to convey multiple properties. *See Tanya L. McCabe Tr. v. Ranger Energy LLC*, 531 S.W.3d 783, 799 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Therefore, absent any additional language, the failure to include a lease in Exhibit A of the Mortgages means that the Mortgages fail to satisfy the Statute of Frauds as to that lease.

37.     A conveyance is void unless it contains a description of the property it purports to convey. *See AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008) ("Like any other conveyance of property, a . . . foreclosure of a . . . lien upon real estate which fails to describe a definite tract of land is void."); *see also Smith v. Sorelle*, 87 S.W.2d 703, 705 (1935); *see also Nguyen v. Yovan*, 317 S.W.3d 261, 267 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). And a void conveyance of portions of property in an encumbrance cannot be the basis for a perfected security interest in those portions of property. *Tanya L. McCabe Tr.*, 531 S.W.3d at 799 ("A trustee's power to sell property must be exercised in strict compliance with the deed of trust, and

a foreclosure sale purchaser obtains only that title which the trustee has authority to convey."); *see also Oil Field Salvage Co. v. Simon*, 168 S.W.2d 848, 854 (1943) (holding that holder of lien on only a portion of a leasehold interest was only entitled to priority as to that portion of the leasehold).

38.     Presumably, to account for such omissions, the definition of Hydrocarbon Interests includes "cover-all" language:

> 1.7     "Hydrocarbon Interests" means (a) all rights, options, titles, interests and estates now owned . . . by the Mortgagor in and to oil and gas leases, oil, gas and mineral leases, or other liquid or gaseous hydrocarbon leases, fee interests, surface interests, mineral fee interests, overriding royalty and royalty interests, net profit interests and production payment interests, including any reserved or residual interests of whatever nature, in each case, which are described on Exhibit A, and (b) <u>all other interests of the Mortgagor now owned . . . in and to the lands that are subject to any of the leases and other instruments described in Exhibit A, regardless of whether such other interests are incorrectly described in or omitted, in whole or in part, from Exhibit A.</u>

§ 1.7 of the Original Mortgages (emphasis added).[10]

39.     Texas courts disfavor a liberal reading of blanket land descriptions. *See, e.g.*, *Smith v. Allison*, 301 S.W.2d 608, 611 (Tex. 1956) (holding that a deed purporting to include "not only the above described land, but also any and all other land and interest in land owned or claimed by the Grantor in said survey or surveys in which the above described land is situated or in adjoining the above described land" rendered a deed ambiguous as to the land conveyed); *Jones v. Colle*, 727 S.W.2d 262, 263 (Tex. 1987) (holding that a Mother Hubbard clause in an oil and gas lease covering 68.72 acres did not operate to lease an adjoining 49.34 acre tract); *J. Hiram Moore, Ltd. v. Greer*, 172 S.W.3d 609, 614 (Tex. 2005) (holding that a blanket grant of land was invalid where the specific grant failed because the grantor did not own title to the tract described in the specific grant). Such a blanket description will only be upheld where

---

[10] The Supplemental Mortgages include substantially similar language as to the Additional Hydrocarbon Interests. *See* § 1(d).

"objectively defined boundaries in [a] property description [] . . . provide reasonably certain identification." *In re Cornerstone* 436 B.R. at 844 (citing *Long Trusts*, 222 S.W.3d at 416 and *Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908-09 (Tex. 1982)). And furthermore, descriptions referencing "my property", "my land" or land "owned by me" are only sufficient when it is shown by extrinsic evidence that the conveying party only owns interests in tracts that meet very specific criteria. *See Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex. 1977) ("When the grantor is stated to be the owner of the property to be conveyed <u>and it is proved that the grantor owns only a single tract answering the description</u>, the land is identified with reasonable certainty.") Here, the granting of a lien on "all other interests of the Mortgagor now owned . . . in and to the lands that are subject to any of the leases and other instruments described in Exhibit A" stretches the concepts of "objectively defined boundaries" to its breaking point. Had MDC granted a lien on "all my interests in Reeves County," such a description may arguably be valid. *See In re Cornerstone* 436 B.R. at 844. Had MDC granted a lien on "all my interests in the lands depicted on the attached plat," such a description may also arguably be valid. *See Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194–96 (Tex. App.—Tyler 2004, pet. denied). But in this instance, the inclusion of some leases, the exclusion of others and an attempt to capture those excluded leases with vague cover-all language is not in accordance with Texas courts' skeptical views of blanket descriptions.

