# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MTE HOLDINGS LLC, *et al.*,[1] | : | Case No.: 19-12269 (CSS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| SITEPRO, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No: 20- |
| | : | |
| MDC ENERGY LLC, | : | |
| MDC TEXAS OPERATOR LLC, | : | |
| MDC REEVES ENERGY LLC, and | : | |
| NATIXIS, NEW YORK BRANCH, | : | |
| | : | |
| Defendants. | : | |

SitePro, Inc. ("SitePro"), by and through its undersigned counsel, hereby files this *Complaint and Request for Declaratory Judgment to Determine Validity, Priority, and Extent of Mineral Liens on the Debtors' Property* pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Rules") and the *Final Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [D.I. 1092] to determine the validity, priority, and extent of its statutory mineral liens under applicable state law on certain of the Debtors' properties, and avers as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

**Parties**

1. Plaintiff SitePro, Inc. is a Delaware corporation with its principal place of business located in Lubbock, Texas.

2. Defendant MDC Energy LLC ("MDC") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3. Defendant MDC Texas Operator LLC ("MDC Texas Operator") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4. Defendant MDC Reeves Energy LLC ("MDC Reeves" is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5. Natixis, New York Branch ("Natixis") is the administrative agent on behalf of certain lenders and other parties (collectively, the "Lenders" and, together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant MDC.

**Jurisdiction and Venue**

6. Defendants MDC, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are debtors in the above-captioned, jointly administered chapter 11 cases styled *In re MTE Holdings LLC*, *et al.*, Case No. 19-12269 (CSS) (Bankr. D. Del.) (the "Cases"), pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

7. This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a), and 1334(a), and the Amended Standing Order of Reference from the United States

District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

8. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9. Venue of the Cases and this adversary proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409.

10. Pursuant to Fed. R. Bankr. 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), SitePro consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Nature of Action

11. This is an action pursuant to Fed. R. Bankr. 7001(2) and 7001(9) and the Declaratory Judgment Act (28 U.S.C. § 2201).

12. By this Complaint, SitePro seeks a judgment of this Court determining the priority of SitePro's statutory mineral interest liens and the prepetition and post-petition liens and security interests of the Prepetition Secured Parties. Specifically, SitePro seeks a determination that (i) SitePro holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtor Defendants' property, and (ii) such valid, fully-perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and post-petition lien claims of the Prepetition Secured Parties.

**Procedural Background**

13.  On November 8, 2019 (the "Petition Date"), the Debtor Defendants initiated their Cases by filing their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.  MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. See Schedules of Assets and Liabilities for MDC Reeves Energy LLC [Case No. 19-12388, D.I. 6].

15.  On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* [D.I. 49] (the "Cash Collateral Motion") seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties.

- On November 19, 2019, the Court entered the first interim order [D.I. 112] (the "First Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for December 13, 2019.

- On December 17, 2019, the Court entered the second interim order [D.I. 297] (the "Second Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for January 15, 2020, which hearing was subsequently adjourned to January 17, 2020.

- On January 17, 2020, the Court entered the third interim order [D.I. 506] (the "Third Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for February 4, 2020.

- On February 4, 2020, the Court entered the fourth interim order [D.I. 554] (the "Fourth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for February 24, 2020.

- On February 27, 2020, the Court entered the Fifth Interim Order [D.I. 674] (the "Fifth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for March 31, 2020.

- On April 2, 2020, the Court entered the Sixth Interim Order [D.I. 874] (the "Sixth Interim Order") approving, in part, the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for May 4, 2020.

- On May 15, 2020, the Court entered the Final Order [D.I. 1092] (together, the Final Order, along with the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order and the Sixth Interim Order, the "Cash Collateral Order").

**Factual Background**

A. SitePro Provided Service and Materials to Debtors in 2018

16. As detailed in its Notice, Supplemental Notice, and Second Supplemental Notice of Perfection of Mechanic's Lien (Oil, Mineral and Gas Property) [D.I. 573, 668 and 738] (the "Mineral Lien Notices"), SitePro is a company that has continuously provided labor and furnished materials, machinery, equipment or supplies (collectively, the "Services") to the Debtor Defendants for the Debtor Defendants' operations relating to various leases located in Reeves County, Texas (the "Leases"), commencing in 2018 and continuing through and after the Debtor Defendants' bankruptcy filings. SitePro provided the Services to the Debtor Defendants from August 2018 pursuant to Contracts ("Contracts") with no break in the Services for any six-month period of time. SitePro worked with Debtor Defendants on a routine and daily basis to enable Debtor Defendants to produce oil, gas, and other production by-products within and around the area covered by the Leases.

