**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: ) | | Chapter 11 |
| ) | | |
| **MTE HOLDINGS LLC, et al.,**[1] ) | | Case No. 19-12269 (CSS) |
| ) | | |
| **DEBTOR** ) | | (Jointly Administered) |
| ) | | |
| ) | | |
| ) | | |

| | | |
|---|---|---|
| **SUMMIT CASING SERVICES, LLC** ) | | |
| d/b/a **SUMMIT CASING EQUIPMENT** ) | | |
| ) | | |
| Plaintiff, ) | | Adversary No. 20-_____ (CSS) |
| ) | | |
| v. ) | | |
| ) | | |
| **MDC ENERGY LLC,** ) | | |
| d/b/a **MDC TEXAS ENERGY LLC** ) | | |
| **MDC TEXAS OPERATOR LLC,** ) | | |
| **MDC REEVES ENERGY LLC,** and ) | | |
| **NATIXIS, NEW YORK BRANCH,** ) | | |
| ) | | |
| Defendants. ) | | |

**COMPLAINT OF SUMMIT CASING SERVICES, LLC AND
REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE VALIDITY,
PRIORITY, AND EXTENT OF MINERAL LIENS ON THE DEBTORS' PROPERTY**

Summit Casing Services, LLC d/b/a Summit Casing Equipment ("*Summit*") by and through undersigned counsel files this *Complaint of Summit Casing Services, LLC and Request for Declaratory Judgment to Determine Validity, Priority, and Extent of Mineral Liens on The Debtors' Property* pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

"**Bankruptcy Rules**") and the *Court's Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants* (No. 1901385, ECF 1150) to determine the validity, priority, and extent of its statutory mineral liens under applicable state law on certain of the Debtors' properties, and respectfully shows as follows:

## PARTIES

1. Plaintiff Summit is a Texas limited liability company with its principal place of business in Fort Worth, Texas.

2. Defendant MDC Energy LLC d/b/a MDC Texas Energy LLC ("**MDC**") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3. Defendant MDC Texas Operator LLC ("**Texas Operator**") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4. Defendant MDC Reeves Energy LLC ("**Reeves**" and, together with MDC and Texas Operator, "**Debtor Defendants**") is a limited Liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5. Natixis, New York Branch ("**Natixis**") is the administrative agent on behalf of certain lenders and other parties (collectively, the "**Lenders**" and, together with Natixis, the "**Prepetition Secured Parties**") in connection with a $60 million credit facility for Defendant MDC, under a certain credit agreement dated September 17, 2018.

**JURISDICTION AND VENUE**

6. The Debtor Defendants are chapter 11 debtors whose bankruptcy cases (the "**Chapter 11 Cases**") are being jointly administered in the proceeding captioned *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.), pending before this Court.

7. This Court has jurisdiction over the Chapter 11 Cases and this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Bankruptcy Rule 7001(2) & (9).

8. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9. Venue of the Chapter 11 Cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

10. Pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure for this Court (the "**Bankruptcy Local Rules**"), Summit consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**NATURE OF ACTION**

11. This is an action pursuant to Bankruptcy Rule 7001(2) & (9) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

12. By this Complaint, Summit seeks a judgment of this Court determining the validity of Summit's statutory mineral interest liens and their priority relative to the prepetition and post-petition liens and security interests of the Prepetition Secured Parties. Specifically, Summit seeks

3

a determination that (i) Summit holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtor Defendants' properties, and (ii) certain of these valid, fully perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and post-petition lien claims of the Prepetition Secured Parties.

13.     Additionally, pursuant to applicable state and bankruptcy law, Summit seeks to recover attorneys' fees incurred in this proceeding.

## PROCEDURAL HISTORY

14.     On November 8, 2019 (the "***Petition Date***"), the Debtor Defendants filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").

15.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See* Schedules of Assets and Liabilities for MDC Reeves Energy LLC, No. 19-12388, ECF 6 (hereinafter "***Reeves Schedules***").

16.     On January 13, 2020, Summit filed a *Notice of Perfection, Maintenance, and Continuation of Liens of Summit Casing Services, LLC under 11 U.S.C. § 547(b)* (ECF 470) ("***Notice of Perfection***"), thereby apprising Debtors and all other parties of Summit's interest in certain Debtor properties discussed herein. The Notice of Perfection is attached as **Exhibit A**.

17.     On March 8, 2020, Summit filed proofs of claim (the "***Proofs of Claim***") against MDC (Stretto No. 144), Texas Operator (Stretto No. 145), and Reeves (Stretto No. 146) setting forth a claim against Defendant Debtors in the amount of $500,611.97, of which $ 471,945.29 is secured and $28,666.68 is unsecured (the "***Claim***").

