IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| MULHOLLAND ENERGY SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Adv. Proc. No. 20-_____ (CSS) |
| | ) | |
| MDC ENERGY LLC, | ) | |
| MDC TEXAS OPERATOR LLC, | ) | |
| MDC REEVES ENERGY LLC, and | ) | |
| NATIXIS, NEW YORK BRANCH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MULHOLLAND ENERGY SERVICES LLC'S COMPLAINT AND REQUEST FOR
DECLARATORY JUDGMENT TO DETERMINE VALIDITY, PRIORITY,
AND EXTENT OF MINERAL LIENS ON THE DEBTORS' PROPERTY**

Mulholland Energy Services LLC ("Mulholland"), by and through its undersigned counsel, hereby files this *Complaint and Request for Declaratory Judgment to Determine Validity, Priority, and Extent of Mineral Liens on the Debtors' Property* pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Rules") and the *Sixth Interim Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

11816041                                15

*Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [D.I. 674] to determine the validity, priority, and extent of its statutory mineral liens under applicable state law on certain of the Debtors' properties, and respectfully states as follows:

## Parties

1.  Plaintiff Mulholland Energy Services, LLC ("Mulholland") is a Texas limited liability company with its principal place of business located in Midland, Texas.

2.  Defendant MDC Energy LLC ("MDC") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3.  Defendant MDC Texas Operator LLC ("MDC Texas Operator") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4.  Defendant MDC Reeves Energy LLC ("MDC Reeves") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5.  Natixis, New York Branch ("Natixis") is the administrative agent on behalf of certain lenders and other parties (collectively, the "Lenders" and, together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant MDC.

## Jurisdiction and Venue

6.  Defendants MDC, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are debtors in the above-captioned jointly administered chapter 11 cases styled *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.) (the "Cases"), pending

in the United States Bankruptcy Court for the District of Delaware (the "Court").

7. This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a), and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

8. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9. Venue of the Cases and this adversary proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409.

10. Pursuant to Fed. R. Bankr. 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Mulholland consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Nature of Action

11. This is an action pursuant to Fed. R. Bankr. 7001(2) and 7001(9) and the Declaratory Judgment Act (28 U.S.C. § 2201).

12. By this Complaint, Mulholland seeks a judgment of this Court determining the priority of Mulholland's statutory mineral interest liens and the prepetition and post-petition liens and security interests of the Prepetition Secured Parties. Specifically, Mulholland seeks a determination that (i) Mulholland holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtor Defendants' property, and (ii) such valid, fully- perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and post-petition lien

claims of the Prepetition Secured Parties.

Procedural Background

13.     On November 8, 2019 (the "Petition Date"), the Debtor Defendants initiated their Cases by filing their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See Schedules of Assets and Liabilities for MDC Reeves Energy LLC* [Case No. 19-12388, D.I. 6].

15.     On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* [D.I. 49] (the "Cash Collateral Motion") seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties.

- On November 19, 2019, the Court entered the first interim order [D.I. 112] (the "First Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for December 13, 2019.

- On December 17, 2019, the Court entered the second interim order [D.I. 297] (the "Second Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for January 15, 2020, which hearing was subsequently adjourned to January 17, 2020.

- On January 17, 2020, the Court entered the third interim order [D.I. 506] (the "Third Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for February 4, 2020.

- On February 4, 2020, the Court entered the fourth interim order [D.I. 554] (the "Fourth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for February 24, 2020.

- On February 27, 2020, the Court entered the Fifth Interim Order [D.I. 674] (the "Fifth Interim Order")approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for March 31, 2020.

- On April 2, 2020, the Court entered the Sixth Interim Order [D.I. 874] (the "Sixth Interim Order") approving, in part, the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for May 4, 2020 (together the Sixth Interim Order along with the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, and Fifth Interim Order and any further interim or final order on the Cash Collateral Motion, as the "Cash Collateral Order").

- On May 5, 2020, the Court approved an extension of the Cash Collateral Order [D.I. 1047] and on May 15, 2020, the Court entered a final order with respect to cash collateral [D.I. 1092] (the "Final Cash Collateral Order").

