# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| MTE HOLDINGS LLC, *et al.*, | Case No. 19-12269 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| JW POWERLINE, LLC, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 20-_____ (CSS) |
| MDC ENERGY LLC, MDC TEXAS OPERATOR LLC, MDC REEVES ENERGY LLC, and NATIXIS, NEW YORK BRANCH, | |
| Defendants. | |

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE VALIDITY, PRIORITY, AND EXTENT OF MECHANIC'S AND MATERIALMAN'S LIENS AND MINERAL LIENS ON DEBTORS' PROPERTY**

JW Powerline, LLC ("JW" or "Plaintiff"), by and through its undersigned counsel, hereby files this *Complaint and Request for Declaratory Judgment to Determine Validity, Priority, and Extent of Mechanic's and Materialman's Liens and Mineral Liens on Debtors' Property* (the "Complaint"), pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the *Final Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral;*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

*(II) Grating Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [Docket No. 1092] (the "Final Cash Collateral Order"), and the *Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants* [Docket No. 1150] (the "Lien Procedures Order"), to determine the validity, priority, and extent of its statutory mechanic's and materialman's liens and mineral liens under applicable state law on certain property of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), and respectfully alleges as follows:

## PARTIES

1. Plaintiff JW Powerline, LLC is a Texas limited liability company with its principal place of business in Midland, Texas.

2. Defendant MDC Energy LLC ("MDC") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3. Defendant MDC Texas Operator LLC ("MDC Texas") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4. Defendant MDC Reeves Energy LLC ("MDC Reeves") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5. Defendant Natixis, New York Branch ("Natixis") is the administrative agent on behalf of certain lenders and other parties (collectively, the "Lenders," and together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018 (the "Credit Agreement") with Defendant MDC.

## JURISDICTION AND VENUE

6. Defendants MDC, MDC Texas, and MDC Reeves (collectively, the "Debtor Defendants") are Debtors in the above-captioned chapter 11 cases (the "Cases") pending before the United States Bankruptcy Court for the District of Delaware (the "Court").

7. Defendant Natixis has submitted to the jurisdiction of this Court.

8. This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, section 105 of title 11 of the United States Code (the "Bankruptcy Code"), and Bankruptcy Rules 7001(2) and 7001(9).

9. Venue of the Cases and this adversary proceeding in this District is proper under 28 U.S.C. §§ 1408 and 1409.

10. Pursuant to Bankruptcy Rule 7008 and rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiff consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### NATURE OF ACTION

11. This is an action pursuant to Bankruptcy Rules 7001(2) and 7001(9) and 28 U.S.C. § 2201.

12. By this Complaint, JW seeks a judgment determining the priority of JW's statutory mechanic's and materialman's liens and mineral interest liens and the prepetition and post-petition liens and security interests of the Prepetition Secured Parties. Specifically, JW seeks a

determination that (a) JW holds valid, fully-perfected, and enforceable statutory mechanic's and materialman's liens on certain of the Debtor Defendants' property (the "M&M Liens"), (b) JW holds valid, fully-perfected, and enforceable statutory mineral interest liens on certain of the Debtor Defendants' property (the "Mineral Liens," and together with the M&M Liens, the "Liens"), and (c) such valid, fully-perfected, and enforceable Liens are senior in priority to the prepetition and post-petition lien claims of the Prepetition Secured Lenders.

## PROCEDURAL BACKGROUND

13. On November 8, 2019, (the "Petition Date"), the Debtor Defendants filed voluntary petitions under chapter 11 of the Bankruptcy Code.

14. Pursuant to the Agreement (as defined below), commencing in 2015, JW continuously furnished labor and materials for (a) the improvement of the property (inclusive of the applicable collateral silos, the "Specified Property") set forth in the Affidavits for Mechanic's and Materialman's Lien (collectively and including any and all amendments, the "M&M Lien Affidavits"), and (b) the construction, service, and maintenance related to the Specified Property in connection with certain oil and water wells on certain mineral properties set forth in the Affidavits in Support of Lien Against Mineral Property (collectively and including any and all amendments, the "Mineral Lien Affidavits," and together with the M&M Lien Affidavits, the "Lien Affidavits").

