**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (CSS) |
| | ) | |
| Debtors. | ) | **(**Jointly Administered) |
| —————————————————— | ) | |
| | ) | |
| MCCLINTON ENERGY GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 20-_____ (CSS) |
| | ) | |
| MDC ENERGY LLC, | ) | |
| MDC TEXAS OPERATOR LLC, | ) | |
| MDC REEVES ENERGY LLC, and | ) | |
| NATIXIS, NEW YORK BRANCH. | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

**COMPLAINT AND REQUEST FOR DECLARATORY
JUDGMENT TO DETERMINE VALIDITY, PRIORITY,
AND EXTENT OF MINERAL LIENS ON THE DEBTORS' PROPERTY**

McClinton Energy Group, LLC ("McClinton"), by and through the undersigned

counsel, hereby files this *Complaint and Request for Declaratory Judgment to Determine*

*Validity, Priority, and Extent of Mineral Liens on the Debtors' Property* pursuant to Rule 7001

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the *Order*

*Establishing Procedures to Determine the Validity, Priority, And Extent Of Liens Asserted by*

*Statutory Lien Claimants* [D.I. 1150] to determine the validity, priority, and extent of its

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

statutory mineral liens under applicable state law on certain of the Debtors' properties, and respectfully shows as follows:

## Parties

1.      Plaintiff McClinton is a Texas limited liability company with its principal place of business located in Midland, Texas.

2.      Defendant MDC Energy LLC ("MDC") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3.      Defendant MDC Texas Operator LLC ("MDC Texas Operator") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4.      Defendant MDC Reeves Energy LLC ("MDC Reeves") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5.      Natixis, New York Branch ("Natixis") is the administrative agent on behalf of certain lenders and other parties (collectively, the "Lenders" and, together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant MDC.

## Jurisdiction and Venue

6.      Defendants MDC, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are debtors in the above-captioned jointly administered chapter 11 cases

styled *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.) (the "Cases"), pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.      This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

8.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9.      Venue of the Cases and this adversary proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409.

10.     Pursuant to Bankruptcy Rule 7008(a) and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), McClinton consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Nature of Action

11.     This is an action pursuant to Rules 7001(2) and 7001(9) and the Declaratory Judgment Act (28 U.S.C. § 2201).

12.     By this Complaint, McClinton seeks a judgment of this Court declaring the validity and extent of certain statutory mineral liens held by McClinton against the Debtor Defendants' property and determining the priority of such liens against the prepetition and postpetition liens and security interests of the Prepetition Secured Parties. Specifically,

McClinton seeks a determination that (i) McClinton holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtor Defendants' property, and (ii) such valid, fully-perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and postpetition lien claims of the Prepetition Secured Parties.

**Background**

13.    On November 8, 2019 (the "Petition Date"), the Debtor Defendants initiated their Cases by filing their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.    MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See Schedules of Assets and Liabilities for MDC Reeves Energy LLC* [Case No. 19-12388, D.I. 6].

15.    On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* [D.I. 49] (the "Cash Collateral Motion") seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties. On November 19, 2019, the Court entered the first interim order [D.I. 112] (the "First Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for December 13, 2019. On December 17, 2019, the Court entered the second interim order [D.I. 297] (the "Second Interim Order") approving the Motion on an interim basis and setting a further hearing on the Motion for January 15, 2020, which hearing

was subsequently adjourned to January 17, 2020. On January 17, 2020, the Court entered the third interim order [D.I. 506] (the "Third Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for February 4, 2020. On February 4, 2020, the Court entered the fourth interim order [D.I. 554] (the "Fourth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for February 24, 2020. On February 27, 2020, the Court entered the Fifth Interim Order [D.I. 674] (the "Fifth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for March 31, 2020.  On April 2, 2020, the Court entered the Sixth Interim Order [D.I. 874] (the "Sixth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a final hearing on May 4, 2020, which hearing was rescheduled for May 11, 2020.  On May 15, 2020, the Court entered the Final Order [D.I. 1092] (together with the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and the Sixth Interim Order, the "Cash Collateral Order") approving the Cash Collateral Motion on a  final basis.

