## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **MTE HOLDINGS LLC**, *et al.*, | ) | **Case No. 19-12269 (CSS)** |
| | ) | |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| **SIDEWINDER DRILLING, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **Adv. Proc. No.** |
| | ) | |
| **MDC ENERGY LLC** | ) | |
| **MDC TEXAS OPERATOR LLC** | ) | |
| **MDC REEVES ENERGY LLC, and** | ) | |
| **NATIXIS, NEW YORK BRANCH** | ) | |
| | ) | |
| Defendants. | ) | |

### SIDEWINDER DRILLING, LLC'S COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE VALIDITY, PRIORITY, AND EXTENT OF MINERAL LIEN ON THE DEBTORS' PROPERTY

Sidewinder Drilling, LLC ("Sidewinder") by and through its undersigned counsel, hereby files this Complaint and Request for Declaratory Judgment to Determine Validity, Priority, and Extent of Mineral Lien on the Debtors' Property pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Rules") and the Sixth Interim Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief [D.I. 674] to determine the validity, priority, and extent of its statutory mineral lien under applicable state law on certain of

the Debtors'[1] properties, and respectfully shows as follows:

## Parties

1.      Plaintiff Sidewinder Drilling LLC is a Delaware limited liability company with its principal place of business located in Houston, Texas.

2.      Defendant MDC Energy LLC ("MDC Energy") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3.      Defendant MDC Texas Operator LLC ("MDC Texas Operator") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4.      Defendant MDC Reeves Energy LLC ("MDC Reeves") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5.      Natixis, New York Branch ("Natixis") is the administrative agent on behalf of certain lenders and others parties (collectively, the "Lenders" and, together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018 (the "Credit Agreement") with Defendant MDC Energy.

## Jurisdiction and Venue

6.      Defendants MDC Energy, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are debtors in the above-captioned jointly administered chapter 11

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

cases styled *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.) (the "Cases"), pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.      This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a), and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

8.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (M).

9.      Venue of the Cases and this adversary proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409.

10.     Pursuant to Fed. R. Bankr. 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Sidewinder consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Nature of Action

11.     This is an action pursuant to Fed. R. Bankr. 7001(2) and 7001(9) and the Declaratory Judgment Act (28 U.S.C. § 2201).

12.     By this Complaint, Sidewinder seeks a judgment of this Court determining the priority of Sidewinder's statutory mineral interest lien and the prepetition and post-petition liens and security interests of the Prepetition Secured Parties. Specifically, Sidewinder seeks a determination that (i) Sidewinder holds a valid, fully-perfected, and enforceable statutory mineral lien on certain of the Debtor Defendants' property, and (ii) such valid, fully-perfected,

and enforceable statutory mineral lien is senior in priority to the prepetition and post-petition lien claims of the Prepetition Secured Parties.

## Procedural Background

13.     On November 8, 2019 (the "Petition Date"), the Debtor Defendants initiated their Cases by filing their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See Schedules of Assets and Liabilities for MDC Reeves Energy LLC* [Case No. 19-12388, D.I. 6].

15.     On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* [D.I. 49] (the "Cash Collateral Motion"), seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties.

16.     On November 19, 2019, the Court entered the first interim order [D.I. 112] (the "First Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion.  On December 17, 2019, the Court entered the second interim order [D.I. 297] (the "Second Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion. On January 17, 2020, the Court entered the third interim order [D.I. 506] (the "Third Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the

4

Cash Collateral Motion. On February 4, 2020, the Court entered the fourth interim order [D.I. 554] (the "Fourth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion. On February 27, 2020, the Court entered the Fifth Interim Order [D.I. 674] (the "Fifth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion. On April 2, 2020, the Court entered the Sixth Interim Order [D.I. 874] (the "Sixth Interim Order") approving, in part, the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion. On May 15, 2020, the Court entered the Final Order [D.I. 192] (the "Final Cash Collateral Order") with respect to the Cash Collateral Motion. Together, the Final Cash Collateral Order, together with the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, Fifth Interim Order, and the Sixth Interim Order are referred to as the "Cash Collateral Orders").

