**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| CENTENNIAL RESOURCE PRODUCTION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MDC ENERGY LLC d/b/a MDC Texas Energy LLC, MDC REEVES ENERGY LLC, and NATIXIS, NEW YORK BRANCH, as Administrative Agent on behalf of the Prepetition Secured Parties, | ) ) ) ) ) ) | Adv. Proc. No. ____ (CSS) |
| | ) | |
| Defendants. | ) | |

**COMPLAINT AND REQUEST FOR DECLARATORY
JUDGMENT TO DETERMINE VALIDITY, PRIORITY, AND EXTENT OF
MINERAL LIENS AND OTHER RIGHTS AS TO THE DEBTORS' PROPERTY**

Centennial Resource Production, LLC ("Centennial"), by and through the undersigned counsel, hereby files this *Complaint and Request for Declaratory Judgment to Determine Validity, Priority, and Extent of Mineral Liens and Other Rights as to the Debtors' Property* pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Rules") and the *Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants*, Docket No. 1150 (the "Procedures Order"), to determine the validity, priority, and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

extent of its mineral liens and other rights under applicable state law on certain of the Debtors' properties, and respectfully shows as follows:

## PARTIES

1. Plaintiff Centennial is a Delaware limited liability company with its principal place of business in Denver, Colorado.

2. Defendant MDC Energy LLC d/b/a MDC Texas Energy LLC ("MDC") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3. Defendant MDC Reeves Energy LLC ("MDC Reeves") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4. Natixis, New York Branch (the "Agent") is the administrative agent on behalf of certain lenders and other parties (collectively, the "Lenders" and, together with Natixis, the "Prepetition Secured Parties") in connection with a credit facility under that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant MDC.

## JURISDICTION AND VENUE

1. On November 8, 2019 (the "Petition Date"), Defendants MDC and MDC Reeves (collectively, the "Debtor Defendants") filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor Defendants are debtors in the above-captioned jointly-administered chapter 11 cases *In re MTE Holdings LLC*, Case No. 19-12269-CSS (the "Cases"), pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

5. Venue of the Cases and this adversary proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409.

6. Pursuant to Fed. R. Bankr. Rule 7008(a) and rule 7008-1 of the Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Centennial consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. This is an action pursuant to Rules 7001(2) and 7001(9) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## NATURE OF ACTION

8. Centennial is an operator of oil and gas assets. As relevant here, Centennial operates the Iron Eagle Unit A Wells (as defined below) in Reeves County, Texas in which MDC Reeves owns or claims an interest. MDC Reeves and its affiliates failed to pay their share of expenses incurred in the development and operation of those wells, which failure gives rise to certain rights and remedies for the benefit of Centennial. Pursuant to the Procedures Order, Centennial brings this action to preserve its lien and other rights with respect to the Debtor's interest in the subject wells and associated oil and gas leases.[2]

---

[2] Although the Procedures Order appears primarily directed at resolving statutory liens asserted by trade claimants (rather than oil and gas operators, like Centennial), Centennial too has a statutory lien and therefore brings this adversary proceeding out of an abundance of caution.

3

9.  Centennial seeks a judgment of this Court declaring the validity and extent of Centennial's lien and other rights with respect to certain of the Debtor Defendants' property and determining the priority of such liens and other rights against the prepetition liens and security interests of the Prepetition Secured Parties. Centennial requests a determination that:

a.  Centennial holds a valid, fully-perfected, and enforceable statutory mineral lien on MDC Reeves' interests in Iron Eagle Unit A Wells, associated leasehold interests, and related property;

b.  Centennial's statutory lien is senior in priority to the prepetition and post-petition lien claims of the Prepetition Secured Parties;

c.  Centennial holds a valid, fully perfected, and enforceable contractual lien on MDC Reeves' interests in Iron Eagle Unit A Wells, associated leasehold interests, and related property of a relative priority to be established; and

d.  Centennial has a valid and enforceable right of recoupment as to expenses incurred and revenue received on behalf of the Debtor Defendants during the development and operation of the Iron Eagle Unit A Wells.

