## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **MTE HOLDINGS LLC, et al.,[1]** | ) | **Case No. 19-12269 (CSS)** |
| | ) | |
| **DEBTORS.** | ) | **(Jointly Administered)** |
| | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| **RUSSAW TRANSPORT, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Adversary No. _____** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MDC ENERGY LLC,** | ) | |
| **d/b/a MDC TEXAS ENERGY LLC** | ) | |
| **MDC TEXAS OPERATOR LLC,** | ) | |
| **MDC REEVES ENERGY LLC, and** | ) | |
| **NATIXIS, NEW YORK BRANCH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### COMPLAINT OF RUSSAW TRANSPORT, LLC AND
### REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE VALIDITY,
### PRIORITY, AND EXTENT OF MINERAL LIENS ON THE DEBTORS' PROPERTY

Russaw Transport, LLC ("***Russaw***") by and through undersigned counsel files this

*Complaint of Russaw Transport, LLC and Request for Declaratory Judgment to Determine*

*Validity, Priority, and Extent of Mineral Liens on The Debtors' Property* pursuant to Rule 7001 of

the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the *Court's Order*

*Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

*Statutory Lien Claimants* (No. 1901385, ECF 1150) to determine the validity, priority, and extent of its statutory mineral liens under applicable state law on certain of the Debtors' properties, and respectfully shows as follows:

## PARTIES

1.      Plaintiff Russaw is an Arkansas limited liability company with its principal place of business in Pecos, Texas.

2.      Defendant MDC Energy LLC d/b/a MDC Texas Energy LLC ("***MDC***") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3.      Defendant MDC Texas Operator LLC ("***Texas Operator***") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4.      Defendant MDC Reeves Energy LLC ("***Reeves***" and, together with MDC and Texas Operator, "***Debtor Defendants***") is a limited Liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5.      Natixis, New York Branch ("***Natixis***") is the administrative agent on behalf of certain lenders and other parties (collectively, the "***Lenders***" and, together with Natixis, the "***Prepetition Secured Parties***") in connection with a $60 million credit facility for Defendant MDC, under a certain credit agreement dated September 17, 2018.

## JURISDICTION AND VENUE

6.      The Debtor Defendants are chapter 11 debtors whose bankruptcy cases (the "***Chapter 11 Cases***") are being jointly administered in the proceeding captioned *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.), pending before this Court.

2

7. This Court has jurisdiction over the Chapter 11 Cases and this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Bankruptcy Rule 7001(2) & (9).

8. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9. Venue of the Chapter 11 Cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

10. Pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure for this Court (the "***Bankruptcy Local Rules***"), Russaw consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## NATURE OF ACTION

11. This is an action pursuant to Bankruptcy Rule 7001(2) & (9) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

12. By this Complaint, Russaw seeks a judgment of this Court determining the validity of Russaw's statutory mineral interest liens and their priority relative to the prepetition and post-petition liens and security interests of the Prepetition Secured Parties. Specifically, Russaw seeks a determination that (i) Russaw holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtor Defendants' properties, and (ii) certain of these valid, fully perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and post-petition lien claims of the Prepetition Secured Parties.

3

13.     Additionally, pursuant to applicable state and bankruptcy law, Russaw seeks to recover attorneys' fees incurred in this proceeding.

## PROCEDURAL HISTORY

14.     On November 8, 2019 (the "***Petition Date***"), the Debtor Defendants filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").

15.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See* Schedules of Assets and Liabilities for MDC Reeves Energy LLC, No. 19-12388, ECF 6 (hereinafter "***Reeves Schedules***").

16.     On February 18, 2020, Russaw filed proofs of claim against MDC (Stretto No. 101), Texas Operator (Stretto No. 103), and Reeves (Stretto No. 102) setting forth a claim against Defendant Debtors in the amount of $2,786,725.82, of which $2,718,913.82 was claimed as secured and $67,812.00 as unsecured. By filing these proofs of claim, Russaw thereby apprised Debtors and all other parties of Russaw's interest in certain Debtor properties. On June 4, 2020, Russaw filed amending Proofs of Claim (the "***Proofs of Claim***") claim against MDC (Stretto No. 693), Texas Operator (Stretto No. 695), and Reeves (Stretto No. 694) amending Russaw's claim against Defendant Debtors to state a secured claim in the amount of $2,292,577.19 (the "***Claim***"). The Proofs of Claim against MDC, Texas Operator, and Reeves are attached as **Exhibit 1**.

