## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MTE HOLDINGS  LLC, *et al.*, | § | |
| | § | Case No. 19-12269 (CSS) |
| Debtors.[1] | § | |
| | § | Jointly Administered |
| | § | |
| WATERBRIDGE TEXAS MIDSTREAM | § | |
| LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adv. No. |
| v. | § | |
| | § | |
| MDC ENERGY LLC, | § | |
| MDC TEXAS OPERATOR LLC, | § | |
| MDC REEVES ENERGY LLC, and | § | |
| NATIXIS, NEW YORK BRANCH, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE VALIDITY, PRIORITY, EXTENT, PERFECTION, AND VALUE OF MINERAL LIENS ON THE DEBTORS' PROPERTY

WaterBridge Texas Midstream LLC ("WaterBridge"), by and through its undersigned counsel, hereby files this *Complaint and Request for Declaratory Judgment to Determine Validity, Priority, Extent, Perfection, and Value of Mineral Liens on the Debtors' Property* (the "Complaint") pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and the *Order Establishing Procedures to Determine the Validity, Priority, Extent, Perfection, and Value of Liens Asserted by Statutory Lien Claimants* (the "Lien Procedures Order") [Docket No. 1150] to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644) (collectively, the "Debtors"). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

determine the validity, priority, extent, perfection, and value of its statutory mineral liens under

applicable state law on certain of the Debtors' properties, and respectfully shows as follows:

## PARTIES

1.      Plaintiff WaterBridge is a Texas limited liability company with its principal place

of business located in Houston, Texas.

2.      Defendant MDC Energy LLC d/b/a MDC Texas Energy LLC ("MDC Energy") is

a limited liability company organized under the laws of the State of Delaware with its principal

place of business in Indianapolis, Indiana.

3.      Defendant MDC Texas Operator LLC ("MDC Texas Operator") is a limited

liability company organized under the laws of the State of Delaware with its principal place of

business in Indianapolis, Indiana.

4.      Defendant MDC Reeves Energy LLC ("MDC Reeves") a limited liability company

organized under the laws of the State of Delaware with its principal place of business in

Indianapolis, Indiana.

5.      Natixis, New York Branch ("Natixis") is an administrative agent on behalf of

certain lenders and other secured parties (collectively, the "Lenders" and, together with Natixis,

the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain

Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant MDC

Energy.

## JURISDICTION AND VENUE

6.      Defendants MDC Energy, MDC Texas Operator, and MDC Reeves (collectively,

the "Debtor Defendants") are debtors in the above-captioned, jointly-administered chapter 11

cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.      This Court has jurisdiction over these Chapter 11 Cases and this Complaint pursuant to 28 U.S.C. Sections 157(a), and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. Sections 2201 and 2202, 11 U.S.C. Section 105, and Federal Rules of Bankruptcy Procedure 7001(2) and 7001(9).

8.      This is a core proceeding under 28 U.S.C. § 157(b)(2).

9.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

10.      Pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), WaterBridge consents to the Court's entry of final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## **NATURE OF ACTION**

11.      This action is filed pursuant to Bankruptcy Rules 7001(2) and 7001(9), the Declaratory Judgment Act (28 U.S.C. § 2201), and the Lien Procedures Order.  WaterBridge seeks a judgment of this Court determining the priority of WaterBridge's statutory mineral interest liens and the prepetition and post-petition liens and security interests of the Prepetition Secured Parties. WaterBridge specifically seeks a determination that (1) WaterBridge holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtors' property, and (2) such valid,

fully-perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and post-petition lien claims of the Prepetition Secured Parties.

## **PROCEDURAL BACKGROUND**

12.     The Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 8, 2019 (the "Petition Date").

13.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See Schedule of Assets and Liabilities of MDC Reeves Energy LLC* [Case No. 19-12388, Docket No. 6].

14.     On the Petition Date, the Debtors filed their *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* (the "Cash Collateral Motion") [Docket No. 49] seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties.

15.     On March 25, 2020, WaterBridge timely filed its proof of claim no. 233 in the amount of $7,894,812.21, which is fully secured by the Debtor Defendants' oil and gas leaseholds and other applicable property.

