**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MTE HOLDINGS LLC, *et al.*, | § | Case No. 19-12269 (CSS) |
| | § | |
| Debtors. | § | (Jointly Administered) |

| | | |
|---|---|---|
| NATIONAL OILWELL VARCO, L.P. and NATIONAL OILWELL DHT, L.P., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Adv. Proc. No. _____ |
| MDC ENERGY LLC, MDC TEXAS OPERATOR LLC, MDC REEVES ENERGY LLC, and NATIXIS, NEW YORK BRANCH, | § § § § § § | |
| Defendants. | § | |

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE VALIDITY, PRIORITY, AND EXTENT OF MINERAL LIENS ON THE DEBTORS' PROPERTY**

Pursuant to the Court's June 2, 2020 *Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants* [Main Case Doc. No. 1150] (the "M&M Lien Procedures Order"), Plaintiffs National Oilwell Varco, L.P. ("NOVLP") and National Oilwell DHT, L.P. ("DHTLP") (together, "NOV") hereby file this complaint seeking a declaratory judgment regarding the validity, priority, extent, and value of the various liens and security interests (including NOV's) claimed against the Debtors' assets. In support of such relief, NOV respectfully states the following:

**I.    PARTIES**

1.     Plaintiff National Oilwell Varco, L.P. is a Delaware limited partnership whose principal place of business located at 7909 Parkwood Circle Drive, Houston, Texas 77036.

{C1114672.1}

2. Plaintiff National Oilwell DHT, L.P. is a Delaware limited partnership whose principal place of business located at 7909 Parkwood Circle Drive, Houston, Texas 77036.

3. Defendant MDC Energy LLC d/b/a MDC Texas Energy LLC ("MDC Energy") is a Delaware limited liability company whose principal place of business in Texas is located at 24 Smith Road, Suite 501A, Midland, Texas 79705. MDC Energy may be served through its attorneys of record: (i) Robert J. Dehney, Eric D. Schwartz, Daniel B. Butz, and Brett S. Turlington of Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899; and (ii) Andrew K. Glenn, Matthew B. Stein, and David J. Mark of Kasowitz Benson Torres LLP, 1633 Broadway, New York, New York 10019.

4. Defendant MDC Texas Operator LLC ("MDC Texas Operator") is a Delaware limited liability company whose principal place of business in Texas is located at 24 Smith Road, Suite 501A, Midland, Texas 79705. MDC Texas Operator may be served through its attorneys of record: (i) Robert J. Dehney, Eric D. Schwartz, Daniel B. Butz, and Brett S. Turlington of Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899; and (ii) Andrew K. Glenn, Matthew B. Stein, and David J. Mark of Kasowitz Benson Torres LLP, 1633 Broadway, New York, New York 10019.

5. Defendant MDC Reeves Energy LLC ("MDC Reeves") is a Delaware limited liability company whose principal place of business in Texas is located at 24 Smith Road, Suite 501A, Midland, Texas 79705. MDC Reeves may be served through its attorneys of record: (i) Robert J. Dehney, Eric D. Schwartz, Daniel B. Butz, and Brett S. Turlington of Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899; and (ii) Andrew K. Glenn, Matthew B. Stein, and David J. Mark of Kasowitz Benson Torres LLP, 1633 Broadway, New York, New York 10019.

6. Natixis, New York Branch ("Natixis") is the administrative agent on behalf of certain lenders and other parties (collectively, the "Lenders," and together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with MDC Energy. Natixis has appeared as a creditor in the above-captioned jointly administered Chapter 11 bankruptcy case and may be served through its attorneys of record: (i) Erin R. Fray and Daniel N. Brogan of Bayard, P.A., 600 N. King Street, Suite 400, Wilmington, Delaware 19801; (ii) William A. (Trey) Wood II of Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002; (iii) David J. Ball and Logan S. Kolter of Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York, New York 10020; and (iv) Mark E. Dendinger of Bracewell LLP, City Place I, 34th Floor, 185 Asylum Street, Hartford, Connecticut 06103.

