## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MTE Holdings LLC, *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 19-12269 (CTG)<br><br>Jointly Administered<br><br>**Related Docket No. 1936** |

## MEMORANDUM OPINION[1]

The debtors' business activities include drilling for oil and gas. Drilling generates wastewater as a byproduct. The debtors had initiated a project, before their bankruptcy filing, to dispose of wastewater. That project continued, and expanded, after the bankruptcy filings. The goal of the project was ultimately to generate revenue by charging for the disposal of wastewater generated by other oil and gas exploration and production companies. Gray Surface provided post-petition consulting work for that project but has not been paid for its services.[2] Gray Surface now seeks both the allowance of an administrative claim under Section 503(b)(1) and an order directing the immediate payment of that claim.

There is no dispute that Gray Surface provided the services in question. Nor do the parties challenge the amounts set out in the invoices. Rather, the dispute over claims allowance presents two questions: (i) whether the "benefit to the estate" for

---

[1] This Memorandum Opinion sets out the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable to this contested matter under Fed. R. Bankr. P. 9014(c).

[2] MTE Holdings LLC and its affiliated debtors are referred to as the "debtors." Gray Surface Specialties and Consulting, Ltd. is referred to as "Gray Surface." MDC Acquisition, LLC, a non-debtor affiliate of the debtors, is referred to as "MDCA."

the services provided was too speculative to warrant administrative claim treatment; and (ii) whether, in light of the certain discussions between the owner of Gray Surface and the chief operating officer of the debtors, Gray Surface agreed to accept payment from a non-debtor subsidiary rather than from the debtors' estate, thus depriving Gray Surface of its right to seek the allowance of an administrative claim.

For the reasons described below, the Court will allow the administrative claim because the benefit to the estate of the services provided was not too speculative.  As further described below, the Court concludes that, under the doctrine of the delegation of contractual duties, the objecting parties bear the burden of showing that Gray Surface agreed to accept payment from a non-debtor subsidiary rather than from the debtors' estates.  The Court finds that the objectors failed to carry that burden.

The Court denies Gray Surface's request to direct the debtors to make immediate payment on its administrative claim, without prejudice to being renewed if its administrative claim is not paid in 60 days.

## Factual and Procedural Background

### 1.    The evidence of record

The debtors' business is oil and gas exploration, drilling, and development in the Permian Basin, a large oil and natural gas producing area located in western Texas and southeastern New Mexico.  The process of drilling for oil involves the use of large volumes of water, and generates wastewater as a byproduct, sometimes referred to as either "salt water" or "produced water."  This wastewater is toxic and

must be disposed in compliance with applicable environmental regulations.  Tr. at 19-20.[3]

The debtors owned several wastewater-disposal wells in Reeves County, Texas and held permits for more than 50 additional wells at that site.  *Id*. at 20.  Debtors undertook a project to build three 36-inch pipelines that could carry a million barrels of wastewater a day from Carlsbad, New Mexico to their wastewater disposal facility in Reeves County, Texas.  The capacity of this pipeline would exceed the debtors' production of wastewater.  The debtors contemplated that, through the expansion of their wastewater disposal capacity and construction of the related pipeline, they would be able to generate material revenues by charging other oil and gas exploration and production companies for wastewater disposal.  *Id*. at 21-22.

Gray Surface is based in Midland, Texas.  Ellis Gray, who testified at the hearing, is the owner and general partner, having founded the company in 2004 after working for almost 35 years in the oil and gas industry.  *Id*. at 18.  Gray has specialized, both before and after founding Gray Surface, on rights-of-way for oil and gas projects, including title research, right-of-way acquisition, and related regulatory issues.  *Id*.  Gray testified that the debtors did not have in-house capacity to conduct title or right-of-way research.  Rather, the debtors retained Gray Surface to provide those services – the "acquisition of real property which includes rights of way, easements, service use agreements … anything, basically, that will pertain to the surface asset[s] for [Debtor] MDC Texas Energy."  *Id*.

---

[3] "Tr." refers to the transcript of the May 26, 2020 evidentiary hearing on the motion.

