**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MTE HOLDINGS LLC, *et al.*,[1] | ) ) | Case No. 19-12269 (CTG) |
| Debtors. | ) ) ) ) | Jointly Administered **Re: D.I. 2513** |

**BAKER HUGHES OILFIELD OPERATIONS, LLC, SMITH INTERNATIONAL, INC., AND TRYTON TOOLS USA INC. A/K/A TRYTON TOOL SERVICES' OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING SUPPLEMENTAL DISCLOSURE LETTER, (II) APPROVING SUPPLEMENTAL SOLICITATION MATERIALS AND PROCEDURES FOR DISTRIBUTION TO HOLDERS OF CLASS 4 CLAIMS, (III) FIXING AMENDED VOTING AND PLAN OBJECTION DEADLINES FOR HOLDERS OF CLASS 4 CLAIMS, (IV) RESCHEDULING HEARING AND ESTABLISHING NOTICE PROCEDURES IN RESPECT OF CONFIRMATION OF PLAN, AND (V) GRANTING RELATED RELIEF**

Baker Hughes Oilfield Operations, LLC, Smith International, Inc., and Tryton Tools USA Inc. a/k/a Tryton Tool Services (collectively, the "Parties"), by and through the undersigned counsel, hereby file this Objection (the "Objection") to *Debtors' Motion for Entry of an Order (I) Approving Supplemental Solicitation Materials and Procedures for Distribution to Holders of Class 4 Claims, (III) Fixing Amended Voting and Plan Objection Deadlines for Holders of Class 4 Claims, (IV) Rescheduling Hearing and Establishing Notice Procedures in Respect of Confirmation of Plan, and (V) Granting Related Relief* [D.I. 2513] (the "Motion"). In furtherance of this Objection, the Parties respectfully represent as follows:

**OBJECTION AND RESERVATION OF RIGHTS**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

1. On August 20, 2021, the Debtors filed their Supplemental Disclosure Letter at D.I. 2512-1 (the "SDL") to "supplement the *Second Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Debtors' Joint Plan*…and provide details regarding the change in treatment to Holders of Class 4 Claims reflected in the *Third Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors*." The SDL states that "the Debtors can no longer guarantee that they can fund, in cash, in full, the Senior Secured Trade Claim Cash Consideration amount of $27,000,000, which is to be distributed to Holders of Class 4 Claims upon the occurrence of the Effective Date." *See* Original Plan, Art. I.A. As a result, the Debtors have modified the Original Plan such that the definition of Senior Secured Trade Claim Cash Consideration means an amount ***up to*** $27,000,000." SDL at p. 2 (emphasis in original). The Debtors' Third Amended Joint Chapter 11 Plan of Reorganization, also filed on August 20, 2021 at D.I. 2511-1 (the "Third Amended Plan"), also now defines the "Senior Secured Trade Claim Cash Consideration" as follows:

> up to $27,000,000.00 in Cash, which amount shall constitute the excess of the sum of (a) the MDC Debtors' Cash on hand calculated in accordance with the Asset Purchase Agreement, plus the MDC Debtors' current Receivables calculated in accordance with the Asset Purchase Agreement, less the MDC Debtors' current payables calculated in accordance with the Asset Purchase Agreement, less the MDC Debtors' current payables calculated in accordance with the Asset Purchase Agreement, and (b) the Cash proceeds of the Sale Transaction, less the amount of Cash necessary to (i) fund the Wind-Down Budget, (ii) provide for the MDC RBL Facility Claim Payment, (iii) provide for the MDC Contribution, and (iv) satisfy or fund reserves for Allowed Administrative Expense Claims (including any Allowed Substantial Contribution Claims), Priority Tax Claims, or Other Priority Claims required for emergence from the Chapter 11 Cases and the Consummation of the Plan to the extent Allowed and required to be paid in Cash under the Plan.

Third Amended Plan at p. 24. The revised Senior Secured Trade Claim Cash Consideration (the "SSTC Cash Consideration") for Class 4 under the Third Amended Plan represents the floor

amount that would have been available to Class 4 under the Second Amended Plan, if a subclass of Class 4 rejected the plan. *See* Redline Comparison of Third Amended Plan to Second Amended Plan filed at D.I. 2511-2, p. 24.

