**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (CTG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING**
**THE SIXTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**FOR MTE HOLDINGS LLC AND ITS AFFILIATED DEBTORS**

Upon consideration of the *Sixth Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors*, dated September 3, 2021 [Docket No. 2588-1] (the "Plan") attached hereto as Exhibit A (together with all exhibits thereto, and as may be amended, modified, or supplemented pursuant to its terms, the "Plan") jointly proposed by MTE Holdings LLC ("MTE"); MTE Partners LLC ("MTE Partners"); Olam Energy Resources I LLC ("Olam Energy"); MDC Energy LLC d/b/a MDC Texas Energy LLC ("MDC"); MDC Texas Operator LLC ("MDC Texas Operator"); MDC Reeves Energy LLC ("MDC Reeves"); and (g) Ward I, LLC ("Ward I," and collectively with MTE, MTE Partners, Olam Energy, MDC, MDC Texas Energy, and MDC Reeves, the "Debtors"); and this Court having entered the *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Solicitation Materials and Procedures for Distribution Thereof, (IV) Approving Form of Ballots and Establishing Procedures for Voting on Plan, (V) Scheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of Plan, and (VI) Granting Related Relief* [Docket No. 2357] and the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC. (7894); MTE Partners LLC. (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

*Order (I) Approving Supplemental Disclosure Letter, (II) Approving Supplemental Solicitation Materials and Procedures for Distribution to Holders of Class 4 Claims, (III) Fixing Amended Voting and Plan Objection Deadlines for Holders of Class 4 Claims, (IV) Rescheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of Plan, and (V) Granting Related Relief* [Docket No. 2538] (together, the "<u>Disclosure Statement Order</u>"); and the Debtors having filed the *Notice of Filing of Plan Supplement*, together with the exhibits attached thereto [Docket No. 2414], the *Notice of Filing of Additional Plan Supplement Documents*, together with the exhibits attached thereto [Docket No. 2495], the *Notice of Filing of Revised Plan Supplement Document*, together with the exhibits attached thereto [Docket No. 2555] and the *Notice of Filing of Updated Plan Supplement*, together with the documents attached thereto [Docket No. 2568] (collectively, the "<u>Plan Supplement</u>"); and upon the affidavit of service filed reflecting compliance with the notice and solicitation requirements of the Disclosure Statement Order [Docket No. 2388] (the "<u>Notice Affidavit</u>"); and upon the *Notice of (I) Approval of Disclosure Statement, (II) Deadline for Casting Votes to Accept or Reject the Plan, and (III) the Hearing to Consider Confirmation Of The Plan* [Docket No. 2338, Ex. D]; upon the (i) *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Second Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors* dated August 24, 2021 [Docket No. 2527] and the *Supplemental Voting Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Third Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors* dated August 31, 2021 [Docket No. 2556][2] (together, the "<u>Voting Declaration</u>"); (ii) upon the *Declaration of Scott J.*

---

[2]    Docket No. 2556 lists WaterBridge Texas Midstream LLC ("<u>Waterbridge</u>") as a voting creditor in Classes 4D and 4F.  However, in light of the anticipated assumption by the Debtors, assignment to the Buyer, and curing of

*Davido in Support of Confirmation of Fourth Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors* [Docket No. 2560] (the "Davido Declaration"); (iii) upon the *Declaration of Neil A. Augustine in Support of Confirmation of Fourth Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors* [Docket No. 2561] (the "Augustine Declaration"); and (iv) upon the *Debtors' Memorandum of Law in Support of an Order Confirming Fourth Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors* [Docket No. 2562] (the "Confirmation Memorandum"); and the "Post-Emergence Plan Administration Budget" and the "MDC Senior Secured Trade Claimant Recovery Bridge" filed as Exhibits A and B, respectively [Docket No. 2571]; and any objections to the Plan having been resolved and/or overruled by this Court pursuant to this Confirmation Order;[3] and hearings to consider Confirmation having been held on September 2, 2021 and September 3, 2021 (together, the "Confirmation Hearing"); and the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions it contemplates; and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and upon the representations made on the record at the Confirmation Hearing; and this Court having reviewed all documents in connection with confirmation and having heard all parties desiring to be heard;

---

Waterbridge's Executory Contract with the Debtors, to be effected upon the Effective Date and closing of the Sale Transaction with Buyer, and subject to the occurrence of the forgoing, Waterbridge will not share in any Class 4F or Class 4D recoveries under the Plan. In the event that the Plan does not go effective, the Sale Transaction with Buyer does not close, or Waterbridge's Executory Contract is rejected, all rights of Waterbridge as a creditor of the Debtors including the right to receive distributions from the Estates shall be preserved.

[3]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan, Asset Purchase Agreement, and Disclosure Statement.

and upon the record of the above-captioned chapter 11 cases (the "Chapter 11 Cases"); and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[4]

A.    **Findings of Fact and Conclusions of Law.**  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to these proceedings pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Jurisdiction.**  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution, and the Debtors consent to entry of this Confirmation Order under the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and Article III of the United States Constitution.  Venue of these proceedings and the Chapter 11 Cases is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

---

[4]    All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**C.     Chapter 11 Petitions.**  On October 22, 2019, MTE filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code in this Court.  On October 23, 2019, Olam Energy

and MTE Partners filed voluntary petitions for relief under chapter 11 (MTE, Olam Energy and

MTE Partners, collectively, the "MTE Debtors").  On November 8, 2019 (the "Petition Date"), the

remaining Debtors (MDC, MDC Texas Operator, MDC Reeves, and Ward I) filed their chapter 11

petitions.  The Debtors have continued to manage their properties as debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.  No official creditors committee, trustee, or

examiner has been appointed in the Chapter 11 Cases.  The Debtors were and continue to be entities

eligible for relief under section 109 of the Bankruptcy Code.

**D.     Judicial Notice.**  This Court takes judicial notice of and deems admitted into

evidence for purposes of Confirmation the docket in the Chapter 11 Cases maintained by the Clerk

of this Court, including all motions, notices, and other documents filed, all orders entered, and all

evidence and arguments made, proffered or adduced at the hearings held before this Court during

the Chapter 11 Cases, including the Confirmation Hearing.

**E.     Plan Supplement.**  Prior to the Confirmation Hearing, the Debtors filed the Plan

Supplement.  The Plan Supplement complies with the terms of the Plan, and the filing and notice

of the Plan Supplement were appropriate and complied with the requirements of the Bankruptcy

Code and the Bankruptcy Rules, and no other or further notice is or shall be required.  The Debtors

are authorized to amend, supplement, or otherwise modify the Plan Supplement documents

following entry of this Confirmation Order and prior to the Effective Date, in a manner consistent

with the Plan and this Confirmation Order.

**F.     Mailing of Solicitation and Confirmation Materials.**  As is evidenced by the

Voting Declaration and the Notice Affidavit, the transmittal and service of the Plan, the Disclosure

Statement, the ballots, a notice, including: (a) notice of the filing of the Disclosure Statement and Plan; (b) the deadline for the submission of ballots to vote to accept or reject the Plan; (c) the deadline for objecting to confirmation of the Plan and information on how to object to Confirmation of the Plan; (d) the time date and place of the Confirmation Hearing; and (e) information on releases (including subsequent notices, the "Confirmation Hearing Notice"), and the notice of non-voting status were adequate and sufficient under the circumstances, and all parties required to be given notice of the Plan and the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice of the Plan and the Confirmation Hearing is required under the circumstances.

G.      **Voting.**  The procedures by which the ballots for acceptance or rejection of the Plan were distributed and tabulated under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law and the Disclosure Statement Order.

H.      **Bankruptcy Rule 3016(a).**  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the plan proponents.

**Findings with Respect to the Plan**

I.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**J.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))**.  The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Other than Administrative Expense Claims and Priority Tax Claims, which need not be classified, the Plan designates forty-nine (49) Classes of Claims and Interests – one Class against each of the seven Debtors, for each of the seven types of Claims or Interests.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**K.    Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))**.  Article III of the Plan specifies that Classes 1A through 1G (Other Secured Claims against each Debtor, if any) and Classes 2A through 2G (Other Priority Claims against each Debtor, if any) are Unimpaired under the Plan.  Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

**L.    Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))**. Article III of the Plan designates Classes 3A through 3G (MTE Term Loan Claims against each Debtor, if any), Classes 4A through 4G (Senior Secured Trade Claims against each Debtor, if any),[5] Classes 5A through 5G (MDC RBL Facility Claims against each Debtor, if any), Classes 6A through 6G (General Unsecured Claims against each Debtor, if any) and Classes 7A through 7G (Interests) as Impaired, and specifies the treatment of Claims and Interests in such Classes. Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

---

[5]    Classes 4D and 4F voted to accept the Plan and therefore the provisions in the Plan providing for alternate treatment of Holders of Senior Secured Trade Claims are inapplicable, including but not limited to those set forth in Article III.B.4 of the Plan.

