# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MTE HOLDINGS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12269 (CTG)<br><br>Jointly Administered<br><br>**Related Docket Nos. 2619 & 2621** |

## MEMORANDUM OPINION

Allar moves [D.I. 2619] for an emergency stay of this Court's order confirming the debtors' plan of reorganization [D.I. 2590], pending an appeal of the confirmation order to the district court.[1]  Allar also moves [D.I. 2621] to shorten notice such that this Court may schedule an immediate hearing on the motion for a stay.  For the reasons described herein, the Court will deny the motion for a stay.  The motion to shorten notice will therefore be denied as moot.

## Factual and Procedural Background

As this Court described in a Memorandum Opinion denying a motion to enforce the bid procedures, D.I. 2482 at 2-3, this bankruptcy case has been complex and contentious.  Following extensive negotiations as well as a number of skirmishes, the principal constituencies in the case reached a fragile agreement under which the debtors' business would be sold to an affiliate of one of the debtor's creditors under a

---

[1] The Allar Company is referred to herein as "Allar."  The debtors in these cases, MTE Holdings, LLC, MDC Energy LLC and MDC Texas Operator, LLC, are referred to collectively as "the debtors."

plan of reorganization, with most of the proceeds of that sale divided between two other principal creditor groups – lenders under a reserve-based credit agreement and a group of service providers holding liens arising under Texas state law.

This Court held a confirmation hearing that took place over September 2, 2021 [D.I. 2856] and September 3, 2021 [D.I. 2591].  At the close of that evidentiary hearing, this Court determined that the plan should be confirmed, and thus entered a confirmation order [D.I. 2590] late in the day on September 3, 2021.

Approximately two weeks before the confirmation order, the Court issued a Memorandum Opinion [D.I. 2493] addressing claims asserted by yet another group of creditors – those who have entered into mineral leases under which the debtors acquired the rights to extract oil and gas, and who are owed royalties under the terms of the leases.  Those creditors asserted that under Texas law, their claims for unpaid prepetition royalties were secured by the proceeds of the oil and gas that the debtors sold.

The Opinion rejected that argument.  As the Court explained, the issue turns on a question of Texas law – the meaning of Texas Business and Commerce Code § 9.343.  In the absence of case law from the Texas courts offering a definitive construction of that provision, the Court concluded that the language of the statute creates a lien only to secure the purchase price of *produced* oil and gas.  Because an operator does not pay the royalty interest holder for produced oil and gas (except if the royalty were payable in kind and the operator sold the royalty portion on behalf of the holder of the royalty interest – circumstances that were not shown to be present

2

here), the Court held that the holders of royalty interests did not hold claims that were secured by operation of section 9.343.  While the Court acknowledged that this construction created the anomalous circumstance in which a statute intended to protect the holder of royalties did not (at least on these facts) accomplish that purpose, the Court's reading of the existing statute was reinforced by a subsequent amendment (which became effective on September 1, 2021, after the events at issue here) to the statute that would solve the "problem" created by the statutory language that does apply to this case.  But in the time prior to the effectiveness of the new legislation, this Court concluded, as an article in the Texas Journal of Oil and Gas Energy Law observed, "in the ordinary case, a prepetition royalty is an unsecured claim."[2]

Allar was not a party to the claim dispute that gave rise to the decision holding that those who are owed unpaid royalties are simply unsecured creditors.  It did, however, object to confirmation of the debtors' plan of reorganization [D.I. 2457].  In its objection, it made two closely related points.  *First*, it argued that under Texas law, royalty owners retain an ownership interest in the share of production attributable to their royalty interest.  *Id.* at 5-6.  *Second*, it argued that the claims for unpaid royalties are secured claims.  By the time of the confirmation hearing, however, the second point had been expressly rejected by the Court in the Opinion set forth at D.I. 2493.

---

[2] *See* Rhett Campbell, *A Survey of Oil and Gas Bankruptcy Issues*, 5 Tex. J. Oil & Gas Energy L. 265 (2010).

The first argument, perhaps, is slightly different in that it argues not that Allar is a creditor whose claim for unpaid royalties is secured by the production or its proceeds, but rather that the production is actually *owned* by Allar – and presumably that any proceeds would be held in a resulting trust for Allar's benefit.  To prevail on that argument, however, Allar would be required to present evidence – namely, a factual showing that the assets that the debtors intend to sell includes production or its proceeds that can be traced to Allar's share.