40.    Additionally, the blanket description language is followed by the phrase, "regardless of whether such other interests are incorrectly described in or omitted, in whole or in part, from Exhibit A." When interpreting conveyances, Texas courts examine the entire instrument and seek to harmonize and give effect to all provisions so that none will be meaningless. *U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148, 151 (Tex.

2018). Accordingly, different clauses in sentences are not to be read independently, but must be reconciled with one another. *Id.* at 153. Here, the phrase regarding "incorrectly described . . . or omitted" interests must be read as limiting the catch-all language to apply <u>only</u> to interests of the MDC that were incorrectly described or omitted. But, as noted above, an improperly described or omitted tract from a legal description renders a conveyance void as to that tract. *Tanya L. McCabe Tr.*, 531 S.W.3d at 799. The Texas legislature has specifically provided a mechanism for adding interests in land to conveyances that were improperly described or omitted in the original instrument—parties to an original transaction or their successors-in-interest may execute a correction instrument to add land or remove land from a conveyance that correctly conveys other land. TEX. PROP. CODE § 5.029. Absent a proper use of the Correction Instrument Statutes to add incorrectly described or omitted properties, third parties are <u>not</u> on notice of any liens on those properties. *See Yates Energy Corp. v. Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr.*, 04-17-00310-CV, 2018 WL 6626605, at *6 (Tex. App.—San Antonio Dec. 19, 2018, pet. filed). Accordingly, CJSR had no notice of the Prepetition Secured Parties' purported lien on the following properties and therefore, the CJSR Superior Mineral Liens have priority over the prepetition and post-petition liens and claims of the Prepetition Secured Parties as to at least the following properties:

| Leases Omitted from the Original Mortgages | | | | | |
|---|---|---|---|---|---|
| <u>Well/Unit</u> | <u>Lessor</u> | <u>Lessee</u> | <u>Lse Date</u> | <u>Vol</u> | <u>Pg</u> |
| Toyah B | Barbara M. Goede | TXO Production Corp. | 12/2/1982 | 430 | 484 |
| Toyah B | Margaret M. Reese | TXO Production Corp. | 12/2/1982 | 431 | 96 |
| Copperhead 23 Unit | Melanie M. Kolby | Boyd & McWilliams Investments, LLC | 9/14/2010 | 853 | 114 |
| Runaway Ghost 23 | Melanie M. Kolby | Boyd & McWilliams Investments, LLC | 9/14/2010 | 853 | 114 |
| War Admiral 24 | Melanie M. Kolby | Boyd & McWilliams Investments, LLC | 9/14/2010 | 853 | 114 |
| Copperhead 23 Unit | Pattie Wolfe Mitchell | Boyd & McWilliams Investments, LLC | 9/13/2010 | 853 | 116 |
| Copperhead 23 Unit | Jerry M. Moore | San Saba Resources, LLC | 9/14/2010 | 855 | 285 |
| Runaway Ghost 23 | Jerry M. Moore | San Saba Resources, LLC | 9/14/2010 | 855 | 285 |