17. The Debtor Defendants have maintained an open and unpaid balance with SitePro since September 2018. Despite numerous promises to pay SitePro's balance in full, Debtor Defendants accrued a debt to SitePro for unpaid Services in the amount of at least $608,410.94 as

of the Petition Date, exclusive of accrued interests, costs, fees, and other charges, with additional amounts owed and accrued after the Petition Date.[2] At no time since September 2018 have Debtor Defendants paid their account receivables in full.

18. Under applicable state law,[3] SitePro has prepetition statutory mineral liens (the "Mineral Liens") which it secured on each Leasehold set forth in **Exhibit 1** attached hereto and incorporated herein, to secure unpaid amounts for labor and services that SitePro continually provided to the Debtor Defendants under the Contracts.[4]

19. SitePro's Mineral Liens attach to and encumber the following property interests (collectively, the "Collateral Properties"): (i) the material, machinery and supplies furnished by SitePro; (ii) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the services were provided; (iii) the buildings and appurtenances on the property; (iv) other material, machinery, and supplies used for mineral activities and owned by the property owner; and (iv) other wells and pipelines used in operations related to oil, gas and minerals and located on the property. See TEX. PROP. CODE § 56.003; *Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.-Houston [1st Dist.] 1997, no writ). It is common practice to combine multiple leases to operate as a single "unit" or through pooling. On information and belief, the Debtor Defendants have multiple unit and/or pooling agreements. The lease to which a statutory lien attaches covers all of the real property described by the lease,

---

[2] SitePro timely filed its Proofs of Claim against the respective Debtor Defendants in the amount of $608,410.94. SitePro fully reserves its rights to amend its Proofs of Claim.

[3] *See* TEXAS PROPERTY CODE §§ 56.002, 56.021 and 56.022.

[4] On February 10, 2020, SitePro filed its *Notice of Perfection, Continuance and Maintenance of Mechanic's Lien (Oil, Gas and Mineral Property) Pursuant to 11 U.S.C. § 546(b)* [D.I. 573]. On February 26, 2020, SitePro filed its *Supplement to Notice of Perfection, Continuance and Maintenance of Mechanic's Lien (Oil, Gas and Mineral Property) Pursuant to 11 U.S.C. § 546(b)* [D.I. 668]. On March 12, 2020, SitePro filed *its Second Supplement to Notice of Perfection, Continuance and Maintenance of Mechanic's Lien (Oil, Gas and Mineral Property) Pursuant to 11 U.S.C. § 546(b)* [D.I. 738].

including the minerals in the ground and, when a lease covers a tract made part of a unit or pooled area, the lien that is attached to that lease likewise attaches to all other leases that are subject to the common unit agreement or pooling agreement. This includes the minerals in the ground covered by the leases in the unit or pooled acreage. TEX. PROP. CODE § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App—Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 344 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.).

    B.    <u>Prepetition Secured Parties in 2018</u>

    20.    On September 17, 2018, prior to the filing of the petitions which initiated the Cases and as set forth in the Cash Collateral Motion, the Prepetition Secured Parties made certain loans and extensions of credit under the Credit Agreement to MDC. In connection with the Cash Collateral Motion, the Prepetition Secured Parties have asserted that, under the Credit Agreement and certain other documentation executed therewith (collectively, the "Credit Documents"), MDC and certain affiliated guarantors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on, any interest in any kind of property or asset, whether real, personal or mixed, tangible or intangible, including cash, securities, accounts and contract rights. The Prepetition Secured Parties' assertions include a first-priority security interest in oil and gas leasehold interests, working interests, and associated property rights.

    21.    According to the relevant land records of Reeves County, the security instruments for the Credit Documents were not filed against the Debtor Defendants' real property interests in that county—and thus the security interests of the Prepetition Secured Parties were not perfected as to such collateral—until September 25, 2018.

    22.    Pursuant to the Cash Collateral Order, the Debtors (including the Debtor Defendants) have admitted and stipulated to the Prepetition Secured Parties' claim and security

interests. See Cash Collateral Order (C), (D), (E), (F). Under paragraph 23 of the Cash Collateral Order, these admissions and stipulations are generally binding on all other parties in interest subject to a challenge period as set forth therein. Paragraph 23 of the Cash Collateral Order expressly provides, however, that certain "Statutory Lienholders" such as SitePro are not subject to this challenge period in order to preserve or protect the priority of their respective statutory liens or security interests, and further that "[n]othing in [the Cash Collateral Order] shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." SitePro asserts that there is a justiciable controversy as set forth in this Complaint as to the competing priority of its statutory mineral liens with the prepetition and post-petition liens of the Prepetition Secured Parties.