18.     On June 2, 2020 the Court issued its *Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants* (the "***Lien***

4

*Procedures Order*"). *See* Lien Procedures Order, No. 19-12269, ECF 1150. The Order sets forth lien validity and priority procedures which apply in the Defendant Debtors' Chapter 11 Cases (the "***Lien Procedures***"). Section II of the Lien Procedures provides: "Each Statutory Lien Claimant that contends that its Statutory Lien Claim has priority over the interests of the Prepetition Secured Lenders shall file an adversary proceeding (each, an "Adversary Proceeding") asserting such priority within thirty (30) days after the entry of this Order (the "Adversary Proceeding Deadline"). *See id.* at 3. As the Order was filed on June 2, 2020, the Adversary Proceeding Deadline is Thursday, July 2, 2020.

19.     Section II also details what must be alleged in each adversary complaint. First, each adversary complaint must allege, "to the extent such information is available to the Statutory Lien Claimant, sufficient factual and legal bases for priority, validity, extent, perfection, and value of the subject lien(s) as required under the applicable Bankruptcy Rules." *Id.*

20.     Second, each complaint must allege:

(1) sufficient information to identify the well(s), unit(s), lease(s), and other property (the "***Specified Property***") with respect to which the Statutory Lien Claimant asserts a priority lien, including all applicable Collateral Silos,

(2) the date as to each Specified Property on which the Statutory Lien Claimant asserts it first provided goods or services to the Debtors [(the "***First Service Date***")],

(3) the date as to each Specified Property to which the Statutory Lien Claimant asserts each statutory lien claim relates back, as that term is understood under applicable law, [(the "***Relation-Back Date***")] and

(4) the factual bases for the dates asserted under Section II.A.(2) and II.A.(3), including the factual bases for any assertion that the delivery of goods or providing service was continuous, as that term is understood under applicable law [(a "***Factual Basis***")].

*Id.* (defined terms in brackets added).

21. The Lien Procedures' Section III further provides, "Each Statutory Lien Claimant that has not filed an Adversary Proceeding asserting priority over the Administrative Agent by the Adversary Proceeding Deadline shall complete and submit . . . a Lien Validation and Support Form." *Id.* at 5. A pre-populated Lien Validation and Support Form is available through Stretto's website. *Id.*

22. However, a creditor who files an adversary proceeding cannot directly submit a Lien Validation and Support Form. *See id.* ("Any Statutory Lien Claimant that files an Adversary Proceeding shall be exempt and prohibited from participating in the process contemplated in section III, below and it is contemplated that the adjudication of the priority, validity, extent, perfection, and value of its purported liens shall take place within the adversary proceeding.").

## FACTUAL BACKGROUND

### A. Summit's Services to Debtors and Resulting Liens

23. As indicated in the addendum to each of Summit's Proofs of Claim, Summit provided services, material, and/or equipment ("***Services***") at the request of the Defendant Debtors in connection with the development and maintenance of mineral leasehold estates (the "***Leasehold Estates***"), all or a portion of which are located in, on, or under tracts of land in Reeves County, Texas (the "***Land***"). All or a portion of the working interests of the Leasehold Estates are owned by one or more of the Defendant Debtors.

24. The Services provided were for the maintaining, servicing or repairing of various oil and gas wells owned and operated by the Defendant Debtors on the Land. Summit submitted invoices to MDC for the Services it provided.

25. The Defendant Debtors have failed to pay Summit's invoices for the Services in the aggregate amount of **$500,611.97**, plus unliquidated amounts for accruing legal fees, interest,

and other charges. Attached hereto, and incorporated herein, as **Appendix A** is a chart summarizing the outstanding prepetition invoices (the "*Outstanding Invoices*") issued by Summit to Debtor Defendants (the "*Outstanding Invoice Summary*"), which was attached to Summit's Proofs of Claim.

26. Pursuant to Title 5, Chapter 56 of the Texas Property Code, Summit recorded lien affidavits (the "*Lien Affidavits*") in the real property records of Reeves County, Texas, thereby perfecting liens (the "*Liens*") against the respective Leasehold Estates and the Land to secure the amounts owed according to Outstanding Invoices identified on Appendix A, all relating to the aforementioned goods and services provided by Summit. The Lien Affidavits are attached hereto in **Exhibit B**. A summary of the Lien Affidavits (the "*Lien Affidavit Summary*") is attached hereto, and incorporated herein, as **Appendix B**.