Factual Background

A. **Mulholland Provided Service and Materials to Debtors in 2017**

16. As detailed in its *Mulholland Energy Services, LLC's Notice of Filing and Continued Perfection of Mechanic's Liens Pursuant to 11 U.S.C. §§ 362(b)(3) and 546(b)* [D.I. 1238] (the "Mineral Lien Notices"), Mulholland is a company that has continuously provided

Hydro Excavation, Rig and Tank Cleaning, Fluid Hauling, Solids Hauling and other related services for oil and gas exploration and producing wells and other ancillary services ("<u>Mulholland Services</u>") to the Debtor Defendants, commencing in 2017 and continuing through 2019 for the Debtor Defendants' operations relating to various leases[2] located in Reeves County, Texas (the "<u>Leases</u>"). Mulholland provided the Mulholland Services to the Debtor Defendants from September 11, 2017 through October 23, 2019, pursuant to a Master Services and Supply Contract ("<u>MSA</u>") dated October 26, 2017 with no break in the Mulholland Services for any six-month period of time. Mulholland worked with Debtor Defendants on a routine and daily basis to enable Debtor Defendants to produce oil, gas, and other production by-products within and around the area covered by the Leases.

17. The Debtor Defendants have habitually slow paid and/or short paid Mulholland and as a result, they have maintained an open and unpaid balance with Mulholland since September 2017. Despite numerous representations made directly to Mulholland that the Debtor was financially solvent, had funding necessary to pay for Mulholland's work, promises[3] to pay Mulholland's balance in full and additional inducements to convince Mulholland to do additional work (for which it has not been paid), Debtor Defendants accrued a debt to Mulholland for unpaid Mulholland Services of at least $895,839,60 as of the Petition Date, exclusive of accrued interest,

---

[2] The leases at issue are not only for surface rights, but also will cover mineral rights at various depths under the surface. There can be multiple leases covering a similar surface area, but these leases grant mineral rights in different defined geologic strata located at different depths under the surface. In this area in Texas, there can be up to 10 different formations below the surface that could potentially be subject to separate leases.

[3] Mulholland continued to work for MDC, despite not being paid in full, based on continued promises by Mark Siffen that MDC's break even point was sufficiently low that there was no risk of not being paid, and that alleged funding had been received that MDC was simply waiting on a funding date to pay the full balance due and owing to Mulholland.

costs, fees, and other charges, with additional amounts owed and accrued after the Petition Date.[4] At no time since September 2017 have Debtor Defendants paid their amounts due to Mulholland in full.

18. Under applicable state law,[5] Mulholland has prepetition statutory mineral liens (the "Mineral Liens") which it secured on each Leasehold set forth in **Exhibit 1** attached hereto and incorporated herein, to secure unpaid amounts for labor and services that Mulholland continually provided to the Debtor Defendants under the MSA.[6] Copies of all filed liens are collected and attached hereto as **Exhibit 2**.

19. Mulholland's Mineral Liens attach to and encumber the following property interests (collectively, the "Collateral Properties"): (i) the material, machinery and supplies furnished by Mulholland; (ii) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the services were provided; (iii) the buildings and appurtenances on the property; (iv) other material, machinery, and supplies used for mineral activities and owned by the property owner; and (iv) other wells and pipelines used in operations related to oil, gas and minerals and located on the property. *See* TEX. PROP. CODE § 56.003; *Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.-Houston [1st Dist.] 1997, no writ).[7]

---

[4] Mulholland timely filed its Proof of Claims as required by the Court against the Debtor Defendants in the principal amount of $905,712.45 inclusive of interest of $9,872.75, plus additional accruing interest, costs and attorneys' fees. Mulholland reserves all rights with respect to collection of interest, costs and attorneys' fees.

[5] See TEXAS PROPERTY CODE §§ 56.002, 56.021 and 56.022.

[6] Additionally, on July 2, 2020 [D.I. 1238] Mulholland filed its Notice of Perfection of Mineral Lien Pursuant to 11 U.S.C. § 546(b)(2).