15. On April 10, 2020, JW filed proof of claim No. 530 against Debtor MDC Texas asserting secured claims of $1,454,003.78 in the aggregate under Chapter 56 of the Texas Property Code in connection with the Mineral Liens ("Claim No. 530").

16. On April 10, 2020, JW filed proof of claim No. 531 against Debtor MDC Reeves asserting secured claims of $1,454,003.78 in the aggregate under Chapter 56 of the Texas Property Code in connection with the Mineral Liens ("Claim No. 531").

17. On April 10, 2020, JW filed proof of claim No. 532 against Debtor MDC asserting secured claims of $5,804,712.22 in the aggregate under Chapter 53 and Chapter 56 of the Texas Property Code in connection with the M&M Liens and the Mineral Liens, respectively ("Claim No. 532," and together with Claim No. 530 and Claim No. 531, the "JW Claims").[2]

18. Upon information and belief, the Debtors do not contest the amounts set forth in the JW Claims.

19. On May 15, 2020, the Court entered the Final Cash Collateral Order.

20. On June 2, 2020, the Court entered the Lien Procedures Order, pursuant to which statutory lienholders asserting liens of a higher priority than those asserted by the Prepetition Secured Lenders are required to file a complaint thirty (30) days following entry of the Lien Procedures Order, or July 2, 2020. *See* Lien Procedures Order at ¶ 2.II.A.

21. On June 8, 2020, pursuant to the Lien Procedures Order, Natixis filed *Administrative Agent's Statement Regarding Lien Perfection and Priority Dates* [Docket No. 1174] (the "Natixis Statement").

---

[2] The Lien Affidavits are exhibits to the JW Claims. The JW Claims (inclusive of the Lien Affidavits and all other documentation) are attached hereto as Exhibits A through C and are incorporated herein as if set forth in full.

**FACTUAL BACKGROUND**

A. **JW Provided Goods, Equipment, Services, and Materials to the Debtors Commencing in 2015**

22.     On July 29, 2015, MDC[3] and Jim F. Webb Inc., d/b/a JW Powerline Construction[4] entered into that certain *Master Services and Supply Contract* (the "Agreement").[5] Under the Agreement, JW provided ". . . Services for the operation or construction of properties and facilities for exploration for, or the development or production of oil, gas or other minerals and/or the purchase or rental of Goods and Equipment related to such activities[]" in connection with the Specified Property set forth in the Lien Affidavits. *See* Agreement, at § 3.1.[6]

23.     As set forth in detail in the Lien Affidavits, JW provided Goods, Equipment, and Services (as each term is defined in the Agreement) on a continuous, routine, and uninterrupted basis commencing on or about August 28, 2015 and ending on or about May 13, 2020 to enable the Debtor Defendants to produce oil, gas, and other production by-products within and around the area covered by the Specified Property. *See* Lien Affidavits; *see also* Ankura Lien Data.

B. **Prepetition Secured Parties in 2018**

24.     On September 17, 2018, prior to the Cases and as set forth in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral (II) Providing*

---

[3] The Agreement is with Defendant MDC, the mineral interests are owned by Defendant MDC Reeves, and upon information and belief, MDC Texas operates producing gas wells in connection with such mineral interests.

[4] JW Powerline Construction was converted to JW Powerline, LLC in June of 2016 and therefore, is a successor in interest under the Agreement.