16.    On September 17, 2018, prior to the Cases and as set forth in the Cash Collateral Motion, the Prepetition Secured Parties made certain loans and extensions of credit under the Credit Agreement to MDC. In connection with the Cash Collateral Motion, the Prepetition Secured Parties have asserted that, under the Credit Agreement and certain other documentation executed therewith (collectively, the "Credit Documents"), MDC and certain affiliated guarantors granted "senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on . . . any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, including Cash, securities, accounts and contract

rights . . . ." Cash Collateral Order ¶ (D)(i). This assertion of a first priority security interest includes oil and gas leasehold interests, working interests, and associated property rights.

17.    According to the relevant land records of Reeves County, the security instruments for the Credit Documents were not filed against the Debtor Defendants' real property interests in that county—and thus the security interests of the Prepetition Secured Parties were not perfected as to such collateral—until September 25, 2018.

18.    Pursuant to the Cash Collateral Order, the Debtors have admitted and stipulated to the Prepetition Secured Parties' claim and security interests. *See* Cash Collateral Order ¶ (C), (D), (E), (F).[2]

19.    Furthermore, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Cash Collateral Order ¶¶ 4(a) and 4(b). The postpetition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with postpetition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date.

20.    On June 2, 2020, the Court entered the Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants [D.I. 1150], pursuant to which this Complaint is filed.  In light of the Cash Collateral Order and the broad assertions of first-position priority by the Prepetition Secured Parties as to their prepetition

___
[2] Importantly, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." Cash Collateral Order ¶¶ 4(a) and 4(b)

and postpetition liens, McClinton disputes the Prepetition Secured Parties' prepetition and postpetition security interests insofar as such security interests are asserted to be superior to the valid, fully-perfected, and enforceable statutory mineral liens of McClinton as further described herein. As detailed in its proofs of claims filed in these Cases – Claim Nos. 57, 58 and 59 -- McClinton is a company which continuously provided oilfield support products and services under express contracts with Debtor Defendants, MDC, MDC Texas Operator and MDC Reeves, commencing in October 2015 and through 2019 for operations relating to various leases located in Reeves County, Texas (the "Leases"). Oilfield support products and services were initially provided to the Debtor Defendants pursuant to a Master Services and Supply Contract dated July 18, 2014 between McClinton and MDC Texas Energy, LLC. The total amount due and owing McClinton by the Debtor Defendants for unpaid oilfield support products and services is at least $2,687,080.31, exclusive of any accruing interest, costs, fees, and other charges, with additional amounts owed and accrued after the Petition Date.

21.    Under applicable state law (Texas Property Code § 56.001 et seq.), McClinton obtained and perfected the following prepetition statutory mineral liens (the "Mineral Liens") on the Leases set forth below to secure unpaid amounts for oilfield support products and services provided to the Debtor Defendants:

| LEASE[3] | AMOUNT | NOTES | INSTRUMENT |
|---|---|---|---|
| A Classic Dash 18-1H, 18-2H, and 18-3H | $84,134.26 | Lien recorded on 10/03/19. | #2019016255 |
| Affirmed 6 2H, 3HM, 5H, and 7H | $51,970.37 | Lien recorded on 10/03/19. | #2019016252 |

---

[3] McClinton understands that the Debtor Defendants operated certain of these leases as a pooled unit and therefore, for the reasons stated herein, the Mineral Liens extend to and encumber the entire pooled unit.