17.    On April 30, 2020, the Debtors filed their Motion for Entry of an Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants [D.I. 1029] (the "Lien Procedures Motion"). On June 2, 2020, this Court entered its Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants [D.I. 1150] (the "Lien Procedures Order"). Pursuant to the Lien Procedures Order, each Statutory Lien Claimant (as such term is defined in the Lien Procedures Motion) that contends that its Statutory Lien Claim (as such term is defined in the Lien Procedures Motion) has priority over the interests of the Prepetition Secured Parties is required to file a timely adversary proceeding asserting such priority.

18.    Sidewinder files this Complaint in accordance with the Lien Procedures Order.

**Factual Background**

A.    **Sidewinder Provided Services and Materials to Debtors**

19.    As detailed in its *Notice of Perfection of Mechanic's Lien Pursuant to 11 U.S.C. § 546(b)(2)* [D.I. 815] (the "Lien Notice"), Sidewinder is a company that provided equipment, goods, and associated services ("Drilling Services") to the Debtor Defendants, commencing in 2018 and continuing through 2019 for the Debtor Defendants' operations relating to various leases located in Reeves County, Texas, particularly the War Admiral 24 lease (the "Lease"). Sidewinder provided the Drilling Services to the Debtor Defendants pursuant to a Master Services and Supply Contract dated June 29, 2018 (the "Drilling Contract").

20.    The Debtor Defendants failed to pay Sidewinder as and when due, and as a result, the Debtor Defendants have maintained an open and unpaid balance with Sidewinder since March 2019. Despite numerous promises[2] to pay Sidewinder's balance in full, Debtor Defendants accrued a debt to Sidewinder for unpaid Drilling Services of at least $582,064.38 as of the Petition Date, exclusive of accrued interest, costs, fees, and other charges, with additional amounts owed and accrued after the Petition Date.[3]

21.    Under applicable state law[4], Sidewinder has a prepetition statutory mineral lien (the "Sidewinder Mineral Lien") on the Leasehold set forth in Exhibit 1 attached hereto and incorporated herein, to secure unpaid amounts for labor and services that Sidewinder provided to the Debtor Defendants under the Drilling Contract.[5]

---

[2] Sidewinder continued to work for MDC Energy, despite not being paid in full, based in part on continued promises by MDC Energy that: (a) MDC Energy had hedged production so that even in a down or depressed market, MDC Energy would have sufficient production dollars to pay vendors, including Sidewinder; and (b) there were funding obligations from lenders in sufficient amounts to pay the full balance due and owing to Sidewinder.

[3] Sidewinder timely filed its Proof of Claims as required by the Court against the Debtor Defendants in the amount of $660,111.21 which includes interest ($78,046.83).

[4] *See* TEX. PROP. CODE §§ 56.002, 56.021 and 56.022.

[5] Additionally, on March 26, 2020, Sidewinder filed its Notice of Perfection of Mechanics' Lien Pursuant to 11 U.S.C. § 546(b)(2) [D.I. 815].

22.     The Sidewinder Mineral Lien attaches to and encumbers the following property interests (collectively, the "Collateral Properties"): (i) the material, machinery, and supplies furnished by Sidewinder; (ii) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the services were provided; (iii) the buildings and appurtenances on the property; (iv) other material, machinery, and supplies used for mineral activities and owned by the property owner; and (iv) other wells and pipelines used in operations related to oil, gas and minerals and located on the property. *See* Tex. Prop. Code § 56.003; *Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.—Houston [1st Dist.] 1997, no writ).[6]

23.     It is common practice to combine multiple leases to operate as a single "unit" or through pooling. On information and belief, the Debtor Defendants have multiple unit and/or pooling agreements. The lease to which a statutory lien attaches under Texas law covers all of the real property described by the lease, including the minerals in the ground and, when a lease covers a tract made part of a unit or pooled area, the lien that is attached to that lease likewise attaches to all other leases that are subject to the common unit agreement or pooling agreement. This includes the minerals in the ground covered by the leases in the unit or pooled acreage. Tex. Prop. Code § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.—Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 344 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.).