**BACKGROUND**

**I.    The Centennial Liens and Rights.**

10.  MDC Reeves is the owner of certain leasehold interests in Reeves County, Texas.[3]

11.  Centennial is in the business of operating oil and gas assets.[4]

---

[3] On information and belief, MDC Reeves is the owner of the Statutory Lien Property and JOA Lien Property (both as defined below). Centennial reserves the right to amend this complaint to the extent further investigation reveals that other Debtors have an interest in such property.

[4] The following facts are detailed in *Centennial Resource Production, LLC's Notice of Perfection, Continuation, and Maintenance of Lien Pursuant to 11 U.S.C. § 546(b)*, Docket No. 988 (the "Lien Notice"), and *Centennial Resource Production, LLC's Amended Proof of Claim*, Stretto Claim No. 659 (the "Proof of Claim"). The Lien Notice and Proof of Claim are incorporated herein by reference.

12. In July 2017, Centennial began conducting mineral activities, as such term is used in Chapter 56 of the Property Code of the State of Texas (the "Lien Statute"), by furnishing certain labor, materials, supplies, and/or equipment and related services (the "Work") used in digging, drilling, torpedoing, operating, completing, maintaining or repairing the following oil and gas wells (the "Iron Eagle Unit A Wells"):

| Well Name | Railroad Commission Permit No. | API No. |
|---|---|---|
| Iron Eagle Unit A U30H | 847912 | 42-389-37877 |
| Iron Eagle Unit A U42H | 841030 | 42-389-37247 |
| Iron Eagle Unit A U49H[5] | 833248 | 42-389-36549 |

13. Such Work was performed on and for the benefit of the leases associated with the Iron Eagle Unit A Wells (the "Leases") and within the Iron Eagle Unit, including Leases owned or held by MDC Reeves, covering lands located in the Eastern portion of Sections 12 and 13 of Block C-9, PSL Survey, and the Eastern portion of Section 25 of Block C-8, PSL Survey, in Reeves County, Texas (the "Subject Lands"). By Declaration and Notice of Pooled Unit dated November 2, 2017 and recorded November 30, 2017 in Volume 1507, Page 443 in the records of Reeves County, Texas, the Leases within the Iron Eagle Unit were pooled, unitized, and combined and were operated as a pooled unit.

14. Effective December 1, 2017, Centennial, MDC Reeves, and other non-operating working interest owners entered into that certain Model Form Operating Agreement (the "JOA"), which provides for the development and operation of the Iron Eagle Unit A Wells within the Iron Eagle Unit. The JOA designates Centennial as operator of the Iron Eagle Unit A Wells and, among

---

[5] The Iron Eagle Unit A U49H well was originally referred to as the Bull Sluice A U49H well.

5

other things, requires each interest owner to pay its proportionate share of costs of development and operation. A true and correct copy of the JOA is attached hereto as <u>Exhibit A</u>.

15. The Work continued through the Petition Date and is ongoing, with no break in the Work for any six-month period of time.

16. From time to time, Centennial issued joint interest billing ("<u>JIB</u>") statements to the Debtor Defendants for the Work. The Work is further described in the JIB statements issued to the Debtor Defendants and an invoice from the first work conducted in July 2017, true and correct copies of which are attached hereto as <u>Exhibit B</u>.

17. The Debtor Defendants failed to pay Centennial in full for the Work provided and attributable to MDC Reeves' interest in the Iron Eagle Unit A Wells and associated Leases. As of the Petition Date, the principal amount of Centennial's prepetition secured claim totaled $8,162,089.74 for services provided and for expenses incurred as of the Petition Date, less amounts lawfully collected pursuant to the terms of the JOA and less amounts subject to recoupment or setoff. *See* Ex. A; Ex. B.[6]