17.     On April 23, 2020, Russaw filed a *Notice of Perfection of Lien Pursuant to 11 U.S.C. § 546(b)* (No. 19-12269, ECF 989) ("***Notice of Perfection***"), supplementing the notice to Debtors and all other parties of Russaw's interest in certain Debtor properties discussed herein. The Notice of Perfection is attached as **Exhibit 2**.

4

18.    On June 2, 2020 the Court issued its *Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants* (the "***Lien Procedures Order***"). *See* Lien Procedures Order, No. 19-12269, ECF 1150. The Order sets forth lien validity and priority procedures which apply in the Defendant Debtors' Chapter 11 Cases (the "***Lien Procedures***"). Section II of the Lien Procedures provides: "Each Statutory Lien Claimant that contends that its Statutory Lien Claim has priority over the interests of the Prepetition Secured Lenders shall file an adversary proceeding (each, an "Adversary Proceeding") asserting such priority within thirty (30) days after the entry of this Order (the "Adversary Proceeding Deadline"). *See id.* at 3. As the Order was filed on June 2, 2020, the Adversary Proceeding Deadline is Thursday, July 2, 2020.

19.    Section II also details what must be alleged in each adversary complaint. First, each adversary complaint must allege, "to the extent such information is available to the Statutory Lien Claimant, sufficient factual and legal bases for priority, validity, extent, perfection, and value of the subject lien(s) as required under the applicable Bankruptcy Rules." *Id.*

20.    Second, each complaint must allege:

(1) sufficient information to identify the well(s), unit(s), lease(s), and other property (the "***Specified Property***") with respect to which the Statutory Lien Claimant asserts a priority lien, including all applicable Collateral Silos,

(2) the date as to each Specified Property on which the Statutory Lien Claimant asserts it first provided goods or services to the Debtors [(the "***First Service Date***")],

(3) the date as to each Specified Property to which the Statutory Lien Claimant asserts each statutory lien claim relates back, as that term is understood under applicable law, [(the "***Relation-Back Date***")] and

(4) the factual bases for the dates asserted under Section II.A.(2) and II.A.(3), including the factual bases for any assertion that the delivery of goods or providing service was continuous, as that term is understood under applicable law [(a "***Factual Basis***")].

5

*Id.* (defined terms in brackets added).

21.     The Lien Procedures' Section III further provides, "Each Statutory Lien Claimant that has not filed an Adversary Proceeding asserting priority over the Administrative Agent by the Adversary Proceeding Deadline shall complete and submit . . . a Lien Validation and Support Form." *Id.* at 5. A pre-populated Lien Validation and Support Form is available through Stretto's website. *Id.*

22.     However, a creditor who files an adversary proceeding cannot directly submit a Lien Validation and Support Form. *See id.* ("Any Statutory Lien Claimant that files an Adversary Proceeding shall be exempt and prohibited from participating in the process contemplated in section III, below and it is contemplated that the adjudication of the priority, validity, extent, perfection, and value of its purported liens shall take place within the adversary proceeding.").

## FACTUAL BACKGROUND

### A.     Russaw's Services to Debtors and Resulting Liens

23.     As indicated in the addendum to each of Russaw's Proofs of Claim, Russaw furnished labor, materials and services (the "***Services***") to MDC and Texas Operator pursuant to a "Master Services and Supply Contract" executed in 2015. *See, e.g.*, Stretto Claim No. 693, Exhibit 1 at 6. Russaw provided the services at the request of the Defendant Debtors in connection with the development and maintenance of mineral leasehold estates (the "***Leasehold Estates***"), all or a portion of which are located in, on, or under tracts of land in Reeves County, Texas (the "***Land***"). All or a portion of the working interests of the Leasehold Estates are owned by one or more of the Defendant Debtors. Russaw submitted invoices to the Debtor Defendants for the Services provided to the Debtor Defendants.