16.     On November 8, 2019, the Debtors filed the Cash Collateral Motion [Docket No. 49]. On November 19, 2019, the Court entered its first interim order [Docket No. 112] approving the Cash Collateral Motion on an interim basis.  On December 17, 2019, the Court entered the

second interim order [Docket No. 297] approving the Cash Collateral Motion on an interim basis. On January 17, 2020, the Court entered the third interim order [Docket No. 506] approving the Cash Collateral Motion on an interim basis. On February 4, 2020, the Court entered the fourth interim order [Docket No. 554] approving the Cash Collateral Motion on an interim basis. On February 27, 2020, the Court entered the fifth interim order [Docket No. 674] approving the Cash Collateral Motion on an interim basis. On April 2, 2020, the Court entered the sixth interim order [Docket No. 874] approving, in part, the Cash Collateral Motion on an interim basis. Finally, on May 15, 2020, the Court entered the *Final Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* (the "<u>Final Cash Collateral Order</u>") [Docket No. 1092].

17.    Pursuant to Bankruptcy Code Sections 361(2) and 363(c)(2), the Debtors granted the Administrative Agent, for the benefit of the Prepetition Secured Parties, adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as adequate protection liens on specific assets of the Debtors for capital expenditure. *See* Final Cash Collateral Order ¶¶ 4(a), (b). The Final Cash Collateral Order granted the Prepetition Secured Parties "valid, binding, continuing, enforceable, fully-perfected first priority [and] senior" liens on all of the Debtors' assets except that such liens are (i) subordinate to the Permitted Prior Liens (as defined in the Final Cash Collateral Order) and (ii) given the same relative priority with postpetition replacement liens granted to the Statutory Lienholders (as defined in the Final Cash Collateral Order). *See* Final Cash Collateral Order ¶ 4(a). In addition, "[t]he relative priorities of the adequate protection liens and adequate protection claims shall be the same as the relative priorities of the underlying liens

as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." *Id.*

18.     On June 2, 2020, the Court entered the Lien Procedures Order, which sets forth procedures for determining the priority of statutory lien claims over the Administrative Agent and procedures for lien validation and support for the purposes of claim objections.

19.     On June 8, 2020, the Debtors published the Ankura lien data (the "Lien Data") and the Lien Data methodology, which used, amongst other things, invoice data in order to determine when work was performed and which wells or groups of unitized wells were serviced.

20.     On June 8, 2020, the Administrative Agent filed the *Administrative Agent's Statement Regarding Lien Perfection and Priority Dates* ("Natixis Statement") [Docket No. 1174].

21.     On June 26, 2020, WaterBridge filed a proof of claim against MDC Reeves Energy LLC (the "MDC Reeves Proof of Claim") [Claim No. 710] secured in the amount of $7,894,812.21 and a proof of claim against MDC Texas Operator LLC (the "MDC Operator Proof of Claim") [Claim No. 711] secured in the amount of $7,894,812.21.

## FACTUAL BACKGROUND

**A.     WaterBridge Provided Services and Materials to the Debtors Starting in April 2018.**

22.     In connection with its mineral extraction operations, MDC Energy entered into a Water Management Services Agreement (the "WMSA") with WaterBridge (as successor to EnWater Operating LLC) effective as of May 18, 2018.  Under the WMSA, WaterBridge agreed to transport, handle, and dispose of produced water (the "Waste Water Services") from the Debtor Defendants' oil and gas wells in Reeves County, Texas.  In exchange, MDC Energy agreed to pay WaterBridge a service fee per barrel of produced water and promptly pay WaterBridge's invoices within 30 days of receipt.  The WMSA also provided for an annual increase in the service fee

based upon a rise in the applicable consumer price index as well as applicable interest on any

unpaid, past due amounts.  The initial ten (10) year term of the WMSA commenced on May 18,

2018, and the WMSA was subsequently amended on July 10, 2018.

23.    WaterBridge has continuously provided Waste Water Services to the Debtor

Defendants since as early as March 2018 and continuing through and including the present date

for the Debtor Defendants' oil and gas operations in Reeves County, Texas.  WaterBridge has

provided routine Waste Water Services to the Debtor Defendants to enable the Debtor Defendants

to produce oil, gas, and other minerals and production byproducts within and around the area

covered by their leases.  There has been no break in WaterBridge's provision of Waste Water

Services for any six-month period of time.