## II. JURISDICTION AND VENUE

7. Defendants MDC Energy, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are each debtors in the above-captioned jointly administered Chapter 11 bankruptcy case, Case No. 19-12269 (CSS), styled *In re MTE Holdings LLC*, currently pending before the United States Bankruptcy Court for the District of Delaware. The case was filed on November 8, 2019.

8. This Court has jurisdiction over this adversary proceeding pursuant to 28 §§ 157(a), and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

9. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (M).

10. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11. Pursuant to Fed. R. Bankr. 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, NOV consents to the Court's entry of a final judgment or order with respect to this adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### III.  NATURE OF ACTION

12. This is an action for declaratory judgment made pursuant to Fed. R. Bankr. 7001(2) and 7001(9), and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. NOV is filing this action in order to comply with the procedures set forth in the M&M Lien Procedures Order.

13. NOV seeks a declaratory judgment determining the validity, extent, and priority of its statutory mineral liens vis-à-vis the pre- and post-petition liens and security interests claimed by the Prepetition Secured Parties. Specifically, NOV seeks a declaratory judgment that: (1) it holds valid, perfected, and enforceable mineral liens on certain of the Debtor Defendants' properties; and (2) such valid, perfected, and enforceable liens are senior in priority to the pre- and post-petition lien claims or security interests asserted by the Prepetition Secured Parties. Additionally, NOV seeks a declaratory judgment setting the value of its mineral liens.

### IV.  BACKGROUND

**A.  NOV has for years provided goods and services in support of Debtors' drilling activities.**

14. Plaintiffs NOVLP and DHTLP are both wholly owned subsidiaries of National Oilwell Varco, a multinational oil and gas products and services company headquartered in Houston, Texas. Both subsidiaries have been named in this adversary proceeding because certain

of the goods and services at issue were provided by NOVLP, while others were provided by DHTLP.

15. NOV is in the business of selling oilfield support goods and services to companies such as MDC Energy. Typically, after NOV receives and accept an order for goods or services, it delivers the goods to or supplies the services at the location chosen by the customer. NOV then sends an invoice reflecting either the agreed to or usual, customary, and reasonable charges for the good or service to the customer.

16. Beginning no later than December 2017, and continuing through on or about June 2019, MDC Energy placed orders for oilfield support goods and services with NOV on a credit basis. MDC Energy then used the goods and services in connection with and in support of its drilling activities on various oil and gas wells and located in Reeves County, Texas.[1] MDC Operator is the operator of record for such oil and gas wells and the Debtor Defendants (or their agents or alter egos) are each believed to own a working interest therein. At all relevant times, the Debtor Defendants acted as agents and/or alter egos of one another and any other interest holders. Additionally, either express or implied contracts existed between and amongst the Debtor Defendants and the other interest holders in connection with NOV's provision of goods and services on the various mineral properties on which the oil and gas wells are located.

17. After providing the goods and services at issue, NOV then forwarded invoices requesting payment for the goods and services to MDC Energy. Although MDC Energy accepted

---

[1] The goods and services at issue were provided on the various mineral properties continuously on a month-to-month basis, and in no instance was there a gap of more than six months between the time goods and services were first and last provided. This is evidenced by, *inter alia*, the monthly invoices and other backup documents issued by NOV to MDC Energy and/or the Debtor Defendants. As copies of such documents are voluminous they have not been attached here and will be made available upon request.

and received the goods and services from NOV, it failed to pay NOV the amounts stated on the invoices as was required.

18. After all payments, offsets, and credits have been applied, NOV is owed $1,915,644.51, excluding reasonable and necessary attorney's fees incurred and applicable pre-judgment interest at the maximum contractual or legal rate allowed by law. Of the total principal amount owed, $1,262,726.53 is owed to NOVLP and $652,917.98 is owed to DHTLP.