Before the debtors filed for bankruptcy in early November 2019,[4] Gray Surface had begun work on the permitting for more than 50 wastewater disposal wells in Reeves County, Texas, to facilitate the debtors' expansion of their wastewater disposal capacity.  At some point after the bankruptcy filing, the debtors approached Gray Surface about expanding that project to include the pipeline from Carlsbad, New Mexico to Reeves County, Texas.  *Id.* at 20.

The record contains correspondence, most of it from the first half of 2020, between Gray Surface and employees of the debtors regarding the work that was to be performed on the project, as well as various leases and agreements that Gray Surface procured, on behalf of the debtors, with counterparties in connection with the pipeline project.  Gray Exs. 13-17.[5]

Gray Surface submitted regular invoices to the debtors for the work it performed.  Gray Exs. 1-12.[6]  Paul Cyphers, the debtors' chief operating officer, testified that he took no issue with the work performed that was reflected on those

---

[4] The lead debtor in these cases, MTE Holdings, LLC, filed its petition on October 22, 2019. MDC Energy LLC and MDC Texas Operator, LLC, the debtor entities whose business activity is at issue in this motion, filed their petitions on November 8, 2019.

[5] The documents admitted into evidence in this contested matter include the following materials introduced by Gray Services (exhibit list at D.I. 2185), the debtors (exhibit list at D.I. 2184), and Natixis (exhibit list at D.I. 2182), respectively: (i) 21 exhibits introduced by Gray Surface, consisting of invoices (Gray Exs. 1-12), correspondence (Gray Exs. 13, 15-17, 19), and other materials; (ii) two documents introduced by the debtors – a declaration submitted by Paul Cyphers, the debtors' chief operating officer (which is D.I. 2169 and was also admitted by Gray Surface as Gray Ex. 18 and Natixis as Natixis Ex. 19) and a summary chart of invoices set out in Debtors' opposition brief (D.I. 2167 at ¶ 3); and (iii) 19 exhibits, introduced by Natixis, which (in addition to the Cyphers declaration and a chart listing the invoices in question) are orders previously entered by the Court authorizing the debtors' use of their lenders' cash collateral and related budgets.

[6] As further explained below, Exhibits 7-12 were "reissued" to MDCA after an October 2020 meeting between Gray and Cyphers.  Tr. at 45.

invoices.  Tr. at 54.  In the summer of 2020, however, Natixis, the administrative agent for the debtors' prepetition secured lenders, informed the debtors that the lenders did not support the wastewater disposal expansion project, and would no longer permit their cash collateral to be used on it.  *Id.* at 56.

Various lenders made a prepetition loan to the debtors in September 2018.  The debtors have acknowledged that, as of the petition date in these cases, they owed almost $57 million to these lenders (for which Natixis serves as the administrative agent).  Natixis Ex. 1 at 4.  The debtors further acknowledged that the cash they held in their accounts was collateral that secures these prepetition loans.  *Id.* at 5-6.

Because the lenders would be entitled to adequate protection against the diminution of the value of their collateral, including their cash collateral, over the course of the bankruptcy,[7] the debtors and Natixis entered into a series of Court-approved stipulations that permit the debtors to use that cash collateral, but only in accordance with agreed budgets.  Natixis Exs. 1-14, 16-18.  Accordingly, to the extent the lenders decided that their cash collateral could not be used to pay for the wastewater expansion project, that meant that the debtors could not, absent some relief from the Court, use their funds to pay for it.