2. **The proposed SDL fails to provide adequate information to Class 4 creditors regarding the Plan modifications in the Third Amended Plan.** 11 U.S.C. § 1125(b) provides that an "acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." The SDL does not contain adequate information and should not be approved. The Debtors state in the SDL that the current gap in the amount available to fund the Senior Secured Trade Claim Cash Consideration amount of $27 million is $3.2 million, and that the "Debtors are aware of certain potential agreements and sources of funds that can minimize this differential" but that "Debtors are also aware of conditions that might increase it" without more detail. SDL at pp. 2-3. The disclosure is inadequate. Debtors include a purported Financial Statement, but the SDL, including the purported Financial Statement, does not adequately explain the reason for the $3.2 million shortfall or explain why professional fees and/or pre-sale effective date (pre-March 1) operating expenses are higher than budgeted. Nor is there any explanation as to why Class 4 must absorb the shortfall with uncapped exposure. Further, the revised definition of "Senior Secured Trade Claim Cash Consideration" is not narrowly tailored to address the two issues the Debtors have identified as creating a shortfall or funding "gap" of $3.2 million (i.e. pre-March 1 operating expenses and over-budget professional fees). Rather than limit the potential reductions to the previously fixed SSTC Cash Consideration to only specific identified items, the

Debtors have used a definition which results in an uncapped potential reduction to the SSTC Cash Consideration and which may be driven by items wholly unrelated to the currently identified shortfall, such as Allowed Substantial Contribution Claims, a Wind-Down Budget agreed to by the Debtors and MDC RBL Lenders, a Disputed Claim Reserve, and a reserve for Administrative Expense, Priority Tax, and Other Priority Claims.  The SDL fails to provide adequate disclosure regarding potential substantial contribution claims[2] and their potential effect on the plan, the Wind-Down Budget, funding of the liquidating trust, environmental issues etc.  Furthermore, the SDL does not discuss other changes reflected in the Third Amended Plan that are unrelated to the $3.2 million shortfall and modification to the SSTC Cash Consideration, to include revisions to Article IV. C, *Settlements of Consolidated Adversary Proceeding*, Article IX. D. *Release by the Debtors*, or Article XI.A. *Modification and Amendments*.

3. **The modifications regarding Class 4 treatment in the Third Amended Plan are not proposed in good faith**.  A "bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." *In re American Capital Equipment, LLC*, 688 F.3d 145, 154-55 (3d Cir. 2012).  In this case, the proposed modifications regarding treatment of Class 4 render the Third Amended Plan patently unconfirmable for the reasons set forth below.

4. 11 U.S.C. § 1129(a)(3) provides that a court "shall confirm a plan only if all of the following requirements are met…(3) The plan has been proposed in good faith and not by any means forbidden by law."  The proposed modifications regarding treatment of Class 4 are not

---

[2] Parties have been advised that the MTE Administrative Agent (Riverstone) may have received a further extension to file a substantial contribution claim beyond the August 11 extension in the stipulation filed with the Court at D.I. 2413.

proposed in good faith.  The Debtors' change in the Third Amended Plan's definition of "Senior Secured Trade Claim Cash Consideration" to "***up to*** $27,000,000.00" constitutes an illusory promise, as it means that the Senior Secured Trade Claim Cash Consideration, the result of months of negotiations between the parties to the above-captioned bankruptcy case, could now be any amount from $0 to $27 million.  While the Debtors could have provided for a revised fixed SSTC Cash Consideration or narrowly tailored the reductions as discussed above, the Debtors did not, with the result being that Class 4's recovery is entirely speculative under the Debtors' definition of SSTC Cash Consideration in the Third Amended Plan.  An illusory promise will not support confirmation of a plan.  *See In re Harman*, 141 B.R. 878, 880 (Bankr. E.D. Pa. 1992)("We also find that a plan provision which triggers payments only upon the Debtors' sale of a certain property is illusory and must be phrased in mandatory terms to be meaningful.  Therefore, we will deny confirmation of the instant plan.").