**M.      No Discrimination (11 U.S.C. § 1123(a)(4)).**  The Plan provides for the same treatment for each Claim or Interest in each respective Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

**N.      Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**  The Plan and the Litigation Trust Agreements provide adequate and proper means for the Plan's implementation.  Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

**O.      Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**  The Debtors are not corporations, and therefore, section 1123(a)(6) of the Bankruptcy Code does not apply.  Moreover, all existing equity interests in the Debtors will be retained in the Litigation Trusts following the Effective Date.  Therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

**P.      Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).**  Article IV of the Plan provides that as of the Effective Date, the existing board of directors or managers, as applicable, of each of the Debtors shall be dissolved.  Pursuant to the Settlement Stipulation, as of the Effective Date, each Reorganized Debtor shall revert back to member operation, in accordance with its operating agreement, and (1) the MTE Litigation Trustee shall become the sole member of MDC, MTE, MTE Partners, Olam Energy, [and MDC Texas Operator], and (2) the MDC Litigation Trustee shall become the sole member of, MDC Reeves and Ward I.  Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

**Q.      Additional Plan Provisions (11 U.S.C. § 1123(b)).**  The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules and Local Rules.  The failure to specifically

address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

**R.** **Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1)).** Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

**S.** **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject, each of the Debtors' remaining Executory Contracts and Unexpired Leases as provided for in the Plan, the Plan Supplement, and this Confirmation Order, and any such assumptions and rejections are justified and appropriate in the Chapter 11 Cases. The Debtors' exercise of reasonable business judgment in determining whether to assume, assume and assign, or reject, each of the Debtors' remaining Executory Contracts and Unexpired Leases, including the assumption and assignment to Maple Energy Holdings, LLC (the "Buyer," and together with direct or indirect equity owner Riverstone Maple Investor, LLC, the "Buyer Parties") of the Joint Operating Agreements and the other Executory Contracts and Unexpired Leases being assigned to Buyer, is justified and appropriate in the Chapter 11 Cases. The provisions of the Asset Purchase Agreement between certain of the Debtors and Buyer that provide for designation and redesignation of Executory Contracts and Unexpired Leases for assignment and assumption or rejection, both before and after the Effective Date, are justified and appropriate.

**T.** **Releases, Exculpations and Injunctions (11 U.S.C. § 1123(b)).** Under the facts and circumstances of the Chapter 11 Cases, the release, exculpation, injunction, and indemnification provisions in the Plan (the "Release Provisions") are: (1) within the jurisdiction of this Court under 28 U.S.C. § 1334; (2) an appropriate exercise of the Debtors' business

judgment; (3) integral elements of the transactions incorporated into the Plan and inextricably bound with the other provisions of the Plan; (4) in exchange for good and valuable consideration; (5) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests to the extent applicable; (6) fair, equitable, and reasonable; (7) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the ballots (as modified by the Plan and herein), and the notice of non-voting status each unambiguously state that the Plan contains certain release, exculpation, and injunction provisions, and therefore such releases are consensual as they pertain to Holders of Claims and Interests; (8) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code and other applicable law; and (9) a bar to the assertion of any claim released pursuant to the Release Provisions as and to the extent provided for in the Plan and this Confirmation Order.

U.    Notwithstanding anything to the contrary in Article IX of the Plan, the Release Provisions set forth therein do not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any Plan Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Non-Released Claims and Causes of Action against any Person or Entity; or (3) Litigation Claims (a) against (i) Non-Released Parties, (ii) Holders of Senior Secured Trade Claims that vote to reject the Plan, or (iii) any Preference Defendant that does not affirmatively vote to accept the Plan, regardless of whether its Class votes overall to accept the Plan, or (b) that are Excess Claims.  For the avoidance of doubt, nothing in the Plan, the Plan Supplement, or this Confirmation Order shall preclude the Plan Administrator, Litigation Trustees, or other successors of the Debtors, and their Estates, from

seeking or obtaining any recovery from the D&O Liability Insurance Policies or other available insurance, subject to the provisions of any such insurance policies and applicable law.

V.    **Cure of Defaults (11 U.S.C. § 1123(d)).**  Article VI.C of the Plan provides for the satisfaction of Cure Claims associated with Executory Contracts and Unexpired Leases to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash, subject to the limitations and requirements described in Article VI.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  To that end, the Debtors shall assume the Assigned Contracts and Joint Operating Agreements under the Asset Purchase Agreement and assign them to the Buyer, in accordance with the Asset Purchase Agreement and as identified on Schedule 2.04(b) to the Asset Purchase Agreement.  No Cure Cost or other consideration shall be due on account of such assumption and assignment of the Joint Operating Agreements (besides the amounts contributed to the Luxe Settlement Fund in connection with the assumption and assignment to Buyer of the Non-Op Joint Operating Agreements).  Any disputed cure amounts will be determined in accordance with the procedures and subject to the provisions set forth in Article VI.C of the Plan, and applicable bankruptcy and non-bankruptcy law.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

W.    **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**  Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable

provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplement, and all other matters considered by this Court in connection with the Chapter 11 Cases.

  **X.** The Debtors and their agents solicited votes to accept or reject the Plan after this Court approved the adequacy of the Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

  **Y.** The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article IX.F of the Plan.

  **Z.** **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).** The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Plan is the result of extensive arm's-length negotiations among the Debtors, the Buyer, the MTE Administrative Agent and the MTE Term Lenders, the Holders of Senior Secured Trade Claims, the MDC RBL Lenders, Luxe Energy, and other stakeholders and

is supported by the Debtors' requisite creditors and other parties in interest in the Chapter 11 Cases. The Plan promotes the objectives and purposes of the Bankruptcy Code.

**AA.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**  The procedures set forth in the Plan for this Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**BB.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  Because the Plan provides for the sale of substantially all the Debtors' assets and dissolution of the Debtors' existing boards of directors or managers, as applicable, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Litigation Trusts, the Debtors have satisfied the requirements of this provision by, among other things, disclosures that have been provided by the Litigation Trusts in this Confirmation Order *infra*, with any further disclosures to be provided prior to the Effective Date.

**CC.    No Rate Changes (11 U.S.C. § 1129(a)(6)).**  The Plan does not provide for any rate change that requires regulatory approval.  Section 1129(a)(6) of the Bankruptcy Code is thus inapplicable.

**DD.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**  The "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

**EE.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Classes 1A through 1G (Other Secured Claims against each Debtor, if any) and Classes 2A through 2G (Other Priority Claims against each Debtor, if any) are left unimpaired under the Plan, and Classes 3A through 3G (MTE Term Loan Claims against each Debtor, if any), Classes 4A through 4G (Senior Secured Trade Claims against each Debtor, if any), Classes 5A through 5G (MDC RBL Facility Claims against each Debtor, if any) and Classes 6D through 6G (General Unsecured Claims against the MDC Debtors and MDC Texas Operator)  have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes.  Classes 6A through 6C (General Unsecured Claims against the MTE Debtors, if any) and Classes 7A through 7G (Interests in each Debtor) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied with respect to Classes 6A through 6C (General Unsecured Claims against the MTE Debtors, if any) and Classes 7A through 7G (Interests in each Debtor).  The Plan, however, is still confirmable with respect to such Classes because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

**FF.      Treatment of Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, and Other Priority Claims pursuant to Articles II and III of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

**GG.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** Classes 3A through 3G (MTE Term Loan Claims against each Debtor, if any), Classes 4A through 4G (Senior Secured Trade Claims against each Debtor, if any), Classes 5A through 5G (MDC RBL Facility Claims

against each Debtor, if any), and Classes 6D through 6G (General Unsecured Claims against the MDC Debtors and MDC Texas Operator) are Impaired Classes of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider.  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

**HH.**   **Feasibility (11 U.S.C. § 1129(a)(11)).**  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing:  (1) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (2) has not been controverted by other persuasive evidence; (3) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; and (d) establishes that the Debtors, Reorganized Debtors, and Litigation Trustees, as applicable, will have sufficient funds available to meet their obligations under the Plan.

**II.**   **Payment of Fees (11 U.S.C. § 1129(a)(12)).**  Article II.D of the Plan provides that all fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to the Plan, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

**JJ.**   **Retiree Benefits (11 U.S.C. § 1129(a)(13)).**  The Debtors have no retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code.  Section 1129(a)(13) of the Bankruptcy Code is thus inapplicable.

**KK.**   **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(14)-(16)).**  Sections 1129(a)(14)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors (1) have no domestic support obligations (section 1129(a)(14)), (2) are not individuals (section 1129(a)(15)), and (3) are not nonprofit entities (section 1129(a)(16)).

**LL.**   **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).**  The classification and treatment of Claims in Classes 6A through 6C (General

Unsecured Claims against the MTE Debtors, if any), and Interests in Classes 7A through 7G (Interests in each Debtor), which are deemed to have rejected the Plan, is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy Code. There is no Class of Claims or Interests junior to the Holders of Claims in Classes 6A through 6C, or Interests in Classes 7A through 7G, that will receive or retain property under the Plan on account of their Claims or Interests. Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class that is deemed to have rejected the Plan or that has rejected the Plan. Thus, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 6A through 6C and 7A through 7G.

**MM.** **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

**NN.** **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to Confirmation on any such grounds. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

**OO.** **No Conflict.** The Honorable Judge Steven A. Felsenthal, who serves as both the Mediator and the Trade Claim Distribution Agents, is not conflicted by virtue of serving such dual functions.