At the confirmation hearing, the Court admitted into evidence (without objection) the declaration of Scott Davido, the Debtors' Chief Restructuring Officer, that set forth the factual record in support of plan confirmation.[3]  While Mr. Davido testified live at the confirmation hearing and was available for cross-examination, Sept. 2, 2021 Hearing Tr. at 13-38, Allar elected not to cross examine him.  *Id.* at 38 ("THE COURT:  Okay.  Thank you, Mr. Eppich.  Is there any further cross-examination of Mr. Davido?  (No audible response)").

While Allar attached certain materials to its brief in opposition to confirmation, it declined to seek to introduce any of those materials into the evidentiary record at the confirmation hearing.  Indeed, after the Court received "no audible response" to the question "[i]s there any other party interest that wishes to present evidence in connection with the confirmation hearing," *id.* at 52, the Court

---

[3] It appears that Mr. Davido's declaration was incorrectly identified on the record as having been docketed at D.I. 2544.  In fact, it was docketed at D.I. 2560.

4

expressly pointed out that the royalty interest holders had not sought to present any evidence to back their oppositions to confirmation.

> THE COURT:  So I did obviously see there were a number of interest holders that submitted witness lists and the like.  And just to be clear, none of that is – that's all required to be submitted in order to give folks the opportunity to present it into evidence, but it's not admitted into evidence in the absence of a party moving it into evidence during the proceeding.  So it's obviously up to the parties whether they wish to or not.

> But let me ask the question one more time to see if there's any other party that wishes to present evidence in opposition to confirmation of the plan.

> (No audible response)

*Id.* at 53.

Finally, when none of the royalty interest holders (many of which filed oppositions to confirmation) rose to be heard at all in opposition to plan confirmation, the Court asked whether "the silence I'm hearing [is] a decision to rest on the papers, or are the interest holders no longer asserting these objections?"  *Id.* at 95.  Counsel for Allar responded to that question by noting that they were resting on their pleadings.  "[T]hat's what we're doing, resting on the pleadings, Judge."  *Id.* at 97.

When the confirmation hearing continued the following day, the Court overruled Allar's objection, as well as those of several other holders of royalty claims. Sept. 3, 2021 Hearing Tr. at 48-52.  The Court noted that the "royalty claimant holders were each given the opportunity to present evidence in support of their objections and to advance argument in [support of] their objections.  They've all declined to do so and elected to rest on the objections they filed."  *Id.* at 49.  The Court

5

thus observed that "there is no evidence in the record in support of any of those objections." *Id.* And as "a matter of law, there is nothing in those pleadings that provides [a reason why] this plan cannot be confirmed." *Id.*

The Court then described its prior ruling that the interest holders do not hold secured claims. And the Court described the argument that any unpaid royalties is not property of the estate as "the flip side of the coin from the argument that those creditors hold a security interest in certain proceeds and, thus, are secured claims." *Id.* at 51. The Court accordingly indicated that it would confirm the plan and enter the confirmation order.

In order to avoid a circumstance in which a party is required to demand that an appellate court rule immediately on a motion for a stay, the Bankruptcy Rules provide that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e). Aware that the proposed confirmation order contained language (in paragraph 72) that might abbreviate the 14-day stay provided by the rule, the Court gave any and all parties the opportunity to object to the waiver language.

> "I don't believe I've heard anyone say, ['Y]our Honor, I'm asking that you leave the stay in place longer than Paragraph 72 says[',] [B]ut I want a clear record that no one has made such an ask. And one last chance. Is there anyone that wants to be heard to make such an argument?
>
> (No verbal response)"

Sept. 3, 2021 Hearing Tr. at 59.

6

## Analysis

The caselaw makes clear that staying a confirmation order is an "extraordinary remedy."[4]  The legal framework was clearly explained in a recent decision of the district court arising out of the Weinstein Company bankruptcy.  *Id.* "The movant bears the burden of establishing that imposition of a stay is warranted."  *Id.*

The caselaw directs the court to consider four factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[5]

As the Supreme Court has explained, the most important factors are the first two – the likelihood that the movant will prevail on the merits and that it will suffer irreparable harm absent a stay.[6]  Accordingly, the Third Circuit has directed that courts should ask whether the party seeking a stay has sufficiently established "(a) it can win on the merits (significantly better than negligible but not greater than 50%) and (b) will suffer irreparable harm absent a stay."[7]  If that showing has been made, courts "balance the relative harms considering all four factors using a 'sliding scale' approach.  However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public

---

[4] *David v. Weinstein Company Holdings*, No. CV 21-171 (MN), 2021 WL 979603 (D. Del. Mar. 16, 2021) (citing *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012)).