111973733.v1

| Leases Omitted from the Original Mortgages | | | | | |
|---|---|---|---|---|---|
| __Well/Unit__ | __Lessor__ | __Lessee__ | __Lse Date__ | __Vol__ | __Pg__ |
| War Admiral 24 | Jerry M. Moore | San Saba Resources, LLC | 9/14/2010 | 855 | 285 |
| Affirmed 6 | Teresa Bell | San Saba Resources, LLC | 1/21/2011 | 868 | 616 |
| Coopers Dream 23 | Mary R. Callahan, by Barbara C. Tocco A-I-F | Red Willow Production LLC | 2/22/2014 | 1073 | 732 |
| Copperhead 23 Unit | Barbara C. Tocco, as agent and attorney in fact for Mary R. Callahan | San Saba Resources, LLC | 2/22/2014 | 1073 | 732 |
| Copperhead 23 | Maribeth Stephens | Red Willow Production, LLC | 2/4/2014 | 1096 | 148 |
| Repent 23 | Maribeth Stephens | Red Willow Production, LLC | 2/4/2014 | 1096 | 148 |
| Runaway Ghost 23 | Maribeth Stephens | Red Willow Production, LLC | 2/4/2014 | 1096 | 148 |
| War Admiral 24 | Diahn Rae Ehlers aka Diahn Ehlers and Dee Seymour | MDC Reeves Energy, LLC | 8/3/2015 | 1201 | 0 |
| War Admiral 24 | WI-CCS, LP | MDC Reeves Energy, LLC | 6/19/2015 | 1201 | 161 |
| Runaway Ghost 23 | Pattie Wolfe Mitchell | MDC Reeves Energy, LLC | 7/29/2015 | 1201 | 523 |
| War Admiral 24 | Patti Wolfe Mitchell | MDC Reeves Energy, LLC | 7/29/2015 | 1201 | 523 |
| Runaway Ghost 23 | Peggi Wolfe Morgan | MDC Reeves Energy, LLC | 7/29/2015 | 1201 | 529 |
| War Admiral 24 | Peggi Wolfe Morgan | MDC Reeves Energy, LLC | 7/29/2015 | 1201 | 529 |
| Runaway Ghost 23 | Jack P. Wolfe | MDC Reeves Energy, LLC | 7/29/2015 | 1201 | 535 |
| War Admiral 24 | Jack P. Wolfe | MDC Reeves Energy, LLC | 7/29/2015 | 1201 | 535 |
| Affirmed 6 | Charlotte T. Slack, a widow | MDC Reeves Energy, LLC | 8/15/2015 | 1201 | 541 |
| Affirmed 6 | RCS, Inc. | MDC Reeves Energy, LLC | 8/16/2015 | 1208 | 364 |
| Affirmed 6 | Westway Ranches, LLC | MDC Reeves Energy, LLC | 11/11/2015 | 1229 | 408 |
| Repent 23 | John R. Atkinson, Jr. | MDC Reeves Energy, LLC | 8/31/2015 | 1229 | 480 |
| Runaway Ghost 23 | John R. Atkinson, Jr. | MDC Reeves Energy, LLC | 8/31/2015 | 1229 | 480 |
| War Admiral 24 | John R. Atkinson, Jr. | MDC Reeves Energy, LLC | 8/31/2015 | 1229 | 480 |
| Repent 23 | Birdie Slack Investments, LLC | MDC Reeves Energy, LLC | 11/1/2015 | 1229 | 506 |
| War Admiral 24 | Birdie Slack Investments, LLC | MDC Reeves Energy, LLC | 11/1/2015 | 1229 | 506 |
| Affirmed 6 | Moore Capital, Ltd. | MDC Reeves Energy, LLC | 11/6/2015 | 1243 | 384 |
| Affirmed 6 | John J. Cody, individually and as Trustee of the John J. Cody Trust dated May 17, 2003 | MDC Reeves Energy, LLC | 1/5/2016 | 1250 | 167 |