23. Furthermore, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. See Cash Collateral Order ¶¶ 4(a) and 4(b). The post-petition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with post-petition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date. Furthermore, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed

interests. See Cash Collateral Order (C), (D), (E), (F). Under paragraph 23 of the Cash Collateral Order, these admissions and stipulations are generally binding on all other parties in interest subject to a challenge period as set forth therein. Paragraph 23 of the Cash Collateral Order expressly provides, however, that certain "Statutory Lienholders" such as SitePro are not subject to this challenge period in order to preserve or protect the priority of their respective statutory liens or security interests, and further that "[n]othing in [the Cash Collateral Order] shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." SitePro asserts that there is a justiciable controversy as set forth in this Complaint as to the competing priority of its statutory mineral liens with the prepetition and post-petition liens of the Prepetition Secured Parties.

23. Furthermore, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. See Cash Collateral Order ¶¶ 4(a) and 4(b). The post-petition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with post-petition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date. Furthermore, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed

as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." Id.

      C.      SitePro Has a Priority Lien Ahead of Prepetition Secured Parties

24. SitePro disputes the Prepetition Secured Parties' prepetition and post-petition security interests insofar as such security interests are asserted to be superior to the valid, fully perfected, and enforceable statutory mineral liens of SitePro as further described herein.

25. Under Texas law, the Mineral Liens encumber the following interests in the Collateral Properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted, (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782 (Tex. App.--Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.--El Paso 1990, writ denied); *McCarty v. Halliburton Company*, 725 S.W.2d 817 (Tex. App.--Eastland 1987, writ ref'd. n.r.e.). Moreover, the mineral liens are generally considered as a remedial statute that should be given a broad construction. *See Dealers Elec. Supply Co. v. Scoggins Constr. Co.*, 292 S.W.3d 650, 658 (Tex. 2008).

26. Once secured by filing a lien affidavit and perfected, the inception date of SitePro's Mineral Liens on the Collateral Properties relates back to the commencement of the furnishing of labor and/or materials on the subject Leases. *See* TEX. PROP. CODE § 56.004-005; *Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135, 143 (5th Cir. 1968); *In re Meg Petroleum*

9

*Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automatically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract."); *Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782, 784 (Tex. App.--Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.--El Paso 1990, writ denied). As stated by the United States Bankruptcy Court for the Northern District of Texas, Texas law provides that the inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas . . . , [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease. *Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010).

27.     SitePro first provided Services to the Debtor Defendants in connection with the applicable Leases pursuant to the Contracts and continuously provided Services with respect to such Leases. The Mineral Liens of SitePro therefore date back to the applicable dates of when SitePro first provided Services to the Debtor Defendants on August 20, 2018.  Further, SitePro continuously provided Services to the applicable Leases while SitePro remained unpaid, until the filing of the Debtors' petition, after which SitePro properly and timely perfected its liens which

relate back to August 20, 2018. The Prepetition Secured Parties did not obtain and perfect its lien until September 25, 2018.[5]

28.     Under applicable Texas law, an operator can combine multiple leases together through (a) pooling or (b) unitization. Pooling is used to encompass sufficient acreage to drill one well, e.g., a 640-acre tract is required by the Railroad Commission of Texas to have the required coverage of space and to avoid waste.  Unitization, on the other hand, refers to the combination of separately owned mineral or leasehold interests covering all, or part of, a common source of supply (e.g., a field or reservoir) for the principal purpose of the joint operation of that field/reservoir (in whole or in part) in order to maximize production, create operational efficiencies and conserve financial and natural resources. In both instances, an agreement – a pooling agreement or a unit agreement – is executed with the mineral lessors. When a unit or pooling acreage is created, the mineral liens extend to and encumber the totality of the property unitized or pooled and thus the liens attach to each and every lease included (in whole or in part) and covered by the applicable agreement. *See* TEX. PROP. CODE § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.--Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 343 (Tex. Civ. App.--Eastland 1968, writ ref'd n.r.e.). Upon information and belief, certain of the Leases are unitized or pooled, subject to unit and/or pooling agreements and operated as either pooling or a unit and, therefore, the Mineral Liens of SitePro extend to and encumber all collateral property covered by each lease in each such pooling or unit agreement. Moreover, the liens attached to the pooling or unit relate back to the commencement of when the Services were initially provided – August 20, 2018.