27. As of the filing of the Proofs of Claim, Summit holds a secured claim in the amount of **$471,945.29** against the Defendant Debtors and their estates in connection with the Liens, not including accruing attorney's fees, interest, and other charges (the "*Secured Claim*").

28. Some, but not all, of the Liens relate back to a date prior to September 25, 2018 (each a "*Priming Lien*"). The Priming Liens are described in this **Table 1**,[2] which sets forth the information required by the Court's Lien Procedures' Section II:

---

[2] Table 1 is reflective of Summit's best and current understanding of the value of Liens and the applicable relation-back dates and is the result of a good-faith effort to comply with the Court's Lien Procedures Order. Summit fully reserves the right to amend the data contained within Table 1 pursuant to the rights granted to Summit pursuant to the Bankruptcy Rules and the Federal Rules of Civil Procedure, to the extent each governs.

7

| Priming Lien Value | Lien Procedures II.A(1)<br>Specified Property (Lease/Unit) (inclusive of all "Collateral Silos" located thereon) | Lien Procedures II.A(2)<br>First Service Date | Lien Procedures II.A(3)<br>Relation-Back Date | Lien Procedures II.A(4)<br>Factual Basis |
|---|---|---|---|---|
| $34,094.92 | Delightful Dasher 11 | 2/13/2018 | 2/13/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **2/13/2018** and ending **6/17/2019**. |
| $103,181.47 | Omaha 11 | 6/1/2018 | 6/1/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **6/1/2018** and ending **7/23/2019**. |
| $57,140.12 | Whirlaway 24 | 7/5/2018 | 7/5/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **7/5/2018** and ending **8/5/2019**. |

29. Additional information regarding the Priming Liens, and those liens which do not relate back to a date prior to September 25, 2018 (the "*Non-Priming Liens*"), is included in a listing of the Liens (the "*Recorded Liens Form*"), attached hereto, and incorporated herein, as **Appendix C**. The Recorded Liens Form consists of the pre-populated Lien Validation and Support Form appropriately filled. Summit seeks the Court to declare the validity of all Liens described in the Recorded Liens Form—whether they constitute Priming Liens or Non-Priming Liens.

    **B.**    **Status of the Prepetition Secured Parties in 2018**

30. On September 17, 2018, the Prepetition Secured Parties and certain of the Defendant Debtors entered into a Reserve Based Lending credit agreement (the "*RBL Agreement*").

31. According to the Debtors, loans under the RBL Agreement were secured by a pledge and security agreement, dated September 17, 2018 ("*Security Agreement*"), entered between the Prepetition Secured Parties and MDC and other security instruments including mortgages and account control agreements that granted the Prepetition Secured Parties a security

interest in substantially all of the assets of MDC and its subsidiaries. *See* Declaration in Support of First Day Pleadings at 7, No. 19-12269, ECF 49.

32. In connection with a cash collateral motion (No. 19-12269, ECF 49) (the "***Cash Collateral Motion***"), the Prepetition Secured Parties have asserted that, under the RBL Agreement and certain other documentation executed therewith (collectively, the "***Credit Documents***"), the Debtors and certain affiliated guarantors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens, on any interest in any kind of property or asset, whether real, personal or mixed, tangible or intangible, including cash, securities, accounts and contract rights. The Prepetition Secured Parties claim, *inter alia*, a first-priority security interest in oil and gas leasehold interests, working interests, and associated property rights.

33. The security instruments for the RBL Agreement were not filed against the Debtor Defendant's real property interests in Reeves County, Texas—and thus the security interests of the Prepetition Secured Parties were not perfected as to such collateral in that county—until September 25, 2018 (the "***Priming Date***").

34. Furthermore, as confirmed by a series of orders entered by the Court pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code (collectively, the "***Cash Collateral Order***"), the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Final Cash Collateral Order at 11-15, No. 19-12269, ECF 1092.

35. The post-petition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with post-petition replacement liens granted to "Statutory

Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date. *See id.* at 12 & 17.

36. Furthermore, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." *Id.* at 12-13.

## LAW AND APPLICATION

### A.    Relation Back of Priming Liens

37. Each Priming Lien has priority over the Security Agreement with regard to any Specified Property described in Table 1.

38. Under Texas law a mineral lien relates back to the date the lien claimant first provided services.

39. Specifically, the Texas Property Code provides: "All material or services that a person furnishes for the same land, leasehold interest, oil or gas pipeline, or oil or gas pipeline right-of-way ***are considered to be furnished under a single contract unless more than six months elapse between the dates the material or services are furnished***." Tex. Prop. Code § 56.005(b) (emphasis added).