[7] The law of the state of Texas is applicable in this context as the Leases in question, and the provision of Mulholland Services by Mulholland relate to real and personal property of the Debtor Defendants that is located in Texas. *See*, e.g., Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP), 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010) (analyzing Texas and Oklahoma law to determine the competing priority of security interests of real property located in Texas and

It is common practice to combine multiple leases to operate as a single "unit" or through pooling.[8] On information and belief, the Debtor Defendants have multiple unit and/or pooling agreements. The lease to which a statutory lien attaches covers all of the real property described by the lease, including the minerals in the ground and, when a lease covers a tract made part of a unit or pooled area, the lien that is attached to that lease likewise attaches to all other leases that are subject to the common unit agreement or pooling agreement. This includes the minerals in the ground covered by the leases in the unit or pooled acreage. TEX. PROP. CODE § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App—Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 344 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.).

**B.    Prepetition Secured Parties in 2018**

20.    On September 17, 2018, prior to the Cases and as set forth in the Cash Collateral Motion, the Prepetition Secured Parties made certain loans and extensions of credit under the Credit Agreement to MDC. In connection with the Cash Collateral Motion, the Prepetition Secured Parties have asserted that, under the Credit Agreement and certain other documentation executed therewith (collectively, the "Credit Documents"), MDC and certain affiliated guarantors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens, on any interest in any kind of property or asset, whether real, personal or mixed, tangible or intangible, including cash, securities, accounts and contract rights. The Prepetition Secured Parties assertions include a first- priority security interest in oil and gas leasehold interests, working interests, and associated property rights.

21.    According to the relevant land records of Reeves County, the security instruments

---

Oklahoma); *compare, In re SemCrude L.P.*, 864 F.3d 280 (3d Cir. 2017) (applying Delaware state UCC law to determine perfection issues relating to security interests in personal property).

[8]    *See*, ¶ 33, *infra* for complete explanation of use of unitization and pooling.

for the Credit Documents were not filed against the Debtor Defendants' real property interests in that county—and thus the security interests of the Prepetition Secured Parties were not perfected as to such collateral—until September 25, 2018.

22. Pursuant to the Cash Collateral Order, the Debtors (including the Debtor Defendants) have admitted and stipulated to the Prepetition Secured Parties' claim and security interests. *See* Cash Collateral Order (C), (D), (E), (F). Under paragraph 23 of the Cash Collateral Order, these admissions and stipulations are generally binding on all other parties in interest subject to a challenge period as set forth therein. Paragraph 23 of the Cash Collateral Order expressly provides, however, that certain "Statutory Lienholders" such as Mulholland are not subject to this challenge period in order to preserve or protect the *priority* of their respective statutory liens or security interests, and further that "[n]othing in [the Cash Collateral Order] shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." Mulholland asserts that there is a justiciable controversy as set forth in this Complaint as to the competing priority of its statutory mineral liens with the prepetition and post-petition liens of the Prepetition Secured Parties.

23. Furthermore, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Cash Collateral Order ¶¶ 4(a) and 4(b). The post-petition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with post-petition replacement liens granted to "Statutory Lienholders" (as defined

therein) as the underlying prepetition liens of the parties as of the Petition Date. Furthermore, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." *Id.*

### C. Mulholland has a Priority Lien Ahead of Prepetition Secured Parties

24. Mulholland disputes the Prepetition Secured Parties' prepetition and post-petition security interests insofar as such security interests are asserted to be superior to the valid, fully perfected, and enforceable statutory mineral liens of Mulholland as further described herein.

25. Under Texas law, the Mineral Liens encumber the following interests in the Collateral Properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted, (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782 (Tex. App.-Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied); *McCarty v. Halliburton Company*, 725 S.W.2d 817 (Tex. App. -Eastland 1987, writ ref'd. n.r.e.). Moreover, the mineral liens are generally considered as a remedial statute that should be given a broad construction. *Dealers Elec. Supply Co. v. Scoggins Constr. Co..*, 292 S.W.3d 650, 658 (Tex. 2008).