[5] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

[6] Under the Agreement, the term "Services" means "all services, labor and work, performed by [JW] for the benefit of [MDC] or pursuant to the [Agreement] or otherwise performed in connection with any Goods or Equipment, including delivery thereof and any warranties associated therewith." Agreement, at § 2.1. The term "Equipment" means "all equipment, manufactured articles, materials, machinery and supplies used or employed in connection with the Goods or Services. *Id.* The term "Goods" means "all equipment, manufactured articles, materials, machinery and supplies conveyed, supplied or leased to [MDC] by [JW]." *Id.*

*Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* [Docket No. 49] (the "<u>Cash Collateral Motion</u>"), the Prepetition Secured Parties made certain loans and extensions of credit to MDC under that certain credit agreement entered into between MDC and Natixis, dated as of September 17, 2018 (together with all related documentation, the "<u>Credit Documents</u>"). In connection with the Cash Collateral Motion, the Prepetition Secured Parties have asserted that, under the Credit Documents, MDC and certain affiliated guarantors granted senior security interests in, and continuing, valid, binding, enforceable, and perfected first priority liens on, any interest in any kind of property or asset, whether real or personal, tangible or intangible. The Prepetition Secured Parties assert that their security interests extend to oil and gas leasehold interests, working interests, and associated property rights.

25. The security instruments for the Credit Documents were not filed against the Debtor Defendants' real property interests in Reeves County, Texas—and thus the security interests of the Prepetition Secured Parties were not perfected as to any collateral in that county—until September 25, 2018. *See* Natixis Statement, at ¶ 2.

26. Pursuant to the Cash Collateral Order, the Debtors (including the Debtor Defendants) have stipulated to the Prepetition Secured Parties' claim and security interests. *See* Final Cash Collateral Order, at paragraphs C, D, E, and F. Pursuant to paragraph 23 of the Final Cash Collateral Order, the Debtors' admissions and stipulation regarding the Prepetition Secured Parties' claims and security interests are generally binding on all other parties-in-interest subject to a challenge period as set forth therein. However, paragraph 23 of the Final Cash Collateral Order expressly carves out certain "Statutory Lienholders" (such as JW) from this challenge period in

order to preserve or protect the priority of their respective statutory liens or security interests. Final Cash Collateral Order, at ¶ 23. That paragraph further provides that nothing set forth in the Final Cash Collateral Order "shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." *Id.* A justiciable controversy exists as to the competing priority of its statutory Liens with the prepetition and post-petition liens of the Prepetition Secured Parties.

27. Furthermore, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See id.*, at ¶¶ 4(a) and 4(b). The post-petition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with post-petition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date. Furthermore, paragraphs 4(a) and 4(b) of the Final Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. *Id.* Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." *Id.*

C. **JW Has Priority Liens Ahead of the Prepetition Secured Parties**

28. JW disputes the Prepetition Secured Parties' prepetition and post-petition security interests to the extent that the Prepetition Secured Parties assert that such security interests are

8

superior to the valid, fully-perfected, and enforceable M&M Liens and/or Mineral Liens of JW as described herein.

### i. The M&M Liens

29. Under applicable Texas law, the M&M Liens encumber the following interests in the Specified Property—the house, building, fixtures, or improvements, the land reclaimed from overflow, or the railroad and all of its properties, and to each lot of land necessarily connected or reclaimed that is not more than 50 acres from the Specified Property. *See* TEX. PROP. CODE § 53.022 (a) and (d); *Moore v. Brenham Ready Mix, Inc.*, 463 S.W.3d 109, 118 (Tex.App.-Houston 2015, no pet.); *First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 266, 269 (Tex. 1975) (holding that a statutory mechanic's lien was meant to encompass "realty and such personal property as has been incorporated or consumed in the construction or repair thereof or delivered for such purposes"); *Blanco, Inc. v. Porras*, 897 F.2d 788, 792-793 (5th Cir. 1990) ("section 53.022(d) . . . explicitly limit[s] a mechanics' lien on rural land to fifty acres"). The M&M Liens secure payment for "the labor done or material furnished for the construction or repair" and "the specially fabricated material, even if the material has not been delivered or incorporated into the construction or repair, less its fair salvage value." *Id.* at § 53.023; *Addison Urban Dev. Partners, LLC v. Alan Ritchey Materials Co., LC*, 437 S.W.3d 597, 608 (Tex. App.-Dallas 2014, no pet.) (defining "labor"); *Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 240 (Tex. App.-Houston 2013, pet. denied) (defining "material"). Courts "liberally construe the statutes providing for materialman's liens for the purpose of protecting laborers and materialmen." *Moore*, 463 S.W.3d at 118 (quoting *First Nat'l Bank in Graham v. Sledge*, 653 S.W.2d 283, 288 (Tex. 1983)) (internal quotation marks omitted).