| LEASE[3] | AMOUNT | NOTES | INSTRUMENT |
|---|---|---|---|
| Alysheba 18 1H and 2H | $9,863.72 | Lien recorded on 10/03/19. | #2019016253 |
| California Chrome 27 10H, 12H and 2H | $48,766.96 | Lien recorded on 10/03/19. | #2019016254 |
| Copperhead 23 5H and 6H | $179,448.72 | Lien recorded on 10/03/19. | #2019016262 |
| Coopers Dream 23-1 1H | $40,231.04 | Lien recorded on 10/03/19. | #2019016256 |
| Coopers Dream 23-2 2H | $16,605.19 | Lien recorded on 10/03/19. | #2019016257 |
| Coopers Dream 23-3 3H | $17,887.22 | Lien recorded on 10/03/19. | #2019016558 |
| Coopers Dream 23-4 4H | $20,788.72 | Lien recorded on 10/03/19. | #2019016259 |
| Coopers Dream 23-5 5H | $38,027.98 | Lien recorded on 10/03/19. | #2019016260 |
| Coopers Dream 23-6 6H | $36,900.43 | Lien recorded on 10/03/19. | #2019016261 |
| Count Fleet 11-1 1H | $3,793.90 | Lien recorded on 10/03/19. | #2019016263 |
| Count Fleet 11-3 3H | $4,213.42 | Lien recorded on 10/03/19. | #2019016264 |
| Count Fleet 11-4 4H | $5,655.29 | Lien recorded on 10/03/19. | #2019016265 |
| Count Fleet 11-5 5H | $43,710.02 | Lien recorded on 10/03/19. | #2019016266 |
| Count Fleet 11-6 6H | $29,290.52 | Lien recorded on 10/03/19. | #2019016267 |

| LEASE[3] | AMOUNT | NOTES | INSTRUMENT |
|---|---|---|---|
| David Trimble 13 1H | $104,289.68 | Lien recorded on 10/23/19. | #2019017483 |
| Delightful Dasher 11 5H and 11-2 2HM | $36,832.24 | Lien recorded on 10/03/19. | #2019016268 |
| Delightful Dasher 11-4 4H | $22,380.93 | Lien recorded on 10/03/19. | #2019016234 |
| Easy Jet 18 1H | $38,106.71 | Lien recorded on 10/03/19. | #2019016269 |
| Easy Jet 18-2 2H | $36,900.43 | Lien recorded on 10/03/19. | #2019016270 |
| Easy Jet 18-3 3H | $38,053.06 | Lien recorded on 10/03/19. | #2019016271 |
| Gavyn's Run 23 1H | $75,136.09 | Lien recorded on 10/03/19. | #2019016272 |
| Imperial Eagle 1-H, 24 2HM, 24 3HM, 24 4H, 24 5H, and 24 6H | $734,544.59 | Lien recorded on 10/03/19. | #2019016273 |
| Just Call Me Ken 8-82 Unit 2H | $2,064.55 | Lien recorded on 10/03/19. | #2019016235 |
| Omaha 11 1H | $2,475.56 | Lien recorded on 10/03/19. | #2019016236 |
| Omaha 11-3 3H, 11-4 4H, 11-5 5H, and 11-6 6H | $186,977.89 | Lien recorded on 10/03/19. | #2019016248 |
| Pickpocket 21 1H, 2H, 3H, and 4H | $74,582.95 | Lien recorded on 10/03/19. | #2019016338 |
| Repent 23 HM | $17,737.20 | Lien recorded on 10/03/19. | #2019016249 |
| Rocket Wrangler 11 1H | $14,874.76 | Lien recorded on 10/03/19. | #2019016237 |
| Rocket Wrangler 11-2 2H | $3,184.35 | Lien recorded on 10/03/19. | #2019016240 |
| Rocket Wrangler 11-3 3H | $44,273.09 | Lien recorded on 10/03/19. | #2019016239 |