**B.     Prepetition Secured Parties in 2018**

---

[6] The law of the State of Texas is applicable in this context as the Lease in question, and the provision of Drilling Services by Sidewinder relate to real and personal property of the Debtor Defendants that is located in Texas. *See, e.g., Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal, NA* (*In re Cornerstone E&P Co., LP*), 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010) (analyzing Texas and Oklahoma law to determine the competing priority of security interests of real property located in Texas and Oklahoma); *compare In re SemCrude L.P.*, 864 F.3d 280 (3d Cir. 2017) (applying Delaware state UCC law to determine perfection issues relating to security interests in personal property).

24.    In connection with the Cash Collateral Motion, the Prepetition Secured Parties assert that they made certain pre-petition loans and extensions of credit under the Credit Agreement to MDC on or about September 17, 2018. In connection with the Cash Collateral Motion, the Prepetition Secured Parties further assert that, under the Credit Agreement and certain other documents executed therewith (collectively, the "Credit Documents"), MDC and certain affiliated guarantors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on, any interest in any kind of property or asset, whether real, personal or mixed tangible or intangible, including cash, securities, accounts and contract rights. Accordingly, the Prepetition Secured Parties assert that they hold first-priority security interests in certain of the Debtors' oil and gas leasehold interests, working interests, and associated property rights superior in priority to the Statutory Lien Claims of the Statutory Lien Claimants.

25.    According to the relevant land records of Reeves County, Texas, the security instruments for the Credit Documents were not filed against the Debtor Defendants' real property interests in Reeves County, Texas –and thus the security interests of the Prepetition Secured Parties were not perfected as to such collateral—until September 25, 2018, at the earliest.

26.    Pursuant to the Cash Collateral Order, the Debtors (including the Debtor Defendants) have admitted and stipulated to the Prepetition Secured Parties' claim and security interests. *See* Cash Collateral Order (C), (D), (E), and (F). Under paragraph 23 of the Cash Collateral Order, these admissions and stipulations are generally binding on all other parties in interest subject to a challenge period as set forth therein. Paragraph 23 of the Cash Collateral Order expressly provides, however, that certain "Statutory Lienholders" such as Sidewinder are not subject to this challenge period in order to preserve or protect the amount, validity,

8

perfection, enforceability, priority, or extent of their respective statutory liens or security interests, and further that "[n]othing in [the Cash Collateral Order] shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code."

27.    Sidewinder asserts that there is a justiciable controversy as set forth in this Complaint as to the competing priority of the Sidewinder Mineral Lien with respect to the prepetition and post-petition liens of the Prepetition Secured Parties.

28.    Furthermore, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Cash Collateral Order ¶¶4(a) and 4(b). Paragraphs 4(a) and 4(b) of the Cash Collateral Order expressly provide, among other things, that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code."

## C.    Sidewinder Has a Priority Lien Ahead of Prepetition Secured Parties

29.    Sidewinder disputes the Prepetition Secured Parties' prepetition and post-petition security interests insofar as such security interests are asserted to be superior to the valid, fully perfected, and enforceable statutory mineral lien of Sidewinder as further described herein.

30.    Under Texas law, the Sidewinder Mineral Lien encumbers the following interests in the Collateral Properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted, (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception

date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782 (Tex. App.—Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc*., 799 S.W.2d 463 (Tex. App.—El Paso 1990, writ denied); *McCarty v. Halliburton Company*, 725 S.W.2d 817 (Tex. App.—Eastland 1987, writ ref'd n.r.e.). Moreover, Texas's mineral lien statute is generally considered as a remedial statute that should be given a broad construction. *Dealers Elec. Supply Co. v. Scoggins Constr. Co.*, 292 S.W.3d 650, 658 (Tex. 2008).

31.     Pursuant to Texas Property Code Section 56.004, a "lien on material, machinery, supplies, or a specific improvement takes priority over an earlier encumbrance on the land or leasehold on which the material, machinery, supplies, or improvement is placed or located." *See In re Cornerstone E & P Co., L.P.*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010); TEX. PROP. CODE § 56.004.