18. Pursuant to "Exhibit C" to the JOA, interest on the unpaid balance of any JIB statement accrues at the Wall Street Journal prime rate plus 3% per annum. Accrued but unpaid interest as of the Petition Date totaled $215,464.20, which accrued as follows:

| JIB Date | 5/1/2019 | 6/1/2019 | 7/1/2019 | 8/1/2019 | 9/1/2019 |
|---|---|---|---|---|---|
| JIB Principal | $4,908,086.59 | $2,672,509.96 | $111,235.16 | $137,611.76 | $84,415.55 |
| Interest Accrual Start Date | 6/30/2019 | 7/31/2019 | 8/30/2019 | 9/30/2019 | 10/31/2019 |
| Rate | 8.5% | 8.25% | 8.25% | 8.00% | 7.75% |
| Period - Days | 131 | 100 | 70 | 39 | 8 |
| Interest Accrued as of 11/8/2019 | $151,493.44 | $60,882.47 | $1,767.83 | $1,177.40 | $143.05 |

---

[6] Centennial reserves the right to amend its Proof of Claim as appropriate to reflect invoices for prepetition work that were received and paid post-petition.

Interest continues to accrue post-petition at the contract rate. Centennial reserves the right to amend this complaint to seek additional pre- and post-petition amounts, interest, and fees, as applicable.

    **a.    Centennial Has a Valid Statutory Lien That Relates Back to July 2017.**

19. Under the Lien Statute, a person who performs labor or furnishes or hauls material, machinery, or supplies used in mineral activities under an express or implied contract with a mineral property owner is entitled to a statutory lien to secure payment for such labor, services, and material. Tex. Prop. Code. §§ 56.001, 56.002.[7] Such lien attaches to and encumbers the following interests (collectively, the "Lien Statute Property"):

(1)     the material, machinery, and supplies furnished or hauled by the lien claimant;

(2)     the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the labor was performed or material, machinery, or supplies were furnished or hauled, and the buildings and appurtenances on this property;

(3)     other material, machinery, and supplies used for mineral activities and owned by the owner of the property listed in Subdivision (2); and

(4)     other wells and pipelines used in operations related to oil, gas, and minerals and located on property listed in Subdivision (2).

*Id.* § 56.003(a). Under applicable Texas law, where multiple leases are operated as a pooled unit, the mineral liens extend to and encumber the totality of the acreage of each lease included (in whole or in part) in the applicable pooled unit. *See* Tex. Prop. Code § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. App. 1975).

20. A party perfects a lien under the Lien Statute by filing an affidavit claiming its entitlement to a lien with the county clerk of the county in which the property is located within six

---

[7] The law of the State of Texas is applicable in this context as the Leases and the Work relate to real property located in Texas.

months of the date the indebtedness accrues. *See* Tex. Prop. Code § 56.021. If a lien affidavit is timely filed, oil and gas liens relate back to the date that the lienholder first furnished materials and services to the oil and gas lease. *Id.* §§ 56.004, 56.005; *Youngstown Sheet & Tube Co. v. Lucey Prods. Co.*, 403 F.2d 135, 142-143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("the mechanic's and materialmen's lien filed by a mineral contractor autom[at]ically relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract."); *Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782, 784 (Tex. App. 1992).

> [T]he inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but that the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas and Oklahoma law, [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease.

*In re Cornerstone E&P Co., LP*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010).

21. Each party to the JOA agreed that "the other parties shall be entitled to utilize the provisions of Oil and Gas lien law or other lien law of any state in which the Contract Area is situated to enforce the obligations of each party hereunder." Ex. A, art. VII.B.

22. As shown in <u>Exhibit B</u>, starting in July 2017 and continuing monthly through the present, Centennial performed the Work for MDC Reeves on its property pursuant to an express or implied contract with MDC Reeves.

23. The Debtor Defendants failed to pay amounts owed for such Work.

24. On April 3, 2020, pursuant to the Lien Statute and as permitted by 11 U.S.C. § 546(b) and other applicable provisions of the Bankruptcy Code, Centennial timely filed a lien affidavit with the Clerk and Recorder of Reeves County, Texas, recorded at Instrument Number

8

2020004158 (the "Centennial Statutory Lien" and the "Centennial Statutory Lien Affidavit"). A true and correct copy of the Centennial Statutory Lien Affidavit is attached hereto as Exhibit C.