40000/0841-20763914v1

24.    The Defendant Debtors have failed to pay certain of Russaw's invoices (the "***Outstanding Invoices***") for the Services in the aggregate amount of **$2,292,577.19**, plus unliquidated amounts for accruing legal fees, interest, and other charges. A chart summarizing the outstanding prepetition invoices Outstanding Invoices issued by Russaw to Debtor Defendants was attached to Russaw's Proofs of Claim as "Exhibit A." *See, e.g.*, Stretto Claim No. 693, Exhibit 1 at 8-35.

25.    Pursuant to Title 5, Chapter 56 of the Texas Property Code, Russaw recorded lien affidavits (the "***Lien Affidavits***") in the real property records of Reeves County, Texas, thereby perfecting liens (the "***Liens***") against the Leasehold Estates and the Land on which Services were provided, securing the amounts owed according to Outstanding Invoices identified on Exhibit A to the Proofs of Claim, all relating to the aforementioned goods and services provided by Russaw. *See, e.g.*, *id*.

26.    The Lien Affidavits are attached hereto in **Exhibit 3**.  A summary of the Lien Affidavits (the "***Lien Affidavit Summary***") is attached hereto, and incorporated herein, as **Appendix A**.

27.    As of the filing of the Proofs of Claim, Russaw holds a secured claim in the amount of **$2,292,577.19** against the Defendant Debtors and their estates in connection with the Liens, not including accruing attorney's fees, interest, and other charges (the "***Secured Claim***").

28.    Some, but not all, of the Liens relate back to a date prior to September 25, 2018 (each a "***Priming Lien***"). The Priming Liens are described in this **Table 1**,[2] which sets forth the information required by the Court's Lien Procedures' Section II:

---

[2] Table 1 is reflective of Russaw's best and current understanding of the value of Liens and the applicable relation-back dates and is the result of a good-faith effort to comply with the Court's Lien Procedures Order. Russaw fully reserves the right to amend the data contained within Table 1 pursuant to the rights granted to Russaw pursuant to the Bankruptcy Rules and the Federal Rules of Civil Procedure, to the extent each governs.

| Priming Lien Value | Lien Procedures II.A(1) Specified Property (Lease/Unit) (inclusive of all "Collateral Silos" located thereon) | Lien Procedures II.A(2) First Service Date | Lien Procedures II.A(3) Relation-Back Date | Lien Procedures II.A(4) Factual Basis |
|---|---|---|---|---|
| $9,785.00 | Delightful Dasher 11 | 1/10/2018 | 1/10/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **1/10/2018** and ending **6/13/2019**. |
| $55,071.82 | Count Fleet 11 | 12/18/2017 | 12/18/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **12/18/2017** and ending **10/10/2019**. |
| $86,336.25 | David Trimble 13 | 4/25/2017 | 4/25/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **4/25/2017** and ending **10/29/2019**. |
| $17,904.75 | Imperial Eagle 24 | 3/13/2018 | 3/13/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **3/13/2018** and ending **10/8/2019**. |
| $39,865.00 | Omaha 11-6 | 9/5/2017 | 9/5/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **9/5/2017** and ending **10/29/2019**. |
| $108,925.50 | Affirmed 6 | 7/25/2017 | 7/25/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **7/25/2017** and ending **10/22/2019**. |
| $536.25 | Rocket Wrangler 11 | 4/12/2018 | 4/12/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **4/12/2018** and ending **7/15/2019**. |
| $495.00 | Runaway Ghost 23 | 6/7/2018 | 6/7/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **6/7/2018** and ending **8/8/2019**. |
| $162,112.50 | American Pharaoh | 7/31/2015 | 7/31/2015 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **7/31/2015** and ending **10/29/2019**. |