**B.    WaterBridge Filed Mineral Liens after the Debtor Defendants Defaulted.**

24.    On September 24, 2019, WaterBridge sent a demand letter to MDC Energy

requesting the immediate payment of $5,248,175.42 for the Waste Water Services WaterBridge

provided the Debtor Defendants pursuant to the WMSA.  WaterBridge sent a second demand letter

to MDC Energy on October 25, 2019, at which point the amount owed had increased to

$5,835,163.90.  Shortly thereafter, WaterBridge informed the Debtor Defendants that if payment

was not received, WaterBridge would exercise its right to file statutory mineral liens against their

leasehold properties and appurtenances in Reeves County pursuant to TEXAS PROPERTY CODE

Sections 56.003, 56.021, and 56.023.

25.    However, the Debtor Defendants failed to cure their default.  Thus, WaterBridge

sent a notice of claim of lien (the "Claim Notice") to the Debtor Defendants on October 30, 2019.

On November 15, 2019, WaterBridge field its *Lien Claimant's Affidavit Against Oil & Gas*

*Mineral Property* (the "Lien Affidavit") in the Reeves County, Texas Real Property Records.[2] In accordance with Section 56.001 of the TEXAS PROPERTY CODE, Steven R. Jones ("Mr. Jones"), WaterBridge's Co-President and Chief Financial Officer, executed the Lien Affidavit, which secured $5,835,136.90 that MDC Energy owed to WaterBridge for the Waste Water Services provided to the Debtor Defendants on a continuous basis from the date Waste Water Services commenced on each of the Debtor Defendants' leases and associated units as reflected in the lien claim summary, attached as **Exhibit 1** (the "Lien Claim Summary").  The Lien Affidavit also provided a detailed description of the leases, lands, and units in Reeves County, Texas that are subject to WaterBridge's mineral lien.  On information and belief, the mineral property owner(s) of the land and/or oil, gas, and/or other mineral leasehold interests, wells, and/or other property listed in the Lien Affidavit are MDC Reeves, MDC Energy, and MDC Texas Operator.

26.      On November 26, 2019, WaterBridge filed its *Notice of Perfection of Statutory Lien Pursuant to 11 U.S.C. § 546(b)(2)* in these jointly administered bankruptcy cases (the "Notice of Perfection") [*See* Case No. 19-12269; Docket No. 137].  On December 12, 2019, WaterBridge filed its *Motion to Compel Debtor to (I) Assume or Reject Executory Contract and (II) Direct Immediate Payment of Administrative Expenses* (the "Motion to Compel") [*See* Case No. 19-12269; Docket No. 270].  Although originally set for hearing on January 8, 2020, WaterBridge and the Debtors have since agreed to continue the Motion to Compel hearing several times, and the hearing is now set for July 20, 2020.

27.      On March 19, 2020, WaterBridge served the Debtor Defendants with a Supplemental Notice of Claim of Lien (the "Supplemental Claim Notice" and together with the

---

[2] The Lien Affidavit was recorded as Document Number 2019-018516. A copy of the Lien Affidavit, which includes proof of notice to the Debtor Defendants, is attached as **Exhibit 2**.

Claim Notice, the ("Claim Notices"), advising them of the increase in WaterBridge's lien amount to $7,894,812.21 for the additional Waste Water Services WaterBridge has continued to provide to the Debtor Defendants. WaterBridge requested that the Debtor Defendants pay the outstanding debt owed to WaterBridge within ten (10) days.