**B.    NOV's liens encumber the various properties on which the goods and services were provided.**

19. As a result of MDC Energy's non-payment for goods and services provided, and pursuant to its rights under Chapter 56 of the Texas Property Code and/or the Constitution of the State of Texas, NOV filed various mineral liens against MDC Energy and its ownership interest in the minerals and other real and personal property on which (or in connection with) the goods and services were provided, together with the ownership interest of any other interest owners, including, but not limited to, the Debtor Defendants. Included in the lien affidavits are, *inter alia*, more specific descriptions of the encumbered property.[2]

20. Pre-filing notices of NOV's intention to file the liens were served on MDC Energy and/or the Debtor Defendants on or about June 10, 2019, June 20, 2019, and June 28, 2019. Because MDC Energy and/or the Debtor Defendants failed and refused to make payment within the timeframe required, NOV filed its liens as indicated on between June 26, 2019 and July 9, 2019.

21. NOV's lien claims are equal to the total amount remaining due from MDC Energy, $1,915,644.51 ($1,262,726.53 of which is owed to NOVLP and $652,917.98 of which is owed to

---

[2] Copies of the lien affidavits and accompanying exhibits and attachments themselves are voluminous and will be made available upon request.

DHTLP), plus reasonable and necessary attorney's fees incurred and applicable pre-judgment interest at the maximum contractual or legal rate allowed by law.

**C.    The Prepetition Secured Parties did not perfect their liens or security interests until September 25, 2018, at the earliest (if at all).**

22.    On or about September 17, 2018, the Prepetition Secured Parties made certain loans and extensions of credit under the Credit Agreement to MDC Energy. Additionally, in connection with the cash collateral motion, the Prepetition Secured Parties have asserted that, under the Credit Agreement and certain other documentation executed therewith (collectively, the "<u>Credit Documents</u>"), MDC Energy and certain affiliated guarantors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens, on any interest in any kind of property or asset, whether real, personal or mixed, tangible or intangible, including cash, securities, accounts and contract rights. The Prepetition Secured Parties assertions include a first-priority security interest in oil and gas leasehold interests, working interests, and associated property rights.

23.    The Prepetition Secured Parties assert priority over NOV by virtue of their recording of two sets of mortgages/security agreements executed in connection with and as a part of the Credit Documents. The first set of mortgages was recorded on September 25, 2018. These filings were then supplemented via a second set of mortgages filed on April 16, 2019.

24.    However, regardless of the date on which the mortgages were filed, both violate the statute of frauds (in whole or in part) in that they fail to adequately describe certain of the purportedly encumbered properties. For example, in some instances specific wells and leases encumbered by NOV's liens are not included at all within the descriptions of the mortgaged property. In other instances, the descriptions that do exist are insufficient to comply with Texas law. Specifically, with respect to the wells, the law typically requires (other than in the context of

a mineral lien) a more detailed description than a mere reference to an API or RRC number would provide. *See, e.g., Carpenter v. Phelps*, 391 S.W.3d 143, 145–46 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that information failed to identify the property with reasonable certainty). And with respect to the leases, typically an identification of the lessors, lessees, dates of recording, file numbers, acreage amounts, and/or section or survey information would be required. *See, e.g., Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006) (holding that the failure to include such information violated the statute of frauds). The mortgages do not include this vital information.