In his testimony, Cyphers, the debtors' chief operating officer, explained that he understood the consequences of the lenders' decision for the wastewater expansion project, explaining that in "early summer 2020 we had lost the use of cash collateral"

---

[7] *See generally* 11 U.S.C. § 362(c)(2); Fed. R. Bankr. P. 4001(b).

to fund the work on the pipeline project. Tr. at 56.[8] The debtors, however, apparently wanted the project to continue, notwithstanding the lenders' decision.  The record indicates that Mark Siffin, the debtors' chief executive officer, instructed Cyphers to have the work continue, and to tell Gray Surface that Siffin would pay the bill through a non-debtor affiliated company of which Siffin was the sole owner.  As Cyphers testified, "I essentially acted as the middleman, for … lack of a better term. Mr. Mark Siffin, the sole owner of [MDC Acquisition, LLC (or MDCA)], agreed to take on the obligation to pay Gray Surface Specialties for the [wastewater] expansion project.  And I, then, communicated that to Mr. Ellis."  Tr. at 66.  As Cyphers explained the issue in his testimony: "Mr. Gray and I, in our discussions, agreed that the work would continue; however, a non-debtor entity would be remitting payment for that work." *Id.* at 57.

Cyphers testified that he had "[t]wo to three conversations" with Gray in the period between June 2020 and October 2020.  *Id.* at 55.  Cyphers testified that he spoke to Gray in the summer of 2020 and told him that the debtors had lost the use of cash collateral to fund the project, and that a non-debtor entity owned by Siffin would pay for the work.  *Id.* at 55. Cyphers testified that he was not certain whether, in his conversation in the summer of 2020, he identified MDCA as the non-debtor entity that would pay.  "It appears that there certainly was some confusion as to what

---

[8] A separate dispute arose with Baker Botts LLP, a law firm that had done regulatory work for the debtors relating to the wastewater disposal project, regarding its administrative claim against the estate for payment on that work.  A tentative resolution of that dispute is reflected in a stipulation approved by the Court in October 2020.  *See* D.I. 1651.

should appear on the invoices and where those should be directed." *Id.* at 57. Accordingly, Cyphers testified that he met with Gray again in October 2020 and told him that certain invoices that were issued to debtor entities should be reissued to MDCA, instead. *Id.* Cyphers recognized in his testimony that Gray is not a bankruptcy lawyer and made clear that he did not know what Gray understood about the terms of this arrangement.

> Q: [Gray] may not fully appreciate the bankruptcy legal issues that you are identifying in that conversation. Would you say that is a fair assessment as well?
>
> A: He may or may not. It's hard for me to speak on behalf of Mr. Gray as to his understanding.

*Id.* at 56.

Gray's testimony makes no mention of any meeting or discussion in early summer of 2020. Rather, his testimony suggests that the first time he became aware of the issue was in a meeting with Cyphers (and another employee of the debtors, Larrez Green, who was working on the wastewater disposal expansion project) that took place in October 2020. *Id.* at 46. Gray testified that he was "in a meeting with Mr. Larrez Green and Paul Cyphers came in and told me that in order for payment to be expedited for my services that I needed to go back and change all of my invoices that I had charged to MDC Texas Energy to MDC Acquisition, LLC." *Id.* at 45.

In response to another question on direct examination, Gray reiterated his understanding that the reason for invoicing MDCA was to expedite payment: "It is my understanding that in order to expedite payment that I needed to change it to

MDC Acquisitions, LLC." *Id.* at 46. Gray also repeated that understanding on cross-examination:

> Q:    You referenced earlier testimony in meeting with Mr. Green and Mr. Cyphers where they ask you to reissue invoices to MDCA, is that correct?
>
> A:    That is correct.
>
> Q:    Did either Mr. Cyphers or Mr. Green tell you why they were making that request?
>
> A:    They told me in order to expedite my payment that I needed to reissue my invoices to MDCA.
>
> Q:    Did they give you any further explanation as to [how] reissuing those invoices would expedite things?
>
> A:    They did not.

*Id.* at 52-53.

MDCA did not, in fact, pay those invoices. Gray Surface then filed the instant motion to allow an administrative claim for the value of the services provided (as set forth in its invoices). The central dispute before the Court is whether Gray agreed, during the conversations cited above, that Gray Surface would accept payment from MDCA in lieu of payment from the debtors' estates.