5. **The Third Amended Plan is not feasible as proposed**.  11 U.S.C. § 1129(a)(11) provides that a court "shall confirm a plan only if all of the following requirements are met…(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  This is known as the feasibility test, the purpose of which is to "prevent confirmation of visionary schemes which promise creditors and equity holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Biz as Usual, LLC*, 627 B.R. 122, 130 (Bankr. E.D. Pa. 2021).  "Although § 1129(a)(11) does not require a plan's success to be guaranteed, the proposed plan must present a 'realistic and workable framework' with a reasonable likelihood of succeeding on its own, without additional reorganization efforts on the part of the debtor." *Id.*

6.      Debtors, by their own admission, may not be able to fund the Senior Secured Trade Claim Cash Consideration in full, or at all. Debtors appear to contemplate that only holders of Class 4 Claims will absorb the shortfall in cash to fund the Third Amended Plan with no fixed recovery.

7.      Debtors also state that they are "aware of conditions that might increase" the cash shortfall. SDL at p. 3. One such factor that may exacerbate the shortfall is the amount of professional fees and expenses incurred in these cases. Based on the Court's August 10, 2021 Fifth Omnibus Order Granting Interim Allowance of Fees and Expenses for Certain Professionals, interim basis professional fees and expenses have already exceeded $21 million. *See* D.I. 2434-1 at p. 2. Debtors' most recent Monthly Operating Report, filed on August 12, 2021, shows Debtors' professional fees and expenses totaling $33,135,499, which does not include payments to the MDC RBL Lenders' professionals. *See* Monthly Operating Report, D.I. 2447 at p. 3.

8.      The Third Amended Plan states as follows regarding paying professional fees: "If the Professional Fee Reserve Amount is insufficient to pay all Professional Fee Claims Allowed by the Bankruptcy Court against the Sellers, the balance of such Allowed Professional Claims shall be satisfied from the Wind-Down Budget[3], and if the Wind-Down Budget is insufficient to pay the balance, from Excess MDC Distributable Cash, and any unpaid Professional Fee Claims remaining after exhaustion of the foregoing shall be waived by such professionals." Third Amended Plan at Art. II.C.2.

9.      The SDL's statement that "the Debtors can no longer guarantee that they can fund, in cash, in full, the Senior Secured Trade Claim Cash Consideration amount of $27,000,000" and that the deficiency in funds available for the Senior Secured Trade Claim Cash Consideration could

---

[3] Among other uncapped potential reductions, the SSTC Cash Consideration is reduced by the Wind-Down Budget.

further increase, demonstrates that the Third Amended Plan is not feasible and cannot be confirmed under 11 U.S.C. § 1129(a)(11).

## Reservation of Rights

10.    The Parties expressly reserve the right to amend, modify, or supplement this Objection, to introduce evidence at any hearing with respect thereto, and to file additional supplemental objections and pleadings.

## PRAYER

WHEREFORE, Baker Hughes Oilfield Operations, LLC, Smith International, Inc., and Tryton Tools USA Inc. a/k/a Tryton Tool Services respectfully request that the Court fashion any relief in connection with the Motion in a manner consistent with this Objection and grant such further relief as the Court deems just and proper.

Dated: August 24, 2021

Respectfully submitted,

CROSS & SIMON, LLC

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 N. Market Street, Ste. 901
Wilmington, DE  19801
Telephone:  (302) 777-4200
Facsimile:  (302) 777-4224
csimon@crosslaw.com

-and-

SNOW & GREEN LLP

Phil F. Snow (TX Bar No. 18812600)
(*pro hac* granted; Docket No. 274)
Kenneth Green (TX Bar No. 24036677)
(*pro hac* granted, Docket No. 273)
P.O. Box 549
22255 Roberts Cemetery Rd.

Hockley, TX  77447
Telephone:  (713) 335-4802
Facsimile:   (713) 335-4848
phil@snow-green.com
ken@snow-green.com

**ATTORNEYS FOR BAKER HUGHES OILFIELD OPERATIONS, LLC, SMITH INTERNATIONAL, INC., AND TRYTON TOOLS USA INC. A/K/A TRYTON TOOL SERVICES**