**Findings with Respect to the Sale Transaction**

**PP.** **Good Faith; No Collusion.** The Asset Purchase Agreement was proposed, negotiated by the Debtors party thereto and the Buyer without collusion, in good faith, and from

arm's-length bargaining positions.  The Buyer Parties are not "insiders" or "affiliates" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the (a) Debtors and (b) the Buyer Parties.  The Buyer recognized that the Debtors were free to deal with any other party interested in acquiring substantially all of the Debtors' Assets, as described Article V.S – U of the Disclosure Statement.  Neither the Debtors nor the Buyer nor any other party in interest engaged in any conduct that would cause or permit the Asset Purchase Agreement, any documents related thereto, or the consummation of the Sale Transaction to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable law.  The Buyer is purchasing and taking assignment of the Assets in good faith.  As a result of the foregoing, the Buyer is entitled to the protections of section 363(m) of the Bankruptcy Code.  The Bidding Procedures Order (as defined in the Disclosure Statement) and other circumstances of these Chapter 11 Cases offered a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer.  No other person or entity or group of entities has offered to purchase the Assets for greater overall value to the Debtors' Estates than the Buyer.  The Asset Purchase Agreement constitutes the highest and best offer, and will provide a greater recovery for the Debtors' Estates than would be provided by any other available alternative.

**QQ.    Authority.**  The Debtors have: (i) full power and authority to execute and assume the Asset Purchase Agreement and all other documents contemplated thereby and (ii) all of the power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, in each case consistent with the Plan.  No consents or approvals, other than those already obtained or expressly provided for in the Asset Purchase Agreement or this Confirmation

Order, are required for the Debtors to consummate the Sale Transaction and perform its obligations under the Asset Purchase Agreement.

**RR.    Title to Purchased Assets.**  The Assets sought to be transferred and/or assigned, as applicable, by the Debtors to the Buyer pursuant to the Asset Purchase Agreement are property of the Debtors' Estates and good title thereto is presently vested in the Debtors' Estates within the meaning of section 541(a) of the Bankruptcy Code.  Except as provided in the Asset Purchase Agreement, the Debtors are the sole and rightful owners of the Assets with all rights, title and interests to the Assets, and no other person has any ownership right, title, or interest therein other than any security interests therein which secure the Debtors' obligations to the Holders of Senior Secured Trade Claims and the MDC RBL Lenders, as applicable, all of which are being fully released without further action upon the closing of the Sale Transaction.

**SS.    Adequate Marketing; Highest or Best Offer.**  The Debtors' marketing process with respect to the Sale Transaction afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer.  The Debtors' marketing process allowed the Debtors to consider actionable proposals, if any, from third-parties for transactions that would provide consideration to the Debtors' Estates in an amount that exceeds the Purchase Price (as defined in the Asset Purchase Agreement) plus the value of any other consideration provided by the Buyer to the Debtors pursuant to the Asset Purchase Agreement and the Plan.  The Debtors considered such proposals pursuant to certain procedures as provided for in the Bidding Procedures Order, up through March 5, 2021, the Auction date.  Moreover, the procedures provided, among other things, that in evaluating whether any third-party bids qualify as a Qualified Bid (as defined in the Bidding Procedures Order), the Debtors may consider several factors including, but not limited to, (i) the amount and form of consideration of the purchase price, (ii) the assets included

in or excluded from the bid, (iii) the value to be provided to the Debtors and their Estates, (iv) the transaction structure and execution risk, and (v) the impact on all key stakeholders.  As more fully described in the Disclosure Statement Article V.S – U, the Debtors were only able to qualify the Qualified Bids in the days prior to the Auction and no other person or entity or group of entities has offered to purchase the Assets for greater overall value to the Debtors' Estates than the Buyer. The Asset Purchase Agreement constitutes the highest and best offer, and will provide a greater recovery for the Debtors' Estates than would be provided by any other available alternative.  The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer constitutes a valid and sound exercise of the Debtors' business judgment.  Approval of the Sale Transaction and the consummation of the Sale Transaction is in the best interests of the Debtors' Estates, their creditors, and other parties in interest.  The consideration provided by the Buyer pursuant to the Asset Purchase Agreement (a) is fair and reasonable, (b) is the highest or best offer for the Assets, and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

**TT.**   **Reorganized Debtors, Buyer and Litigation Trusts Not Successors.**  Upon the Sale Transaction Closing, none of the Reorganized Debtors, the Buyer, or the Litigation Trusts will be deemed to: (a) be the successor of (other than for purposes of section 1145 of the Bankruptcy Code), or related person, successor in interest or successor employer (as described under any applicable law) to any Debtor, any estate, or any of the Debtors' affiliates, predecessors, successors or assigns (except, with respect to Buyer, as provided in the Asset Purchase

Agreement); (b) have, *de facto* or otherwise, merged into any Debtor or any estate, or any of the Debtors' affiliates, predecessors, successors or assigns or the enterprise(s) of any Debtor, any estate, or any of the Debtors' affiliates, predecessors, successors or assigns; and (d) other than as expressly set forth in the Asset Purchase Agreement (with respect only to the Assumed Obligations as defined therein) or Plan, be liable for any acts or omissions of any Debtor, any estate, or any of the Debtors' affiliates, predecessors, successors or assigns, in the current or former conduct of the business of the Debtors relating to the Assets or arising under or related to the Assets.  None of the Reorganized Debtors, Buyer or Litigation Trusts are an alter ego of any Debtor, any estate or any of the Debtors' affiliates, predecessors, successors or assigns, or are holding themselves out to the public as a successor to or a continuation of any Debtor, any estate or any of the Debtors' affiliates, predecessors, successors or assigns.

UU.    **Necessity of Order.**  The Buyer has agreed to the Sale Transaction in material reliance on and with fair consideration provided for the Assets being transferred to Buyer free and clear of all Claims, liens, encumbrances, or other interests of any kind or nature whatsoever arising at any time prior to the closing of the Sale Transaction, except as expressly provided under the Asset Purchase Agreement, the Plan, or this Confirmation Order, and would not agree to the Asset Purchase Agreement or the Sale Transaction without all of the relief provided for in this Confirmation Order and all such terms and the findings herein.

VV.    **Satisfaction of Sections 363(f) and 1141(c).**  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell assets and property pursuant to the Asset Purchase Agreement free and clear of any Claims, liens, encumbrances, or other interests of any kind or nature whatsoever other than as expressly provided under the Asset Purchase Agreement, the Plan, or this Confirmation Order.  In addition to and without limiting the

foregoing, the proposed Sale Transaction is to be consummated under the Plan, and the Assets to be sold pursuant to the Sale Transaction are dealt with by the Plan and this Confirmation Order; therefore, except as expressly provided under the Asset Purchase Agreement, the Plan, or this Confirmation Order, the Debtors may sell (and hereby is selling) assets and property pursuant to the Asset Purchase Agreement free and clear of any Claims, liens, encumbrances, or other interests of any kind or nature whatsoever pursuant to section 1141(c) of the Bankruptcy Code.

**WW. Free and Clear.** The Debtors may sell the Assets free and clear of all liens, Claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), encumbrances, interests, rights, liabilities, mortgages, deeds of trust, pledges, charges, security interests, of whatever kind or nature, rights of first refusal, rights of offset or recoupment, royalties, conditional sales or title retention agreements, hypothecations, preferences, debts, easements, suits, licenses, options, rights of recovery, judgments, orders and decrees of any court or foreign domestic governmental entity, taxes (including foreign, state and local taxes), covenants, restrictions, indentures, instruments, leases, options, off-sets, recoupments, Claims for reimbursement or subrogation, contribution, indemnity or exoneration, encumbrances and other Claims and interests of any kind or nature whatsoever other than as expressly provided under the Asset Purchase Agreement, the Plan, or this Confirmation Order because, in each case, one or more of the standards set forth in sections 363(f)(l)–(5), 1129(b)(2)(A)(ii), 1141(a), or 1141(c) of the Bankruptcy Code has been satisfied. All holders of such Claims, liens, encumbrances, or other interests against the Debtors, their Estates, or any of the assets subject to the Sale Transaction (a) who did not object, or who withdrew their objections, to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and (b) are bound by this Confirmation Order or the Plan pursuant to section 1141(a) of the Bankruptcy Code. All holders

of such Claims, liens, encumbrances, or other interests (whether or not particularly described in the preceding sentence) are adequately protected by having their Claims, liens, encumbrances, or other interests, if any, in each instance against the Debtors, their Estates, or any of the Assets subject to the Sale Transaction, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Assets in which such creditor alleges a claim, lien, encumbrance, or other interest, in the same order of priority, with the same validity, force, and effect that such Claim, lien, encumbrance, or other interest had prior to consummation of the Sale Transaction, subject to any Claims and defenses the Debtors and their Estates may possess with respect thereto, and with such Claims, liens, encumbrances, or other interests being treated in accordance with the Plan.

XX.    **Modifications.**  Following execution, including following the Effective Date, the Asset Purchase Agreement and related agreements, documents or other instruments executed in connection therewith, may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided, that any such modification, amendment or supplement does not materially change the economic substance of the Sale Transaction, the Plan or this Confirmation Order.  To the extent any modifications or amendments to the Plan directly impact the Senior Secured Trade Recovery Amount or the consideration to creditors benefitting from the Luxe Settlement, such modifications or amendments shall also be subject to the reasonable consent of a Majority of the members of the Senior Secured Trade Claim Negotiating Committee or the Luxe Claimants Negotiating Committee, as applicable.  For the avoidance of doubt, any modifications that affect (a) the Senior Secured Trade Recovery Amount or (b) the consideration to creditors benefitting from the Luxe Settlement, are material in nature.