[5] *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

[6] *Nken v. Holder*, 556 U.S. 418, 434 (2009).

[7] *In re Revel AC, Inc.*, 802 F.3d at 571.

interest is unnecessary, and the stay should be denied without further analysis." *Id*. This Court considers those factors as follows:

*Likelihood of success on the merits*.  As a general proposition, this Court is inclined to believe that the Court that issues the decision being challenged should set a relatively low threshold for finding a sufficient likelihood of success on the merits. Courts that issue decisions necessarily believe that their own decisions are correct. There is accordingly good reason why appeals are heard by a different court.  Judges, as humans, are unlikely to be impartial arbiters of the correctness of their own decisions.

The gist of Allar's argument on likelihood of success is that the Court was wrong to treat its "property of the estate" argument as a subset of its argument that royalty holders' claims are unsecured.  D.I. 2619 at 3-4.  While the Court does believe that the points are related, the Court is inclined, for the purpose of this motion, to credit Allar's contention that issues may be viewed as analytically distinct rather than just "the flip side of the coin" as the Court suggested in ruling from the bench.[8]

On the merits of the legal point, the Court believes there is some fair room for disagreement.  On the one hand, Allar does point to caselaw suggesting that, under Texas law, a mineral interest is carved out from the grant conveyed to a lessee under an oil and gas lease.  *See* D.I. 2620 at 5.  On the other, as the debtors pointed out, the

---

[8] The Court does note that Allar's decision not to be heard on its objection, even when provided an express opportunity to offer argument, may have contributed to the Court's failure to focus separately on the point.

Texas Supreme Court has also explained that where "an oil and gas lease reserves only a royalty interest, the lessee acquires title to all of the oil and gas in place, and the lessor owns only a possibility of reverter and has the right to receive royalties."[9] That would suggest that a royalty holder may retain an interest in the lease, but nevertheless hold only a contract claim against the lessee to recover unpaid royalties.

Accordingly, the Court views the question whether, under Texas law, an operator "owns" the share of production (or the proceeds thereof) that are attributable to royalties due to the lessor to be a matter of some uncertainty. And as noted above the Court does appreciate how that issue might be seen as distinct from the question whether the royalty holder's claim against the operator for royalties is secured by that share of production (or the proceeds thereof).

For that reason, had Allar actually presented evidence at the confirmation hearing demonstrating that it had entered into a lease with the debtor, had not been paid for royalties that were due, and thus had an ownership interest in certain of the assets that the debtor claimed was property of the estate, the Court would be inclined to find – particularly in light of the low threshold this Court believes should be set for finding a sufficient likelihood of success on the merits – that Allar had made such a showing. But despite attaching documents to its opposition to confirmation, Allar decided not to introduce any such evidence in support of its objection at the confirmation hearing. And while the proponent of a plan bears the burden of

---

[9] *Nat. Gas Pipeline Co. of Am. V. Pool*, 124 S.W.3d 188, 192 (Tex. 2003).

establishing the elements of confirmation,[10] the Court found that the evidence submitted by the debtor met its burden on each of the elements of confirmation. It was thus Allar's burden to demonstrate that the assets that the debtor seeks to sell to a buyer under its plan is not actually property of the estate, but instead belong to Allar. The Court believes – even crediting the contestable legal arguments that Allar is making – that its failure to present any evidence at the confirmation hearing essentially dooms its likelihood of succeeding on the merits.

*Irreparable injury.* Allar contends that if the plan is confirmed and the proceeds of the sale are distributed to other creditors, it will become impossible for Allar to obtain any recovery. D.I. 2619 at 4. Moreover, Allar points out that it faces a risk that the doctrine of equitable mootness might then preclude it from obtaining any relief at all, absent a stay. *Id.* The Court acknowledges that under current law, Allar does indeed face such a risk. The Court accordingly believes that Allar has demonstrated that it does indeed face a risk of irreparable injury.

Under the analysis set out in the Third Circuit's *Revel* decision, a case could be made that, despite its showing on irreparable injury, Allar's failure to present any evidence in support of its arguments should end the analysis, and that the motion should be denied without further analysis. The Court nevertheless believes it appropriate, under the circumstance, to consider the remaining factors and engage the "sliding scale" analysis of the four factors to which *Revel* would direct the Court

---

[10] *In re Genesis Health Ventures*, 266 B.R. 591, 598-599 (Bankr. D. Del. 2001).

10

in cases in which the moving party makes a sufficient showing on both of the first two factors.