111973733.v1

| Leases Omitted from the Original Mortgages | | | | | |
|---|---|---|---|---|---|
| Well/Unit | Lessor | Lessee | Lse Date | Vol | Pg |
| Affirmed 6 | Elizabeth Cody-Rutter | MDC Reeves Energy, LLC | 1/5/2016 | 1250 | 169 |
| War Admiral 24 | Clauda Crossler | Kew Drilling | 4/11/2016 | 1267 | 551 |
| War Admiral 24 | Hackberry, LLC | Kew Drilling | 4/11/2016 | 1267 | 553 |
| Toyah B | Judy and Glenn McAfee | Three Rivers Asquisition III, LLC | 11/10/2016 | 1349 | 710 |
| Toyah B | Laura Wallace | Three Rivers Asquisition III, LLC | 11/3/2016 | 1352 | 385 |
| Toyah B | Frank Montgomery | Three Rivers Asquisition III, LLC | 11/3/2016 | 1352 | 387 |
| Toyah B | Julia Waters | Three Rivers Asquisition III, LLC | 11/3/2016 | 1353 | 660 |
| Toyah B | Carolyn Thurmond | Three Rivers Asquisition III, LLC | 11/3/2016 | 1353 | 662 |
| Toyah B | Martha Slack Reid | Black Oak Oil and Gas Properties, LLC | 11/1/2016 | 1373 | 446 |
| Toyah B | Dorr Petroleum Land Management, LLC | Black Oak Oil and Gas Properties, LLC | 11/7/2016 | 1373 | 451 |
| Toyah B | Ann S. McPherson | Black Oak Oil and Gas Properties, LLC | 11/8/2016 | 1373 | 452 |
| Toyah B | Kathryn Smith | Black Oak Oil and Gas Properties, LLC | 11/23/2016 | 1373 | 453 |
| Toyah B | Lynn Labay | Black Oak Oil and Gas Properties, LLC | 11/22/2016 | 1373 | 454 |
| Toyah B | Helen Jo Creath | Black Oak Oil and Gas Properties, LLC | 11/18/2016 | 1373 | 455 |
| Toyah B | Stever Montgomery | Three Rivers Asquisition III, LLC | 11/3/2016 | 1373 | 456 |
| Coopers Dream 23 | Billie Jo David, by and through Attorney-in-Fact, Candice Jo Rehders | Herbert R. Rehders, III | 2/1/2017 | 1376 | 397 |
| Toyah B | Betsy P. Hamilton | Three Rivers Asquisition III, LLC | 11/2/2016 | 1379 | 659 |
| Toyah B | Bonnie L. Kribbs | Black Oak Oil and Gas Properties, LLC | 11/23/2016 | 1379 | 660 |
| Toyah B | Kenneth Roy Slack Revocable Trust dated July 31, 2008 | Black Oak Oil and Gas Properties, LLC | 11/1/2016 | 1379 | 661 |
| Toyah B | Gail B. Armstrong | Scarlet Land Services, LLC | 3/15/2017 | 1392 | 633 |
| Toyah B | Beverly Jan Whingham Harshman | Black Oak Oil and Gas Properties, LLC | 2/10/2017 | 1404 | 789 |
| Toyah B | Cliff Judson Whigham, Jr. | Black Oak Oil and Gas Properties, LLC | 2/9/2017 | 1404 | 790 |
| Toyah B | Dorothy Pauline Whigham Schwab | Black Oak Oil and Gas Properties, LLC | 2/13/2017 | 1404 | 791 |
| Toyah B | Patricia Ann Whigham Schwab | Black Oak Oil and Gas Properties, LLC | 2/10/2017 | 1404 | 792 |
| Toyah B | Mary Ann Robinson | Black Oak Oil and Gas Properties, LLC | 3/17/2017 | 1404 | 793 |
| Toyah B | Kari Luann Poer Putnam | Black Oak Oil and Gas Properties, LLC | 1/25/2017 | 1404 | 796 |

| Leases Omitted from the Original Mortgages | | | | | |
|---|---|---|---|---|---|
| Well/Unit | Lessor | Lessee | Lse Date | Vol | Pg |
| Toyah B | Kelly lynn Poer | Black Oak Oil and Gas Properties, LLC | 2/1/2017 | 1404 | 797 |
| Toyah B | Russell Thomas Poer | Black Oak Oil and Gas Properties, LLC | 2/15/2017 | 1404 | 798 |
| Toyah B | Robert Emmett Poer | Black Oak Oil and Gas Properties, LLC | 1/24/2017 | 1404 | 799 |
| Toyah B | Rosanne Poer Emmon | Black Oak Oil and Gas Properties, LLC | 1/13/2017 | 1404 | 800 |
| Toyah B | Jeanette Longoria | Scarlet Land Services, LLC | 5/5/2017 | 1422 | 391 |
| Toyah B | Ann McGoveny | Buck Oil & Gas, LLC | 12/1/2017 | 1525 | 710 |
| Toyah B | Melissa Camuglia | Buck Oil & Gas, LLC | 12/15/2017 | 1525 | 721 |
| Coopers Dream 23 | Desert Partners IV, LP | MDC Reeves Energy, LLC | 7/5/2018 | 1643 | 314 |