---

[5] SitePro began providing services at the California Chrome leasehold (August 20, 2018) and the David Trimble leasehold (September 1, 2018) in advance of September 25, 2018 date.

29. Pursuant to and in compliance with section 546(b)(2) of the Bankruptcy Code, SitePro provided notice to preserve, perfect, maintain, and continue its rights as a perfected lienholder in certain property interests of the Debtor Defendants under Chapter 56 of the Texas Property Code and SitePro's claimed Texas constitutional lien on such Property under Article 16, Section 37 of the Texas Constitution.[6] The Mineral Lien Notices constituted the legal equivalent of having recorded a mineral lien in the public records for the county where the Collateral Properties are located and the equivalent of then having commenced a suit to foreclosure the lien in the proper court.

30. In addition to filing its Mineral Lien Notices in the pending bankruptcy proceeding, SitePro has properly filed Lien Affidavits and Claim Notices in each applicable county asserting its rights under the Texas Property Code and the Texas Constitution, in each case within the statutory time limits to create a valid mineral lien. The filings with this Court (which attach copies of the county filings) are identified in footnote number 4 of this Complaint and incorporated as if fully set forth herein.

### Justiciable Controversy

31. The Prepetition Secured Parties assert that they have valid, perfected, enforceable, first-priority liens and security interests upon all of the Debtor Defendants' assets, which include the Collateral Properties, dating from their September 2018 Credit Documents and the Cash Collateral Order. SitePro disputes that the Prepetition Secured Parties have first priority liens upon the Collateral Properties, including the Debtor Defendants' interests in oil and gas leases and/or working interests, because SitePro's Mineral Liens relate back to the commencement of its

---

[6] The Texas Constitution, Article 16, Section 37 establishes that "[m]echanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

furnishing of Services in August 2018 on the subject Leases, while the alleged perfection of the security interests of the Prepetition Secured Creditors did not occur until September 25, 2018.

32. Accordingly, SitePro seeks a declaration from the Court that SitePro's Mineral Liens are valid, perfected, enforceable and that SitePro's Mineral Liens are senior to the prepetition and post-petition lien claims of the Prepetition Secured Parties. A declaratory judgment which declares the extent, validity, and priority of competing lien claims on the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will adjudicate disputed issues involved in this controversy between secured creditors in this bankruptcy case.

### First Claim for Relief -- Declaratory Judgment

33. SitePro incorporates by reference the allegations set forth in paragraphs 1 through 32 above as if fully set forth herein.

34. This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

35. As set forth above, SitePro has valid and timely recorded Mineral Liens against the Collateral Properties of the Debtor Defendants. These Mineral Liens relate back to inception dates prior to the recording of the competing security interests of the Prepetition Secured Parties, and therefore SitePro holds a senior secured claim to the Prepetition Secured Parties.

36. Accordingly, SitePro respectfully requests a judgment of this Court declaring (i) that SitePro holds valid, fully-perfected, and timely recorded Mineral Liens against the Defendant Debtors' properties, and (ii) that SitePro's validly and timely recorded Mineral Liens on the applicable Collateral Properties, with inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties, are senior secured claims to the prepetition and post-petition claims and interests of the Prepetition Secured Parties in the Collateral Properties.

**Requested Relief**

WHEREFORE, SitePro respectfully requests an order of the Court declaring that it holds a validly perfected priority Mineral Lien on the Collateral Properties prior in time and superior in right to the prepetition and post-petition claims and interests of the Prepetition Secured Parties.

| | |
|---|---|
| Dated: July 2, 2020<br>Wilmington, Delaware | CIARDI CIARDI & ASTIN<br><br>*/s/ Joseph J. McMahon, Jr.*<br>Daniel K. Astin (No. 4068)<br>Joseph J. McMahon, Jr. (No. 4819)<br>1204 N. King Street<br>Wilmington, Delaware 19801<br>(302) 658-1100 telephone<br>(302) 658-1300 facsimile<br>jmcmahon@ciardilaw.com<br><br>-and-<br><br>Walter W. Gouldsbury III, Esquire<br>One Commerce Square, Suite 3500<br>2005 Market Street<br>Philadelphia, PA 19103<br>(215) 557-3550 telephone<br>(215) 557-3551 facsimile<br>wgouldsbury@ciardilaw.com<br><br>*Counsel to SitePro, Inc.* |