40. Section 56.003 describes the property subject to a mineral lien as including: "(2) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the labor was performed . . . [and] other wells and pipelines used in operations related to oil, gas, and minerals and located on property listed in Subdivision (2)." Tex. Prop. Code § 56.005(a)(2) & (4).

41. Thus, because Texas Property Law contemplates liens developing at the lease or unit level, the Lien Affidavit Summary references Outstanding Invoices which are secured by multiple so-called "Collateral Silos."[3]

42. In light of Tex. Prop. Code § 56.005(b), the information provided in Table 1 evidences the continuity in the work performed and establishes that the Priming Liens relate back to dates prior to September 25, 2018, giving such Liens priority in relation to the Security Agreement.

**B.     Summit has Priority ahead of Prepetition Secured Parties for All Leasehold Estates Where Summit Filed a Lien Affidavit and the Relation Back Date Precedes the Priming Date**

43. Summit disputes the Prepetition Secured Parties' prepetition and post-petition security interests insofar as such security interests are asserted to be superior to the valid, fully perfected, and enforceable Priming Liens of Summit as further described herein.

44. Under Texas law, mineral liens encumber the following interests in a debtor's properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted, (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See* Tex. Prop. Code § 56.001 *et seq.*

45. Once secured by filing a lien affidavit and perfected, the inception dates of Summit's Liens, including the Priming Liens on the Specified Properties, relate back to the

---

[3] According to the methodology used by the Debtors' chief restructuring officer, Ankura Consulting Group, LLC in creating the Ankura Lien Data, "a Collateral Silo is the Well(s) as to which goods or services were provided by each Statutory Lien Claimant." *See MDC Energy LLC - Ankura Lien Data Methodology*, Ankura Consulting Group, LLC (June 8, 2020), available at
https://cases.stretto.com/public/X041/10060/CORRESPONDENCE/100600609205000000001.pdf,.

commencement of the furnishing of labor and/or materials on the subject leases. *See* Tex. Prop. Code § 56.004-005.

46. With regard to each Priming Lien, the dates Summit first provided the Services to the Debtor Defendants in connection with each lease and collateral silo/well is stated in Table 1. The periods for which Summit continuously provided Services with respect to each Leasehold Estate is also provided in Table 1.

47. Because Summit continuously provided services through the periods described in Table 1, and Summit properly and timely filed the corresponding Lien Affidavits, the Priming Liens relate back to the applicable dates of when Summit first provided Services to the Debtor Defendants.

## **CLAIM FOR RELIEF**

### I. Declaratory Judgment

48. Summit incorporates by reference the allegations set forth in the above numbered as if fully set forth herein.

49. This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C.§ 2201 and Bankruptcy Rule 7001(2) and (9).

50. As set forth above, Summit has validly and timely recorded the Liens against all properties described in the Lien Affidavits and the Lien Affidavit Summary.

51. Among the Liens described in the Lien Affidavit Summary, the Priming Liens relate back prior to the Priming Date, and therefore Summit holds secured claims senior to that of the Prepetition Secured Parties.

52. The Non-Priming Liens are also valid and enforceable, even though they may be inferior to the Security Agreement.

53. Accordingly, Summit respectfully requests a judgment of this Court declaring (i) that the Liens are valid, fully-perfected, and timely recorded mineral liens against the Debtor Defendant's properties in the principal amount of $471,945.29 and (ii) that the Priming Liens on the Specified Properties have: (a) inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties and (b) are senior secured claims to the prepetition and post-petition claims and interests of the Prepetition Secured Parties in the Specified Properties.

## II.    Attorneys' Fees

54. Summit incorporates by reference the allegations set forth in the above numbered as if fully set forth herein.

55. In this action to determine that Summit's mineral liens are valid and enforceable, Summit is entitled to pre-petition and post-petition attorney's fees.

56. Accordingly, in addition to the relief requested above, Summit respectfully seeks a judgment awarding reasonably attorneys' fees incurred by Summit in this proceeding.

**PRAYER**

WHEREFORE, Summit respectfully requests that the Court enter judgment in its favor, grant the declarations and relief requested herein, and for such other and further relief to which such Summit is justly entitled.

Dated: July 2, 2020
       Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Morgan L. Patterson*
Morgan L. Patterson (Del. Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:	(302) 252-4320
Facsimile:	(302) 252-4330
Email:	morgan.patterson@wbd-us.com

and

**DORSETT JOHNSON & SWIFT, LLP**
Wayne M. Taylor
407 Throckmorton Street, Suite 500
Fort Worth, Texas 76102
Telephone:	(817) 900-8204
Facsimile:	(817) 882-8526
Email:	WTaylor@dorsettjohnson.com

*Counsel to Summit Casing Services, LLC*