26. Once secured by filing a lien affidavit and perfected, the inception date of

Mulholland's Mineral Liens on the Collateral Properties relates back to the commencement of the furnishing of labor and/or materials on the subject Leases. *See* TEX. PROP. CODE § 56.004-005; *Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135, 143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automatically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract."); *Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782, 784 (Tex. App.- Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees- Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied). As stated by the United States Bankruptcy Court for the Northern District of Texas, Texas law provides that

> the inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas . . . , [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease.

*Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010).

27.     Mulholland first provided Mulholland Services to the Debtor Defendants in connection with the applicable Leases prior to and pursuant to the MSA and continued to provide Mulholland Services with respect to such Leases. The Mineral Liens of Mulholland therefore date at least back to the applicable dates of when Mulholland first provided Mulholland Services to the Debtor Defendants on September 11, 2017.[9]  Further, Mulholland continued to provide

---

[9]   See, ¶ 33, *infra* for complete explanation of use of unitization and pooling.

Mulholland Services to the applicable Leases while Mulholland remained unpaid, until the filing of the Debtors' petition, after which Mulholland properly and timely provided notice of its intent to file liens (**Exhibit 3**), and perfected its liens which relate back to at least September 11, 2017. The Prepetition Secured Parties did not obtain and perfect their liens in Reeves County until September 25, 2018.

28. Mulholland's priority, however, is not measured only from the date it first provided the Mulholland Services to the Debtor Defendants. Mulholland also claims priority to the extent the Debtor Defendants entered into a general contract to build on the land and extract minerals from it. *Oriental Hotel v. Griffiths*, 33 S.W. 652, 653-54 (Tex. 1895); *see also Sanchez v. Schroeck*, 406 S.W.3d 307, 311 (Tex. App. – San Antonio 2013).

29. On information and belief, Mulholland avers that the Debtor Defendants entered into a general contract in the form of an operating agreement for the exploration and extraction of minerals from the relevant land prior to September 25, 2018 and that, as a result, all of Mulholland's asserted liens have, as their date of inception the date of such general contract.

30. Mulholland further avers, on information and belief, that drilling permits were issued before September 25, 2018 for most of the mineral leases upon which Mulholland claims prior perfected liens.

31. On information and belief, other contractors provided goods and services as early as 2016 on the leases, lands, wells and minerals upon which Mulholland claims prior perfected liens as early as 2016 and the provision of such goods and services were visible upon the leases, lands, wells and minerals.

32. Under Texas law perfected mechanic's liens are on equal footing without reference to the date of filing the affidavit claiming the lien.

33. Under applicable Texas law, an operator can combine multiple leases together through (a) pooling or (b) unitization. Pooling is used to encompass sufficient acreage to drill one well, *e.g.,* a 640 acre tract is required by the Railroad Commission of Texas to have the required coverage of space and to avoid waste.[10] Unitization, on the other hand, refers to the combination of separately owned mineral or leasehold interests covering all, or part of, a common source of supply (*e.g.,* a field or reservoir) for the principal purpose of the joint operation of that field/reservoir (in whole or in part) in order to maximize production, create operational efficiencies and conserve financial and natural resources. In both instances, an agreement – a pooling agreement or a unit agreement – is executed with the mineral lessors. When a unit or pooling acreage is created, the mineral liens extend to and encumber the totality of the property unitized or pooled and thus the liens attach to each and every lease included (in whole or in part) and covered by the applicable agreement. *See* TEX. PROP. CODE § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.-Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 343 (Tex. Civ. App.-Eastland 1968, writ ref'd n.r.e.). Upon information and belief, certain of the Leases are unitized or pooled, subject to unit and/or pooling agreements and operated as either pooling or a unit and, therefore, the Mineral Liens of Mulholland extend to and encumber all collateral property covered by each lease in each such pooling or unit agreement. Moreover, the liens attached to the pooling or unit relate back to the commencement of when the Mulholland Services were initially provided – September 11, 2017.