30. Once secured by filing a lien affidavit and perfected, the inception date of the M&M Liens relates back to JW's "commencement of construction of improvements or delivery of materials to the land on which the improvements are to be located and on which the materials are to be used." *Id.* at § 53.124; *Lyda Swinerton Builders*, 409 S.W.3d at 229-230 ("As a general rule, a properly perfected mechanic's lien 'relates back' to a time referred to as the inception of the lien for the purpose of determining lien priorities.") (quoting *Diversified Mortg. Inv'rs. v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 800 (Tex. 1978)); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automatically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract."). Further, the M&M Liens attach to the Specified Property "in preference to any prior lien, encumbrance, or mortgage on the land on which it is located . . . ." *Id.* at § 53.123; *Matter of Waller Creek, Ltd.*, 867 F.2d 228, 233 n.4 (5th Cir. 1989) ("the inception date of a mechanic's lien will determine its priority").

31. As set forth in the Lien Affidavits, as supported by the Ankura Lien Data, JW commenced providing the Goods, Equipment, and Services with respect to the Specified Property on or about August 28, 2015 through on or about May 13, 2020. Accordingly, JW's M&M Liens have priority over the prepetition and post-petition liens of the Prepetition Secured Parties.

### ii. The Mineral Liens

32. Under applicable Texas law, the Mineral Liens encumber the following interests in the Specified Property: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted, (ii) the interest of identified

working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782 (Tex. App.-Eastland 1992, no writ); *Trevor Rees-Jones, Tr. for Atkins Petroleum Corp. v. Trevor Rees-Jones, Tr. for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied); *McCarty v. Halliburton Co.*, 725 S.W.2d 817 (Tex. App.-Eastland 1987, writ ref'd. n.r.e.). Moreover, the mineral liens are generally considered as a remedial statute that should be given a broad construction. *See Dealers Elec. Supply Co. v. Scoggins Constr. Co.*, 292 S.W.3d 650, 658 (Tex. 2008).

33. Once secured by filing a lien affidavit and perfected, the inception date of JW's Mineral Liens on the Specified Property relates back to the commencement of the furnishing of labor and/or materials on the subject Leases. *See* TEX. PROP. CODE § 56.004-005; *Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135, 143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automatically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract."); *Bandera Drilling* 824 S.W.2d at 784; *Trevor Rees-Jones* 799 S.W.2d at 463. As stated by the United States Bankruptcy Court for the Northern District of Texas, Texas law provides that:

> the inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas . . . , [a lender] will only take first priority over a valid

> [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease.

*Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LLP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010).

34. As set forth in the Lien Affidavits, as supported by the Ankura Lien Data, JW commenced providing the Goods, Equipment, and Services on or about August 28, 2015 through on or about May 13, 2020 in connection with the Specified Property. Accordingly, JW's Mineral Liens have priority over the prepetition and post-petition liens of the Prepetition Secured Parties.

## JUSTICIABLE CONTROVERSY

35. The Prepetition Secured Parties assert that they have valid, perfected, enforceable, first-priority liens and security interests upon all of the Debtor Defendants' assets, which include the Specified Property, dating from their September 2018 Credit Documents and the Final Cash Collateral Order.[7] JW disputes that the Prepetition Secured Parties have first priority liens upon the Specified Property, because JW's M&M Liens and Mineral Liens relate back to the commencement of its furnishing of the Goods, Equipment, and Services commencing in 2015 on the subject Specified Property, while the alleged perfection of the security interests of the Prepetition Secured Creditors did not occur until September 25, 2018, nearly three years after JW commenced providing the Goods, Equipment, and Services.