| LEASE[3] | AMOUNT | NOTES | INSTRUMENT |
|---|---|---|---|
| Rocket Wrangler 11-4 4H | $44,654.09 | Lien recorded on 10/03/19. | #2019106241 |
| Runaway Ghost 23-2 2H and 23-3 3H | $94,540.30 | Lien recorded on 10/03/19. | #2019016250 |
| Seattle Slew 17 1H | $3,417.07 | Lien recorded on 10/03/19. | #2019016242 |
| Sir Barton 24 1H | $16,089.07 | Lien recorded on 10/03/19. | #2019016243 |
| Special Effort 18-3 3H | $71,307.61 | Lien recorded on 10/03/19. | #2019016244 |
| Special Effort 18-2 2H | $71,307.61 | Lien recorded on 10/03/19 | #2019016251 |
| War Admiral 24 1H, 2HM, 3HM, 4H, 5H, and 6H | $250,208.54 | Lien recorded on 10/03/19. | #2019016246 |
| Whirlaway 24 1H, 2H, and 3H | $64,733.95 | Lien recorded on 10/03/19. | #2019016247 |
| Yucca 2 | $7,120.23 | Lien recorded on 10/03/19. | #2019016245 |
| TOTAL: | $2,687,080.31 | | |

22.     McClinton's Mineral Liens attach to and encumber various property interests (collectively, the "Collateral Properties"): (i) the subject well; (ii) the whole of such land or leasehold or lease for oil and gas purposes; (iii) the material, machinery and supplies furnished by the lien claimant; (iv) all other material, machinery and supplies used for mineral activities; (v) all personal property; (vi) all buildings; (vii) all appurtenances; (viii) all other oil, gas and water wells and pipelines and their right-of-way located on the subject leases; (ix) the oil and gas produced from the subject leases; and (x) the proceeds from the sale thereof and any other property provided for under Texas law. *See* Tex. Prop. Code § 56.003; *Abella v. Knight Oil Tools*, 945 S.W.2d 847   (Tex. App.-Houston [1st Dist.] 1997, no writ).[4]

23.     The Mineral Liens encumber the following interests in the Collateral Properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782 (Tex. App.-Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied); *McCarty v. Halliburton Company*, 725 S.W.2d 817 (Tex. App. -Eastland 1987, writ ref'd. n.r.e.).

24.     Once filed and perfected, the inception date of McClinton's Mineral Liens on the Collateral Properties relates back to the commencement of the furnishing of oilfield support

---

[4] The law of the state of Texas is applicable in this context as the Leases in question and the provision of oilfield support products and services by McClinton relate to real property located in Texas. *See, e.g., Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010) (analyzing Texas and Oklahoma law to determine the competing priority of security interests of real property located in Texas and Oklahoma); *compare In re SemCrude L.P.*, 864 F.3d 280 (3d Cir. 2017) (applying Delaware state UCC law to determine perfection issues relating to security interests in personal property).

products and services on the subject Leases. *See* Tex. Prop. Code 56.004-005; *Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135, 143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerks ' office within six months of concluding its activities on the tract."); *Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782, 784 (Tex. App.-Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied); *cf. Grasso Prod. v. BMO Fin. Inc. (In re Century Offshore Mgmt. Corp.)*, 83 F.3d 140, 141 (6th Cir. 1996) (determining that, under Louisiana lien law, priority dates back to the inception of work, not the date of the first unpaid service). As stated by the United States Bankruptcy Court for the Northern District of Texas, Texas law provides that "the inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas … law, [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided oilfield support products and services attributable to that lease." *Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010). McClinton first provided oilfield support products and services to the Debtor Defendants in connection with the applicable Leases pursuant to the Master Services and Supply Contract dated July 18, 2014 between McClinton and MDC Texas Energy, LLC. with respect to

such Leases. The Mineral Liens of McClinton therefore date back to the applicable dates of when McClnton first furnished oilfield support products and services to the Debtor Defendants commencing in October 2015. Further, McClinton continuously provided oilfield support products and services to the applicable Leases up until non-payment and then McClinton properly and timely perfected its liens. The Prepetition Secured Parties did not obtain and perfect their lien until September 25, 2018.

25.     Under applicable Texas law, where multiple leases are operated as a pooled unit, the mineral liens extend to and encumber the totality of the acreage of each lease included (in whole or in part) in the applicable pooled unit. *See* Tex. Prop. Code § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.-Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341 (Tex. Civ. App.-Eastland 1968, writ ref'd n.r.e.). Upon information and belief, certain of the Leases referenced herein were operated as a pooled unit and therefore the Mineral Liens of McClinton extend to and encumber the entire pooled unit and relate back to the commencement of the furnishing of oilfield support products and services for the pooled unit.