32.     Mineral liens under Texas Property Code Chapter 56 all share in "equal dignity" meaning lienholders on a particular piece of property share *pro rata* with one another. *Lane-Wells Co. v. Cont'l-Emsco Co.*, 397 S.W.2d 217, 220 (Tex. 1965); TEX. PROP. CODE §§ 53.122(a), 56.041(a).   Accordingly, a material provider is not entitled, with respect to other lienholders under the statute, to a first and superior lien on materials that he or she has furnished, but instead will share *pari passu* with other holders of liens against mineral property.  Therefore, if there are multiple properly attached statutory liens on a lease or leasehold, each statutory lienholder would be on equal footing with one another with respect to the lease or leasehold they are perfected in. *See In re Meg Petroleum Corp*., 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986). If such statutory lienholders began work on a particular leasehold prior to a blanket lienholder perfecting its interest in all of the debtors' assets, then those statutory lienholders will hold interests senior

to those of the blanket lienholder.  *See Cornerstone*, 435 B.R. at 399.

33.     To date, at least two statutory lienholders in the Cases, including Pilot Thomas
Logistics, LLC ("Pilot Thomas") and Alamo Pressure Pumping, LLC ("Alamo"), have filed
adversary proceedings against the Debtor Defendants and Prepetition Secured Parties asserting
that they hold validly perfected priority mineral liens on the Collateral Properties prior in time
and superior in right to the prepetition and post-petition claims and interest of the Prepetition
Secured Parties.

34.     In its adversary proceeding, Alamo[7] has asserted that it holds superior mineral
liens to the Prepetition Secured Parties in the following Collateral Properties where Sidewinder
has also filed a mineral lien:

  •     War Admiral 24 Lease[8];

35.     Upon information and belief, in addition to the leases where Pilot Thomas and
Alamo have asserted that they have superior mineral liens to the Prepetition Secured Parties,
other statutory lienholders in the Cases have liens on the Collateral Properties that precede the
Prepetition Secured Parties' liens created by the Credit Documents.  Upon further information
and belief, some or all of such other statutory lienholders likely will file adversary proceedings
pursuant to the Lien Procedures Order asserting their first priority liens on such Collateral
Properties.

36.     Under applicable Texas law, an operator can combine multiple leases together
through (a) pooling or (b) unitization. Pooling is used to encompass sufficient acreage to drill
one well, e.g., a 640-acre tract is required by the Railroad Commission of Texas to have required
coverage of space and to avoid waste. Unitization, on the other hand, refers to the combination of

---

[7] *Alamo Pressure Pumping, LLC v. MDC Energy LLC, et al.*, A.P. No. 20-50592.
[8] As demonstrated in Exhibit "1", Sidewinder filed a mineral lien as to the following well in the War Admiral 24
Lease: Well #6H.

separately owned mineral or leasehold interests covering all, or part of, a common source of supply (e.g., a field or reservoir) for the principal purpose of the joint operation of that field/reservoir (in whole or in part) in order to maximize production, create operational efficiencies and conserve financial and natural resources. In both instances, an agreement –a pooling agreement or a unit agreement—is executed with the mineral lessors. When a unit or pooling acreage is created, the mineral liens extend to and encumber the totality of the property unitized or pooled and thus the liens attach to each and every lease included (in whole or in part) and covered by the applicable agreement. *See* TEX. PROP. CODE § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.—Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 344 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.). Upon information and belief, certain of the Leases are unitized or pooled, subject to unit and/or pooling agreements and operated as either pooling or a unit and, therefore, the Mineral Lien of Sidewinder extends to and encumbers all collateral property covered by each lease in each such pooling or unit agreement. Moreover, the liens attached to the pool or unit relate back to the inception date for any lien that is of "equal dignity" to the Sidewinder Statutory Lien on any of the Collateral Properties.

37.    Pursuant to and in compliance with section 546(b)(2) of the Bankruptcy Code, Sidewinder provided notice to preserve, perfect, maintain, and continue its rights as a perfected lienholder in certain property interests of the Debtor Defendants under Chapter 56 of the Texas Property Code. The Lien Notice constituted the legal equivalent of having recorded a mineral lien in Reeves County, Texas where the Collateral Properties are located and the equivalent of then having commenced a suit to foreclose the lien in the proper court.

38.    In addition to filing its Lien Notice in the pending bankruptcy proceeding, Sidewinder has properly filed a lien affidavit in Reeves County, Texas asserting Sidewinder's

rights under the Texas Property Code within the statutory time limits to create a valid mineral

lien under Chapter 56 of the Texas Property Code.