25. On April 9, 2020, Centennial filed the Lien Notice, which, pursuant to the Bankruptcy Code, constituted the legal equivalent of having recorded a lien affidavit in the public records for the county where the subject property is located, the equivalent of then having commenced a suit to foreclosure the lien in the proper court, and the satisfaction of any other notice or similar requirements under applicable law.

26. The Centennial Statutory Lien Affidavit and Lien Notice are sufficient to perfect Centennial's liens under Chapter 56 of the Texas Property Code and Article 16, Section 37 of the Texas Constitution.[8]

27. The Centennial Statutory Lien attaches to all right, title, and interest of MDC Reeves in and to the Lien Statute Property associated with the Iron Eagle Unit A Wells, the Iron Eagle Unit, and the Subject Lands, including MDC Reeves' Leases (collectively, the "Statutory Lien Property").

28. The Centennial Statutory Lien attached as of and, for priority purposes, relates back to July 2017, when Centennial first began Work on the Iron Eagle Unit A Wells and Leases within the Iron Eagle Unit, including the Leases held or owned by MDC Reeves.

### b. Centennial Has a Valid, Enforceable JOA Lien.

29. Pursuant to the JOA and to secure its obligations to Centennial under the JOA, MDC Reeves granted a lien to Centennial upon any interest MDC Reeves owns or acquires related to the Iron Eagle Unit A Wells, the Iron Eagle Unit, and the Subject Lands, including Leases,

---

[8] The Texas Constitution, Article 16, Section 37 establishes that "[m]echanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

production, and proceeds (together, the "JOA Lien Property"). Ex. A, art. VII.B. Such liens are to secure performance under the JOA, including, but not limited to, payment of expenses. *Id.*

30. MDC Reeves failed to perform its obligations under the JOA by, among other things, failing to pay its share of expenses.

31. By Financing Statement and Notice of Operating Agreement and Liens, recorded September 20, 2019 with the Clerk and Recorder of Reeves County, Texas at Instrument Number 2019015943, (the "Centennial JOA Lien"), Centennial provided notice to third parties of the lien granted by MDC Reeves to Centennial. A true and correct copy of the Centennial JOA Lien financing statement is attached hereto as Exhibit D.

    **c.    Centennial Has a Valid, Enforceable Right of Recoupment.**

32. Under the JOA, Centennial incurs expenses in the development and operation of the Iron Eagle Unit A Wells, which expenses are chargeable to each non-operating working interest owner, including MDC Reeves, in proportion to the non-operating working interest owner's fractional interest.

33. Under the JOA, Centennial receives revenue from the sale of oil and gas produced by the Iron Eagle Unit A Wells, which revenue is ordinarily payable to each working interest owner (whether the working interests of a non-operating owner or the working interest of the operator) in proportion to the working interest owner's fractional interest.

34. The doctrine of recoupment is "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *In re Revel AC Inc.*, 909 F.3d 597, 603 (3d Cir. 2018). Recoupment is available where "it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.*

35. The debts MDC Reeves owes Centennial for the development and operation of the Iron Eagle Unit A Wells and the credits attributable to MDC Reeves' share of the oil and gas produced from the Iron Eagle Unit A Wells arise under the JOA and constitute a single transaction.

36. It would be inequitable for MDC Reeves to enjoy the benefits of that transaction without also meeting its obligations.

37. Centennial has a valid right of recoupment with respect to such debts and credits of MDC Reeves attributable to its interest in the Iron Eagle Unit A Wells and associated Leases. *See In re Buttes Res. Co.*, 89 B.R. 613, 616 (Bankr. S.D. Tex. 1988) ("even under Texas law, Enstar's claim would be characterized as a recoupment because the claim of Buttes for the proceeds is subject *ab initio* to reduction for the very expenses that were required to produce the oil"); *see also In re B & L Oil Co.*, 782 F.2d 155, 159 (10th Cir. 1986) (permitting recoupment under oil division order).