40000/0841-20763914v1

| $50,778.75 | Seattle Slew 17 | 4/25/2017 | 4/25/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **4/25/2017** and ending **10/29/2019**. |
|---|---|---|---|---|
| $460,370.00 | War Admiral 24 | 8/7/2017 | 8/7/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **2/13/2018** and ending **6/17/2019**. |
| $125,874.25 | Copperhead 23 | 8/6/2015 | 8/6/2015 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **8/6/2015** and ending **10/29/2019**. |
| $20,377.50 | Pickpocket 21 | 1/3/2018 | 1/3/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **1/3/2018** and ending **10/29/2019**. |
| $43,890.00 | Yucca | 6/23/2015 | 6/23/2015 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **2/13/2018** and ending **6/17/2019**. |
| $5,321.25 | Secretariat 10 | 4/25/2017 | 4/25/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **4/25/2017** and ending **10/29/2019**. |
| $43,766.25 | Smarty Jones 26 | 1/3/2018 | 1/3/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **1/3/2018** and ending **10/29/2019**. |
| $22,483.75 | Special Effort 18 | 12/4/2017 | 12/4/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **12/4/2017** and ending **10/29/2019**. |
| $10,168.75 | Whirlaway 24 | 7/20/2018 | 7/20/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **7/20/2018** and ending **10/4/2019**. |
| $340,926.12 | California Chrome 27 | 5/9/2018 | 5/9/2018 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **5/9/2018** and ending **10/16/2019**. |
| $121,440.00 | Toyah B | 4/25/2017 | 4/25/2017 | Continuous Service (no interruption greater than 6 months) evidenced by invoice period beginning **4/25/2017** and ending **10/24/2019**. |

| $1,726,428.69 | | | | |
|---|---|---|---|---|

29.     Additional information regarding the Priming Liens, and those liens which do not relate back to a date prior to September 25, 2018 (the "***Non-Priming Liens***"), is included in a listing of the Liens (the "***Recorded Liens Form***"), attached hereto, and incorporated herein, as **Appendix B**. The Recorded Liens Form consists of the pre-populated Lien Validation and Support Form appropriately filled. Russaw seeks the Court to declare the validity of all Liens described in the Recorded Liens Form—whether they constitute Priming Liens or Non-Priming Liens.

### B.    Status of the Prepetition Secured Parties in 2018

30.     On September 17, 2018, the Prepetition Secured Parties and certain of the Defendant Debtors entered into a Reserve Based Lending credit agreement (the "***RBL Agreement***").

31.     According to the Debtors, loans under the RBL Agreement were secured by a pledge and security agreement, dated September 17, 2018 ("***Security Agreement***"), entered between the Prepetition Secured Parties and MDC and other security instruments including mortgages and account control agreements that granted the Prepetition Secured Parties a security interest in substantially all of the assets of MDC and its subsidiaries. *See* Declaration in Support of First Day Pleadings at 7, No. 19-12269, ECF 49.

32.     In connection with a cash collateral motion (No. 19-12269, ECF 49) (the "***Cash Collateral Motion***"), the Prepetition Secured Parties have asserted that, under the RBL Agreement and certain other documentation executed therewith (collectively, the "***Credit Documents***"), the Debtors and certain affiliated guarantors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens, on any interest in any kind of property or asset, whether real, personal or mixed, tangible or intangible, including cash, securities, accounts

10

and contract rights. The Prepetition Secured Parties claim, *inter alia*, a first-priority security interest in oil and gas leasehold interests, working interests, and associated property rights.

33.     The security instruments for the RBL Agreement were not filed against the Debtor Defendant's real property interests in Reeves County, Texas—and thus the security interests of the Prepetition Secured Parties were not perfected as to such collateral in that county—until September 25, 2018 (the "***Priming Date***").

34.     Furthermore, as confirmed by a series of orders entered by the Court pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code (collectively, the "***Cash Collateral Order***"), the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Final Cash Collateral Order at 11-15, No. 19-12269, ECF 1092.

35.     The post-petition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with post-petition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date. *See id.* at  12 & 17.

36.     Furthermore, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." *Id.* at 12-13.

40000/0841-20763914v1

## LAW AND APPLICATION

**A.**    **Relation Back of Priming Liens**

37.    Each Priming Lien has priority over the Security Agreement with regard to any Specified Property described in Table 1.

38.    Under Texas law a mineral lien relates back to the date the lien claimant first provided services.

39.    Specifically, the Texas Property Code provides: "All material or services that a person furnishes for the same land, leasehold interest, oil or gas pipeline, or oil or gas pipeline right-of-way *are considered to be furnished under a single contract unless more than six months elapse between the dates the material or services are furnished*." Tex. Prop. Code § 56.005(b) (emphasis added).

40.    Section 56.003 describes the property subject to a mineral lien as including: "(2) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the labor was performed . . . [and] other wells and pipelines used in operations related to oil, gas, and minerals and located on property listed in Subdivision (2)." Tex. Prop. Code § 56.005(a)(2) & (4).