28.     The Debtor Defendants again failed to cure the default. On April 6, 2020, WaterBridge recorded its *Lien Claimant's Supplemental Affidavit Against Oil, Gas and Other Mineral Property* (the "Supplemental Lien Affidavit") in the Reeves County, Texas Real Property Records.[3] In accordance with Section 56.001 of the TEXAS PROPERTY CODE, Mr. Jones executed the Supplemental Lien Affidavit, which secures the $7,894,812.21 that MDC Energy owes WaterBridge for the Waste Water Services provided to the Debtor Defendants' Leases and associated units on a continuous basis as reflected in the Lien Claim Summary. The Supplemental Lien Affidavit also provides a detailed description of the leases, lands, and units in Reeves County, Texas that are subject to WaterBridge's lien. On April 13, 2020, and pursuant to Bankruptcy Code Section 546(b)(2), WaterBridge filed its *Supplemental Notice of Perfection of Statutory Lien by WaterBridge Texas Midstream LLC Pursuant to 11 U.S.C. § 546(c)(2)* (the "Supplemental Notice of Perfection" and together with the Notice of Perfection, the "Notices of Perfection") [*See* Case No. 19-2269; Docket No. 908].

29.     WaterBridge properly perfected its mineral liens by timely filing lien affidavits and, to the extent required, serving notice thereof on the proper parties. WaterBridge asserts the liens as a mineral contractor as to MDC Energy's interests, if any. WaterBridge also asserts the liens as a mineral contractor as to MDC Reeves and MDC Texas Operator pursuant to the sham contractor

---

[3] The Supplemental Lien Affidavit was recorded as Document Number 2020004238. A copy of the Supplemental Lien Affidavit, which includes proof of notice to the Debtor Defendants, is attached as **Exhibit 3**.

theory in light of their common ownership or control with MDC Energy. Alternatively, WaterBridge asserts the liens as a mineral subcontractor for which it sent timely notices to MDC Reeves and MDC Texas Operator.

**C.    WaterBridge's Mineral Liens attach to the Debtor Defendants' Leases, Appurtenances, and all Pooled or Unitized Leases.**

30.    Prior to and since the Petition Date, the Debtor Defendants have  incurred not less than $7,894,812.21 for Waste Water Services provided by WaterBridge on a continuous basis, with interest.[4]  Although the Debtor Defendants have made certain postpetition payments for WaterBridge's ongoing services, the $7,784,635 remains outstanding.  WaterBridge continues to perform its obligations under the WMSA, transporting, handling, and disposing of the Debtor Defendants' produced water, accruing weekly costs in excess of $150,000.

31.    Under applicable state law,[5] WaterBridge has prepetition statutory mineral liens (the "Mineral Liens") that it secured on each leasehold and associated unit set forth in the Lien Claim Summary (the "Leases and Units").  Ex. 1.  The Mineral Liens secure the unpaid amounts for labor and services that WaterBridge continuously rendered to the Debtor Defendants under the WMSA, plus contractual interest.

32.    Under Texas law, "[a] mineral contractor or subcontractor has a lien to secure payment for labor or services related to the mineral activities."  Tex. Prop. Code § 56.002. WaterBridge's Mineral Liens attach to and encumber the following property interests attached to the Leases and Units (collectively, the "Collateral Properties"): (i) material, machinery and supplies furnished by WaterBridge; (ii) the land, leasehold, oil or gas well, water well, oil or gas

---

[4] WaterBridge intends and reserves all right to file periodic supplements to the Lien Affidavit to perfect additional amounts owed under the WMSA.

[5] *See* Tex. Prop. Code §§ 56.002, 56.021 and 56.022.

pipeline and its right-of-way, and lease for oil and gas purposes for which the services were provided; (iii) the buildings and appurtenances on the property; (iv) other material, machinery, and supplies used for mineral activities and owned by the property owner; and (iv) other wells and pipelines used in operations related to oil, gas and minerals and located on the property. *See* TEX. PROP. CODE § 56.003; *Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.—Houston [1st Dist.] 1997, no writ).[6]

33.     In addition, the Mineral Liens encumber the following interests in the Collateral Properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted, (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date.  *See Bandera Drilling Co. v. Lavina,* 824 S.W.2d 782 (Tex. App.—Eastland 1992, no writ); *Trevor Rees-Jones, Tr. for Atkins Petroleum Corp. v. Trevor Rees-Jones, Tr. for Apache Servs., Inc.,* 799 S.W.2d 463 (Tex. App.—El Paso 1990, writ denied); *McCarty v. Halliburton Co.,* 725 S.W.2d 817 (Tex. App. —Eastland 1987, writ ref'd. n.r.e.).