25. In an apparent attempt to cure these maladies, the Preparation Secured Parties included in the mortgages a blanket description purporting to cover "all other interests of the Mortgagor now owed… in and to the lands that are subject to any of the leases and other instruments described in Exhibit A, regardless of whether such interests are incorrectly described or omitted, in whole or in part, from Exhibit A."[3]

26. As a threshold matter, Texas law generally disfavors such blanket descriptions. *See, e.g., Smith v. Allison*, 301 S.W.2d 608, 611 (Tex. 1956) (holding that a deed purporting to include "not only the above described land, but also any and all other land and interest in land owned or claimed by the Grantor in said survey or surveys in which the above described land is situated or in adjoining the above described land" rendered a deed ambiguous as to the land conveyed). Such a blanket description will only be upheld where "objectively defined boundaries in [a] property description… provide reasonably certain identification." *In re Cornerstone* 436 B.R. at 844 (citing *Long Trusts*, 222 S.W.3d at 416). Moreover, descriptions referencing "my property," "my land," or land "owned by me" are only sufficient when it is shown by extrinsic evidence that the conveying party only owns interests in tracts that meet very specific criteria. *See Kmiec v. Reagan*,

---

[3] *See* September 25, 2018 Mortgages at § 1.7.

{C1114672.1}    8

556 S.W.2d 567, 569 (Tex. 1977) ("When the grantor is stated to be the owner of the property to be conveyed and it is proved that the grantor owns only a single tract answering the description, the land is identified with reasonable certainty.").

27. Here, the granting of a lien on "all other interests of the Mortgagor now owned… in and to the lands that are subject to any of the leases and other instruments described in Exhibit A" stretches the concepts of "objectively defined boundaries" to its breaking point. Had the Debtor Defendants granted a lien on "all my interests in Reeves County," such a description would arguably be valid. *See In re Cornerstone* 436 B.R. at 844. Or, had the Debtor Defendants granted a lien on "all my interests in the lands depicted on the attached plat," such a description would also arguably be valid. *See Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194–96 (Tex. App.—Tyler 2004, pet. denied). But in this instance, the inclusion of some leases, the exclusion of others, and an attempt to capture those excluded leases with vague cover-all language is not in accordance with Texas courts' skeptical views of blanket descriptions.

28. Additionally, the Texas legislature has specifically provided a mechanism for adding interests in land to conveyances that were improperly described or omitted in the original instrument—parties to an original transaction or their successors-in-interest may execute a correction instrument to add land or remove land from a conveyance that correctly conveys other land. Tex. Prop. Code § 5.029. Absent a proper use of this statute, third parties are not on notice of any liens on those properties. *Yates Energy Corp. v. Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr.*, 04-17-00310-CV, 2018 WL 6626605, at *6 (Tex. App.—San Antonio Dec. 19, 2018, pet. filed).

29. Accordingly, the property descriptions contained within the mortgages are insufficient to prime NOV's interests and NOV's mineral liens therefore take priority over any liens or security interests asserted by the Prepetition Secured Parties.

**D. NOV's liens have priority over any liens or security interests claimed by the Prepetition Secured Parties.**

30. NOV disputes the Prepetition Secured Parties' pre- and post-petition liens or security interests insofar as such interests are asserted to be superior to the valid, perfected, and enforceable mineral liens claimed by NOV. In the unlikely event that the property descriptions contained within the mortgages are sufficient to prime NOV's interests in the properties, NOV asserts priority over the Prepetition Secured Parties with respect to any lien having a relation-back and/or priority date on or before September 25, 2018 and/or April 16, 2019.

31. Under Texas law, NOV's mineral liens encumber the following property: (i) the material, machinery and supplies furnished; (ii) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the services were provided; (iii) the buildings and appurtenances on the property; (iv) other material, machinery, and supplies used for mineral activities and owned by the property owner; and (iv) other wells and pipelines used in operations related to oil, gas and minerals and located on the property. *See* Tex. Prop. Code § 56.003 (discussing the scope of property covered by a mineral lien).[4]

32. Once the lien affidavits are filed and/or the liens are perfected, the various inception dates of the liens relate back to the commencement of the furnishing of labor and/or materials on the subject property. *See* Tex. Prop. Code § 56.004–005 (discussing the statute's priority scheme).

---

[4] It should also be noted that the Texas oil and gas lien statute is generally considered to be remedial in nature, and, as such, is to be construed broadly to protect to protect lien claimants. *Dealers Elec. Supply Co. v. Scoggins Constr. Co.*, 292 S.W.3d 650, 658 (Tex. 2008).