## 2.    The Court's findings

The Court finds both Cyphers and Gray to be credible witnesses. Based on the witness testimony, the Court finds that Cyphers told Gray in June 2020 that the debtors were unable to use cash collateral to pay for the wastewater disposal expansion project, and that a non-debtor entity would pay the bill for Gray Surface's work. The Court further finds that terms like "non-debtor entity" and "cash collateral" would not have been meaningful to Gray, who, while quite expert in the

oil and gas industry based on 50-years' experience working in the field, is a layperson unfamiliar with much of the vocabulary of bankruptcy and corporate finance. Accordingly, the June 2020 conversation left no mark on Gray's memory. The Court further finds that when Cyphers explained, in October 2020, that Gray should reissue his invoices to MDCA, Gray understood only that doing so would expedite the payment of his bills, and nothing further. There is no evidence in the record of a "meeting of the minds" to excuse the debtors of their payment obligations, substituting MDCA as the only party with the legal responsibility for Gray Surface's work.

The Court further finds that the debtor entities (rather than MDCA) were the beneficiaries of the work performed by Gray Surface. Cyphers testified that, in retaining Gray Surface, the "intent was one of two things." Tr. at 58. First, the work might "benefit the debtor directly through the effectuation of the development of this project and, therefore, benefit the debtor and the estate by increasing the revenues coming in monthly." *Id.* Alternatively, "if that development was not effectuated during the course of the bankruptcy, [the work would] ultimately benefit the emerged business." *Id.* In response to the question whether the value of the work might be reflected in the purchase price the debtor would obtain in connection with a sale of its business, Cyphers testified that he "certainly would hope in that circumstance that a project of that scale with the amount of revenue upside associated with it[,] I was hopeful that would help in increasing … value across the board." *Id.* He added, however, that he was "unsure as to relative to timing and relative to the psychology

of the market in 2020 whether or not the debtor would receive direct incremental value or [a] higher bid, to put it bluntly, [as] a result of that work." *Id.* The Court thus makes no finding that the work on the wastewater project *actually* increased profits or enhanced the value of the debtor's business; only that the debtor commissioned the work in the reasonable expectation that it would.

### 3.    Procedural posture

Because neither the debtors nor MDCA made payment on the invoices in question, which total $216,029.19, Gray Surface filed this motion for an allowed administrative claim, under 11 U.S.C. § 503(b), in that amount, and for an order directing the immediate payment of that claim.

## Jurisdiction

The motion seeks relief under Section 503(b) of the Bankruptcy Code. Accordingly, this matter is one "arising under" the Bankruptcy Code, and within the grant of the district court's subject-matter jurisdiction contained in 28 U.S.C. § 1334(b). As a matter "arising under" the Bankruptcy Code, this proceeding is a core matter within the meaning of 28 U.S.C. § 157(b). The U.S. District Court for the District of Delaware has referred all of its jurisdiction under section 1334(b) of title 28 (including proceeding that "arise under title 11") to the bankruptcy judges for this district. *See District Court's Amended Standing Order of Reference*, dated Feb. 29, 2012.

## Analysis

## I.    Gray is entitled to an allowed administrative expense.

Section 503(b)(1)(A) of the Bankruptcy Code provides that "there shall be allowed administrative expenses" for "the actual, necessary costs and expenses of preserving the estate."    11 U.S.C. § 503(b)(1)(A).    Administrative claims (as "administrative expenses" are often colloquially described, including in this Memorandum Opinion) enjoy priority treatment in bankruptcy.  11 U.S.C. § 507(a)(2). A chapter 11 debtor cannot emerge from bankruptcy without paying the holders of allowed administrative claims in full on the effective date of the plan or obtaining their consent to different treatment.  11 U.S.C. § 1129(a)(9).

To be entitled to an administrative claim under Section 503(b)(1)(A), the claimant must show that "(1) there was a post-petition transaction between the claimant and the estate and (2) those expenses yielded a benefit to the estate." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (internal quotations and citations omitted).

There is no dispute that Gray Surface provided the services for which it seeks an administrative claim.  Nor do the parties challenge the amounts set out in the invoices.    Rather, the dispute between the parties on the allowance of an administrative expense boils down to two principal contentions: (i) whether the "benefit to the estate" for the services provided on the wastewater disposal project was too speculative to warrant administrative claim treatment; and (ii) whether, in light of the discussions between Gray and Cyphers about MDCA taking on the

obligation to pay Gray Surface's invoices, the debtors remain legally obligated to pay for those services.