## **Other Findings**

**YY.    Not a Small Business Case (11 U.S.C. § 1129(e)).**  The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**ZZ.    Satisfaction of Confirmation Requirements.**  Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**AAA.  Good Faith Solicitation (11 U.S.C. § 1125(e)).**  The Debtors and their officers, directors, employees, advisors, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Release Provisions to the extent set forth in Article IX of the Plan and in this Confirmation Order.

**BBB.  Retention of Jurisdiction.**  This Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and/or section 1142 of the Bankruptcy Code.

**Based upon the foregoing findings and determinations, and upon the record made before this Court at the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

## Confirmation of the Plan

1.    The Plan, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code.  Any objections to the Plan not otherwise withdrawn, resolved, or otherwise disposed of are overruled and denied.

2.      No party shall take any action to interfere with the effectuation of this Confirmation Order (other than through assertion of their appellate rights, their rights under the Plan or this Confirmation Order or their rights under the Cash Collateral Orders) including, but not limited to, the implementation of the Plan.

## Compromises and Settlements Under the Plan

3.      Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan are approved in all respects, and constitute good faith compromises and settlements, including without limitation the Luxe Settlement and the Consolidated Adversary Proceeding Settlement.

4.      Notwithstanding anything to the contrary in the Plan or in this Confirmation Order, any and all unpaid post-petition royalty amounts that are owed to (or may be owed to) Luxe Royalties LLC (up to $89,579.00 for production through and including April 30, 2021) are preserved and not released, and such amounts shall either be resolved (and, if owed, then paid) in the ordinary course to the satisfaction of the Debtors or Reorganized Debtors, as applicable, and Luxe Royalties LLC, or such amounts shall be determined by the Court post-Effective Date (and, if owed, then paid).

## Classification and Treatment

5.      The Plan's classification scheme is approved.  The classifications set forth on the ballots (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any Holder (except for Holders of Senior Secured Trade Claims in Classes 4D and 4F) as representing the actual classification of such Claim under the Plan for distribution purposes,

and (d) shall not be binding on the Debtors, the Plan Administrator or the Litigation Trustees except for Plan voting purposes.

6.    The Court's *Order Granting Debtors' Tenth Omnibus (Substantive Objection to Claims – (I) Reclassify Royalty Claims and (II) Reduce and Reclassify Royalty Claims*, dated August 25, 2021 [Docket No. 2535] shall be final, binding, non-appealable, and in full force and effect and not subject to a stay pending appeal upon the passage of fourteen (14) days following entry of the order.

## Authorization to Implement the Plan

7.    The Debtors, Plan Administrator, Trade Claim Distribution Agents, Litigation Trust Boards, and Litigation Trustees, as applicable, are authorized to take or cause to be taken all corporate and other entity actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into, or otherwise make effective all documents arising in connection therewith, including, without limitation, all Plan Documents and the Litigation Trust Agreements, prior to, on, and after the Effective Date.

8.    On the Effective Date, the Litigation Trust Boards and Litigation Trustees shall be authorized to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and Litigation Trust Agreements and to take all necessary actions required in connection therewith, in the name of and on behalf of their respective Litigation Trusts, including any actions that may be taken prior to, on, or after the Effective Date.

9.    The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Litigation Trust Boards, Litigation Trustees, Plan Administrator, Trade Claim Distribution Agents, Debtors, or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

10.     Once the Mediator Files, and this Court approves, the proposed distributions (the "Class 4 Distributions") to Holders of Allowed Senior Secured Trade Claims in Classes 4D and 4F, pursuant to the *Framework for Distributions to Holders of Allowed Senior Secured Trade Claims* [Docket No. 2495] (the "Senior Secured Trade Claim Distribution Scheme"), the Senior Secured Trade Claim Distribution Agent may, in his sole discretion, make the Class 4 Distributions and take any other actions consistent therewith, without further Court approval.

## Enforceability of the Plan

11.     Pursuant to sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code, the Plan and all Plan Documents (including, but not limited to, the Litigation Trust Agreements) shall be, and hereby are, valid, binding and enforceable.

## The Sale Transaction

12.     Approval of Sale Transaction.  Pursuant to Bankruptcy Code sections 105, 363, 365, 1123, 1129 and 1141, the Sale Transaction, the Asset Purchase Agreement, the ancillary documents related thereto (including the documents to effectuate the Luxe Settlement and the Luxe Non-Op Transaction (as defined in the Asset Purchase Agreement)), all of the terms and conditions thereof, and all of transactions contemplated thereby are hereby authorized and approved.  The failure to specifically reference any particular provision of the Asset Purchase Agreement or any ancillary document in this Confirmation Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the Asset Purchase Agreement and each and every provision, term, and condition thereof be authorized and approved in its entirety.  For avoidance of doubt, this Confirmation Order constitutes the Sale Order approving the Sale Transaction.  Upon the occurrence of the Effective Date, the Sale Order shall be final, binding, non-appealable, and in full force and effect and not subject to a stay pending appeal.  The Buyer may present this

Confirmation Order or appropriate excerpts thereto to any person or entity to evidence the entry and effect of this Confirmation Order as the Sale Order including without limitation to evidence the Buyers' purchase of the Assets free and clear of all Claims, liens, encumbrances, or other interests to the extent provided in the Asset Purchase Agreement, the Plan, and this Confirmation Order.

13.     The Debtors' determination that the Asset Purchase Agreement is the highest and best offer constitutes a valid and sound exercise of the Debtors' business judgment.  Approval of the Asset Purchase Agreement and the consummation of the Sale Transaction is in the best interests of the Debtors' Estates, their creditors, and other parties in interest.

14.     The Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code with respect to all of the Assets.

15.     On the Effective Date, the Debtors and the Buyer are authorized to (a) consummate the Sale Transaction pursuant to and in accordance with the terms of the Asset Purchase Agreement, the Plan and this Confirmation Order, (b) execute, deliver, perform under, consummate, and implement the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Transaction and (c) to take all further actions as may be reasonably required for the purposes of issuing, assigning, transferring, granting, conveying or conferring to the Buyer the Assets and assumption of the Assumed Obligations or as may be necessary or appropriate to perform the parties' obligations under the Asset Purchase Agreement and the Plan.

16.     On the Effective Date, pursuant to sections 105, 363, 365, 1123, 1129 and 1141 of the Bankruptcy Code, in accordance with the Asset Purchase Agreement, subject to the satisfaction or waiver of all applicable closing conditions under the Asset Purchase Agreement, (i) all Assets

shall be transferred to, and the Assets owned by the Debtors shall vest in the Buyer, free and clear of all Liens, Claims, charges, interests, rights, encumbrances, liabilities, mortgages, deeds of trust, pledges, security interests of whatever kind or nature, rights of first refusal, rights of offset or recoupment, royalties, conditional sales or title retention agreements, hypothecations, preferences, debts, easements, suits, licenses, options, rights of recovery, judgments, orders and decrees of any court or foreign domestic governmental entity, taxes (including foreign, state and local taxes), covenants, restrictions, indentures, instruments, leases, options, off-sets, recoupments, Claims for reimbursement or subrogation, contribution, indemnity or exoneration, encumbrances and other Claims and interests of any kind or nature whatsoever (collectively, "Encumbrances"), and (ii) all Assumed Obligations (as defined in the Asset Purchase Agreement) shall be assumed by the Buyer, and the sale of the Assets to the Buyer pursuant to the Asset Purchase Agreement and this Confirmation Order free and clear of all Encumbrances will be a legal, valid, enforceable, and effective issuance, sale, assignment, and/or transfer of such Assets.  For avoidance of doubt, any and all Leases and the Leased Lands (as defined in the Asset Purchase Agreement) are transferred free and clear of any and all Royalty Interest Claims that accrued prior to the Effective Time (as defined in the Asset Purchase Agreement).  For the further avoidance of doubt, the Liens of Holders of Senior Secured Trade Claims shall attach to the proceeds of the Sale Transaction until such time as the Senior Secured Trade Claim Distribution Agent receives the Senior Secured Trade Claim Cash Consideration and the Net Profits Interest, except for such proceeds used to or for the payment of all distributions and funding obligations of the Debtors under the Plan, including but not limited to the amount of Cash necessary to (a) fund the Wind-Down Budget, (b) provide for the MDC RBL Facility Claim Payment, (c) provide for the MDC Contribution, (d) fund the Professional Fee Escrow Account, and (e) satisfy or fund reserves for Allowed Administrative

Expense Claims, Priority Tax Claims, and Other Priority Claims required for emergence from the Chapter 11 Cases and the Consummation of the Plan to the extent Allowed and required to be paid in Cash under the Plan.

17. Any consents to transfer any of the Assets that may be required by applicable non-bankruptcy law, notwithstanding the provisions of the Asset Purchase Agreement, the Plan, and this Confirmation Order (which are intended to have full effect to the maximum extent possible), have been satisfied by reason of the providing of notice and request for consent as contemplated under the Asset Purchase Agreement or in connection with the Plan, this Confirmation Order, and the Sale Transaction, and the actual consent or deemed consent (due to failure to provide a reasonable basis to withhold consent) of counterparties in respect of such notices has been obtained. Each and every federal, state, province, county, and local governmental agency or department, whether foreign or domestic, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, the Plan and this Confirmation Order.