*Injury to other parties.*  Under the circumstances of this case, the Court does believe that the issuance of a stay could cause substantial harm to other parties. While Allar contends that it seeks only limited relief – an order requiring that the distribution of the $1,248,032.90 that Allar contends it is owed be stayed – the Court does not believe such a limited stay would be appropriate in the context of this case.

Here, the other creditors in the case – particularly the reserve-backed lenders and the service providers holding senior liens – each had arguments as to why the plan could not be confirmed unless they were paid in full.  In the end, those parties agreed to resolve their objections and reached a consensual resolution that was premised on their receiving specific amounts that were painstaking negotiated. Removing nearly $1.25 million from those distributions would fundamentally upset the applecart.  Those other creditors dropped their plan objections in exchange for an agreement under which they would be paid the amount for which they had negotiated.  The Court therefore does not believe that it can, in fairness, put those parties at risk of receiving less without providing them the opportunity to advance the objections that they had originally asserted.

For that reason, the Court believes that it is essentially required either to stay consummation of the plan entirely or not at all.  But because the failure to close promptly may trigger rights of the buyer to back out of the transaction and the rights of the secured creditors to oppose the debtor's ongoing use of its cash collateral,

staying the plan entirely would put at risk a transaction in which the debtor's business operations will be sold on a going-concern basis, generating tens of millions of dollars in recoveries to creditors.  Under these circumstances the Court believes that granting Allar's motion for a stay poses substantial risk to other parties.

*Public interest.*  Allar contends that the public interest would be served by obtaining a resolution of the question of ownership of the royalty holder's share of production "from the Texas Supreme Court on a certified question on appeal."  D.I. 2619 at 5.  While obtaining greater clarity in the law is always in the public interest, in the present circumstance this Court finds that risk outweighed by the risks on the other side of ledger.  Here, those risks include putting at jeopardy tens of millions of dollars in recoveries to other creditors, as well as the potential that the debtor's business will be liquidated rather than sold on a going-concern basis.  The Court is not in a position to quantify that risk to any degree of certainty.  And the Court appreciates the sense in which many challenges to confirmation orders present this type of Chicken Little problem in which parties opposing a stay can point to some risk that the sky will fall if a stay is granted.  But for the purposes of the present motion, even if the Court were to put a rather low coefficient of likelihood on this particular variable (the risk of liquidation), it would still conclude that consideration of the public interest, in the aggregate, counsels against imposing a stay.

Accordingly, under the sliding-scale approach to weighing the four factors relevant to granting a stay, the Court concludes that the motion for a stay should be denied.

* * *

As a final note, the Court addresses the issue of timing. Motions seeking emergency relief require a court to set aside other business to focus on a party's request. This Court is acutely sensitive to the fact that upon its denial of the motion, Allar is likely to seek an emergency stay in the district court, which will in turn be required to address these matters on an emergency basis. Here, Allar asserts that the transaction is scheduled to close on September 17. That leaves the district court precious little time to act on an emergency motion in a complex case with which it likely has little familiarity.

While those circumstances may reduce the likelihood that Allar will obtain emergency relief, the Court notes that this is a problem for which Allar bears some measure of responsibility. At the hearing on September 3, this Court expressed concern about waiving the stay provided by Bankruptcy Rule 3020(e) because recognizing the right of objecting parties to seek appellate review, it sought to avoid a circumstance in which either a party seeking a stay, or an appellate court that was required to rule on one, was faced with an avoidable crisis.

Here, Allar filed its motion to stay late in the day on September 14, 2021 – 11 days after the entry of the confirmation order – seeking to stay a distribution that it says will otherwise occur on September 17, 2021. While Allar filed a motion seeking an emergency hearing before this Court on that motion, it did not contact chambers

to seek a date for such a hearing.[11]  This Court determined, however, that holding a hearing on this motion would only put further pressure on the district court to rule on an expedited basis.  Accordingly, this Court believes it appropriate to address the motion promptly.  That also means that the Court is proceeding without the benefit of an opposition to the motion by the debtor or other parties in interest.  This need for extreme expedition is a function of Allar's decision to wait 11 days before seeking emergency relief.  Generally speaking, parties that seek emergency relief from the Court are encouraged to act with greater urgency on their own part.

Separate orders will issue denying the motion for a stay and denying, as moot, the motion to shorten time to set a hearing on the motion.

Dated: September 15, 2021

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

---

[11] This Court learned of the emergency motion only because an attentive law clerk noticed the filing on the Court's docket.  In general, however, counsel seeking emergency relief are strongly encouraged to contact chambers to apprise the Court of a matter that requires urgent attention, including the scheduling of an emergency hearing.