| Leases Omitted from the Supplemental Mortgages | | | | | |
|---|---|---|---|---|---|
| Well/Unit | Lessor | Lessee | Lse Date | Vol | Pg |
| Runaway Ghost 23 | Maribeth Stephens | MDC Reeves Energy, LLC | 12/5/2018 | 1742 | 644 |
| Runaway Ghost 23 | Sarajane Stoudenmire | MDC Reeves Energy, LLC | 12/5/2018 | 1742 | 650 |
| Runaway Ghost 23 | Vivian H. Steiner | MDC Reeves Energy, LLC | 12/27/2018 | 1742 | 652 |
| Copperhead 23 | Vivian H. Steiner aka Vivyan Steiner | MDC Reeves Energy, LLC | 12/27/2018 | 1742 | 655 |
| Repent 23 | Vivian H. Steiner aka Vivyan Steiner | MDC Reeves Energy, LLC | 12/27/2018 | 1742 | 655 |
| Runaway Ghost 23 | Vivian H. Steiner aka Vivyan Steiner | MDC Reeves Energy, LLC | 12/27/2018 | 1742 | 655 |
| Toyah B | Desert Parners VI, LP | MDC Reeves Energy, LLC | 2/1/2019 | 1754 | 354 |

2.      **The After-Acquired Title Provisions Do Not Act to Provide Notice of a Lien on a Lease Unless the Lease Was Pooled by a Unit Designation Prior to CJSR Commencing Work.**

41.      Mortgages purporting to cover all land or interests a party may acquire in the future by virtue of an after-acquired property clause do not impart constructive notice because they are not in the chain of title. TEX. PROP. CODE, Title 2 App., Tex. Title Examination Standards § 4.50, State Bar of Tex. Joint Editorial Bd. (citing *First Nat. Bank v. Sw. Lumber Co. of New Jersey*, 75 F.2d 814, 816 (5th Cir. 1935)). In order for such an after-acquired property provision to impart notice, it must describe the exact property to be acquired in the future. *In re*

*Cornerstone*, 436 B.R. at 862 (citing *Simon v. State Mut. Life Assur. Co.*, 126 S.W.2d 682, 685

(Tex. Civ. App.—Dallas 1939, writ ref'd).

42.    Presumably, to account for leases the Debtor Defendants were to acquire in the

future, the definition of Hydrocarbon Interests includes "after-acquired" language:

> 1.7    "Hydrocarbon Interests" means (a) all rights, options, titles, interests and
> estates now owned or hereafter acquired by the Mortgagor in and to oil and gas
> leases, oil, gas and mineral leases, or other liquid or gaseous hydrocarbon leases,
> fee interests, surface interests, mineral fee interests, overriding royalty and royalty
> interests, net profit interests and production payment interests, including any
> reserved or residual interests of whatever nature, in each case, which are
> described on Exhibit A, and (b) all other interests of the Mortgagor now owned or
> hereafter acquired in and to the lands that are subject to any of the leases and
> other instruments described in Exhibit A, regardless of whether such other
> interests are incorrectly described in or omitted, in whole or in part, from
> Exhibit A.

§ 1.7 of the Original Mortgages (emphasis added).[11] Assuming for argument's sake that CJSR

was on notice of the Prepetition Secured Parties' security interest in leases that the Debtor

Defendants owned at the time the Original Mortgages and/or the Supplemental Mortgages were

recorded regardless of whether those leases were specifically listed on the Exhibits to the

Mortgages, the after-acquired language only provides notice to CJSR of leases obtained after the

recordation of the Mortgages if those leases were specifically and correctly listed on a unit

designation that was recorded in the Reeves County real property records prior to CJSR

providing goods and/or services to the Debtor Defendants. *See In re Cornerstone* 436 B.R. at

865.