34. Pursuant to and in compliance with section 546(b)(2) of the Bankruptcy Code, Mulholland provided notice to preserve, perfect, maintain, and continue its rights as a perfected

---

[10] The term "communization" is also used as the functional equivalent of "pooling", but the term is used principally in the context of federal oil and gas leases.

lienholder in certain property interests of the Debtor Defendants under Chapter 56 of the Texas Property Code and Mulholland's claimed Texas constitutional lien on such Property under Article 16, Section 37 of the Texas Constitution.[11] The Mineral Lien Notices constituted the legal equivalent of having recorded a mineral lien in the public records for the county where the Collateral Properties are located and the equivalent of then having commenced a suit to foreclosure the lien in the proper court. In addition to filing its Mineral Lien Notices in the pending bankruptcy proceeding, Mulholland has properly filed Lien Affidavits and Claim Notices in each applicable county asserting its rights under the Texas Property Code and the Texas Constitution, in each case within the statutory time limits to create a valid mineral lien.

## Justiciable Controversy

35.     The Prepetition Secured Parties assert that they have valid, perfected, enforceable, first-priority liens and security interests upon all of the Debtor Defendants' assets, which include the Collateral Properties, dating from their September 2018 Credit Documents and the Cash Collateral Order.[12] Mulholland disputes that the Prepetition Secured Parties have first priority liens upon the Collateral Properties, including the Debtor Defendants' interests in oil and gas leases and/or working interests, because Mulholland's Mineral Liens relate at least back to the commencement of its furnishing of Mulholland Services in September 2017 on the subject Leases, while the alleged perfection of the security interests of the Prepetition Secured Creditors did not occur until September 25, 2018, almost one year later.

36.     Accordingly, Mulholland seeks a declaration from the Court that Mulholland's

---

[11] The term "communization" is also used as the functional equivalent of "pooling", but the term is used principally in the context of federal oil and gas leases.

[12] See, e.g., Cash Collateral Order at footnote 4 ("The Prepetition Secured Parties assert that the oil and gas production proceeds are the Prepetition Secured Parties' Cash Collateral, the Statutory Lienholders dispute that contention, and all of the parties' rights are reserved.").

Mineral Liens are valid, perfected, enforceable and that Mulholland's Mineral Liens are senior to the prepetition and post-petition lien claims of the Prepetition Secured Parties. A declaratory judgment which declares the extent, validity, and priority of competing lien claims on the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will adjudicate disputed issues involved in this controversy between secured creditors in this bankruptcy case.

<u>First Claim for Relief</u>

**Declaratory Judgment**

37. Mulholland incorporates by reference the allegations set forth in paragraphs 1 through 32 above as if fully set forth herein.

38. This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C.

39. § 2201 and Bankruptcy Rules 7001(2) and 7001(9). As set forth above, Mulholland has validly and timely recorded Mineral Liens against the Collateral Properties of the Debtor Defendants. These Mineral Liens relate back to inception dates prior to the recording of the competing security interests of the Prepetition Secured Parties, and therefore Mulholland holds a senior secured claim to the Prepetition Secured Parties.

40. Accordingly, Mulholland respectfully requests a judgment of this Court declaring (i) that Mulholland holds valid, fully-perfected, and timely recorded Mineral Liens against the Defendant Debtors' properties, and (ii) that Mulholland's validly and timely recorded Mineral Liens on the applicable Collateral Properties, with inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties, are senior secured claims to the prepetition and post- petition claims and interests of the Prepetition Secured Parties in the Collateral Properties.

**Requested Relief**

WHEREFORE, Mulholland respectfully requests an order of the Court declaring that it holds a validly perfected priority Mineral Lien on the Collateral Properties prior in time and superior in right to the prepetition and post-petition claims and interests of the Prepetition Secured Parties.

Dated:  July 2, 2020                **MORRIS JAMES LLP**

/s/ *Carl N. Kunz, III*
Carl N. Kunz, III, Esq. (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone:  (302) 888-6800
Facsimile:   (302) 571-1750
E-mail:  ckunz@morrisjames.com

-and-

David H. Smith
Anthony E. Bouselli
DAVIS, GERALD & CREMER
400 W. Illinois, Suite 1400
Midland, TX  79701
Telephone:  (432) 687-0011
Facsimile:   (432) 686-5133
E-mail: dhsmith@dgclaw.com
E-mail:  aebouselli@dgclaw.com

*Counsel to Mulholland Energy Services LLC*