36. Accordingly, JW seeks a declaratory judgment from the Court that its M&M Liens and Mineral Liens are valid, perfected, and enforceable, and that JW's M&M Liens and Mineral Liens are senior to the asserted prepetition and post-petition lien claims of the Prepetition Secured Parties. A declaratory judgment, which declares the extent, validity, and priority of competing lien

---

[7] *See* Final Cash Collateral Order, at n.4.

claims on the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will adjudicate disputed issues involved in this controversy between secured creditors in this Case.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment Regarding M&M Liens

37.   JW incorporates by reference the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

38.   This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy rules 7001(2) and 7001(9).

39.   As set forth herein, JW has validly and timely recorded M&M Liens against the Specified Property of the Debtor Defendants. These M&M Liens relate back to inception dates prior to the recording of the competing security interests of the Prepetition Secured Parties, and therefore JW holds a senior secured claim to the Prepetition Secured Parties.

40.   Accordingly, JW respectfully requests a judgment of this Court declaring (i) that JW holds valid, fully-perfected, and timely recorded M&M Liens against the Defendant Debtors' properties, and (ii) that JW's validly and timely recorded M&M Liens on the Specified Property, with inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties, are senior secured claims to the prepetition and post-petition claims and interests of the Prepetition Secured Parties in the Specified Property.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment Regarding Mineral Liens

41.   JW incorporates by reference the allegations set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.   This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy rules 7001(2) and 7001(9).

43. As set forth herein, JW has validly and timely recorded Mineral Liens against the Specified Property of the Debtor Defendants. These Mineral Liens relate back to inception dates prior to the recording of the competing security interests of the Prepetition Secured Parties, and therefore JW holds a senior secured claim to the Prepetition Secured Parties.

44. Accordingly, JW respectfully requests a judgment of this Court declaring (i) that JW holds valid, fully-perfected, and timely recorded Mineral Liens against the Defendant Debtors' properties, and (ii) that JW's validly and timely recorded Mineral Liens on the applicable Collateral Properties, with inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties, are senior secured claims to the prepetition and post-petition claims and interests of the Prepetition Secured Parties in the Specified Property.

## PRAYER FOR RELIEF

WHEREFORE, JW respectfully requests a judgment of the Court providing for the following:

A. A declaration that JW holds valid, perfected priority M&M Liens on the Specified Property prior in time and superior in right to the prepetition and post-petition claims and interests of the Prepetition Secured Parties;

B. A declaration that JW holds valid, perfected priority Mineral Liens on the Specified Property prior in time and superior in right to the prepetition and post-petition claims and interests of the Prepetition Secured Parties;

C. An award of attorneys' fees and costs; and

D. Any other relief the Court deems just and proper.

| Dated: July 2, 2020<br>Wilmington, Delaware | */s/ Maris J. Kandestin*<br>David R. Hurst (I.D. No. 3743)<br>Maris J. Kandestin (I.D. No. 5294)<br>**MCDERMOTT WILL & EMERY LLP**<br>The Nemours Building<br>1007 North Orange Street, 4th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 485-3900<br>Fax: (302) 351-8711<br>Email: dhurst@mwe.com<br>       mkandestin@mwe.com<br><br>-and-<br><br>Charles R. Gibbs (admitted pro hac vice)<br>Eric C. Seitz (admitted pro hac vice)<br>**MCDERMOTT WILL & EMERY LLP**<br>2501 North Harwood Street, Suite 1900<br>Dallas, Texas 75201-1664<br>Telephone: (214) 295-8000<br>Fax: (972) 232-3098<br>Email: crgibbs@mwe.com<br>       eseitz@mwe.com |
|---|---|
| | *Attorneys for JW Powerline, LLC* |

DM_US 169850166-3.T19421.0010