26.     McClinton provided notice to preserve, perfect, maintain, and continue its rights as a perfected lienholder in certain property interests of the Debtor Defendants under Texas statutory mineral lien law, *i.e.* Texas Property Code Chapter 56, and McClinton's claimed Texas constitutional lien on such Property under Article 16, Section 37 of the Texas Constitution.

21.     McClinton has properly filed Lien Affidavits and Claim Notices in each applicable county asserting its rights under the Texas Property Code and the Texas Constitution.

### Justiciable Controversy

27.    The Prepetition Secured Parties assert that they have valid, perfected, enforceable, first-priority liens and security interests upon all of the Debtor Defendants' assets, which include the Collateral Properties, dating from their September 2018 Credit Documents and the Cash Collateral Order.[5]  McClinton disputes that the Prepetition Secured Parties have first priority liens upon the Collateral Properties, including the Debtor Defendants' interests in oil and gas leases and/or working interests, because McClinton's Mineral Liens relate back to the commencement of the furnishing of oilfield support products and services in October 2015 on the subject Leases and prior to the September 25, 2018 perfection of a security interest by the Debtor Defendants to the Prepetition Secured Parties. Accordingly, McClinton seeks a declaration from the Court that McClinton's Mineral Liens are valid, perfected, enforceable and senior to the prepetition and postpetition lien claims of the Prepetition Secured Parties. A declaratory judgment which declares the extent, validity, and priority of competing lien claims on the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will adjudicate disputed issues involved in this controversy between secured creditors in this bankruptcy case. McClinton seeks and is entitled to a declaratory judgment regarding the extent, validity, and priority of its Mineral Liens and the extent, validity and priority of the asserted prepetition and postpetition liens of the Prepetition Secured Parties.

---

[5] *See, e.g.,* Cash Collateral Order at footnote 4 ("The Prepetition Secured Parties assert that the oil and gas production proceeds are the Prepetition Secured Parties' Cash Collateral, the Statutory Lienholders dispute that contention, and all of the parties' rights are reserved.").

**First Claim for Relief**
**Declaratory Judgment**

28.     McClinton incorporates by reference the allegations set forth above as if fully set forth herein.

29.     This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

30.     As set forth above, McClinton has validly and timely recorded Mineral Liens against the Collateral Properties of the Debtor Defendants. These Mineral Liens relate back to inception dates prior to the recording of the competing security interests of the Prepetition Secured Parties, and therefore McClinton holds a senior secured claim to the Prepetition Secured Parties.

31.     Accordingly, McClinton respectfully requests a judgment of this Court declaring (i) that McClinton is the holder of validly and timely recorded Mineral Liens against the Collateral Properties, and (ii) that McClinton's validly and timely recorded Mineral Liens on the applicable Collateral Properties, with inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties, are senior secured claims to the prepetition and postpetition claims and interests of the Prepetition Secured Parties in the Collateral Properties.

**<u>Requested Relief</u>**

WHEREFORE, McClinton respectfully requests an order of the Court declaring that it holds a validly perfected, first priority Mineral Lien on the Collateral Properties prior in time and superior in right to the prepetition and postpetition claims and interests of the Prepetition Secured Parties.

Dated: July 2, 2020

WOMBLE BOND DICKINSON (US) LLP

*/s/ Morgan L. Patterson*
Matthew P. Ward (Del. Bar No. 4471)
Morgan L. Patterson (Del. Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: morgan.patterson@wbd-us.com

-AND-

FROST BROWN TODD LLC
Mark A. Platt
Cleve J. Glenn
2101 Cedar Springs Road, Suite 900
Dallas, TX 75201
Telephone: (214) 545-3472
Facsimile: (214) 545-3473
E-mail: mplatt@fbtlaw.com
E-mail: cglenn@fbtlaw.com

*Counsel to McClinton Energy Group*

16