### Justiciable Controversy

39.     The Prepetition Secured Parties assert that they have valid, perfected, enforceable,

first-priority liens and security interests upon all of the Debtor Defendants' assets, which include

the Collateral Properties, dating from their September 2018 Credit Documents and the Cash

Collateral Order.[9] Other Statutory Lien Claimants, however, hold liens on some or all of the

Collateral Properties that are superior in priority to the liens asserted thereon by the Prepetition

Secured Parties.  To the extent that such Statutory Lien Claimants hold liens on some or all of

the Collateral Properties that are superior in priority to the liens asserted thereon by the

Prepetition Secured Parties, the Sidewinder Mineral Lien is of "equal dignity" to liens filed by

other statutory lienholders that predate the alleged perfection of the security interests of the

Prepetition Secured Creditors on September 25, 2018, at the earliest, and are, thus, also superior

in priority to the liens asserted thereon by the Prepetition Secured Parties.  Accordingly,

Sidewinder disputes that the Prepetition Secured Parties have first priority liens upon the

Collateral Properties or liens that are otherwise senior in priority to the liens of Sidewinder

thereon.

40.     Accordingly, Sidewinder seeks a declaration from the Court that the Sidewinder

Mineral Lien is valid, perfected, and enforceable and that the Sidewinder Mineral Lien is senior

in priority to all prepetition and post-petition lien claims of the Prepetition Secured Parties. A

declaratory judgment which declares the extent, validity, and priority of competing lien claims

on the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will

---

[9] See, e.g., Cash Collateral Order at footnote 4 ("The Prepetition Secured Parties assert that the oil and gas
production proceeds are the Prepetition Secured Parties' Cash Collateral, the Statutory Lienholders dispute that
contention, and all of the parties' rights are reserved.").

adjudicate the disputed issues involved in this controversy between secured creditors in this bankruptcy case.

### First Claim for Relief

### Declaratory Judgment

41.     Sidewinder incorporates by reference the allegations set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.     This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

43.     As set forth above, Sidewinder has validly and timely recorded the Sidewinder Mineral Lien against the Collateral Properties of the Debtor Defendants.

44.     Under applicable Texas law, the Sidewinder Mineral Lien is of "equal dignity" to liens filed by other statutory lienholders on the Collateral Properties, or any of them, that predate the alleged perfection of the security interests of the Prepetition Secured Creditors.

45.     Accordingly, Sidewinder respectfully requests a judgment of this Court declaring (i) that Sidewinder holds a valid, fully-perfected, and timely recorded Mineral Lien in and against the Collateral Properties, and (ii) that Sidewinder's validly and timely recorded Mineral Lien on the applicable Collateral Properties is a secured claim that is senior to the prepetition and post-petition liens, claims and interests of the Prepetition Secured Parties in, to and against the Collateral Properties.

### Requested Relief

WHEREFORE, Sidewinder Drilling, LLC respectfully requests an order of the Court declaring that Sidewinder Drilling, LLC holds a validly perfected priority Mineral Lien on the

Collateral Properties prior in time and superior in right to the prepetition and post-petition liens,

claims and interests of the Prepetition Secured Parties.

Dated: July 2, 2020                    By: _/s/ Brett D. Fallon_____
                                       MORRIS JAMES LLP
                                       Brett D. Fallon (Bar I.D. #2480)
                                       500 Delaware Avenue, Suite 1500
                                       Wilmington, Delaware 19801-1494
                                       Email: bfallon@morrisjames.com

                                       BRADLEY ARANT BOULT CUMMINGS LLP
                                       Jay R. Bender
                                       One Federal Place
                                       1819 Fifth Avenue North
                                       Birmingham, Alabama  35203
                                       Telephone: (205) 521-8000
                                       Email: jbender@bradley.com

                                       *Counsel to Sidewinder Drilling, LLC*

## <u>EXHIBIT 1</u>

### STATUTORY MINERAL LIEN FILED
### BY SIDEWINDER DRILLING, LLC IN REEVES COUNTY, TEXAS

| Property Name | Lien Amount | Lien Recordation Information |
|---|---|---|
| War Admiral 24 #6H | $582,064.38 | Recorded on July 8, 2019 as Document No. 19-10909 |

16