## II.     The Prepetition Secured Parties' Liens.

38. On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2*, Docket No. 49 (the "Cash Collateral Motion"), seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties.

39. On May 15, 2020, the Court entered the *Final Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral. (II) Granting Adequate Protection to Prepetition Secured Parties;*

*(III) Modifying Automatic Stay; and (IV) Granting Related Relief*, Docket No. 1092 (the "Final Cash Collateral Order").

40. Pursuant to the Final Cash Collateral Order, the Debtor Defendants have stipulated that the Prepetition Secured Parties made certain loans and extensions of credit to MDC under the Credit Agreement in the aggregate principal amount of $56,965,371.26 as of the Petition Date. Docket No. 1092 ¶ C. The Debtor Defendants further stipulated that they purported to grant to the Prepetition Secured Parties "valid, binding, enforceable and perfected first priority liens on, certain assets of the Prepetition Loan Parties . . . to and/or for the benefit of the Prepetition Secured Parties (the 'Prepetition Liens')." *Id.* ¶ D(i).[9] On information and belief, the Prepetition Collateral, as defined in the Final Cash Collateral Order, against which the Prepetition Secured Parties claim the Prepetition Liens includes the Statutory Lien Property and the JOA Lien Property.

41. Furthermore, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Docket No. 1092 ¶¶ 4(a) & (b). The post-petition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with post-petition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date. *Id.*

---

[9] Under paragraph 23 of the Final Cash Collateral Order, the Debtors' stipulations are generally binding on all other parties in interest subject to a challenge period as set forth therein. Centennial and other Statutory Lienholders (as defined therein) are exempt from the requirement to initiate a challenge to preserve their first-priority liens. Nevertheless, and pursuant to the Procedures Order, Centennial asserts that there is a justiciable controversy as set forth in this Complaint as to the competing priority of the Centennial Statutory Lien with the prepetition and post-petition liens of the Prepetition Secured Parties.

42. Pursuant to the *Administrative Agent's Statement Regarding Lien Perfection and Priority Dates*, Docket No. 1174, the Agent alleges that, on September 25, 2018, it caused copies of the relevant Deeds of Trust and Fixture Filings to be filed in the county records for Reeves County, Texas. The Agent alleges that the Prepetition Liens relate back to and were perfected as of September 25, 2018.

43. Because the Centennial Statutory Lien attached, at the latest, in July 2017 and because the Prepetition Liens were not recorded until September 25, 2018, the Centennial Statutory Lien is senior in priority to the Prepetition Liens as to the Statutory Lien Property.

### III.     An Actual Controversy Exists.

44. The Agent, on behalf of the Prepetition Secured Parties, asserts that the Prepetition Secured Parties have valid, perfected, enforceable, first-priority liens and security interests upon all of the Debtor Defendants' assets, which include the Statutory Lien Property. Docket No. 1092 ¶ 4. Centennial disputes that the Prepetition Secured Parties have first priority liens upon the Statutory Lien Property because the Centennial Statutory Lien relates back to and attached as of the commencement of the Work on the Iron Eagle Unit A Wells and associated Leases in July 2017, whereas the Prepetition Secured Parties did not perfect their Prepetition Lien until, at the earliest, September 25, 2018.

45. Upon information and belief, the Debtor Defendants and the Agent, on behalf of the Prepetition Secured Parties, may dispute the extent and validity of the Centennial JOA Lien and there may be a need to determine the relative priority of such lien.

46. Upon information and belief, the Debtor Defendants and the Agent, on behalf of the Prepetition Secured Parties, may dispute the extent of Centennial's right of recoupment as to revenue and expenses attributable to MDC Reeves' interest in the Iron Eagle Unit A Wells.

47. A declaratory judgment resolving the extent, validity, and priority of competing lien claims and rights as to the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will adjudicate disputed issues involved in this case between secured creditors in these Cases.