41.    Thus, because Texas Property Law contemplates liens developing at the lease or unit level, the Lien Affidavit Summary references Outstanding Invoices which are secured by multiple so-called "Collateral Silos."[3]

---

[3] According to the methodology used by the Debtors' chief restructuring officer, Ankura Consulting Group, LLC, in creating the Ankura Lien Data, "a Collateral Silo is the Well(s) as to which goods or services were provided by each Statutory Lien Claimant." *See MDC Energy LLC - Ankura Lien Data Methodology*, Ankura Consulting Group, LLC (June 8, 2020), available at https://cases.stretto.com/public/X041/10060/CORRESPONDENCE/1006006092050000000001.pdf,.

42.     In light of Tex. Prop. Code § 56.005(b), the information provided in Table 1 evidences the continuity in the work performed and establishes that the Priming Liens relate back to dates prior to September 25, 2018, giving such Liens priority in relation to the Security Agreement.

**B.      Russaw has Priority ahead of Prepetition Secured Parties for All Leasehold Estates Where Russaw Filed a Lien Affidavit and the Relation Back Date Precedes the Priming Date**

43.     Russaw disputes the Prepetition Secured Parties' prepetition and post-petition security interests insofar as such security interests are asserted to be superior to the valid, fully perfected, and enforceable Priming Liens of Russaw as further described herein.

44.     Under Texas law, mineral liens encumber the following interests in a debtor's properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted, (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See* Tex. Prop. Code § 56.001 *et seq.*

45.     Once secured by filing a lien affidavit and perfected, the inception dates of Russaw's Liens, including the Priming Liens on the Specified Properties, relate back to the commencement of the furnishing of labor and/or materials on the subject leases. *See* Tex. Prop. Code § 56.004-005.

46.     With regard to each Priming Lien, the dates Russaw first provided the Services to the Debtor Defendants in connection with each lease and collateral silo/well are stated in Table 1. The periods for which Russaw continuously provided Services with respect to each Leasehold Estate is also provided in Table 1.

47.     Because Russaw continuously provided services through the periods described in Table 1, and Russaw properly and timely filed the corresponding Lien Affidavits, the Priming Liens relate back to the applicable dates of when Russaw first provided Services to the Debtor Defendants.

## CLAIM FOR RELIEF

### I.     Declaratory Judgment

48.     Russaw incorporates by reference the allegations set forth in the above numbered as if fully set forth herein.

49.      This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C.§ 2201 and Bankruptcy Rule 7001(2) and (9).

50.     As set forth above, Russaw has validly and timely recorded the Liens against all properties described in the Lien Affidavits, as indicated by the Lien Affidavit Summary.

51.     Among the Liens described in the Lien Affidavit Summary, the Priming Liens relate back prior to the Priming Date, and therefore Russaw holds secured claims senior to that of the Prepetition Secured Parties.

52.     The Non-Priming Liens are also valid and enforceable, even though they may be inferior to the Security Agreement.

53.      Accordingly, Russaw respectfully requests a judgment of this Court declaring (i) that the Liens are valid, fully-perfected, and timely recorded mineral liens against the Debtor Defendant's properties in the principal amount of **$2,292,577.19** and (ii) that the Priming Liens on the Specified Properties have: (a) inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties and (b) are senior secured claims to the prepetition and post-petition claims and interests of the Prepetition Secured Parties in the Specified Properties.

## II.    Attorneys' Fees

54.    Russaw incorporates by reference the allegations set forth in the above numbered as if fully set forth herein.

55.    In this action to determine that Russaw's mineral liens are valid and enforceable, Russaw is entitled to pre-petition and post-petition attorney's fees.

56.    Accordingly, in addition to the relief requested above, Russaw respectfully seeks a judgment awarding reasonable attorneys' fees incurred by Russaw in this proceeding.

## PRAYER

WHEREFORE, Russaw respectfully requests that the Court enter judgment in its favor, grant the declarations and relief requested herein, and for such other and further relief to which Russaw is justly entitled.

Dated: July 2, 2020                          Respectfully Submitted,

**COLE SCHOTZ P.C.**

 _/s/  Andrew J. Roth-Moore_
Andrew J. Roth-Moore (No. 5988)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
aroth-moore@coleschotz.com

*Counsel for Russaw Transport, LLC*

15