34.     It is common practice to combine multiple leases to operate as a single "unit" or through pooling.  On information and belief, the Debtor Defendants have multiple unit and/or pooling agreements associated with the Leases and Units. The lease to which a statutory lien attaches covers all of the real property described by the lease, including the minerals in the ground and, when a lease covers a tract made part of a unit or pooled area, the lien that is attached to that lease likewise attaches to all other leases that are subject to the common unit agreement or pooling

---

[6] Texas law applies because the Leases and Units consist of real and personal property of the Debtor Defendants located in Texas.  *See, e.g., Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010).

37166294.1 07/02/2020

agreement. This includes the minerals in the ground covered by the other leases in the unit or

pooled acreage. Tex. Prop. Code § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex.

Civ. App—Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 344

(Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.).

35.     Finally, mineral liens are generally considered as a remedial statute that should be

given a broad construction.  *Dealers Elec. Supply Co. v. Scoggins Constr. Co..,* 292 S.W.3d 650,

658 (Tex. 2008).

**D.      Prepetition Secured Parties in 2018.**

36.     In the Natixis Statement and in connection with the Cash Collateral Motion,

Natixis, in its capacity as the Administrative Agent on behalf of the Prepetition Secured Parties,

entered into that certain Credit Agreement dated as of September 17, 2018 (as amended, the

"Credit Agreement").  On or about September 25, 2018, the Administrative Agent caused copies

of the relevant Deeds of Trust and Fixture Filings to be filed in the county records for Reeves

County, Texas.[7]  Accordingly, the security interests of the Prepetition Secured Parties could not

have been perfected as to such collateral before September 25, 2018.

**E.      WaterBridge's Mineral Liens have Priority over the Prepetition Secured Parties.**

37.     WaterBridge disputes the priority of the Prepetition Secured Parties' prepetition

and post-petition security interests in the Collateral Properties over WaterBridge's valid, perfected,

and enforceable statutory mineral liens.

38.     WaterBridge's Mineral Liens relate back to the commencement of the furnishing

of the materials, services, and/or labor (the Waste Water Services) on the Leases and Units.  *See*

Tex. Prop. Code §§ 56.004–.005; *Youngstown Sheet & Tube Co. v. Lucey Prods. Co.*, 403 F.2d

---

[7] Natixis Statement ¶ 2.

135, 143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986);

*Lavina,* 824 S.W.2d at 784; *Trevor Rees-Jones*, 799 S.W.2d at 463.

39.    The bankruptcy court in *Meg Petroleum* found that "for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automatically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract." *Meg Petroleum*, 61 B.R. at 20.  In addition, under Texas law,

> the inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas . . . , [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease.

*Union Bank of Cal., NA,* 435 B.R. at 399.

40.    WaterBridge began providing Waste Water Services to the Debtor Defendants pursuant to the WMSA in May 2018, and began providing Waste Water Services to the Leases and Units subject to WaterBridge's Mineral Liens as early as June 2018.  The specific date continuous services began on each lease and associated unit is reflected in the Lien Claim Summary. *See* Ex. 1.

41.    Upon information and belief, certain of the leases are unitized or pooled, subject to unit and/or pooling agreements and operated as either pooling or a unit and, therefore, WaterBridge's Mineral Liens extend to and encumber all collateral property covered by each lease in each such pool or unit. Moreover, the Mineral Liens attached to the pools or units relate back to the first date WaterBridge began providing Waste Water Services on the pooled and unitized leases, as reflected in the Lien Claim Summary. *See id.*

13

42.    WaterBridge has continuously provided such services to the present.    The Prepetition Secured Parties did not obtain and attempt to perfect their lien until September 25, 2018.    Because WaterBridge properly and timely perfected its Mineral Liens, and because WaterBridge's Mineral Liens relate back to the dates when WaterBridge began providing Waste Water Services to each of the Leases and Units on the Lien Claim Summary, WaterBridge's Mineral Liens have priority over the Prepetition Secured Parties' lien for each of the Leases and Units on the Lien Claim Summary where services began before September 25, 2018.