As such, if NOV provided goods and services on the property on or before the Prepetition Secured Parties' perfection date, NOV's lien claim is entitled to priority regardless of the date on which the lien affidavit was actually filed and/or the lien was otherwise perfected. This rule has been made clear by the United States Bankruptcy Court for the Northern District of Texas, which stated:

> The inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas…, [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease.

*Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010).

33. Moreover, this rule applies with even greater force where the lease or leases covering the property have been pooled and/or unitized with one or more other leases covering another property. This is because when a unit or pooling acreage is created, the liens encumbering any one property extend to and encumber the totality of the unitized or pooled acreage. *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.—Eastland 1975, no writ) ("Thus, it is held that under the statutes a lien exists upon an entire tract of land or leasehold interest upon which materials were delivered to or used and if such material was furnished or used on one of two or more tracts which tracts were treated as a unit, the lien exists as to the entire unit.") (quoting; *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 343 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.)).

34. Upon information and belief, certain of the leases at issue are unitized or pooled pursuant to unitization or pooling agreements. Accordingly, NOV's liens extend to and encumber all property covered by each lease in each such pooling or unitization agreement. Moreover, the

priority dates of NOV's liens relate back to the date on which goods and services were first provided on the unitized or pooled acreage.

35. NOV began providing goods and services to MDC Energy and the Debtor Defendants no later than December 2017. The priority date of NOV's liens therefore relate back (in whole or in part) to that date. In comparison, the Prepetition Secured Parties did not obtain or perfect their liens or security interests until September 25, 2018, at the earliest, or April 16, 2019, at the latest (if at all). For the avoidance of doubt, NOV asserts priority on any lien having a relation-back and/or priority date on or before September 25, 2018 and/or April 16, 2019.

36. NOV's liens are more specifically identified and described in the schedule attached hereto as **Exhibit "A"**. Included therein is a description of the property encumbered by each lien, as well as an identification of the relation-back or other priority date relevant to each lien and property. The relation-back date is the earlier of either (1) the date on which the goods and services were first provided in connection with operations on the well itself, or (2) the date on which goods and services were provided in connection with operations on the same unitized or pooled acreage as the well (provided there was no more than a six-month gap between the date the goods and service were first provided and the date on which they were next provided).

37. Pursuant to and in compliance with section 546(b)(2) of the Bankruptcy Code, NOV provided notice to preserve, perfect, maintain, and continue its rights as a perfected lienholder in certain property interests of the Debtor Defendants under Chapter 56 of the Texas Property Code and the Constitution of the State of Texas.[5] Such notice constituted the legal

---

[5] The Constitution of the State of Texas, Article 16, Section 37 establishes that "[m]echanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

equivalent of having recorded a mineral lien in the public records for the county where the various mineral properties are located and is the equivalent of having then commenced a suit to foreclosure the lien in the proper court.

38. In addition to such notice, and as detailed above and in the attached schedule, NOV timely gave notice of and properly filed lien affidavits in Reeves County asserting its rights under the Texas Property Code and the Constitution of the State of Texas.

## V.    JUSTICIABLE CONTROVERSY

39. The Prepetition Secured Parties assert that they hold valid, perfected, enforceable, first-priority liens or security interests over various properties encumbered by NOV's mineral liens. NOV disputes that the Prepetition Secured Parties hold first priority liens or security interests over such properties because NOV's mineral liens relate back to a date prior to the Prepetition Secured Parties' perfection date. Additionally, to the extent NOV's liens do not relate back to a date prior to the Prepetition Secured Parties' perfection date, the property descriptions contained within the relevant mortgages are insufficient to prime NOV's interest in the properties.