### A. The benefit to the estate was not too speculative to warrant administrative claim treatment.

The caselaw addressing the requirement of a "benefit to the estate"—which is a judicial gloss on the statutory language providing that the expenses be "actual" and "necessary [for] preserving the estate," 11 U.S.C. § 503(b)(1)(A)—reflects two themes.

*First*, the caselaw emphasizes that a creditor must "carry the heavy burden" of showing that the claim is entitled to administrative expense treatment.[9]  The cases further explain that by "limiting priority to those claims that are actual and necessary" section 503(b)(1)(A) "prevents the estate from being consumed by administrative expenses, and preserves the estate for the benefit of the creditors."[10]

*Second*, the caselaw recognizes that it is necessary to give administrative claim status to post-petition creditors, in order to encourage them to continue to do business with the debtor.  "Absent the priority established under § 503, a debtor in possession could not keep its employees, nor obtain services necessary to its operation as it attempts to reorganize, or wind-down pending ultimate liquidation."[11]

---

[9] *In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 818 (3d Cir. 2010).  *See also Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532–533 (3d Cir. 1999) (citing *Cramer v. Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)).

[10] *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 315 (3d Cir. 2011).  *See also In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006).

[11] *Pennsylvania Department of Environmental Resources v. Tristate Clinical Laboratories*, 178 F.3d 685, 690 (3d Cir. 1999).

The debtors do not dispute that the invoices submitted by Gray Surface accurately reflected the value of the services performed. Nonetheless, they argue (D.I. 2167 at ¶ 13) that, to carry its "heavy burden" of qualifying for administrative expense status, Gray Surface needs to prove that the bankruptcy estates obtained "increases in profit, revenue or competitive position" because of the work Gray Surface performed. Natixis makes the same argument.[12]

The Court rejects this argument. Fairly read, and notwithstanding the language about a creditor's "heavy burden" to show a "benefit to the estate," the caselaw does not support the proposition that a non-insider third party that provides goods or services to a debtor-in-possession on ordinary commercial terms must prove that receipt of those goods or services led directly to increased profits. None of the cases cited by the parties so holds.

The record shows that the debtors retained Gray Surface to provide services related to the wastewater disposal expansion project because they believed that the project would generate incremental revenue or enhance the value of their businesses. That is all that is required. An ordinary commercial vendor that provides post-petition goods or services to a debtor-in-possession at standard commercial rates and under standard commercial terms does not become a guarantor of the success of the venture for which the debtor obtained those goods and services. If the law were otherwise, ordinary commercial vendors would be required to charge debtors-in-

---

[12] *See* Administrative Agent's Objection to Gray Surface's Motion (D.I. 2161) at ¶ 13 ("The Motion does not tie the Consulting Services to any estimated increase in revenue or even attempt to estimate a dollar-value gain to the estates.")

possession higher rates, to compensate for the risk that their goods or services might be deployed in projects that were ultimately unsuccessful. That result would thwart, rather than advance, Congress' objective to facilitate the reorganization of troubled businesses.[13]

It is certainly true that an administrative claimant must be held to its evidentiary burden of demonstrating its entitlement to payment on its claim.[14] And it is obviously sensible for a bankruptcy court, as Judge Walrath did in *Bernard Technologies*, to take a hard look at the benefit provided to a bankruptcy estate by an insider who seeks to be compensated on a post-petition basis at a rate that is multiples of what that insider was paid before the bankruptcy.[15] But if, in an arms'-length transaction with a third party, the debtor-in-possession "enters into a contract or lease after entry of the order for relief and subsequently breaches the contract or lease, the other party will have a claim for damages."[16] Those damages "will be determined under the contract or lease, and the full amount of the damages arising from the [debtor-in-possession's] breach will constitute an administrative expense." *Id.*[17]

---

[13] *See generally Pennsylvania Department of Environmental Resources*, 178 F.3d at 690 (quoting the 1973 Report of the Commission on the Bankruptcy Laws of the United States for the proposition that those who provide services to trustees or debtors-in-possession "must be paid first to assure the availability of the services needed to administer a liquidation or reorganization case").