18. Except as expressly provided for in the Asset Purchase Agreement, the Plan, and this Confirmation Order, the Buyer shall not assume or have any liability or other obligation of the Debtors arising under or related to any of the Assets and shall not be liable for any Encumbrances against any Debtor, any Estate, or any of the Debtors' affiliates, predecessors, successors or assigns, except with respect to Assumed Obligations (as defined in the Asset Purchase Agreement). Without limiting the generality of the foregoing, and except as otherwise expressly provided herein, under applicable law, and in the Asset Purchase Agreement, the Plan, and this Confirmation Order, the Buyer and its affiliates shall have no successor or vicarious liabilities of any kind or character including, without limitation, any theory of antitrust, warrant, product liability,

environmental, successor or transferee liability, labor law, ERISA, *de facto* merger mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent. For the avoidance of doubt, the Buyer shall not be responsible for any Excluded Liabilities (as defined in the Asset Purchase Agreement). Neither the Buyer nor any Reorganized Debtor nor Litigation Trust or Litigation Trustee shall have any successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, or whether fixed or contingent, whether now existing or hereafter arising, with respect to the Assets or any Encumbrances of the Debtors arising prior to or after the Closing Date other than the Assumed Liabilities.

19.     As of the Effective Date, and subject to the provisions of the Plan, the Asset Purchase Agreement, and this Confirmation Order, all persons and entities are hereby forever prohibited and permanently enjoined from taking any action that would adversely affect or interfere with the consummation of the Sale Transaction or the Buyer's operation, ownership and title with respect to the Assets. Without limiting the generality of the foregoing (a) except as expressly provided for in the Asset Purchase Agreement, the Plan, and this Confirmation Order, all persons or entities are hereby forever prohibited and permanently enjoined from asserting against the Buyer, their successor and assigns, or the Assets, any prepetition or pre-Effective Date liabilities, liens, Claims, encumbrances, or other interests, or successor or transferee obligations or liabilities under any legal or equitable theory whatsoever, or requiring any payment or other consideration from Buyer and (b) each non-Debtor party to an executory contract or unexpired lease (including the Surface Interests (as defined in the Asset Purchase Agreement) or any Royalty Interest) being transferred assumed and assigned to the Buyer pursuant to the Asset Purchase Agreement, the Plan, and this Confirmation Order is hereby forever prohibited and permanently

enjoined from imposing or charging against the Buyer any rent accelerations, requirements as to payment by Buyer of any Claims,  assignment fees, increases, or any other fees or payments in connection with the specific assumed and assigned executory contract or unexpired lease by reason of the Debtors' assumption and assignment of such executory contract and unexpired lease, and the validity of such assumption and assignment, which shall in all events be effective as of the Effective Date, shall not be affected by the pendency or resolution of any dispute between the Debtors and any non-Debtor party to any such assigned executory contract or unexpired lease.

20.     Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification on appeal of the authorization provided herein to effectuate the Sale Transaction and consummate the transactions contemplated by the Asset Purchase Agreement shall not affect the validity of such transactions (including the assumption, assignment, and/or transfer of any executory contract or unexpired lease), unless such authorization and consummation of such transactions are duly stayed pending such appeal.

21.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

22.     Effective as of the Effective Date of the Plan, this Confirmation Order is binding on all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons and Entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease ("Recordation Officers").  Each and every Recordation Officer is authorized, from and after the

Effective Date, to strike all Claims, interests, Liens, or other encumbrances in or against the Debtors' assets from their records, official and otherwise, without further order of the Court or act of any party.  Each and every Recordation Officer is authorized (a) to file, record, and/or register any and all documents and instruments presented to consummate or memorialize the Asset Purchase Agreement, the Plan, this Confirmation Order, and the transactions contemplated thereby and (b) to accept and rely on this the Plan and Confirmation Order as the sole and sufficient evidence of the transfer of title of the Assets.  To the extent reasonably requested by Buyer, the holder of any Encumbrance (other than an Assumed Obligation) in respect of any Assets shall provide Buyer or any successor or assign with appropriate documents or instruments to evidence, in the public records or otherwise, the release of such Encumbrance as contemplated by the Plan and this Confirmation Order.

23.     The terms and provisions of the Asset Purchase Agreement, the Plan, and this Confirmation Order shall upon the Effective Date be binding in all respects upon (a) the Debtors and their affiliates, (b) all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Claims, interests, Liens, and other encumbrances, (c) the Post-Effective Date Reorganized Debtors and Litigation Trusts, (d) the Buyer Parties, and (e) all interested parties, and all successors and assigns of any of the foregoing.

24.     Section 1141.  Pursuant to sections 362, 1141(c) and 363(f) of the Bankruptcy Code, on the Effective Date, all Persons are forever prohibited and enjoined from taking any action against the Buyer, Reorganized Debtors, Litigation Trusts, Litigation Trustees, the MTE Litigation Trust Board and the MDC Litigation Trust Board based on any Claims, interests, Liens, and other encumbrances (including any Encumbrance) to the extent such Claims, interests, Liens and other encumbrances are released pursuant to the terms of the Plan and this Confirmation Order.

25.     Purchase Price Adjustments.   Any adjustments to the Purchase Price shall be included in the applicable monthly operating or post-Confirmation reports.

26.     Commercially Reasonable Efforts.   The Debtors shall use commercially reasonable efforts to close the Sale Transaction in accordance with the Asset Purchase Agreement as soon as practicable and otherwise maximize recoveries to all parties in interest.   Nothing in the Confirmation Order shall modify any conditions to closing or any rights of Buyer under the Asset Purchase Agreement.

## Vesting of Assets in the Plan Administrator and/or Litigation Trusts

27.     Except as otherwise provided in the Plan or the Plan Supplement, pursuant to sections 1123(a)(5), 1123(b)(3), and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all property of each Estate remaining after the Closing Date of the Sale Transaction, other than Litigation Trust Assets (which, for the avoidance of doubt, do not include the Senior Secured Trade Recovery Amount, Litigation Claims against Preference Defendants that affirmatively voted to accept the Plan as set forth in Article III.B.4.c of the Plan, the MDC RBL Facility Claim Payment, or the Luxe Settlement Fund), shall vest in the Plan Administrator, free and clear of all Liens (except for the Liens of the MDC RBL Lenders, which shall constitute MDC RBL Facility Secured Claims, including MDC Adequate Protection Claims and MDC Adequate Protection Liens, which shall attach to the MDC RBL Remaining Collateral (including without limitation, Receivables not being used to satisfy the distributions and payments required under the Plan, and Excess Claims), in the same rank and priority as they possess immediately prior to vesting in such trust), Claims, charges or other encumbrances.   As of the Effective Date, the Plan Administrator may use and dispose of such property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order, and the Plan Administrator shall take all steps it deems necessary to liquidate

the Debtors, including, but not limited to, abandoning any property that cannot be distributed under the Plan, and paying Wind-Down Expenses from the Wind-Down Budget.

28.     The respective Litigation Trust Assets shall vest in the respective Litigation Trusts on the Effective Date.  For the avoidance of doubt, neither the Luxe Settlement Fund nor the MDC RBL Facility Claim Payment shall be impacted or reduced by amounts necessary to fund the Litigation Trusts.

29.     In accordance with Articles I.A, IV.G, and IV.H of the Plan, the Debtors are hereby authorized to allocate $1,620,000.00 as the total amount of the Wind-Down Budget for the sole purposes of (a) paying the Wind-Down Expenses and (b) funding the MDC Litigation Trust.  The total amount of funding for the MDC Litigation Trust shall be $300,000.00 (which amount shall in no event be increased with additional funding from the Debtors' Estates).  In consideration for the foregoing, professionals employed by the MDC RBL Lenders who are entitled to payment under the Cash Collateral Orders will forego or otherwise reduce their fees by a total of $150,000.00 of fees otherwise payable to the collective professionals under the Cash Collateral Orders. These professionals will agree on the allocation of the $150,000.00 professional fee reduction amongst themselves in their sole discretion. These professionals will inform the Debtors of such allocation, on or before the Effective Date, and will reflect such reduction on future invoices submitted pursuant to the Cash Collateral Orders.

30.     All privileges with respect to the property of the Estates, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtors and Plan Administrator, or the Litigation Trustees, as applicable, pursuant to the terms of the Plan, this Confirmation Order and the Litigation Trust Agreements, as applicable.

**Transfer of Litigation Trust Assets that are Litigation Claims to Litigation Trusts**

31.    Except as otherwise provided in the Plan or in this Confirmation Order in accordance with section 1123(b)(3) of the Bankruptcy Code and Article V of the Plan:  (a) any MTE Litigation Trust Assets that are Litigation Claims shall vest upon the Effective Date in the MTE Litigation Trust and pursuant to Article V of the Plan, after the Effective Date, the MTE Litigation Trustee, subject to approval of the MTE Litigation Trust Board, shall have the exclusive right to institute, prosecute, abandon, settle or compromise any MTE Litigation Trust Assets that are Litigation Claims, in accordance with the terms of the MTE Litigation Trust Agreement and without further order of this Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases; (b) any MDC Litigation Trust Assets that are Litigation Claims shall vest upon the Effective Date in the MDC Litigation Trust and pursuant to Article V of the Plan, after the Effective Date, the MDC Litigation Trustee, subject to approval of the MDC Litigation Trust Board, shall have the exclusive right to institute, prosecute, abandon, settle or compromise any MDC Litigation Trust Assets that are Litigation Claims, in accordance with the terms of the MDC Litigation Trust Agreement and without further order of this Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases; and (c) any MDC Texas Operator Litigation Trust Assets that are Litigation Claims shall vest upon the Effective Date in the MDC Litigation Trust and pursuant to Article V of the Plan, after the Effective Date, the MDC Litigation Trustee, subject to approval of the MDC Litigation Trust Board, shall have the exclusive right to institute, prosecute, abandon, settle or compromise any MDC Texas Operator Litigation Trust Assets that are Litigation Claims, in accordance with the terms of the MDC Litigation Trust Agreement and without further order of this Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases.  For the avoidance of doubt, the MDC RBL Facility Secured Claims

(including MDC Adequate Protection Liens and MDC Adequate Protection Claims) shall remain attached to and against all MDC Litigation Trust Assets, to the extent which the MDC RBL Lenders had existing liens, vesting in the MDC Litigation Trust in the same rank and priority as they possess immediately prior to vesting in such trust, as set forth herein.