43.    CJSR commenced work on the Copperhead 23 Well(s) on December 1, 2018.

The Unit Designation for the Copperhead 23 Unit was not filed of record until September 30,

2019. CJSR commenced work on the Runaway Ghost 23 Wells(s) on December 5, 2018.  No

---

[11] The Supplemental Mortgages include substantially similar language as to the Additional Hydrocarbon Interests.
*See* § 1(d).

Unit Designation for the Runaway Ghost 23 Unit has been filed of record.[12]  CJSR commenced

work on the Coopers Dream 23 Well(s) on December 12, 2018.  No Unit Designation for the

Coopers Dream 23 Unit has been filed of record.  CJSR commenced work on the Toyah B

Well(s) on January 3, 2019. No Unit Designation for the Toyah B Unit has been filed of record.

CJSR commenced work on the Repent 23 Well(s) on January 20, 2020. No Unit Designation for

the Repent 23 Unit has been filed of record.

44.    Therefore, under the holding of *In re Cornerstone*, CJSR was not on notice of the

Prepetition Secured Parties' purported liens on the following properties and therefore, the CJSR

Mineral Liens have priority over the prepetition and post-petition liens, security interests and

claims of the Prepetition Secured Parties as to the following properties:

| Leases Not Covered by After-Acquired Clause | | | | | |
|---|---|---|---|---|---|
| Well/Unit | Lessor | Lessee | Lease Date | Vol | Pg |
| Coopers Dream 23 | Courtney Holt Cowden, Jr. | MDC Reeves Energy, LLC | 9/1/2018 | 1681 | 507 |
| Coopers Dream 23 | Patch Energy, LLC and Candlewood Resources, LLC | MDC Reeves Energy, LLC | 10/24/2018 | 1706 | 394 |
| Runaway Ghost 23 | Maribeth Stephens | MDC Reeves Energy, LLC | 12/5/2018 | 1742 | 644 |
| Runaway Ghost 23 | Sarajane Stoudenmire | MDC Reeves Energy, LLC | 12/5/2018 | 1742 | 650 |
| Runaway Ghost 23 | Vivian H. Steiner | MDC Reeves Energy, LLC | 12/27/2018 | 1742 | 652 |
| Copperhead 23 | Vivian H. Steiner aka Vivyan Steiner | MDC Reeves Energy, LLC | 12/27/2018 | 1742 | 655 |
| Runaway Ghost 23 | Vivian H. Steiner aka Vivyan Steiner | MDC Reeves Energy, LLC | 12/27/2018 | 1742 | 655 |
| Toyah B | Desert Parners VI, LP | MDC Reeves Energy, LLC | 2/1/2019 | 1754 | 354 |
| Coopers Dream 23 | Lambert Land Co. | MDC Reeves Energy, LLC | 1/10/2019 | 1775 | 394 |

[12] *See* note 7, *supra* discussing the principles of pooled units and proration units. The Texas Railroad Commission is a conservation body and does not have jurisdiction to effect a change of property rights with regard to leases. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 603 (Tex. 2018), reh'g denied (Sept. 28, 2018). Because proration units are creatures of Texas' regulatory scheme and do not by themselves effect a change of property rights, proration unit "designations" are typically not filed of record. Given that Texas courts have held that references to Texas Railroad Commission records do not provide a "nucleus of description" for the purposes of satisfying the Statute of Frauds, such an attempted use to impart notice of a lien on a lease pursuant to an after-acquired title provision should also fail. *See Carpenter*, 391 S.W.3d at 148-49.