**FIRST CLAIM FOR RELIEF**
**Declaratory Judgment**

48. Centennial incorporates by reference the allegations set forth in paragraphs 1 through 47, above, as if fully set forth herein.

49. This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

50. Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

51. Upon information and belief, the Debtor Defendants and/or the Agent, on behalf of the Prepetition Secured Parties, have or may dispute the extent, validity, and priority of the Centennial Statutory Lien, the Centennial JOA Lien, and Centennial's rights of recoupment in relation to the Prepetition Liens.

52. Based on the foregoing and pursuant to the Procedures Order, an actual controversy exists under 28 U.S.C. § 2201.

53. Centennial is therefore entitled to a declaratory judgment of the rights and other legal relations as between Centennial, the Debtor Defendants, and the Agent, on behalf of the Prepetition Secured Parties.

54. As to the Centennial Statutory Lien:

  a. The Centennial Statutory Lien is a valid, enforceable, and fully perfected lien against the Statutory Lien Property of MDC Reeves.

  b. The Centennial Statutory Lien relates back and attached to the Statutory Lien Property prior to the recording of the competing security interests of the Prepetition Secured Parties and, therefore, Centennial holds a secured claim senior to the Prepetition Secured Parties with the respect to the Statutory Lien Property.

  c. Accordingly, Centennial respectfully requests a judgment of this Court declaring (i) that the Centennial Statutory Lien is a valid, enforceable, and fully perfected lien against the Statutory Lien Property, and (ii) that the Centennial Statutory Lien relates back and attached to the Statutory Lien Property as of no later than July 2017 and is therefore senior to the prepetition and post-petition claims, liens, and interests of the Prepetition Secured Parties in such property.

55. As to the Centennial JOA Lien:

  a. The Centennial JOA Lien is a valid, enforceable, and fully perfected lien against the JOA Lien Property of MDC Reeves.

  b. Accordingly, Centennial respectfully requests a judgment of this Court declaring the Centennial JOA Lien is a valid, enforceable, and fully perfected lien against the JOA Lien Property.

56. As to Centennial's right of recoupment:

  a. The credits and debits resulting from revenue and expenses, respectively, attributable to MDC Reeves' interest in the Iron Eagle Unit A Wells and associated Leases arise

from a single transaction and it would inequitable for the Debtor Defendants to enjoy the benefits of that transaction without meeting their obligations.

    b.  Accordingly, Centennial respectfully requests a judgment of this Court declaring that Centennial has a valid and enforceable right of recoupment as to the credits and debits resulting from revenue and expenses, respectively, attributable to MDC Reeves' interest in the Iron Eagle Unit A Wells and associated Leases.

## REQUESTED RELIEF

WHEREFORE, Centennial respectfully requests an order of the Court declaring (i) that the Centennial Statutory Lien is a valid, perfected, first priority lien in and on the Statutory Lien Property, (ii) that the Centennial JOA Lien is a valid, perfected lien in and on the JOA Lien Property, and (iii) that Centennial has a valid right of recoupment as to revenue and expenses attributable to MDC Reeves' interest in the Iron Eagle Unit A Wells and associated Leases, and that the Court grant Centennial such other relief as the Court may deem just and proper.

Dated: July 2, 2020
Wilmington, Delaware

                  **SULLIVAN • HAZELTINE • ALLINSON LLC**

                  */s/ William A. Hazeltine*
                  William A. Hazeltine (No. 3294)
                  919 North Market Street, Suite 420
                  Wilmington, DE 19801
                  Telephone: (302) 428-8191
                  Facsimile: (302) 428-8195
                  Email: whazeltine@sha-llc.com

                  -and-

**DAVIS GRAHAM & STUBBS LLP**
Christopher L. Richardson, Colo. No. 13437
Kyler K. Burgi, Colo. No. 46479
Katherine E. Roux, Colo. No. 49608
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: chris.richardson@dgslaw.com
    kyler.burgi@dgslaw.com
    katie.roux@dgslaw.com

*Attorneys for Centennial Resource Production, LLC*