43.    Pursuant to and in compliance with Section 546(b)(2) of the Bankruptcy Code, WaterBridge provided notice to preserve, perfect, maintain, and continue its rights as a perfected lienholder in certain property interests of the Debtor Defendants under Chapter 56 of the TEXAS PROPERTY CODE. The Notices of Perfection constituted the legal equivalent of having recorded a mineral lien in the public records for the county where the Collateral Properties are located and the equivalent of then having commenced a suit to foreclose the lien in the proper court.

44.    In addition to filing its Notices of Perfection in the pending bankruptcy proceeding, WaterBridge has properly noticed the Debtor Defendants with the Claim Notices and filed Lien Affidavits in Reeves County, Texas asserting its rights under the TEXAS PROPERTY CODE, in each case within the statutory time limits to create a valid mineral lien.

## JUSTICIABLE CONTROVERSY

45.    The Prepetition Secured Parties assert that they have valid, perfected, enforceable, first-priority liens and security interests upon all of the Debtor Defendants' assets, which include

14

the Collateral Properties, dating from their September 2018 Credit Documents and the Final Cash Collateral Order.[8]

46.    WaterBridge disputes that the Prepetition Secured Parties have first priority liens on the Collateral Properties, including the Debtor Defendants' interests in oil and gas leases and/or working interests, because WaterBridge's Mineral Liens relate back to the commencement of its continuous Waste Water Services on the Leases and Units identified in the Lien Claim Summary prior to alleged perfection of the security interests of the Prepetition Secured Creditors, which did not occur until September 25, 2018.

47.    Accordingly, WaterBridge seeks a declaration from the Court that WaterBridge's Mineral Liens are valid, perfected, enforceable and that WaterBridge's Senior Mineral Liens (as defined below) are senior to the prepetition and post-petition lien claims of the Prepetition Secured Parties. A declaratory judgment which declares the extent, validity, and priority of competing lien claims on the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will adjudicate disputed issues involved in this controversy between secured creditors in this bankruptcy case.

## CAUSES OF ACTION

A.    **Count 1 - Declaratory Judgment regarding Validity, Perfection, Amount, and Extent.**

48.    WaterBridge incorporates by reference all allegations in the paragraphs above.

49.    WaterBridge's claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201, Bankruptcy Rules 7001(2) and 7001(9), and the Lien Procedures Order.

---

[8] *See* Final Cash Collateral Order ¶ 4, n. 4, which states that "[t]he Prepetition Secured Parties assert that the oil and gas production proceeds are the Prepetition Secured Parties' Cash Collateral, the Statutory Lienholders dispute that contention, and all parties' rights are reserved."

50.     WaterBridge provided the Waste Water Services to the Debtor Defendants as described herein and in Exhibits 1 and 2 attached hereto. WaterBridge properly and timely perfected its Mineral Liens against the Leases and Units including the Collateral Properties of the Debtor Defendants. To the extent required, proper notice of the Mineral Liens was provided to the Debtor Defendants, as reflected in the attachments to the Lien Affidavits. *See* Exs. 1 and 2. On information and belief, the value of the Leases and Units, including the Collateral Properties securing the Mineral Liens, exceeds the amount of the outstanding indebtedness owing to WaterBridge.

51.     The Mineral Liens fully secure the principal amount of the indebtedness owed by the Debtor Defendants to WaterBridge plus additional interest, attorneys' fees and other costs as may be allowed by applicable law. WaterBridge seeks a declaratory judgment establishing the validity, perfection, amount, and extent of WaterBridge's Mineral Liens, as described in Exhibits 1-3, and allowed secured claims under FEDERAL RULES OF BANKRUPTCY PROCEDURE 7001(c)(2) and 3012, Section 506 of the Bankruptcy Code, The Federal Declaratory Judgment Act, 28 U.S.C. Section 2201, and the Lien Procedures Order.

52.     WaterBridge further seeks a judgment recognizing and making enforceable the Mineral Liens against the Collateral Properties described in the Lien Affidavits and this Complaint and as allowed under Chapter 56 of the TEXAS PROPERTY CODE.

**B.      Count 2 - Declaratory Judgment as to Priority.**

53.     WaterBridge incorporates by reference all allegations in the paragraphs above.

54.     This claim for relief likewise arises under the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201, Bankruptcy Rules 7001(2) and 7001(9), and the Lien Procedures Order.