40. Accordingly, NOV seeks a declaratory judgment that: (1) it holds valid, perfected, and enforceable mineral liens on certain of the Debtor Defendants' properties; and (2) such valid, perfected, and enforceable liens are senior in priority to the pre- and post-petition lien claims or security interests asserted by the Prepetition Secured Parties. Additionally, as contemplated by the M&M Lien Procedures Order, NOV also seeks a declaratory judgment setting the value of its liens.

## VI.    CLAIMS AND CAUSES OF ACTION

**A.    Count I: Declaratory Judgment Regarding Validity and Priority.**

41. NOV incorporates by reference the allegations set forth above as if fully set forth herein.

42. This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

43. As set forth above, NOV has validly and timely recorded mineral liens against the certain of the Debtor Defendants' properties. These liens relate back to inception dates prior to the recording of the competing liens or security interests of the Prepetition Secured Parties, and therefore NOV holds a senior secured claim to the Prepetition Secured Parties. Additionally, to the extent NOV's liens do not relate back to a date prior to the Prepetition Secured Parties' perfection date, the property descriptions contained within the relevant mortgages are insufficient to prime NOV's interests in the properties.

44. Accordingly, NOV respectfully requests a judgment of this Court declaring: (1) that is holds valid, perfected, and enforceable mineral liens on certain of the Debtor Defendants' properties; and (2) that such valid, perfected, and enforceable liens are senior in priority to the pre- and post-petition lien claims or security interests asserted by the Prepetition Secured Parties.

**B.   Count II: Declaratory Judgment Regarding Value.**

45. NOV incorporates by reference the allegations set forth above as if fully set forth herein.

46. This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

47. The M&M Procedures Order provides that "it is contemplated that the adjudication of the priority, validity, extent, perfection, and value" of the statutory mineral liens asserted by NOV and others "shall take place within the adversary proceeding."[6]

---

[6] M&M Lien Procedures Order at p. 3.

48. Accordingly, NOV respectfully requests a judgment of this Court declaring the value of its liens. The value of NOV's liens is equal to the total amount remaining due from MDC Energy, $1,915,644.51 ($1,262,726.53 of which is owed to NOVLP and $652,917.98 of which is owed to DHTLP).

C.    **Count III: Recovery of Attorney's Fees and Costs.**

49. NOV incorporates by reference the allegations set forth above as if fully set forth herein.

50. Pursuant to Section 506(b) of the Bankruptcy Code, 28 U.S.C. § 2202, and Chapters 53 and 56 of the Texas Property Code, NOV seeks recovery of all reasonable attorney's fees, interest, and costs incurred in enforcing its statutory privilege, liens, claims, and underlying obligations related to this proceeding.

## VII.    RESERVATION OF RIGHTS

51. This complaint is made in good faith and is based on information reasonably known or available to NOV as of the time of filing. NOV reserves the right to amend this complaint based on new or unknown information subsequently located, received, or revealed during the discovery process or as otherwise allowed by law of this Court.

(Remainder of Page Intentionally Left Blank)

## VIII. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, NOV respectfully requests that the Court (1) enter a declaratory judgment substantially in the form as detailed above, and (2) award NOV its reasonable attorney's fees, interest, and costs incurred. Additionally, NOV respectfully requests that it be awarded all other and further relief, general and specific, legal or equitable, to which it may justly be entitled.

Dated: July 2, 2020

CAMPBELL & LEVINE, LLC

/s/ *Mark T. Hurford*
Mark T. Hurford (Bar No. 3299)
222 Delaware Avenue, Suite 1620
Wilmington, DE 19801
Phone: (302) 426-1900
Fax: (302) 426-9947
Email: mhurford@camlev.com

-and-

STACY & BAKER, P.C.
Brian A. Baker, Esquire
1010 Lamar Street, Suite 550
Houston, TX 77002
Telephone: (713) 527-9991
Facsimile: (713) 527-9992
brian.baker@stacybakerlaw.com

*Counsel to National Oilwell Varco, L.P., and National Oilwell DHT, L.P.*