[14] *See In re NE Opco, Inc.*, 501 B.R. 233, 241 (Bankr. D. Del. 2013).

[15] *In re Bernard Technologies*, 342 B.R. at 179.

[16] 4 *Collier on Bankruptcy* ¶ 503.06[6][a] (16th ed. 2021).

[17] Natixis suggests in a footnote that Gray Surface may be ineligible for compensation on the ground that it may be a "professional" that is subject to the requirements of section 327(a) of the Bankruptcy Code. *See* Administrative Agent's Objection to Gray Surface's Motion (D.I.

**B.    The record does not show that Gray Surface relinquished its right to payment by the debtors' estates.**

The debtors and Natixis also contend that Gray Surface voluntarily relinquished its contractual right to payment by the debtors and agreed to accept payment from MDCA instead.  The record before the Court does not support that argument.

Under ordinary principles of contract law, Gray Surface's provision of services to and for the benefit of the debtors, at their request, gave rise to a legally enforceable obligation to pay for those services.  The claim the debtors and Natixis are now making, to use the language of the *Restatement (Second) of Contracts*, is one of delegation of contractual duties.  But once a party has a contractual obligation, it is that party's burden to establish that there was a meeting of the minds between the contractual parties to permit the contractual obligee to delegate its contractual duties to a third party.  On the record before this Court, the debtors and Natixis have failed to carry that burden.

As described above, the record evidence before the Court establishes that the debtors requested Gray Surface's services in connection with the wastewater disposal expansion project.  Gray Surface performed the requested services and submitted

---

2161) at ¶ 17 n.10.  There is no suggestion that Gray Surface is an "accountant[], attorney[], appraiser[], or auctioneer[]," 11 U.S.C. § 327(a).  Nor is Gray Surface an "other professional person[]" within the meaning of section 327(a).  *See In re Brookstone Holdings Corp.*, 592 B.R. 27, 29 (Bankr. D. Del. 2018) (a firm is not an "other professional person" within the meaning of section 327(a) unless it provides services that are "central to the development and implementation of the Debtor's reorganization").  Accordingly, Gray Surface was not required to have been retained under section 327(a) in order to seek the allowance of an administrative claim under section 503(b).

invoices for the services provided.  Other than pointing to an alleged subsequent agreement by Gray Surface to look to MDCA for payment, the debtors take no issue with the invoices, but have refused to pay them.  That is sufficient (subject to the question of which party is responsible, which is discussed below) to establish an ordinary case of breach of contract claim under Texas law.[18]

In essence, the debtors and Natixis contend that the debtors delegated their contractual duties to MDCA, such that they are no longer contractually obligated to satisfy Gray Surface's claim.  Such a delegation, however, would not bind Gray Surface *unless Gray Surface agreed to it*.  The record before the Court does not demonstrate Gray Surface's agreement to relinquish its claim against the debtors and to accept payment from MDCA instead.

The Texas Supreme Court explained that "a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract."[19]  As the Texas Supreme Court observed in *Seagull Energy*, that principle is set forth in the *Restatement (Second) of Contracts*, section 318(3) of which states "[u]nless the obligee agrees otherwise, neither

---

[18] *See Parker Drilling Company v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Ct. App. Tex. 2010) ("To recover for breach of contract, a plaintiff must show (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of defendant's breach.").  The Court presumes, in the absence of a contrary suggestion by any party, that applicable choice-of-law rules would point to Texas law as providing the law of decision governing the merits of Gray Surface's claim against the debtors.  But because the controlling principles are commonplace principles of contract law, it is not necessary to resolve any choice-of-law issue.  *See generally In re Teleglobe Communications Corp.*, 493 F.3d 345, 358 (3d Cir. 2007).