## Corporate Action

32.    Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan and corporate structure of the Debtors or Reorganized Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, members, or officers of the Debtors or the Reorganized Debtors.  Before, on, or after the Effective Date, the appropriate officers, members, or managers of the Debtors or the Reorganized Debtors, or any subsidiary of a Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors.  The authorizations and approvals contemplated by Article IV.H of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

## Cancellation of Notes, Instruments, Certificates, and other Documents

33.    On the Effective Date, except as otherwise specifically provided for in the Plan, the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants,

options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or interest shall be cancelled and deemed surrendered as to the Debtors, and the Debtors and Reorganized Debtors shall not have any continuing obligations thereunder.  For the avoidance of doubt, (a) the rights and privileges of the MTE Administrative Agent and inter-creditor provisions with respect to the MTE Term Lenders in the MTE Credit Documents and (b) the rights and privileges of the MDC Administrative Agent and inter-creditor provisions with respect to the MDC RBL Lenders in the MDC RBL Credit Documents, shall not be cancelled under the Plan or by this Confirmation Order.

**Plan Distributions**

34.    Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest (or such Holder's Affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article X of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

35.     The claim of Centennial Resource Production, LLC ("Centennial"), Proof of Claim No. 621, (as amended, the "Centennial Claim") shall be classified under the Plan as an Allowed Other Secured Claim.  In full and final satisfaction of all of Centennial's claims against the Debtors, including, without limitation, the Centennial Claim and any rejection damages claim, the Debtors hereby convey to Centennial, free and clear of the Liens and Claims of the MDC RBL Lenders, the property encumbered by the liens asserted in the Centennial Claim which consist of the Debtors' working interests in the Iron Eagle Unit A, the associated wells thereon, and related equipment attached to such Unit.  The Debtors are authorized to enter into the necessary documents to effectuate such conveyance.

## Administration of the Litigation Trusts

36.     The Litigation Trust Agreements, substantially in the forms filed with the Plan Supplement, are hereby approved.

37.     The MTE Administrative Agent shall disclose the identity of the MTE Litigation Trustee in a supplemental filing once the identity of such individual has been agreed upon.  The MTE Litigation Trustee shall be compensated in the manner set forth in and consistent with the MTE Litigation Trust Agreement.  The MTE Litigation Trustee shall have all powers, rights, duties and protections afforded the MTE Litigation Trustee under the Plan, this Confirmation Order, and the MTE Litigation Trust Agreement.  The appointment of the parties set forth in the MTE Litigation Trust Agreement as the members of the MTE Litigation Trust Board are hereby approved.  The MTE Litigation Trust Board shall have all powers, rights, duties and protections afforded the MTE Litigation Trust Board under the Plan, this Confirmation Order, and the MTE Litigation Trust Agreement.

38.     The MDC Administrative Agent shall disclose the identity of the MDC Litigation Trustee in a supplemental filing once the identity of such individual has been agreed upon.   The

MDC Litigation Trustee shall be compensated in the manner set forth in and consistent with the MDC Litigation Trust Agreement. The MDC Litigation Trustee shall have all powers, rights, duties and protections afforded the MDC Litigation Trustee under the Plan, this Confirmation Order, and the MDC Litigation Trust Agreement. The appointment of the parties set forth in the MDC Litigation Trust Agreement as the members of the MDC Litigation Trust Board are hereby approved. The MDC Litigation Trust Board shall have all powers, rights, duties and protections afforded the MDC Litigation Trust Board under the Plan, this Confirmation Order, and the MDC Litigation Trust Agreement.

### Executory Contracts and Unexpired Leases

39. Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, except as otherwise provided in the Plan or in any Plan Document (such as, with respect to the Joint Operating Agreements, discussed herein), each of the prepetition executory contracts and unexpired leases to which any Debtor is a party, to the extent such contracts or leases are Executory Contracts or Unexpired Leases, shall be deemed rejected by the applicable Debtor effective on and subject to the occurrence of the Effective Date, pursuant to the Plan and subject to the provisions of Section 2.04 of the Asset Purchase Agreement, *unless* such contract or lease is separately identified as a contract or lease to be assumed or terminated pursuant to the Plan, Plan Supplement, or Asset Purchase Agreement, or is assumed by a separate motion Filed with and granted by the Court, in each case, with the consent of each Buyer Party.

40. The Debtors shall assume the Joint Operating Agreements and assign them to the Buyer, in accordance with the Asset Purchase Agreement and as identified on Schedule 2.04(b) to the Asset Purchase Agreement. No Cure Cost or other consideration shall be due on account of such assumption and assignment of the Joint Operating Agreements (besides the amounts contributed to the Luxe Settlement Fund in connection with the assumption and assignment to

Buyer of the Non-Op Joint Operating Agreements).   The Plan shall constitute a motion seeking: (a) for purposes of section 365(a) and (b) of the Bankruptcy Code, (1) *assumption* of the Joint Operating Agreements and assignment of the Joint Operating Agreements to the Buyer, and (2) *rejection* of all Executory Contracts and Unexpired Leases to which any Debtor is a party and which are not excepted from rejection pursuant to Article VI.A of the Plan; and (b) for purposes of Bankruptcy Rule 9019, authority to enter into the Luxe Settlement.   Cure Costs shall be inapplicable to the Luxe Settlement.   The assumption and assignment of the Joint Operating Agreements shall be subject to the definitive documentation included in the Plan Supplement and any other documentation agreed to between Luxe Energy and Buyer.

41.     In settlement of the cure objection by Colgate Operating, LLC ("Colgate")  the cure amount to be paid at Closing to Colgate for the assumption by Debtor and assignment to Buyer of the three joint operating agreements between Colgate and the Debtors will be $2,617,767.99, which represents the aggregate net cure amount due to Colgate as of June 30, 2021 after giving effect to all joint interest billings owed by Debtors and Colgate's exercise of all setoff rights for revenue withheld by Colgate, which exercise shall be and hereby is approved by the Court, and that the balances owing between the parties under the joint operating agreements shall be zero ($0) as of July 1, 2021.  All amounts owing to and from Colgate and Buyer, as the case may be, on and after July 1, 2021 under the joint operating agreements will be paid in the ordinary course of business following the Closing.

42.     The assumptions, assignments, rejections, and Luxe Settlement described in Article VI of the Plan are hereby approved pursuant to sections 365(a) and (b) and 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, subject to and effective upon the occurrence of the Effective Date.  On the Effective Date, the Luxe Claimants shall release and shall be deemed

to release their Liens and Claims against the Other Non-Debtor Working Interest Owners' working interests which are subject to the MDC Joint Operating Agreements.

43.     Upon the Effective Date, all accrued but unpaid Claims and obligations between Luxe Energy and any Debtors (including, without limitation, (i) Claims and obligations relating to joint interest billings, royalties, and revenues under the Joint Operating Agreements, and (ii) Claims and obligations relating to Transferred Non-Op Working Interests) as of the Luxe Deemed Assignment Date shall be deemed "zeroed out" and mutually released, such that no amounts accruing on or prior to the Luxe Deemed Assignment Date shall be payable to Luxe Energy by the Debtors or the Buyer, and no amounts accruing on or prior to the Luxe Deemed Assignment Date shall be payable by Luxe Energy to the Debtors or the Buyer, and all obligations accruing or arising after the Luxe Deemed Assignment Date under the Joint Operating Agreements shall be paid and performed by the Buyer or Luxe Energy, as the case may be, pursuant to the terms and conditions of the respective Joint Operating Agreements.

44.     As of the Effective Date, all of the Debtors' D&O Liability Insurance Policies and any agreements, documents, or instruments relating thereto shall be deemed to be assumed by the Debtors under the plan pursuant to sections 105 and 365(a) of the Bankruptcy Code with respect to the Debtors' directors, managers, officers, and employees serving on or before the Petition Date to the extent that such D&O Liability Insurance Policies are found to be Executory Contracts.  For the avoidance of doubt, coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals and Entities covered thereby, including, but not limited to, those within the definition of "Insured Person" in any of the D&O Liability Insurance Policies.

45.     **Unless otherwise provided by a separate Court order, any Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with this Court within thirty (30) days after the date of entry of an order of this Court (including the Confirmation Order) authorizing the rejection of such Executory Contract or Unexpired Lease.**

### Disputed Claims

46.     Except as otherwise specifically provided in the Plan and this Confirmation Order, including as it relates to the rights and powers of the Litigation Trustees, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator shall have the authority to File and prosecute objections to Claims (other than MTE Term Loan Claims, MDC RBL Facility Claims, MDC RBL Facility Deficiency Claims, MDC General Unsecured Claims, and released Claims, which include Litigation Claims against Holders of Senior Secured Trade Claims and Preference Defendants who affirmatively voted to accept the Plan, all such Claims referenced in this parenthetical, collectively, the "Released Claims"), and the Plan Administrator shall have the authority, with written consent of the MDC RBL Lenders (until such time that the MDC RBL Facility Claims are satisfied in full) and the MTE Term Lenders, to:  (a) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims (except Released Claims), regardless of whether such Claims are in a Class or otherwise; (b) settle, compromise, or resolve any Disputed Claim (except Released Claims) without any further notice to, or action, order, or approval of, the Court; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to, or action, order, or approval of, the Court; *provided*, *however*, that the Litigation Trustees shall have such authority, with written consent of the Litigation Trust Boards,

42

the MDC RBL Lenders and/or the MTE Term Lenders, as applicable, with respect to Claims of the Litigation Trust Beneficiaries, and *further provided*, that nothing herein shall preclude the U.S. Trustee or other parties with requisite standing, including without limitation, the MDC RBL Lenders and the MTE Term Lenders, from objecting to any Claim other than the MTE Term Loan Claims, MDC RBL Facility Claims, MDC RBL Facility Deficiency Claims, any other Claim that is Allowed pursuant to the Plan, this Confirmation Order or another order of the Court, or Released Claims and Claims that are subject to mediation, and *even further provided*, that disputes with respect to Classes 4D and 4F are to be resolved in mediation.  On and after the Effective Date, the Plan Administrator and the Litigation Trustees shall use commercially reasonable efforts to advance the Claims resolution process through estimation or otherwise.  Notwithstanding any provision in the Plan or this Confirmation Order to the contrary, in the event that an objection to a Claim (except for Released Claims) is Filed, the Plan Administrator shall not make any distribution on account of any disputed portion of such Disputed Claim.  For the avoidance of doubt and notwithstanding anything contained in the Plan, any Plan Documents, or this Confirmation Order, the Senior Secured Trade Claim Distribution Agent has the sole authority to make distributions to Holders of Allowed Claims in Classes 4D and 4F, the allowance of which shall be determined in mediation.

47.    The Litigation Trustees shall have the sole power and authority to prosecute and resolve Litigation Trust Assets that are Litigation Claims, and objections to Claims and Interests relating to the respective Litigation Trust, and to otherwise deal and operate other Litigation Trust Assets, subject to approval of the Litigation Trust Boards as set forth in the Litigation Trust Agreements.

48.     Any objections to Claims shall be Filed on or before forty-five (45) days after the Effective Date (the "Claims Objection Deadline"); *provided, however*, that the Debtors, Reorganized Debtors, Plan Administrator, or Litigation Trustees may seek extensions of this date from the Court, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002; and further provided that the Litigation Trustees may object to Claims otherwise entitled to distribution from their respective Litigation Trust forty-five (45) days after such funds become available for distribution.  Notwithstanding the foregoing, however, the Litigation Trustees shall not object to Senior Secured Trade Claims or Claims held by Luxe Claimants.

49.     If the Debtors, the Reorganized Debtors, or the Litigation Trustees, as applicable, File a motion to extend the Claims Objection Deadline, the Claims Objection Deadline shall be automatically extended until the Court acts on such motion, without the necessity for the entry of a bridge order.

## Administrative Expense Claims

50.     Except as otherwise provided in Article II.A of the Plan, and except for with respect to Administrative Expense Claims that are subject to section 503(b)(1)(D) of the Bankruptcy Code, requests for payment of Administrative Expense Claims must be Filed and served on the Plan Administrator pursuant to the procedures specified herein and in the notice of entry of this Confirmation Order, no later than:  (a) with respect to Administrative Expense Claims other than Professional Fee Claims and those that are based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, thirty (30) days after the Effective Date; (b) with respect to Professional Fee Claims, forty-five (45) days after the Effective Date; and (c) with respect to Administrative Expense Claims based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, sixty (60) days after the Effective Date;

provided that Filing requests for payment of Administrative Expense Claims is not required, where

the Plan, Bankruptcy Code or a Final Order does not require such Filing; that Filing requests for

payment of Administrative Expense Claims is not required, where the Plan, Bankruptcy Code or

a Final Order does not require such Filing.  In the event of an objection to allowance of an

Administrative Expense Claim, this Court shall determine the Allowed amount of such

Administrative Expense Claim.   Notwithstanding anything to the contrary set forth in this

Order, parties' rights to object to the allowance of Professional Fee Claims on a final basis are

preserved.

51.     Substantial Contribution Claims filed prior to the deadline set forth in the

Disclosure Statement Order were denied, pursuant to this Court's ruling on the record at the

hearing held on August 25, 2021.  As the deadline to file Substantial Contribution Claims has

passed, parties are forever barred from asserting Substantial Contribution Claims against the

Estates; *provided, however*, that in the event the Plan is not consummated, the MTE Administrative

Agent's rights to assert a Substantial Contribution Claim are preserved.  For the avoidance of

doubt, upon the Effective Date of the Plan, the MTE Administrative Agent is forever barred from

asserting a Substantial Contribution Claim in connection with these Chapter 11 Cases.

52.     Notwithstanding any provision of this Confirmation Order or the Plan to the

contrary, Gray Surface Specialties and Consulting, Ltd. ("Gray") has an Allowed Administrative

Expense Claim in the amount of (i) $171,557.09 against Debtor MDC Energy LLC and (ii)

$44,472.10 against  MDC Texas Operator LLC ((i) and (ii) together, the "Allowed Gray

Administrative Expense Claim").  On or prior to the Effective Date, the Debtors shall pay Gray

the Allowed Gray Administrative Expense Claim in full, in cash, pursuant to the Court's Order

dated June 7, 2021 [Docket No. 2209].   Furthermore, to the extent the payment of Gray's

Administrative Expense Claim gives rise to a claim by the Estates against any third party, such claim will be assigned to and vest in the MDC Litigation Trust.

53.    On or before the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Reserve Amount shall be sufficient to satisfy all Allowed Professional Fee Claims against the Sellers and up to $250,000.00 of Allowed Professional Fee Claims against the MTE Debtors. All MTE cash in excess of the Allowed Professional Fee Claims against the MTE Debtors (subject to the aforesaid $250,000.00 cap) shall be distributed to the MTE Administrative Agent on the Effective Date. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or by the Plan Administrator, as applicable, within five (5) Business Days after such Professional Fee Claims are Allowed (a) in the full Allowed amount as against the Sellers, and (b) in the Allowed amount up to $250,000.00 as against the MTE Debtors. When all Allowed amounts owing to the Professionals, payable as set forth herein and in the Plan, have been paid in full, any amount remaining in the Professional Fee Escrow Account shall revert to the MDC RBL Lenders pursuant to Article III.B.5 of the Plan, without any further action or order of the Court, except that any MTE Cash Collateral and Net MTE Cash shall revert to the MTE Administrative Agent for distribution in accordance with the Plan. Excess MDC Distributable Cash shall include the Unused Professional Fee Reserve, if any.

54.    If the Professional Fee Reserve Amount is insufficient to pay all Professional Fee Claims Allowed by the Court against the Sellers, the balance of such Allowed Professional Fee Claims shall be satisfied from the Wind-Down Budget, and if the Wind-Down Budget is insufficient to pay the balance, from Excess MDC Distributable Cash, and any unpaid Professional

Fee Claims remaining after exhaustion of the foregoing shall be waived by such Professionals. The MDC RBL Lenders shall not have any Liens on Professional Fee Claims which are Allowed by the Court.   The MTE Debtors shall pay such Allowed Professional Fee Claims which are Allowed against the MTE Debtors from the MTE Cash Collateral, with up to a maximum of $250,000.00 of such MTE Cash Collateral.  In the event that the Allowed Administrative Expense Claims against the MTE Debtors exceed $250,000.00, the Debtors' Professionals agree to waive payment of their Professional Fee Claims to the extent of any excess.

### MDC RBL Secured Facility Claims

55.     Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the MDC RBL Lenders shall maintain the MDC RBL Facility Secured Claims (including MDC Adequate Protection Claims and MDC Adequate Protection Liens) against the MDC RBL Remaining Collateral (including the MDC Litigation Trust Assets).

### Release, Injunction, Exculpation, and Related Provisions

56.     The Release Provisions set forth in Article IX of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein.

### Payment of Statutory Fees

57.     All fees due and payable pursuant to section 1930 of Title 28 of the United States Code and any interest thereon pursuant to section 3717 of Title 31 of the United States Code on or before the Effective Date shall be paid in full in Cash on the Effective Date or as soon as practicable thereafter by the Debtors or the Plan Administrator, as applicable.  On and after the Effective Date, to the extent applicable, the Plan Administrator shall pay any and all such fees and interest in full in Cash when due and payable, and shall File with the Court quarterly reports in a form reasonably

acceptable to the U.S. Trustee.  The Reorganized Debtors shall remain obligated to pay quarterly fees and interest, if any, to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything in the Plan to the contrary, (a) the U.S. Trustee shall not be required to File any Proof of Claim for quarterly fees and any interest thereon; and (b) the foregoing U.S. Trustee fees and any interest thereon shall not be deemed Other Priority Claims.

58.    The issues raised (the "U.S. Trustee Issues") by the *Objection of the United States Trustee to the Debtors' Fourth Amended Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors*, dated August 31, 2021 [Docket No. 2554] are hereby severed from this Confirmation Order by Federal Rule 54(b), made applicable by Bankruptcy Rules 7054 and 9014. The U.S. Trustee Issues shall be addressed properly and appropriately following Confirmation of the Plan, in a separate contested matter (the "Contested Matter").  The finality of this Confirmation Order, and the finality of any order entered in the Contested Matter, shall be wholly severed and separate from one another.  The Court hereby directs entry of a final judgment with respect to the Confirmation of the Plan.  As stated on the record at the Confirmation Hearing, nothing contained in the Plan, the Litigation Trust Agreements, this Confirmation Order, or any document ancillary thereto prejudices or otherwise affects the rights of the U.S. Trustee, the Debtors, or the Litigation Trusts with respect to quarterly fee liability in the Chapter 11 Cases under 28 U.S.C. § 1930(a)(6), said rights being expressly reserved for this Court's consideration at a later date.  Specifically, any language in Plan Art. II.D or otherwise that does not require the Litigation Trusts to pay quarterly fees under 28 U.S.C. § 1930(a)(6) is not being approved pursuant to this Confirmation Order, and the Court is not making any ruling on the requirement of the Litigation Trusts to pay quarterly fees.

**Payment of Mediator Fees**

59.     All documented fees and expenses due and payable to the Mediator shall be paid in full in Cash on the Effective Date or as soon as practicable thereafter by the Debtors or the Plan Administrator, as applicable.

**Consolidated Adversary Proceeding**

60.     Pursuant to the Plan, as of the Effective Date, the Consolidated Adversary Proceeding shall be deemed dismissed against the Debtors and the MDC Administrative Agent and MDC RBL Lenders, with prejudice.  For the avoidance of doubt, subject to payment of the MDC RBL Lender Fees under the Cash Collateral Orders, all costs and attorneys' fees in connection with the Consolidated Adversary Proceeding shall be borne by the respective parties. For the further avoidance of doubt, until such time that the Court approves the Class 4 Distributions, Holders of Senior Secured Trade Claims are not precluded from amending existing pleadings or mediation statements to challenge the validity, priority, or amount of another Senior Secured Trade Claim being classified as Allowed or to object to a claim asserted by a Luxe Claimant with respect to the Luxe Allocation; *provided, however*, that any settlements between Holders of Senior Secured Trade Claims or the Luxe Claimants that are finalized through mediation shall not be subject to further objections with respect to such settled Claims; and *further provided*, that nothing in this paragraph constitutes a condition precedent to the occurrence of the Effective Date.

**Notice of Entry of Confirmation Order and Effective Date**

61.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors are hereby authorized to serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date on the Effective Date, on all Holders of Claims against or Interests in the Debtors and all other Persons on whom the Confirmation Hearing Notice was served.  The Notice of Confirmation and Effective

Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such bar dates and deadlines need be given.

## Retention of Jurisdiction

62.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, and except as otherwise ordered by this Court, this Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, to take the actions specified in Article XII of the Plan.

## Governmental Unit and Texas Comptroller Provisions

63.     Notwithstanding anything contained in the Plan, the Plan Supplement, the Plan Documents (including any Sale Transaction documents), or this Confirmation Order to the contrary, nothing in any such documents, with respect to any Entity other than the Buyer, releases, precludes, or enjoins:  (a) any liability to any Governmental Unit as defined in section 101(27) of the Bankruptcy Code that is not a Claim as defined in section 101(5) of the Bankruptcy Code; (b) any Claim of a Governmental Unit arising on or after the Confirmation Date; (c) any police or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of property after the Confirmation Date; or (d) any liability to a Governmental Unit on the part of any non-Debtor.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside of this Court, any liability described in the preceding sentence.  Notwithstanding any provision of the Plan, this Confirmation

Order, or any implementing or supplementing Plan Documents, the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, shall be preserved and are unaffected against any Entity other than Buyer.

64.    Notwithstanding anything contained in the Plan Documents (including any Sale Transaction documents) to the contrary, with respect to the Buyer, nothing in the Plan Documents releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Confirmation Order.  Nothing in this Confirmation Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law

65.    Notwithstanding any term in the Plan or this Confirmation Order to the contrary: (a) the Texas Comptroller of Public Accounts' (the "Texas Comptroller") setoff rights as against the Debtors are preserved under section 553 of the Bankruptcy Code; (b) pursuant to section 503(b)(1)(D) of the Bankruptcy Code, the Texas Comptroller shall not be required to file a request for payment of any amounts coming due post-petition; (c) any and all tax liabilities owed by the Debtors to the Texas Comptroller, including those resulting from audits, shall be determined, resolved, and paid under and in accordance with the laws of the State of Texas; (d) all matters involving the Debtors' liabilities to the Texas Comptroller shall be resolved in accordance with the processes and procedures provided by Texas law, including prosecution in Texas state courts; (e) the Debtors shall not request relief from this Court with regard to any matters involving the

Debtors' liabilities to the Texas Comptroller; and (f) the Chapter 11 Cases shall have no effect on the Texas Comptroller's rights, if any, as to non-Debtor third parties.

<strong><u>References to Plan Provisions</u></strong>

66.     The failure to specifically include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of this Court that the Plan (as and to the extent modified by this Confirmation Order) be confirmed in its entirety.

<strong><u>Controlling Document</u></strong>

67.     In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.  In the event of any inconsistencies or conflicts between the Plan and the Litigation Trust Agreements, the terms and provisions of the Plan shall control.

<strong><u>Extension of Injunctions and Stays</u></strong>

68.     Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order), shall remain in full force and effect through the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**Certain Tax Claims**

69.     Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to the Claims of Glasscock County Tax Office, Reeves County and Reeves County Tax District, (the "Certain Texas Taxing Authorities") that arise under the Texas Tax Code (the "Texas Taxing Authority Claims"):   (i) to the extent the Texas Tax Code provides for interest with respect to any portion of the Texas Taxing Authority Claims, such interest shall be included in the Texas Taxing Authority Claims; (ii) the liens, if any, securing the Texas Taxing Authority Claims shall be retained until the applicable Texas Taxing Authority Claims are paid in full; (iii) the Texas Taxing Authority Claims which are stipulated to be Allowed Claims and that are Other Priority Claims under the Plan (which amount through September 2021 is $128,294.04 for Glasscock County Tax Office, $845,147.44 for Reeves County and $2,522,765.54. for Reeves County Tax District ) shall be assumed by the Buyer and shall be paid in accordance with section 1129(a)(9) of the Bankruptcy Code in 36 equal, consecutive monthly payments, including continuing statutory interest, beginning on the Effective Date; (in the event the Effective Date is later than September 2021, an additional 1% per month shall be added to the amounts reflected above.  For the avoidance of doubt, notwithstanding the forgoing, Buyer shall be entitled to prepay and discharge any of the respective Texas Authority Claims at any time prior to such 36 month maturity without penalty or unaccrued interest by paying the remaining principal and accrued interest amount of such claims at such time of prepayment.  As adequate protection, should any well be shut in or if any other circumstance occurs which may result in termination of the lease, 90 days-notice must be given to the Claimant affected and the ad valorem taxes attributed to that well must be paid in full immediately before lease expiration. Further, with respect to any ad valorem tax liabilities incurred by the Debtors after the Petition Date, such Claims of the Certain Texas Taxing Authorities shall be treated as post-Confirmation debt to be paid in full either by the Debtors on the Closing Date

or, as to 2021 ad valorem taxes, by the Buyer, when due in the ordinary course of business prior to delinquency , whichever is later, and the Certain Texas Taxing Authorities shall not be required to File a Proof of Claim and/or request for payment; and, (v) to the extent the Debtors, Reorganized Debtors, or any other responsible non-Debtor parties do not pay the post-petition taxes owed to the Certain Taxing Entities prior to delinquency, the post-petition taxes shall accrue interest and/or penalties, as and if applicable, at the statutory rate until the post-petition taxes and all accrued interest and penalties are paid in full. Any failure to pay the Certain Texas Taxing Authorities timely under the Plan or this Confirmation Order shall be considered an event of default, and if such default is not cured within thirty (30) days of notice, the Certain Texas Taxing Authorities may seek foreclosure of their liens without further action required by the Bankruptcy Court. Nothing in this paragraph shall modify the agreement between the Debtors and Buyer as to allocations, claims and adjustments among themselves with respect to any such tax liabilities; provided however, the allocation agreement between the Debtors and Buyer shall not be determinative of the Certain Texas Tax Authorities claims under 11 U.S.C. §§502, 506 or otherwise and shall not be the basis for any appraised values for future ad valorem tax assessments.

### Section 1146 Exemption

70.    To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, or the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any

instruments or other documents related to or in connection with such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

### Headings

71.    Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

### No Stay of Confirmation Order

72.    Notwithstanding Bankruptcy Rules 3020(e) and 6004(h) and any other Bankruptcy Rule to the contrary, to the extent applicable and subject to and conditioned on the election of Buyer in its sole discretion, such election to be evidenced by a notice filed with this Court, there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

**Dated: September 3rd, 2021**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**