| Well/Unit | Lessor | Lessee | Lease Date | Vol | Pg |
|---|---|---|---|---|---|
| **Leases Not Covered by After-Acquired Clause** | | | | | |
| Toyah B | Ann Elaine Glenn | MDC Reeves Energy, LLC | 3/13/2019 | 1779 | 769 |
| Toyah B | Kimberly Ann Torrez | MDC Reeves Energy, LLC | 3/13/2019 | 1779 | 771 |
| Toyah B | Lisa Marie Powell | MDC Reeves Energy, LLC | 3/13/2019 | 1779 | 773 |
| Toyah B | Steve Earl Glen | MDC Reeves Energy, LLC | 3/13/2019 | 1779 | 775 |
| Toyah B | Craig Patrick Glen | MDC Reeves Energy, LLC | 3/13/2019 | 1779 | 779 |
| Toyah B | Donna Ruth Kirk | MDC Reeves Energy, LLC | 3/13/2019 | 1779 | 781 |
| Toyah B | David Earl Glenn, dealing in his sole and separate property | MDC Reeves Energy, LLC | 3/13/2019 | 1779 | 783 |
| Toyah B | Crownrock Minerals,LP | MDC Reeves Energy, LLC | 3/8/2019 | 1781 | 76 |
| Runaway Ghost 23 | Jeffery Sammons | MDC Reeves Energy, LLC | 12/27/2018 | 1781 | 85 |
| Copperhead 23 | Jeffery Sammons a/k/a Jeffery D. Sammons | MDC Reeves Energy, LLC | 12/27/2018 | 1781 | 88 |
| Runaway Ghost 23 | Jeffery Sammons a/k/a Jeffery D. Sammons | MDC Reeves Energy, LLC | 12/27/2018 | 1781 | 88 |
| Runaway Ghost 23 | Meredith Baker through her AIF Jeffrey Sammons | MDC Reeves Energy, LLC | 12/27/2018 | 1781 | 91 |
| Copperhead 23 | Richard F. Sammons | MDC Reeves Energy, LLC | 12/27/2018 | 1796 | 39 |
| Runaway Ghost 23 | Richard F. Sammons | MDC Reeves Energy, LLC | 12/27/2018 | 1796 | 39 |
| Runaway Ghost 23 | Richard F. Sammons | MDC Reeves Energy, LLC | 12/27/2018 | 1796 | 42 |
| Copperhead 23 | Jeffery Sammons aka Jeffery D. Sammons as Attorney-In-Fact for Meredith Baker aka Meredith S. Baker | MDC Reeves Energy, LLC | 12/27/2018 | 1811 | 116 |
| Runaway Ghost 23 | Jeffery Sammons aka Jeffery D. Sammons as Attorney-In-Fact for Meredith Baker aka Meredith S. Baker | MDC Reeves Energy, LLC | 12/27/2018 | 1811 | 116 |
| Copperhead 23 | Julia Workman | MDC Reeves Energy, LLC | 12/27/2018 | 2019011999 | |
| Runaway Ghost 23 | Julia Workman | MDC Reeves Energy, LLC | 12/27/2018 | 2019011999 | |
| Runaway Ghost 23 | Julia Workman | MDC Reeves Energy, LLC | 12/27/2018 | 2019012000 | |
| Copperhead 23 | James Brian Anderson | MDC Reeves Energy, LLC | 3/7/2019 | 2019014092 | |
| Runaway Ghost 23 | James Brian Anderson | MDC Reeves Energy, LLC | 3/7/2019 | 2019014092 | |

| Leases Not Covered by After-Acquired Clause | | | | | |
|---|---|---|---|---|---|
| Well/Unit | Lessor | Lessee | Lease Date | Vol | Pg |
| Copperhead 23 | Laura Anderson Davis | MDC Reeves Energy, LLC | 3/7/2019 | 2019014093 | |
| Runaway Ghost 23 | Laura Anderson Davis | MDC Reeves Energy, LLC | 3/7/2019 | 2019014093 | |
| Copperhead 23 | Tracy Anderson Modisette | MDC Reeves Energy, LLC | 3/7/2019 | 2019014094 | |
| Runaway Ghost 23 | Tracy Anderson Modisette | MDC Reeves Energy, LLC | 3/7/2019 | 2019014094 | |
| Toyah B | Karen Jane Alexander | MDC Reeves Energy, LLC | 3/13/2019 | Unknown | |

## CAUSES OF ACTION

**A. Count 1: Declaratory Judgment Under 28 U.S.C. §§ 2201 and 2202, and Lien Procedures Order Relating to Extent, Validity, Priority and Amount of the CJSR Superior Mineral Liens**

45.     CJSR incorporates all prior paragraphs into this section.

46.     In a case of actual controversy within its jurisdiction, except with respect to inapplicable exceptions, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201(a). Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a).  Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. 28 U.S.C. § 2202. CJSR provided the goods and services to the Debtor Defendants as described herein and in the Exhibits attached hereto.  CJSR properly and timely perfected the CJSR Superior Mineral Liens.  On information and belief, the value of CJSR's collateral securing the CJSR Superior Mineral Liens and the CJSR Additional Superior Mineral Liens exceeds the amount of the outstanding indebtedness owing to CJSR.

47.     The CJSR Superior Mineral Lien and the CJSR Additional Superior Mineral Lien fully secures the principal amount of the indebtedness owed by the Debtor Defendants to CJSR

plus additional interest, attorneys' fees and other costs as may be allowed by applicable law. CJSR seeks a declaratory judgment establishing the extent, validity, perfection, priority, value and amount of CJSR's liens, as described herein, and allowed secured claim under FED. R. BANKR. P. 7001(c)(2) 3012; Section 506 of the Bankruptcy Code, and The Federal Declaratory Judgment Act, 28 U.S.C. 2201 and the Lien Procedures Order.

48.     CJSR further seeks a judgment recognizing and making enforceable the CJSR Superior Mineral Liens against the property described in the liens, and this complaint and as allowed under Chapter 56 of the Texas Property Code.

49.     CJSR also seeks a declaratory judgment that the CJSR Superior Mineral Liens and CJSR Additional Superior Mineral Liens are valid, properly perfected, first priority mineral liens in accordance with applicable law against the property described above in the CJSR Superior Mineral Liens and the CJSR Additional Mineral Liens in the sums provided above to secure full payment of the amounts owed to CJSR by MDC and/or the other Debtor Defendants and further recognizing and making enforceable CJSR's liens under all applicable law and senior to the Mortgages, and the prepetition and post-petition liens, security interests and claims of the Prepetition Secured Parties as to the property described above.

**B.     Count 2 - Recovery of Attorneys' Fees and Costs.**

50.     CJSR incorporates all prior paragraphs into this section.

51.     Pursuant to Section 506(b) of the Bankruptcy Code, 28 U.S.C. § 2202, and Chapter 53 and 56 of the Texas Property Code, CJSR seeks recovery of all reasonable attorneys' fees, interest and costs incurred in enforcing its statutory privilege, liens, claims and underlying obligations related thereto in this proceeding.

## **RESERVATION OF RIGHTS**

52.    CJSR reserves its right to amend this Complaint based on new information that may be received during discovery or as otherwise allowed by law or this Court.

## **PRAYER**

Wherefore, CJSR prays for the following:

a.    for a judgment providing all declaratory relief described herein;

b.    for a judgment that CJSR has valid, properly perfected, first priority mineral liens in accordance with applicable law against the property described above on the CJSR Superior Mineral Liens in the sums provided above to secure full payment of the amounts owed to CJSR by MDC and/or the other Debtor Defendants and further recognizing and making enforceable CJSR's liens under all applicable law;

c.    for a judgment that the CJSR Superior Mineral Liens are superior in priority to the Mortgages and the prepetition and post-petition liens, security interests and claims of the Prepetition Secured Parties;

d.    for a judgment declaring the value of CJSR's allowed secured claim on the collateral described herein;

e.    an award of applicable interest, reasonable attorneys' fees, and costs; and

f.    that CJSR be granted all other relief, general or special, at law or in equity, to which the CJSR shows itself justly entitled.

[Signature page follows.]

111973733.v1

Dated: July 2, 2020

**FOX ROTHSCHILD LLP**

/s/ *Thomas M. Horan*

Thomas M. Horan (DE Bar No. 4641)
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 480-9412
E-mail: thoran@foxrothschild.com

**GRAY REED & MCGRAW LLP**

Micheal W. Bishop, Esq.
Texas State Bar No. 02354860
1601 Elm Street, Suite 4600
Dallas, Texas  75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
mbishop@grayreed.com

-and-

Joe Virene
Texas Bar No. 24060779
1300 Post Oak Blvd., Suite 2000
Houston, Texas  77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
jvirene@grayreed.com

**ATTORNEYS FOR NEXTIER
COMPLETION SOLUTIONS INC. f/k/a
C&J SPEC-RENT SERVICES, INC.**

111973733.v1