55.    Under Texas law, the following Mineral Liens relate back to inception dates for Waste Water Services prior to the recording of the competing security interests of the Prepetition Secured Parties for the Leases and Units, and associated Collateral Property, indicated on the Lien Claim Summary (and as set forth below), and that such services were provided continuously with no gap of more than six months:

| Units/Leases | Wells / Collateral Silos | Inception Date | Lien Amount | Lien Instr. No. (Reeves Co.) |
|---|---|---|---|---|
| Affirmed 6 | Affirmed 6 #2H (Supp. Aff. Well No. 53); Affirmed 6 #3HM well (Supp. Lien Aff. Well No. 54); Affirmed 6 #5H well (Supp. Lien Aff. Well No. 55); Affirmed 6 #7H well (Supp. Lien Aff. Well No. 56) | 6/1/2018 | $45,581 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Count Fleet 11 | Count Fleet 11 #2H well (Supp. Lien Aff. Well No. 2) | 6/1/2018 | $518,356 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Delightful Dasher 11 | Delightful Dasher 11 #1H well (Supp. Lien Aff. Well No. 7) | 6/1/2018 | $240 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Omaha 11 | Omaha 11 #1H (Supp. Lien Aff. Well No. 4); Omaha 11 #2H (Supp. Lien Aff. Well No. 5); Omaha 11 #3H (Supp. Lien Aff. Well No. 6) | 6/1/2018 | $447,002 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Pickpocket 21 | Pickpocket 21 #1H well (Supp. Lien Aff. Well No. 49); Pickpocket 21 #2H well (Supp. Lien Aff. Well No. 50); Pickpocket 21-3 #3H well (Supp. Lien Aff. Well No. 51); Pickpocket 21-4 #4H well (Supp. Lien Aff. Well No. 52) | 6/1/2018 | $13,825 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Smarty Jones 26 | Smarty Jones 26 #1H well (Supp. Lien Aff. Well No. 25); Smarty Jones 26 #5H well (Supp. Lien Aff. Well No. 26); Smarty Jones 26 #6H well (Supp. Lien. Aff. Well No. 27); Smarty Jones 26 #7H well (Supp. Lien Aff. Well No. 28) | 6/1/2018 | $373,992 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| War Admiral 24 | War Admiral 24 #1H well (Supp. Lien Aff. Well No. 18); War Admiral 24 #4H well (Supp. Lien. Aff. Well No. 19); War Admiral 24 #5H (Supp. Lien Aff. Well No. 20); War Admiral 24 #6H (Supp. Lien Aff. Well No. 21) | 6/1/2018 | $1,657,583 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |

| Units/Leases | Wells / Collateral Silos | Inception Date | Lien Amount | Lien Instr. No. (Reeves Co.) |
|---|---|---|---|---|
| Seattle Slew 17 | Seattle Slew 17 #1H well (Supp. Lien Aff. Well No. 42) | 6/1/2018 | | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Assault 6 | Assault 6 #1H well (Supp. Lien Aff. Well No. 57) | 7/1/2018 | | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| California Chrome 27 | California Chrome 27 #1HM well (Supp. Lien Aff. Well No. 29); California Chrome 27 #2H well (Supp. Lien Aff. Well No. 30); California Chrome 27 #4H well (Supp. Lien Aff. Well No. 31); California Chrome 27 #5H well (Supp. Lien Aff. Well No. 32); California Chrome 27 #6H well (Supp. Lien Aff. Well No. 33); California Chrome 27 #10H well (Supp. Lien Aff. Well No. 38); California Chrome 27 #12H well (Supp. Lien Aff. Well No. 39) | 7/1/2018 | $2,021,976 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Citation 14 | Citation 14 #1H well (Supp. Lien Aff. Well No. 59) | 7/1/2018 | | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Copperhead 23 | Copperhead 23 #1H well (Supp. Lien Aff. Well No. 15); Copperhead 23 #2H well (Supp. Lien Aff. Well No. 16); Copperhead 23 #4H well (Supp. Lien Aff. Well No. 17) | 7/1/2018 | $706,992 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Eastex 6 | Eastex 6 #1H well (Supp. Lien Aff. Well No. 58) | 7/1/2018 | $235 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Imperial Eagle 24 | Imperial Eagle 24 #1H well (Supp. Lien Aff. Well No. 22) | 7/1/2018 | $60 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Seattle Slew | Yucca #6H/Seattle Slew 1H well (Supp. Lien Aff. Well No. 43) | 7/1/2018 | $15,275 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Secretariat 10 | Secretariat 10 #1HR well (Supp. Lien Aff. Well No. 1); | 7/1/2018 | $900 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Special Effort 18 | Special Effort 18 #1H well (Supp. Lien Aff. Well No. 47) | 7/1/2018 | $2,550 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |

18

| Units/Leases | Wells / Collateral Silos | Inception Date | Lien Amount | Lien Instr. No. (Reeves Co.) |
|---|---|---|---|---|
| Yucca | Yucca #1 well (Supp. Lien Aff. Well No. 44) | 7/1/2018 | $326,716 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Big Brown 15 | Big Brown #15 1H well (Supp. Lien Aff. Well No. 46) | 9/1/2018 | | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Gallant Fox 9 | Gallant Fox 9 #1H well (Supp. Lien Aff. Well No. 60) | 9/1/2018 | | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Toyah B | Toyah B #2H well (Supp. Lien Aff. Well No. 62) | 9/1/2018 | $343,540 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| David Trimble 13 | David Trimble 13 #1H SWD (Supp. Lien Aff. INV03259, 3586, 3637, 3698, 4359, 4407, 4453, 4762, 4877, 4926, 5546, 5597, 5891) | 9/5/2018 | $7,879 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |
| Runaway Ghost 23 | Runaway Ghost 23 #1HM well (Supp. Lien Aff. Well No. 9); Runaway Ghost 23-2 #2H well (Supp. Lien. Aff. Well No. 10) | 9/15/2018 | $619,029 | 2020004238 (Supp. Aff.) 2019018516 (Lien Aff.) |

(the "Senior Mineral Liens"). WaterBridge requests judgment declaring that its Senior Mineral Liens are senior to the Prepetition Secured Parties' competing liens and/or mortgages against the Debtor Defendants' interests in the Leases and Units and Collateral Properties.   WaterBridge also requests judgment declaring that its Senior Mineral Liens take priority over the Prepetition Secured Parties' competing liens as to all property described in TEXAS PROPERTY CODE Section 56.004(b).

## C.    Count 3 – Recovery of Attorneys' Fees and Costs.

56.    WaterBridge incorporates by reference all allegations in the paragraphs above.

57.    Pursuant to Section 506(b) of the Bankruptcy Code, 28 U.S.C. Section 2202, and Chapter 53 and 56 of the TEXAS PROPERTY CODE, WaterBridge seeks recovery of all reasonable

19

attorneys' fees, interest and costs incurred in enforcing its statutory privilege, liens, claims and underlying obligations related thereto in this proceeding.

## <u>CONDITIONS PRECEDENT AND RESERVATION OF RIGHTS</u>

58.     All conditions precedent have been performed or have occurred.

59.     By filing this suit, WaterBridge does not waive or release any rights, claims, causes of action, or defenses, or make any election of remedies that it now has or may have, but expressly preserves all such rights, claims, causes of action, and defenses, whether or not the same have been asserted or may hereafter be asserted in this or any other proceeding.

60.     WaterBridge reserves its right to amend this Complaint based on new information that may be received during discovery or as otherwise allowed by law or this Court.

## <u>PRAYER</u>

WHEREFORE, WaterBridge respectfully requests entry of any order by the Court declaring that WaterBridge holds valid, perfected, priority Mineral Liens on the Collateral Properties prior in time and superior in right to the prepetition and post-petition claims and interests of the Prepetition Secured Parties.

37166294.1 07/02/2020

Dated:  July 2, 2020

**SAUL EWING ARNSTEIN & LEHR LLP**

*/s/ Lucian B. Murley*
Lucian B. Murley (DE Bar No. 4892)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
(302) 421-6898
luke.murley@saul.com

-and-

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
(*pro hac* granted; Docket No. 154)
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
jhiggins@porterhedges.com

*Counsel for WaterBridge Texas Midstream, LLC*