[19] *Seagull Energy E&P v. Eland Energy Inc.*, 207 S.W.3d 342, 347 (Tex. 2006).

delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor." Comment *d* to that section of the Restatement adds that an "obligor is discharged by the substitution of a new obligor only if the contract so provides or if the obligee makes a binding manifestation of assent, forming a novation."[20]   Novation requires an agreement by the parties to form a new contract.[21]  It is "an affirmative defense," and therefore "the burden of proof is on the party asserting it."  *Honeycutt v. Billingsley*, 992 S.W.2d 570, 577 (Tex. App. 1999).

The record here contains no evidence that Gray Surface agreed to relieve the debtors of their contractual obligation to pay Gray Surface's invoices.  Rather, the testimony is that Gray understood only that he was asked to submit his invoices to MDCA to expedite payment.  The debtors never sought or obtained a writing showing that Gray knew, understood, or agreed that he was relieving the debtors of their contractual obligations to pay Gray Surface.  Although Cyphers testified that he told Gray that MDCA would "take on the obligation to pay Gray Surface," Tr. at 66, such a statement, in the absence of evidence that Gray understood and agreed to it, is insufficient to establish a novation.  Moreover, although Cyphers further testified that he "believe [that] at some point, Mr. Ellis and Mr. Siffin confirmed that arrangement," *id.*, neither the debtors nor Natixis called Siffin as a witness, and no

---

[20] *Restatement (Second) of Contracts*, § 318, Comment *d*.

[21] *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 155 (Tex. App. 1991).  *See also White v. Harrison*, 390 S.W.3d 666, 674-675 (Tex. App. 2012) (contact modification requires a "meeting of the minds").

evidence was introduced about the substance of any understanding reached between Siffin and Gray.

Based on the evidentiary record, the debtors have not met their burden of showing the existence of an agreement by Gray Surface to relieve the debtors of their obligation to pay for Gray Surface's services. The Court will thus enter an order allowing administrative claims against the applicable debtors for the invoices admitted into evidence that remain unpaid.

## II.   The Court denies, without prejudice, Gray Surface's request for immediate payment.

Gray Surface also moves the Court for an order directing the immediate payment of its allowed administrative claim. Whether to require immediate payment of an allowed administrative expense is a matter left to the discretion of the bankruptcy court.[22]  Courts in this jurisdiction have identified three factors that ought to guide that discretion: (i) the prejudice to the debtors; (ii) the hardship to the claimant; and (iii) potential detriment to other creditors. *Id.*

Upon consideration of the overall circumstances of this case, the Court denies Gray Surface's request to require the debtors to make immediate payment of its allowed administrative claim. That determination is informed by the fact that the debtors represented that they will be filing a plan promptly, Tr. at 6, and have agreed with the administrative agent that they will seek to emerge from bankruptcy by no later than August 31, 2021. Tr. at 105.

---

[22] *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005); *In re Global Home Products, LLC*, 2006 WL 3791955, *4 (Bankr. D. Del. Dec. 21, 2006).

Although the Court concludes that the totality of the circumstances does not support an order directing immediate payment of Gray Surface's invoices, the Court is sensitive to the fact that delayed payment may adversely affect Gray Surface and that other administrative claims have already been paid. Accordingly, the motion is denied without prejudice to Gray Surface's right to renew it if the allowed administrative claim has not been paid in 60 days.

## Conclusion

The Court will grant the motion to allow an administrative claim and will deny, without prejudice, the motion to direct immediate payment. Based on its review of the record, the Court believes that the record supports the entry of an order allowing an administrative claim, against Debtor MDC Energy LLC, in the amount of $171,557.09, and against Debtor MDC Texas Operator LLC, in the amount of $44,472.10. If any party disputes this calculation or allocation, the party should, within 48 hours of the docketing of this Memorandum Opinion, apprise Chambers of that fact, in which case the parties should seek to settle an appropriate order or, if they cannot, ask Chambers to set a status conference. Otherwise, an appropriate order reflecting the conclusions above will be issued.

Dated: June 2, 2021

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE